**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| CAREY BRADFORD and CODY BOLEN, Individually and on behalf of all other similarly situated current and former employees, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:14-cv-02184 |
| vs. | ) ) ) | |
| LOGAN'S ROADHOUSE, INC., LRI HOLDINGS, INC., and ROADHOUSE HOLDING, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION**

*/s/ Thomas E. Hill*

Thomas E. Hill
Christina Tellado
Reed Smith LLP
355 South Grand Avenue, Suite 2800
Los Angeles, CA 90071
Tel: (213-457-8133) and (213-457-8129)
Fax: (213-457-8080)
thill@reedsmith.com and
ctellado@reedsmith.com

Peter J. Stuhldreher
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX 77002-6110
Tel: (713-469-3870)
pstuhldreher@reedsmith.com

Michael D. Jones
Reed Smith LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215-851-8871)
mdjones@reedsmith.com

Andrew S. Naylor (BPR #017128)
K. Coe Heard (BPR #029338)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Tel: (615-244-6380)
Fax: (615-244-6804)
andy.naylor@wallerlaw.com
coe.heard@wallerlaw.com
*Attorneys for Defendants*

# TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS ................................................................................. 5

    A.    Logan's' Nationwide Restaurant Operations And Employees ............... 5

    B.    Employees' Work Time And Tip Reporting ......................................... 7

    C.    Logan's' Written Policies Prohibit The Wage Violations Alleged
        By Plaintiffs ....................................................................................... 7

III.   PLAINTIFFS HAVE FAILED TO ESTABLISH THEIR ENTITLEMENT
      TO CONDITIONAL CERTIFICATION UNDER THE FLSA ....................... 9

    A.    There Is Insufficient Opt-In Interest To Justify Nationwide
        Certification .................................................................................... 10

    B.    Plaintiffs Are Not Similarly Situated To Members Of The Putative
        Collective ....................................................................................... 14

        1.    Plaintiffs' Allegations That They Spend More Than 20% of
            Their Time On Side Work Does Not Demonstrate An
            Unlawful Common Policy Or Practice ..................................... 16

        2.    Plaintiffs' Declarations Confirm That They And Members
            Of The Putative Collective Were Not Subject To Any
            Uniform Unlawful Policy ........................................................ 17

        3.    Plaintiffs' Declarations Confirm That They Are Not
            Similarly Situated To Other Members Of The Putative
            Collective ................................................................................ 23

    C.    Individualized Issues Would Predominate Over Common Ones,
        Thus Rendering Collective Treatment Inappropriate .......................... 24

    D.    Plaintiff's Request For Equitable Tolling Must Be Denied ................. 27

    E.    Logan's Objects To Plaintiffs' Proposed Notice ............................... 28

IV.   CONCLUSION .............................................................................................. 29

Case 3:14-cv-02184   Document 93   Filed 07/06/15   Page 2 of 35 PageID #: 741

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andersen v. Wells Fargo Fin., Inc.*,
2012 U.S. Dist. LEXIS 23175 (S.D. Iowa 2012) ..................................................22

*Bacon v. Eaton Aeroquip, L.L.C.*,
2012 WL 4321712 (E.D. Mich. 2012) ...........................................................15, 21

*Barten v. KTK & Assoc., Inc.*,
2007 WL 2176203 (M.D. Fla. 2007) ...................................................................10

*Bearden v. AAA Auto Club South, Inc.*,
2013 WL 1181474 (W.D. Tenn. 2013) ...............................................................9, 27

*Beecher v. Steak N Shake Operations, Inc.*,
904 F. Supp. 2d 1289 (N.D. Ga. 2012) ......................................................9, 10, 23

*Brooks v. BellSouth Telecomms., Inc.*,
164 F.R.D. 561 (N.D. Ala. 1995) .......................................................................10

*Brown v. Consolidated Restaurant Operations, Inc.*,
2013 WL 4804780 (M.D. Tenn. 2013) .................................................................27

*Clark v. Dollar Gen. Corp.*,
2001 WL 878887 (M.D. Tenn. 2001) ..................................................................14

*Coats v. Nashville Limo Bus, LLC*,
2011 WL 308403 (M.D. Tenn. 2011) ....................................................................9

*Colson v. Avnet, Inc.*,
687 F. Supp. 2d 914 (D. Ariz. 2010) ..................................................................17

*D'Anna v. M/A-Com, Inc.*,
903 F. Supp. 889 (D.Md. 1995) ..........................................................................10

*Davis v. Charoen Pokphand (USA), Inc.*,
303 F. Supp. 2d 1272 (M.D. Ala. 2004) .............................................................9, 10

*De Ascencio v. Tyson Foods, Inc.*,
130 F. Supp. 2d 660 (E.D. Pa. 2001) ..................................................................14

*England v. New Century Fin. Corp.*,
370 F. Supp. 2d 504 (M.D. La. 2005) .................................................................24

*Grayson v. K Mart Corp.*,
79 F.3d 1086 (11th Cir. 1996) ...........................................................................15

*Hart v. JP Morgan Chase Bank, N.A.*,
2012 WL 6196035 (M.D. Fla. 2012) ...............................................................22, 23

*Hickson v. U.S. Postal Serv.*,
2010 WL 3835887 (E.D. Tex. 2010) ...................................................................22

*Hoffmann-LaRoche Inc. v. Sperling*,
   493 U.S. 165 (1989)...................................................................................................9, 28

*Knispel v. Chrysler Group LLC*,
   2012 WL 553722 (E.D. Mich. 2012).......................................................................27

*Kutzback v. LMS Intellibound, LLC*,
   2014 WL 7187006 (W.D. Tenn. 2014)......................................................................27

*Landsberg v. Acton Enterprises, Inc.*,
   2006 WL 3742221 (S.D. Ohio 2006)........................................................................17

*Larson v. Rush Fitness Corp.*,
   2012 U.S. Dist. LEXIS 189211 (E.D. Tenn.) ..........................................................28

*Lindberg v. UHS of Lakeside, LLC*,
   761 F. Supp. 2d 752 (W.D. Tenn. 2011)...................................................................28

*MacGregor v. Farmers Ins. Exchange*,
   2011 WL 2981466 (D.S.C. 2011).............................................................................23

*Mathews v. ALC Partner, Inc.*,
   2009 WL 2591497 (E.D. Mich. 2009).......................................................................27

*Miller v. Jackson*,
   2011 WL 1060737 (M.D. Tenn. 2011).......................................................................27

*Miller v. Jackson*,
   2011 U.S. Dist. LEXIS 60594 (M.D. Tenn. 2011) ...................................................28

*Miller v. Lebanon Golf & Country Club*,
   2014 WL 7359003 (M.D. Tenn. 2014).......................................................................28

*Montgomery v. Decatur County General Hosp.*,
   2012 U.S. Dist. LEXIS 188046 (W.D. Tenn. 2012)..................................................28

*Noble v. Serco, Inc.*,
   2009 WL 3254143 (E.D. Ky. 2009) ..........................................................................27

*Pacheco v. Boar's Head Provisions Co., Inc.*,
   671 F. Supp. 2d 957 (W.D. Mich. 2009) ............................................................15, 22

*Peebles v. A. Schulman Inc.*,
   2006 WL 572337 (M.D. Tenn. 2006).........................................................................18

*Pellon v. Bus. Representation Int'l, Inc.*,
   528 Fed. Appx. 310 (11th Cir. 2008).........................................................................16

*Pfohl v. Farmers Ins. Group*,
   2004 WL 554834 (C.D. Cal. 2004)............................................................................14

*Richardson v. Mountain Range Rests. LLC*,
   2015 WL 1279237 (D. Ariz. 2015)............................................................................16

*Rutledge v. Claypool Electric, Inc.*,
   2012 U.S. Dist. LEXIS 178647 (S.D. Ohio 2012)....................................................17

Case 3:14-cv-02184   Document 93   Filed 07/06/15   Page 4 of 35 PageID #: 743

*Schaefer v. P.F. Chang China Bistro, Inc.*,
  2014 WL 3809069 (D. Ariz. 2014) .................................................................17

*Thedford v. Drive In of Evansville, Inc.*,
  2014 WL 5520954 (N.D. Ala. 2014) ...............................................................10

*Thompson v. RGT Mgmt., Inc.*,
  2012 WL 3261059 (W.D. Tenn. 2012) ..............................................................9

*Thompson v. Speedway SuperAmerica LLC*,
  2009 WL 130069 (D. Minn. 2009) ...................................................................22

*Tucker v. Labor Leasing, Inc.*,
  872 F. Supp. 941 (M.D. Fla. 1994) ..................................................................14

*Valcho v. Dallas Cnty. Hosp. Dist.*,
  574 F. Supp. 2d 618 (N.D. Tex. 2008) ......................................................10, 14

*Watson v. Advanced Dist. Servs.*,
  2014 U.S. Dist. LEXIS 47778 (M.D. Tenn. 2014) ..........................................28

*Watson v. Advanced Distrib. Servs., LLC*,
  298 F.R.D. 558 (M.D. Tenn. 2014) .................................................................28

*White v. Baptist Memorial Health Care Corp.*,
  699 F.3d 869 (6th Cir. 2012) ...........................................................................17

*White v. KPCAR, Inc.*,
  2006 WL 1722348 (M.D. Fla. 2006) ...............................................................10

**Statutes**

29 U.S.C. § 203(m) ................................................................................................16

29 U.S.C. § 203(t) .................................................................................................16

29 U.S.C. § 216(b) ..............................................................................................1, 9

**Regulations**

29 C.F.R. § 531.56(e) ........................................................................................4, 16

**Other Authorities**

U.S. Dept. of Labor Field Operations Handbook Ch. 30d00(e) (Dec. 9, 1988) ...........16

## I.    INTRODUCTION

On April 6, 2015, Plaintiffs Carey Bradford and Cody Bolen ("Plaintiffs") filed their Motion for Conditional Certification ("Motion") in this matter.  (Dkt. 36 and 37)  Through their Motion, Plaintiffs ask this Court to certify an expansive nationwide collective under the Fair Labor Standards Act ("FLSA").  *See* 29 U.S.C. § 216(b).  Plaintiffs do so based on a set of "cookie-cutter" declarations solicited by their counsel through a website that is at best confusing, and at worst misleading, regarding the issues raised by this lawsuit.  Those declarations consist of threadbare and conclusory recitals that are largely devoid of evidentiary value.  Moreover, the limited discovery conducted in this matter to date reveals that 63% of the opt in plaintiffs who signed declarations, and, thereafter, were deposed via written questions (*i.e.*, Karri Busard, John Duncan, Chadwick Layne, Markala Wretling and Zachary Wimpelberg), either lied in their declarations regarding issues material to this litigation, or have absolutely no interest in continuing to "participate" in this action.  In sum, Plaintiffs have failed to make even the modest factual showing necessary for conditional certification.

In their Complaint (Dkt. 1), Plaintiffs allege three "counts" under the FLSA:  (1) "Unpaid Straight Wages;" (2) "Overtime;" and (3) "Minimum Wage."  Plaintiffs assert these "counts" on behalf of themselves and a proposed "class" consisting of "[a]ll current and former tipped employees ... of Logan's in the United States ... during the applicable limitations period ....".  (*Id.* at ¶ 4)   Based on claims arising out of their employment with Logan's Roadhouse, Inc. ("Logan's"),[1] Plaintiffs allege that Logan's violated the FLSA by requiring tipped employees to perform work and attend training while "off the clock," by requiring employees to report their tip

---

[1] Plaintiffs have named Logan's Roadhouse, Inc., LRI Holdings, Inc., and Roadhouse Holding, Inc. as Defendants in this lawsuit; however, only Logan's Roadhouse, Inc. has ever employed Plaintiffs or any other members of the proposed collective.

earnings falsely, and by unlawfully taking tip credits when employees performed non-tip producing "side work" during more than 20% of their work time.

Plaintiffs have worked at just four of Logan's 27 restaurants in Tennessee. They admit that they _know nothing_ of the daily operations and site-specific rules that apply at any of the 23 other restaurants that Logan's operates in Tennessee, much less at the hundreds of Logan's restaurants located in other states. Nonetheless, Plaintiffs seek to certify a nationwide collective consisting of more than 60,000 current and former hourly employees, concerning work performed at no less than 235 different restaurants, spread across twenty different states.

To obtain collective certification, Plaintiffs must make a factual showing that they are "similarly situated" to all members of their proposed nationwide collective. This requires more than a mere recital that Plaintiffs and members of the proposed collective share a job title and/or received tips as part of their compensation. Rather, Plaintiffs must make an evidentiary showing that they are similarly situated to all other members of the proposed collective _with regard to facts essential to their specific claims for relief_. Here, Plaintiffs have manifestly failed to satisfy that evidentiary requirement.

More specifically, Plaintiffs have failed to show that they and all others in their proposed nationwide collective were subject to a common "plan, policy and practice" of Logan's to violate the FLSA. (Complaint, ¶ 15; Dkt. 1) Instead, Plaintiffs have submitted 46 boilerplate declarations from individuals who, collectively, worked in _only 22_ of Logan's 235 restaurant locations. None of these declarants claims to have any knowledge regarding the amount of time that employees in other Logan's restaurants allegedly spent performing side work or working off the clock. This evidentiary hole is not surprising because the amount of side work performed by any given employee on any particular day in any particular restaurant varies considerably, and

can only be known at the local restaurant level, _facts which Plaintiffs freely admit_. There is no unifying, unlawful corporate "plan, policy and practice" specifically identified in Plaintiffs' form declarations, and Plaintiffs concede that they lack personal knowledge of any such "plan, policy and practice." It is, of course, axiomatic that quantity is no substitute for quality when it comes to evidence. The mere number of rote declarations submitted by Plaintiffs in support of their Motion is no substitute for their lack of evidentiary value.

The obvious explanation for the conspicuous gap in Plaintiffs' evidence is that Logan's does not have a common corporate policy or plan that violates the FLSA. To the contrary, Logan's has written policies and well established corporate practices that _expressly prohibit_ the very conduct alleged by Plaintiffs in support of their FLSA claims. Moreover, Logan's communicates those policies to its hourly employees and regularly trains its managers on those policies. Plaintiffs and each opt in who has responded to deposition questions in this case admits to their review and/or receipt of these policies.[2]

A flawed premise underlying Plaintiffs' claims is that if an employee who is subject to a tip credit spends more than 20% of his or her work time performing side work, a violation of the FLSA occurs. As the federal regulations governing tipped employees make clear, however, an employee's ability to take a tip credit has nothing to do with the amount of time the employee

---

[2] Logan's conducted oral depositions of Plaintiffs Carey Bradford ("Bradford") and Cody Bolen ("Bolen"), and submitted written questions on deposition to eight opt in plaintiffs (Karri Busard, John Duncan, Ashley Elgin, Chadwick Layne, Yolanda Osborne, Robyn Reeves, Zachery Wimpelberg and Markala Wretling). Only six of the eight opt in plaintiffs responded to the written questions on deposition. (Exh. 1, Duncan's Responses; Exh. 2, Elgin's Responses; Exh. 3, Osborne's Responses, Exh. 4, Reeves' Responses, Exh. 5, Wimpelberg's Responses; and Exh. 6, Wretling's Responses) Despite receiving three extensions of time to provide responses on behalf of Busard and Layne, Plaintiffs have failed to provide those deposition responses. Logan's submits that Busard and Layne's claims are thus subject to dismissal, and that any declaration evidence submitted on their behalf in support of Plaintiffs' Motion should be struck from the record and otherwise ignored by the Court.

spends doing "side work." 29 C.F.R. § 531.56(e). Neither the FLSA nor the applicable regulations focus on how much time an employee spends performing tasks within a tipped occupation. *Id.* Indeed, the 20% limitation on side work upon which Plaintiffs primarily base their claims is only found in the Field Operations Handbook ("FOH") of the Department of Labor ("DOL"), a resource for field personnel that expressly disclaims any authority as law, and which numerous federal courts have found is entitled to no judicial deference. In sum, even if tipped employees of Logan's do spend more than 20% of their time on side work related to their tipped occupations, that fact does not result in a violation of the FLSA. It is, of course, beyond dispute that conditional certification cannot be based on an implausible claim for relief.

In addition, each and every one of the declarations submitted in support of Plaintiff's Motion is filled with inadmissible conjecture and bare legal conclusions that utterly fail to establish a common and unlawful corporate policy or practice that is applicable nationwide and relevant to any of Plaintiffs' specific claims for relief under the FLSA. Indeed, the only *allegation* of a common nationwide practice consists of the declarants' unsubstantiated "belief" that Logan's consistently violates the 20% limitation on side work set forth in the FOH. This unsubstantiated "belief" stands in sharp contrast to Logan's actual (and undisputed) policies, practices, employee communications and management training, all of which *expressly prohibit* the very conduct upon which Plaintiffs predicate their FLSA claims.

Lastly, Logan's has individual defenses to Plaintiffs' FLSA claims that will necessarily differ from restaurant to restaurant, and from supervisor to supervisor, and from opt in plaintiff to opt in plaintiff, further rendering collective treatment inappropriate in this case. The deposition testimony from Plaintiffs and the opt in plaintiffs who chose to provide responses to Logan's' written questions amply demonstrates that the proposed nationwide collective includes

individuals who held different jobs, performed different duties and tasks, and worked different schedules at different restaurants, under different managers. These deficiencies create restaurant-, supervisor-, and plaintiff-specific defenses that will inevitably render collective treatment impractical, inefficient, and, ultimately, unmanageable.

In sum, Plaintiffs have filed a Motion that utterly lacks the essential factual support required by the FLSA. Conclusory allegations of common policies and practices – _which on their face are demonstrably false_ – cannot justify collective certification as a matter of law. Because Plaintiffs have failed to demonstrate that they are similarly situated to all members of their proposed nationwide collective, or that common issues will predominate over individual ones at trial, this Court should deny their Motion.

## II.     STATEMENT OF FACTS

### A.     <u>Logan's Nationwide Restaurant Operations And Employees</u>

Logan's currently operates a chain of 230 casual steakhouse restaurants spread across 20 states. (Exh. 7, Declaration of Christy Cox "Decl. Cox", ¶ 4) During the three years preceding the filing of this litigation, Logan's employed approximately 60,290 hourly employees nationwide who regularly and customarily received tips, including employees holding the positions of server and bartender, at 235 restaurants located in 20 different states. (_Id._ ¶¶ 4 and 14) A state-by-state breakdown of Logan's' tipped employee workforce during the aforementioned time period is as follows: Alabama (5,817 employees at 23 locations), Arkansas (1,410 employees at 5 locations), Arizona (721 employees at 4 locations), Florida (2,507 employees at 13 locations), Georgia (2,928 employees at 13 locations), Illinois (779 employees at 4 location), Indiana (3,017 employees at 12 locations), Kansas (1,262 employees at 5 locations), Kentucky (3,288 employees at 13 locations), Louisiana (2,799 employees at 9 locations), Michigan (3,844 employees at 17 locations), Missouri (968 employees at 4 locations),

Mississippi (3,137 employees at 10 locations), Ohio (2,168 employees at 9 locations), Oklahoma (1,940 employees at 6 locations), Pennsylvania (729 employees at 4 locations), Tennessee (7,880 employees at 27 locations), Texas (11,629 employees at 41 locations), Virginia (2,216 employees at 10 locations), and West Virginia (1,251 employees at 6 locations).  (*Id.* ¶ 15)

Each Logan's restaurant has its own General Manager ("GM").  The GM is responsible for the day-to-day operations of his or her restaurant, and the overall supervision of the restaurant's staff.  Logan's also employs subordinate managers ("Subordinate Managers") at each restaurant who report directly to the GM.  These Subordinate Managers include, but are not limited to, Bar Managers, Culinary Managers, Guest Services Managers, Training Managers and Service Managers.  (*Id.* ¶ 5)

Each GM has broad discretionary authority regarding the day-to-day management of his or her restaurant.  That authority extends to the hiring, firing, supervision and training of staff, the setting of employee schedules, the conduct of daily operations, and the assignment of tasks to employees.  Subordinate Managers also have authority to supervise, train and assign tasks to employees.  The GMs and Subordinate Managers are directly responsible for ensuring that Logan's written policies are implemented in their restaurants and followed by their staff.  (*Id.* ¶ 6)

The GMs and Subordinate Managers at individual restaurants determine and schedule the shifts of all hourly employees.  The local management team also allocates specific duties and responsibilities to employees working particular shifts, including the assignment of side work. As a result, the percentage of an employee's overall work time devoted to side work, if any, necessarily varies depending upon the needs of an individual supervisor, restaurant location, and

job assignment and shift, all of which may vary further based on business volume impacted by the economy, the weather, the season, promotions and price discounts, or any one of numerous additional factors unique to a particular location. (*Id.* ¶ 7) Plaintiffs do not dispute these facts; indeed, they concede them.

### B. Employees' Work Time And Tip Reporting

Hourly employees at all Logan's restaurants record their work time into an electronic timekeeping system. That timekeeping system tracks all hours worked based on the individual employee's personal input into the system. Each tipped employee is able to clock in either as a "tipped" employee subject to tip credits, or as a "non-tipped" employee so that work time which is not subject to tip credits (*e.g.*, non-tipped training) can be accurately recorded. (*Id.* ¶ 8)

Employees of Logan's who receive tips are personally responsible for accurately declaring the total amount of their tips at the end of each work shift. When an employee "closes out" at the end of his or her shift, the employee is prompted to enter the total amount of tips received during that shift. Because Logan's closes payroll every Monday morning for the preceding week, it is impossible for an employee or Logan's to shift tips declared in one workweek to a subsequent workweek. (*Id.* ¶ 9)

### C. Logan's Written Policies Prohibit The Wage Violations Alleged By Plaintiffs

Logan's has multiple measures in place to ensure its compliance with federal and state wage and hour laws. Logan's has adopted written policies and procedures to foster such compliance, including the issuance of Logan's Hourly Team Member Handbook (the "Handbook"). The Handbook explains Logan's use of tip credits as allowed under federal and state law, and makes clear that "tipped hourly team members" must accurately report 100% of the tips they receive each shift. The Handbook also makes clear that hourly employees will be

paid overtime for all hours worked over 40 in a workweek. The Handbook specifically states that off the clock work is prohibited, and advises employees that they must always be clocked in prior to commencing any work for Logan's. (*Id.* ¶ 10, Exh. A)

Logan's also has an Open Door Policy ("Open Door Policy") that *requires* employees to report any concerns that they may have related to "Pay/Wage & Hour" issues. The Open Door Policy provides information on the compensation policies of Logan's, and describes a process that should be used by employees to report any concerns regarding compensation issues. (*Id.* ¶ 11, Exh. B) Plaintiffs admit that they never used the Open Door Policy to communicate any concerns and/or complaints they had regarding Logan's' pay practices, and not a single one of Plaintiffs' 44 supporting declarants even mentions the Open Door Policy in his or her declaration.

In addition to its written policies, Logan's conducts annual wage and hour training. During this annual training, Logan's reinforces with its managers the company's strict policy prohibiting off the clock work. Since at least 2011, Logan's' annual management training has addressed topics such as the required recording of all work time, the proper application of tip credits, the importance of accurate time records, and the requirement that employees correctly report all tips received. During the wage and hour training, Logan's reinforces that it has "zero tolerance for failure to comply with company policy and Wage & Hour laws." (*Id.* ¶ 12, Exh. C) This management training also emphasizes Logan's' internal policy that any side work performed by tipped employees should not exceed 20% of the employee's work time for any particular workweek. (*Id.*)

Each September, Logan's also reviews its pay policies and procedures with all of its hourly employees. During this review, Logan's again reinforces that employees (1) are not

- 8 -

permitted to perform any work off the clock, (2) are required to clock in and clock out accurately for each shift, (3) must report 100% of the tips they receive each shift or face discipline for failing to do so, and (4) should use the Open Door Policy to report any concerns they may have regarding their pay.  (*Id.* ¶ 13, Exh. D)

## III.  PLAINTIFFS HAVE FAILED TO ESTABLISH THEIR ENTITLEMENT TO CONDITIONAL CERTIFICATION UNDER THE FLSA

In addressing Plaintiffs' Motion, this Court must consider several factors.  As an initial matter, the Court must examine "whether plaintiffs have shown that other employees desire to opt in to this litigation." *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1276-77 (M.D. Ala. 2004) (citation omitted); *see also Beecher v. Steak N Shake Operations, Inc.*, 904 F. Supp. 2d 1289, 1299-1300 (N.D. Ga. 2012).  If the Court determines that a sufficient level of interest by others has been shown, the Court must next decide whether Plaintiffs are "similarly situated" to all members of the proposed collective.  29 U.S.C. § 216(b); *Coats v. Nashville Limo Bus, LLC*, 2011 WL 308403 *1 (M.D. Tenn. Jan. 27, 2011) (Exh. 12).  Lastly, the Court must assess whether individualized issues will necessarily predominate over common ones in litigating the case, such that the benefits of collective procedures are outweighed by issues of manageability, fairness and due process.

Significantly, courts have considerable discretion in determining whether a plaintiff's showing warrants conditional certification.  *See Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ("No fixed framework exists for determining whether the court should grant conditional certification at the notice stage"); *Bearden v. AAA Auto Club South, Inc.*, 2013 WL 1181474 *2 (W.D. Tenn. Mar. 18, 2013) ("[N]otice is by no means mandatory") (Exh. 13); *Thompson v. RGT Mgmt., Inc.*, 2012 WL 3261059 *3 (W.D. Tenn. June 8, 2012) (Exh. 14).  That said, courts have a duty "to avoid the 'stirring up' of litigation through unwarranted solicitation,"

and courts should also "ensure that 'an employer [is] not . . . unduly burdened by a frivolous fishing expedition[.]'" *Valcho v. Dallas Cnty. Hosp. Dist.*, 574 F. Supp. 2d 618, 622 (N.D. Tex. 2008) (quoting *D'Anna v. M/A-Com, Inc.*, 903 F. Supp. 889, 894 (D.Md. 1995). *See also Thedford v. Drive In of Evansville, Inc.*, 2014 WL 5520954 (N.D. Ala. Oct. 31, 2014) (denying conditional certification, and finding that "class certification would not only fail to serve judicial efficiency but would constitute 'the 'stirring up' of litigation through unwarranted solicitation' that this court cannot permit," quoting *Brooks v. BellSouth Telecomms., Inc.*, 164 F.R.D. 561, 567 (N.D. Ala. 1995)) (Exh. 15).

### A.   There Is Insufficient Opt-In Interest To Justify Nationwide Certification

As an initial matter, the Court should determine whether Plaintiffs have shown that there is sufficient interest in this case by others so as to warrant the certification of a nationwide collective action. *Charoen Pokphand*, 303 F. Supp. 2d at 1276-77. While collective actions are not subject to strict numerosity requirements, courts frequently deny certification where there is an insufficient showing of interest from the proposed collective. *Beecher*, *supra*, 904 F. Supp. 2d at 1299-1300 (denying conditional certification, in part, due to lack of interest where plaintiff sought to certify a nationwide class and only 23 individuals out of a putative collective of 65,000 elected to opt-in); *Barten v. KTK & Assoc., Inc.*, 2007 WL 2176203 at *2 (M.D. Fla. July 26, 2007) (denying certification, and noting that "[c]ertification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit. Rather, a showing that others desire to opt in is required *before* certification and notice will be authorized by the court," emphasis added in part and internal citations omitted) (Exh. 16); *White v. KPCAR, Inc.*, 2006 WL 1722348 (M.D. Fla. June 20, 2006) (denying conditional certification and finding that permissive joinder was the best method for adjudication) (Exh. 17).

Here, Plaintiffs seek conditional certification of a putative collective consisting of more than 60,000 individuals – individuals who work or worked at 235 different restaurants, under hundreds of different supervisors, and at different times over more than a three year period. While 100 opt ins have filed consents to join this action, this level of participation fails to demonstrate interest sufficient to warrant certification of a _nationwide_ collective when viewed in light of the potential overall size of that collective, and when scrutinized in terms of the locations at which the opt ins actually worked. In that regard, the two named Plaintiffs and 100 opt ins represent **less than 1/5th of 1% of the potential nationwide collective**. Moreover, no consents to join this action have been filed by any of the 7,795 individuals who worked at one or more of the 33 restaurants operated by Logan's in Arkansas, Arizona, Illinois, Oklahoma, Pennsylvania or Virginia. (Exh. 7, Decl. Cox, ¶ 16)

A location-by-location breakdown of the opt in demographics in this case discloses that plaintiff participation is heavily skewed to just six of the 27 restaurants operated by Logan's in Tennessee (_i.e._, Antioch, _aka_ 100 Oaks, Dickson, Franklin, Madison, Nashville and Spring Hill). Plaintiffs and 55 opt ins worked exclusively at one or more of these six Tennessee restaurants, accounting for more than 50% of the current plaintiff group. An additional 11 opt ins worked at just one (_i.e._, Louisville) of the 13 restaurants Logan's operates in Kentucky, thus establishing that approximately _68% of the current plaintiff group worked at just seven restaurants operated by Logan's in just two states_. Of course, Plaintiffs and the 66 opt ins who make up this Tennessee/Kentucky group represent substantially _less than 1%_ of the 11,168 individuals who worked for Logan's in Tennessee and Kentucky during the relevant time period. Moreover, this Tennessee/Kentucky plaintiff group collectively worked in just seven of the 40 restaurants operated by Logan's in those two states. (_Id._ ¶¶ 15 and 16)

When one examines the opt in demographics from outside Tennessee and Kentucky, the lack of interest in and justification for a nationwide collective becomes even more apparent. Besides the six states in which Logan's operates and from which no consents to joint this action have been filed (*i.e.*, Arkansas, Arizona, Illinois, Oklahoma, Pennsylvania and Virginia), the current opt in group includes fewer than four individuals from each of the following states: Florida (2), Georgia (1), Indiana (1), Kansas (1), Louisiana (4), Michigan (3), Mississippi (3), Missouri (1), Ohio (2), Texas (1), and West Virginia (3). Logan's employed approximately 43,305 tipped employees in these 17 states during the relevant time period, and did so in 172 different restaurant locations. The 22 opt ins from this group of 43,305 employees collectively worked in just 15 of those 172 restaurants. (*Id.*)

These deficiencies in Plaintiffs' showing of nationwide interest in this litigation are even more stark when considered in light of the aggressive pre-certification efforts already made to publicize this litigation. Plaintiffs' counsel has created and maintains an interactive website devoted to this lawsuit, http://www.logansofftheclock.com/, which provides information about this litigation, a questionnaire to determine if individuals are "eligible" to join, a downloadable PDF of a "Consent to Join" form, an automatic process "to join (opt-in) to this Lawsuit," and a mechanism for individuals visiting the website to solicit other individuals to visit the site. (Exh. 8, consisting of a copy of content publically available on the referenced website) Through this interactive website, Plaintiff's counsel have actively solicited individuals to join this action across the nation, and have done so despite the fact that this Court has yet to rule on the propriety of notice to any putative collective.

Plaintiff Bolen has also engaged in extensive efforts to solicit current and former Logan's employees to join this litigation. At his deposition, Bolen stated that he sent Facebook messages

containing a link to his counsel's website (http://www.logansofftheclock.com/) to more than 500 individuals who listed Logan's as an employer in their Facebook work history. (Bolen Dep., Exh. 9, at 118:1-121:8)

There is also an anonymous Facebook page, https://www.facebook.com/logans.offtheclock ("Logan's Off-the-clock Facebook Page"), that has been used to generate interest and solicit participation in this matter. Since December 2014, the Logan's Off-the-clock Facebook Page has posted numerous messages imploring individuals to visit http://www.logansofftheclock.com/ and "sign up" to be part of the "huge lawsuit" so as to not "miss out on the money that logans [sic] owes you." (Exh. 10, consisting of a copy of select content publically available on the referenced Logan's Off-the-clock Facebook Page)[3]

Despite these considerable (and questionable) efforts at solicitation, Plaintiffs and their counsel have failed to stir up sufficient interest in this litigation to warrant conditional certification of a nationwide collective consisting of more than 60,000 individuals. Again, the number of individuals who have joined this action after months of intense solicitation is heavily skewed to just six restaurant locations in Tennessee (*i.e.*, more than 50% of the plaintiff group), and represents less than 1/5th of 1% of the putative nationwide collective. When viewed in light

_____

[3] The individual(s) who created and generate(s) the posts on the Logan's Off-the-clock Facebook Page boast(s) that he is "the guy who helped start this" litigation. (Exh. 10 at p. 7, consisting of a copy a February 28, 2015 message posted on the referenced Logan's Off-the-clock Facebook Page) A review of the posts on this page reveals that the author(s) purport(s) to be in direct contact with Plaintiffs' counsel. (*See, e.g.*, Exh. 10 at p. 14, May 31, 2015 message stating "2 main plaintiffs go Friday, June 5th, to give their depositions to Logan's attorneys"; Exh. 10 at p. 13, May 24, 2015 message providing summary of the parties' May 21 telephonic conference with the Court; Exh. 10 at p. 11, April 10, 2015 message stating that Plaintiffs' counsel "filed a motion on Monday for conditional certification," and further commenting that Logan's obtained new counsel and that the "attorney said it was them trying to play 'hard ball'"). Assuming that these posts were made by either one or both of the Plaintiffs, and thus reflect a patent waiver of the attorney-client privilege, the question arises as to whether Plaintiffs can even serve as proper representatives of an FLSA collective in this action.

of the overall size of the proposed collective, the number of actual opt ins does not reach the level of interest necessary to justify certification of a nationwide collective. *See Pfohl v. Farmers Ins. Group*, 2004 WL 554834 at *9 (C.D. Cal. Mar. 1, 2004) (holding that approximately 13 opt ins out of a putative collective of "hundreds" were insufficient to warrant collective treatment, particularly where counsel solicited claimants via a website and was unable to create greater interest) (Exh. 18); *Valcho v. Dallas County Hosp. Dist.*, 574 F. Supp. 2d 618, 623 (N.D. Tex. Aug. 19, 2008) (lack of interest supported denial of certification, particularly where the plaintiff "made other efforts to identify potential plaintiffs, such as maintaining a website for the purpose of informing and recruiting potential plaintiffs and mailing written communications directly to [putative class members]").[4]

### B. Plaintiffs Are Not Similarly Situated To Members Of The Putative Collective

Even if this Court were to decide that Plaintiffs have demonstrated sufficient interest to justify collective treatment, it should still deny certification. This is because Plaintiffs have not demonstrated that they are similarly situated to all members of the nationwide collective that they seek to represent. Plaintiffs ask the Court to issue nationwide notice based on unsupported allegations that they and others were subject to a "common policy" on the part of Logan's to

---

[4] Courts faced with overly expansive certification proposals like that of Plaintiffs have often confined certification to a particular facility or other geographic location where sufficient interest has been demonstrated. *See, e.g.*, *De Ascencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 662 (E.D. Pa. 2001) (finding plaintiffs similarly situated only to those who were "employed in the same corporate department, division and location"); *Clark v. Dollar Gen. Corp.*, 2001 WL 878887 at *4-6 (M.D. Tenn. May 23, 2001) (denying nationwide certification where the plaintiffs only submitted affidavits alleging FLSA violations in seven stores, and confining certification to specific districts in Tennessee and Alabama where those seven stores were located) (Exh. 19); *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 948-49 & n.4 (M.D. Fla. 1994) (limiting certification to a single facility because there was no evidence of interest at other facilities, and the decisions at issue were made on a decentralized basis).

violate the FLSA – a "policy" concerning which Plaintiffs *admit* they have no personal knowledge, and which their declarants completely fail to identify. Standing alone, such conclusory allegations of a company-wide policy or practice cannot justify conditional certification. *Bacon v. Eaton Aeroquip, L.L.C.*, 2012 WL 4321712 *2 (E.D. Mich. Sept. 20, 2012) (multiple affidavits stating that potential class members had "personal knowledge that [Defendant's] … policy of misclassification was intentionally and uniformly enforced against all low-level 'supervisors' at my location, which I as [sic] understood was the same company-wide," held "insufficient to satisfy Plaintiff's burden of showing the existence of a nationwide class purportedly subjected to the same FLSA-violating policy") (Exh. 20).

To establish that they are similarly situated to all other members of the putative class, Plaintiffs must show that they and all other members were impacted by a "single decision, policy, or plan" that resulted in the specific violations of the FLSA alleged in their Complaint. *Pacheco v. Boar's Head Provisions Co., Inc.*, 671 F. Supp. 2d 957, 961 (W.D. Mich. 2009) ("In the FLSA context. . . , courts have consistently required the plaintiffs to show that the class members were victims of a 'single decision, policy or plan' before they will certify a collective action"). Thus, Plaintiffs must do more than simply recite the standards for conditional certification. Rather, Plaintiffs must produce "detailed allegations [demonstrating that others are similarly situated] supported by affidavits which 'successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (internal quotations omitted). Here, Plaintiffs have not attached to their Motion, identified therein, or even attempted to describe the *unifying corporate policy* that they contend Logan's promulgated in each of its 235 locations, and which purportedly compelled hundreds of managers across 20 states to violate the FLSA in a uniform manner.

1.    **Plaintiffs' Allegations That They Spend More Than 20% of Their Time On Side Work Does Not Demonstrate An Unlawful Common Policy Or Practice**

Under the FLSA, an employer may take a tip credit against its minimum wage obligation equal to the difference between the required cash wage (*i.e.*, $2.13) and the federal minimum wage (*i.e.*, $7.25).  *See* 29 U.S.C. § 203(m).  The FLSA defines a "tipped employee" as any "employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."  *Id.* at § 203(t).  Significantly, neither Plaintiffs nor any of the opt-in declarants allege that they failed to meet the statutory definition of a "tipped employee" while employed by Logan's.

Neither the FLSA nor the DOL regulations interpreting the FLSA impose any limit on the amount of time that a tipped employee can spend on non-tip producing work directly related to his or her tipped occupation.  29 U.S.C. § 203(m); 29 C.F.R. § 531.56(e).  Indeed, the key to determining whether tip credits may be taken is not how much time the employee spends performing tipped or non-tipped work, but whether the employee is engaged in *an occupation* through which he or she customarily and regularly receives $30 per month in tips.  29 C.F.R. § 531.56(e).  Put another way, the availability of tip credits under the FLSA and the DOL regulations turns not on how much time a tipped employee spends performing a particular set of tasks, but rather on the tipped nature of the employee's occupation as a whole.

The 20% standard that Plaintiffs attempt to use as the foundation for their nationwide collective is found **only** in the DOL's FOH.  U.S. Dept. of Labor Field Operations Handbook Ch. 30d00(e) (Dec. 9, 1988).  Numerous federal courts have concluded, after extensive analysis, that this 20% standard is inconsistent with the language of the FLSA and the DOL's own regulations, and is otherwise not entitled to any judicial deference.  *Pellon v. Bus. Representation Int'l, Inc.*, 528 Fed. Appx. 310, 313 (11th Cir. 2008); *Richardson v. Mountain Range Rests. LLC*, 2015

WL 1279237 *8-9 (D. Ariz. Mar. 20, 2015) (Exh. 21); *Schaefer v. P.F. Chang China Bistro, Inc.*, 2014 WL 3809069 *6, n.6 (D. Ariz. Aug. 1, 2014) (Exh. 22). It follows that to the extent Plaintiffs' claims are based on the 20% standard, conditional certification must be denied. *See White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 878 (6th Cir. 2012) ("a lead plaintiff cannot be similarly situated and represent opt-in plaintiffs without a viable claim").

Even if the Court were to accept the 20% limitation on side work set forth in the FOH as governing law, that limitation applies only with reference to hours worked *within a workweek*. The declarations submitted in support of Plaintiffs' Motion uniformly allege that the declarants were "required to perform non-tip producing 'side work' in excess of twenty percent (20%) of [their] work time." These declarations contain no allegations regarding whether the side work in question exceeded 20% of their hours worked during any particular workweek. Under the 20% standard, an employee can easily spend more than 20% of his or her work time on side work during one or more shifts, and still not exceed the 20% limitation for the workweek. Plaintiffs have thus failed to provide sufficient evidence to demonstrate that any FLSA violation has occurred based on the 20% standard, even if the Court were to treat that standard as governing law. *See White*, *supra*, 699 F.3d at 878.

## 2. Plaintiffs' Declarations Confirm That They And Members Of The Putative Collective Were Not Subject To Any Uniform Unlawful Policy

In support of their Motion, Plaintiffs have presented their own and 44 "cookie-cutter" opt in declarations consisting of rote and largely conclusory recitals. Courts rightfully and routinely view such boilerplate declarations with skepticism. *Rutledge v. Claypool Electric, Inc.*, 2012 U.S. Dist. LEXIS 178647 at *9 (S.D. Ohio Dec. 17, 2012) (Exh. 23); *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 928-29 (D. Ariz. 2010); *Landsberg v. Acton Enterprises, Inc.*, 2006 WL 3742221 *3 (S.D. Ohio Dec. 15, 2006) (hearsay insufficient to establish employer's pay

policies) (Exh. 24); *Peebles v. A. Schulman Inc.*, 2006 WL 572337 *7 (M.D. Tenn. Mar. 7, 2006) (striking legal conclusions from affidavit) (Exh. 25). Such skepticism is particularly appropriate here given the manner in which Plaintiffs' supporting declarations appear to have been generated.

The website created by Plaintiffs' counsel, www.logansofftheclock.com, asks a series of six "yes" or "no" questions regarding a minimum wage rate of $7.25 per hour, and without reference to available tip credits, before asking whether the website's visitor would like to become an opt in to this lawsuit. Presumably, these questions are the basis for the largely uniform declarations that Plaintiffs have submitted. The questions on the website could easily confuse an individual into believing that Logan's' lawful application of the tip credit rules, resulting in the payment of an hourly wage of $2.13 instead of the $7.25 minimum wage, alone constitutes an FLSA violation. And, should such confusion prove insufficient to promote the false belief that FLSA violations have occurred, the website also dangles a "hypothetical" recovery of up to "$26,100" before its visitors. *See* www.logansofftheclock.com. In order to discourage these types of confusing and potentially misleading communications, the FLSA generally requires court-supervised notice to potential members of a collective. Here, the substantial risk that Plaintiffs' declarants may have been confused or mislead by the subject website should cause the Court to view their declarations with considerable skepticism.

The skepticism due cookie cutter declarations solicited by and then generated from a website created by Plaintiffs' counsel – a website dangling the bait of $25,000+ recoveries – is intensified in this case because three of the six opt ins who actually responded to Logan's' depositions on written questions have admitted (either expressly or through their actions) that they lied in the declarations they submitted in support of Plaintiffs' Motion. (*See* Duncan Dep.,

Exh. 1, at Dep. Exh. AA; Wimpelberg Dep., Exh. 5, at Dep. Exh. AA; *Compare* Wretling Dep., Exh. 6, at ¶¶ 56 and 57, and Dkt. 37, at ¶ 10)  Two other opt ins (Karri Busard and Chadwick Layne) who submitted declarations have refused to provide written deposition responses, thus calling into question the veracity of their declarations.  The overall picture is not one calculated to inspire confidence in the credibility of Plaintiffs' supporting "evidence."

Acknowledging the haphazard manner in which the original declarations were prepared and obtained, opt in John Duncan ("Duncan") admits that he did not review his entire declaration prior to signing it.  (Duncan Dep., Exh. 1, at ¶ 75)  Moreover, in his written deposition testimony, Duncan admits that the statement in his original declaration that Logan's required him to declare tips that he never received was false.  (Duncan Dep., Exh. 1, at ¶ 68, 79, Dep. Exh. AA)  Another opt in selected for deposition on written questions, Zachary Wimpelberg ("Wimpelberg"), has submitted a revised declaration in which he deletes his prior sworn statements that he was required to (1) attend training while being paid less than minimum wage, and (2) falsely declare tips that he never received.  (Wimpelberg Dep., Exh. 5, at Dep. Exh. AA)  Similarly, opt in Markala Wretling effectively concedes in her deposition testimony that she lied in her declaration when she stated that Logan's forced her to report her tips falsely.  (*Compare* Wretling dep., Exh. 6, at ¶¶ 56 and 57, and Dkt. 37, at ¶ 10)  In sum, five members (63%) of the opt in deposition group of eight have either admitted that they lied under oath as to matters material to this litigation, or conveyed their utter lack of interest in continuing to "participate" in this case by failing to respond to Logan's' deposition questions at all.

As previously noted, none of the declarations submitted in support of Plaintiffs' Motion reflect personal knowledge by the declarant of any corporate-wide policy or practice of Logan's, much less one that is nationwide in scope *and* unlawful.  *See, e.g.,* Decl. Bradford and Bolen.

Instead, the declarations merely state in conclusory fashion that the declarants "**believe** it is a practice of Logan's to require all its tipped employees to perform non-tip producing 'side work' in excess of twenty percent (20%) of their time." (*Id*. at ¶ 8) (emphasis added)) In support of this allegation, the declarants provide only conclusory statements that they personally were required to perform side work more than 20% of the time. (*Id*. at ¶ 6) They offer no details as to the date, time, or frequency of such activities, nor have they identified a single workweek in which such side work exceeded 20% of their work time. (*Id*.) The declarants also parrot that they "have observed other Logan's tipped employees receiving less than the minimum wage rate of $7.25 an hour for such non-tip producing 'side work.'" (*Id*. at ¶ 7) Notably, however, the declarants do not state whether they are aware of any other employee who was required to perform side work during more than 20% of his or her work time, or whether any such work was directed on a corporate-wide basis. (*Id*.)

The deposition testimony of Plaintiffs and the six opt-ins who provided written deposition responses confirm their lack of knowledge of any corporate policy requiring servers and bartenders to spend more than 20% of their work time performing side work. In fact, Plaintiff Bolen testified that two Logan's managers instructed him that it was Logan's' policy to prohibit side work in excess of 20% of work time. (Bolen Dep., Exh. 9, at 237:19-238:15) Bolen also confirmed that his allegations of a company-wide policy mandating "excessive" side work were based solely only on his observation that other servers and bartenders working at his restaurants performed "some" side work. (Bolen Dep., Exh. 9, at 246:17-247:14) Similarly, Plaintiff Bradford admitted that that he could only "guess" as to the amount of time he spent performing side work during any given shift, and that he had no way of knowing how much time any other employee spent performing side work. (Bradford Dep., Exh. 11, at 154:1-5, 202:13-

- 20 -

25)  This is no surprise given the fact that Bradford has never worked or communicated with 95 of the 100 opt ins in this case; in fact, he doesn't even know them.  (*Id*. at 28:9-17)  Overall, the unsubstantiated speculation, hollow conjecture and bare conclusions contained in the subject deposition testimony and declarations are simply insufficient to justify conditional certification of an expansive nationwide collective – a collective potentially embracing tens of thousands of individuals. *Bacon*, 2012 WL 4321712 at *2.[5]

The deficiencies of Plaintiffs' supporting declarations and deposition testimony are not surprising since, as described herein, Logan's' written policies explicitly prohibit each and every one of Plaintiffs' alleged FLSA violations.  (Exh. 7, ¶¶ 10-14, A, B, C and D)  Plaintiffs admit that Logan's' written policies expressly prohibit each of the unlawful practices complained of in this case.  (Bolen Dep., Exh. 9, at 136:23-138, 237:19-238:15, Dep. Exh. 4; Bradford Dep., Exh. 11, at 47:12-50:20, Dep. Exh. 3, 4)  Additionally, each of the opt-ins who provided written deposition testimony admit that they received or reviewed copies of the Logan's policies that expressly prohibit the actions complained of in this lawsuit, and that they signed acknowledgements of their review/receipt of those policies during their employment with Logan's.  (Duncan Dep., Exh. 1, at ¶ 63; Elgin Dep., Exh. 2, at ¶ 62; Osborne Dep., Exh. 3, at ¶ 62; Reeves Dep., Exh. 4, at ¶ 62; Wimpelberg Dep., Exh. 5, at ¶ 62; and Wretling Dep., Exh. 6, at ¶ 62)

---

[5] The declarations also provide no evidence – and not even a "belief" – that a common policy exists that is relevant to those of Plaintiffs' alleged FLSA violations that are not based on the 20% standard regarding side work.  In that regard, the declarants do not allege that they are aware of any other tipped employee who was required to declare false tips.  *See, e.g.,* Decls. Bradford and Bolen Declarations.  Similarly, except for one opt in, the declarants make no allegations that they (or anyone else) was required to perform off the clock work.  *Id*.  Accordingly, there is no evidence to support certification of a collective regarding Plaintiffs' false declaration of tips and/or off the clock claims.

Where, as here, a defendant maintains lawful written policies, the only way a plaintiff can show a common policy to violate the FLSA is to establish that the employer instituted a "common or uniform practice … to not follow its formal, written policy." *Pacheco*, 671 F. Supp. 2d at 962; *Thompson v. Speedway SuperAmerica LLC*, 2009 WL 130069 *2 (D. Minn. Jan. 20, 2009) (denying conditional certification and notice, explaining "plaintiffs have failed to establish a colorable basis that such a policy-to-violate-the-policy exists") (Exh. 26). Even evidence that some managers allegedly violated the common policy is not enough – those violations must be tied to a single decision, policy, or plan that binds together the putative collective. *Hickson v. U.S. Postal Serv.*, 2010 WL 3835887 *9 (E.D. Tex. Jul. 22, 2010) (denying conditional certification) (Exh. 27); *Andersen v. Wells Fargo Fin., Inc.*, 2012 U.S. Dist. LEXIS 23175 *19-20 (S.D. Iowa Feb. 6, 2012) ("In the absence of any evidence tending to show that Defendants routinely breached the FLSA's pay provisions, these deviations are case-specific and subject to variables, making them unfit for a collective action.") (Exh. 28); *Hart v. JP Morgan Chase Bank, N.A.*, 2012 WL 6196035 *5, n.18 (M.D. Fla. Dec. 12, 2012) (where an employer submits evidence of a company policy that prohibits the alleged FLSA violation, and the plaintiffs allege deviation from that policy, the litigation will necessarily "require case-by-case adjudication focusing on the actions of individual managers and supervisors[,]" making conditional certification of a company-wide class inappropriate) (Exh. 29).

Logan's' policies, practices and training undeniably prohibit the actions complained of by Plaintiffs, and Plaintiffs have failed to provide any evidence of a uniform nationwide policy or practice by Logan's to ignore those policies, practices and training. It follows that conditional certification of the nationwide collective proposed by Plaintiffs is inappropriate.

### 3. Plaintiffs' Declarations Confirm That They Are Not Similarly Situated To Other Members Of The Putative Collective

Conditional certification is inappropriate when the record demonstrates significant variations amongst members of the putative collective. *See, e.g., Hart v. JP Morgan Chase Bank, N.A.*, 2012 WL 6196035 *4 (M.D. Fla. Dec. 12, 2012) (finding conditional certification inappropriate based on divergent off-the-clock violations); *Beecher*, *supra*, 904 F. Supp. 2d at 1299-1300 (finding nationwide conditional certification inappropriate based on likelihood of unmanageable class due to divergent off the clock claims, policies, and individualized allegations). This is particularly the case where the decisions at issue were made by individual supervisors, and not based on a common policy applicable to all members of the collective, since individualized decisions will necessarily require individualized proof. *Beecher*, *supra*, 904 F. Supp. 2d at 1299; *MacGregor v. Farmers Ins. Exchange*, 2011 WL 2981466 *3 (D.S.C. July 22, 2011) (finding that affidavits only demonstrated the possibility of isolated supervisor misconduct, but did not support the existence of a company-wide policy or practice) (Exh. 30).

Here, several declarants removed some of the rote recitals from their form declarations, thus confirming that they are not similarly situated to Plaintiffs and other declarants with regard to the matters embraced by those changes. *See, e.g.*, Decl. Bryant (declarant excluded form allegations that he was required to declare tips he never received); Decls. O'Brien, Reeves, Rodgers, and Hymer (declarants excluded form allegations that they were required to attend training without receiving minimum wage); Decls. Elgin and Siroki (declarants excluded form allegations that they were required to declare tips never received, and allegations that they were required to attend training without receiving minimum wage); Decl. Campbell (declarant added handwritten allegation that she was asked to perform work "off the clock" on only one occasion – a limitation not included in any other declaration submitted in this case). And, as previously

- 23 -

described, two of the six opt ins who responded to Logan's depositions on written questions have submitted *revised* declarations in which they delete prior sworn statements regarding Logan's' purported misconduct.  (*See* Duncan Dep., Exh. 1, at Dep. Exh. AA; Wimpelberg Dep., Exh. 5, at Dep. Exh. AA)

C.      **Individualized Issues Would Predominate Over Common Ones, Thus Rendering Collective Treatment Inappropriate**

Conditional certification is inappropriate where individual issues would predominate over common issues in the litigation.  *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504 (M.D. La. 2005*) (declining certification where individual inquiries predominated due to different locations, managers, and factual situations involved).  Logan's has established that individual GMs retain general day-to-day authority regarding the enforcement of Logan's' work policies, including the assignment of side work, the prohibitions on off the clock work, the reporting of all tips received, *etc*.  Thus, at most, the declarations in support of Plaintiffs' Motion necessarily allege wrongdoing by individual restaurant managers.

The deposition testimony of Plaintiffs and the six opt ins who responded to Logan's' written questions uniformly confirms that it was the *on-site management at individual restaurants* who allegedly (1) assigned side work, (2) required off-the-clock work, (3) required non-tip producing work, and (4) required the declaration of false tips.  (Bolen Dep., Exh. 9, at 153:5-10, 225:18-24, 235:15-236:9, 239:3-18; Bradford Dep., Exh. 11, at 116:25-118:2, 207:3-11, 174:3-10; Duncan Dep., Exh. 1, at ¶ 40; Elgin Dep., Exh. 2, at ¶ 40; Osborne Dep., Exh. 3, at ¶ 40, 57, 60; Reeves Dep., Exh. 4, at ¶ 40, 57, 60; Wimpelberg Dep., Exh. 5, at ¶ 40, 60; and Wretling Dep., Exh. 6, at ¶ 40)  For this reason, none of the declarants or deponents profess to have any personal knowledge regarding FLSA violations at any Logan's restaurant other than the one(s) at which they actually worked.  (*See, e.g.*, Decl. Bradford and Bolen.  *See also* Bolen

Dep., Exh. 9, at 115:20-116:5; Bradford Dep., Exh. 11, at 198:3-14, 204:2-10; Duncan Dep., Exh. 1, at ¶ 86; Elgin Dep., Exh. 2, at ¶ 86; Osborne Dep., Exh. 3, at ¶ 86; Reeves Dep., Exh. 4, at ¶ 86; Wimpelberg Dep., Exh. 5, at ¶ 86; Wretling Dep., Exh. 6, at ¶ 86)  The possibility that a rogue manager at one restaurant location might require or encourage unlawful practices that responsible managers at other restaurants strictly prohibited -- *thus negating the existence of a company-wide "plan, policy and practice"* -- is confirmed by Plaintiff Bradford, who testified that he was required to declare false tips by management *at just one* of the three restaurants in which he worked.  (Bradford Dep., Exh. 11, at 174:11-175:4)

In addition to their admitted ignorance of anything that occurred at restaurants other than those in which they worked, the declarants also concede a lack of personal knowledge regarding the specific experiences of co-workers in their own restaurant locations.  (*See, e.g.*, Decl. Bradford and Bolen)  The declarations submitted in support of Plaintiffs' Motion contain no allegations that non-declarant servers or bartenders were required to (1) spend more than 20% of their work time performing side work, or (2) declare false tips.  (*Id.*)  The declarations also provide no foundation regarding how the declarants acquired personal knowledge sufficient to support their conclusions that other employees (1) performed non-tip producing work while clocked-in as tipped employees, and/or (2) attended training without being paid at least minimum wage.  *Id.*  It bears noting that the deponents who were subjected to at least some form of interrogation in this case uniformly confirm that they have no personal knowledge of similar FLSA violations occurring with respect to all members of the proposed collective, or even with respect to all of their co-workers at the restaurants in which they worked.  (*See also* Bolen Dep., Exh. 9, at 232:11-14, 233:4-6, 253:18-20; Bradford Dep., Exh. 11, at 198:3-14)

The deposition testimony in this case also reveals important differences among the potential class members that render collective treatment inappropriate. For example, Bradford admitted that the amount of side work performed by any Logan's server or bartender varies based on a number of restaurant-specific factors, including: (1) the shift the employee worked; (2) the local restaurant management's requirements for side work; (3) how busy the individual restaurant is during a particular shift; and (4) how quickly the particular employee can complete his or her side work. (Bradford Dep., Exh. 11, at 150:2-151:13) Obviously, each of these individual factors will have to be considered with regard to each opt in plaintiff to determine whether he or she was required to spend more than 20% of his or her work time performing side work.

Another illustration of the individualized inquiries necessitated by the facts applicable to Plaintiffs' claims is provided by the "training time" testimony of Plaintiff Bolen. Bolen testified that _his_ off-the-clock claims relate to training that occurred only when he was the one providing the training, not when he received training. (Bolen Dep., Exh. 9, at 145:22-146:16) Bolen conceded, however, that few others at his restaurant were assigned to train new employees. (Bolen Dep., Exh. 9, at 152:12-22) Moreover, Bolen admits that he was not always uncompensated for training time, but only on some occasions. (Bolen Dep., Exh. 9, at 161:2-20, 165:21-167:15, 168:9-21) As previously noted, several opt ins expressly disclaim that they were not compensated correctly for training time. (_See, e.g._, Wimpelberg Dep., Exh. 5, at Dep. Exh. AA)

Because liability determinations will turn on individual situations and particularized facts dependent upon the conduct of hundreds of different supervisors, Plaintiffs have failed to show that they are similarly situated to all members of the proposed collective so as to support

nationwide conditional certification. *Bearden v. AAA Auto Club South, Inc.*, No. 2:11-cv-03104-JTF-dkv, 2013 WL 1181474 *8 (W.D. Tenn. Mar. 18, 2013) (finding that variances among the potential class members that established the case would require individualized proof rendered conditional certification inappropriate). Thus, for this reason too, conditional certification should be denied.

  **D.**    <u>**Plaintiff's Request For Equitable Tolling Must Be Denied**</u>

  Plaintiffs contend that equitable tolling should apply to preserve the claims of members of the putative collective. The doctrine of equitable tolling is "to be carefully applied." *Knispel v. Chrysler Group LLC*, 2012 WL 553722 *6 (E.D. Mich. Feb. 21, 2012) (Exh. 31). Several courts within the Sixth Circuit have recognized that equitable tolling, which is based on an individual, fact-intensive analysis,[6] is not "suitable for preemptive, one-size-fits-all application to a group of as-yet-unidentified potential plaintiffs." *Id.*; *Mathews v. ALC Partner, Inc.*, 2009 WL 2591497 *8 (E.D. Mich. Aug. 24, 2009) (Exh. 32); *see also Noble v. Serco, Inc.*, 2009 WL 3254143 *4 (E.D. Ky. Oct. 7, 2009) (Exh. 33); *Kutzback v. LMS Intellibound, LLC*, 2014 WL 7187006 *13 (W.D. Tenn. Dec. 16, 2014) (Exh. 34); *Brown v. Consolidated Restaurant Operations, Inc.*, 2013 WL 4804780 *8 (M.D. Tenn. Sept. 6, 2013) (Exh. 35).

  This Court has previously declined to rule on the issue of equitable tolling in connection with a motion for conditional certification, holding that the applicability of equitable tolling is more appropriately addressed if and when the defendant advances an argument that certain claims are barred by the relevant statute of limitations. *Miller v. Jackson*, 2011 WL 1060737 *8

---

[6] To determine whether to apply equitable tolling to time-barred claims, courts consider: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Knispel*, *supra*, 2012 WL 553722 at *6.

- 27 -

(M.D. Tenn. Mar. 21, 2011) (Exh. 36); *Miller v. Lebanon Golf & Country Club*, 2014 WL 7359003 *5 (M.D. Tenn. Dec. 23, 2014) (Exh. 37).  Accordingly, Plaintiffs' request for broad-based, preemptive equitable tolling should be denied.

  **E.**  **Logan's Objects To Plaintiffs' Proposed Notice**

  Plaintiffs' proposed notice ("Notice") is deficient in several respects.  First, the description of the putative collective included in the Notice fails to make clear to individuals receiving the Notice that they are only eligible to opt in if they were subjected to an FLSA violation concerning which the Court grants conditional certification.[7]  Second, the notice period should be limited to at most 45 days – a time period this Court and others in this Circuit have repeatedly found reasonable.[8]  Third, the notice should only be sent via U.S. mail.[9]  Given these deficiencies with regard to the Notice, Logan's requests that should conditional certification be granted, the Court defer ruling on the Notice and direct the parties to meet and confer regarding the proper content of the Notice.

---

[7] In FLSA cases, notice must be "accurate" and provide sufficient information to allow "informed decisions about whether to participate."  *Hoffman-La Roche*, 493 U.S. at 170.

[8] *Watson v. Advanced Dist. Servs.*, 2014 U.S. Dist. LEXIS 47778 *20-21 (M.D. Tenn. Apr. 7, 2014) (Trauger, J.); *Montgomery v. Decatur County General Hosp.*, 2012 U.S. Dist. LEXIS 188046 at *29 (W.D. Tenn. Mar. 19, 2012) (Exh. 38).

[9] *Watson v. Advanced Distrib. Servs., LLC*, 298 F.R.D. 558, 565 (M.D. Tenn. 2014) (Trauger, J.) ("The plaintiffs have failed to demonstrate good cause to post the notice at the defendants' respective places of business … [t]herefore, the court finds that notice need only be sent by first-class mail."); *Miller v. Jackson*, 2011 U.S. Dist. LEXIS 60594 (M.D. Tenn. June 6, 2011) (Trauger, J.) (Exh. 39); *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 765 (W.D. Tenn. 2011); *Larson v. Rush Fitness Corp.*, 2012 U.S. Dist. LEXIS 189211 (E.D. Tenn. Oct. 17, 2012) (Exh. 40).

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs'

Motion for Conditional Certification.


Respectfully submitted,


/s/ Thomas E. Hill
Thomas E. Hill                              Michael D. Jones
Christina Tellado                           Reed Smith LLP
Reed Smith LLP                              Three Logan Square
355 South Grand Avenue, Suite 2800          1717 Arch Street, Suite 3100
Los Angeles, CA  90071                      Philadelphia, PA  19103
Tel:  (213-457-8133) and (213-457-8129)     Tel:  (215-851-8871)
Fax:  (213-457-8080)                        mdjones@reedsmith.com
thill@reedsmith.com and
ctellado@reedsmith.com

Peter J. Stuhldreher
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX  77002-6110
Tel:  (713-469-3870)
pstuhldreher@reedsmith.com

And

Andrew S. Naylor (BPR #017128)
K. Coe Heard (BPR #029338)
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Tel: (615-244-6380)
Fax: (615-244-6804)
andy.naylor@wallerlaw.com
coe.heard@wallerlaw.com

Attorneys for Defendants

Date:   July 6, 2015

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing has been served by electronic means via the

Court's CM/ECF system, this 6th day of July, 2015, upon the following counsel of record:

Gordon E. Jackson
James L. Holt, Jr.
Jackson, Shields, Yeiser & Holt
262 German Oak Drive
Memphis, TN 38018
gjackson@jsyc.com
jholt@jsyc.com

Attorneys for Plaintiff

*/s/ Thomas E. Hill*
Thomas E. Hill

US_ACTIVE-122106543.3