# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CAREY BRADFORD and CODY BOLEN, Individually and on behalf of all other Similarly situated current and former employees, | ) ) ) ) | |
| Plaintiffs, | ) | Case No. 3:14-cv-02184 |
| | ) | |
| vs. | ) | |
| | ) | |
| LOGAN'S ROADHOUSE, INC., LRI HOLDINGS, INC., and ROADHOUSE HOLDINGS, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ANSWERS TO QUESTIONS PROPOUNDED TO JOHN DUNCAN

1.  Please state your full name, current address, current telephone number, and social security number.

ANSWER:  John David Duncan, ███████████████████████████████

████████████████████

2.  Please describe everything you did to prepare for your deposition, including whether you had any conversations with your attorneys, when those conversations occurred, and how long those conversations lasted. ANSWER:  Plaintiff objects to the extent that the attorney-client privilege applies to this question.  Subject to and without waiving such objection:

I never actually had to prepare for anything. I didn't study or speak to anyone about it. Three telephone calls – today, yesterday, and Thursday or Friday of last week- and a few emails to schedule a telephone meeting to answer these questions.

1

3. If you reviewed any documents to prepare for your deposition, please identify each of the documents you reviewed and attach copies to your response.

ANSWER: None.

4. Please identify each Logan's restaurant at which you have worked, including the restaurant's address and restaurant number, if you know it?

ANSWER: I worked at the following Logan's: (1) Hickory Hollow in Antioch, Tennessee; (2) on Elliston Place, Nashville; (3) 100 Oaks, Nashville; (4) Arbor Place, Douglasville, Georgia.

5. Please identify the time periods during which you worked at each Logan's restaurant that you identified in response to question number 4.

ANSWER: I worked for Logans' from 2009-2014 from approximately the following dates: (1) Hickory Hollow in Antioch, Tennessee (approximately April 2009- June 2010); (2) Elliston Place, Nashville (approx. June 2010-December 2011); (3) 100 Oaks, Nashville (approx.. December 2011-April 2014); (4) Arbor Place in Douglasville, Georgia (approx. April 2014-March 27, 2015).

6. Please identify by name and position each supervisor to whom you directly reported at any time during your employment with Logan's, and the periods of time during which you reported to each such supervisor.

ANSWER:

I can remember the following managers from the following locations:

(1) Hickory Hollow in Antioch, Tennessee:

   Gen. Mgr. Michelle Santa Maria (approximately April 2009- June 2010)

   Kitchen manager Paul (last name unknown) (approx. April 2009- June 2010)

(2) Elliston Place, Nashville:

2

Gen. Mgr. Don Gay (approx. June 2011-December 2011)

Gen. Mgr. Chastian (last name unknown) (approx. June 2010-June 2011)

Manager Kevin Kline (last name unknown) (approx. June 2010-August 2010).

(3) 100 Oaks, Nashville:

Kitchen manager George (last name unknown) (approx. December 2011-April 2014)

Man. Ashley (approx. 2012-April 2014)

(4) Arbor Place in Douglasville, Georgia:

Gen. Mgr. Cliff (last name unknown) (approx. July 2014-March 27, 2015).

Manager Cathy (last name unknown) (approx. April 2014-March 27, 2015).

Manager Patrice (last name unknown) (approx. April 2014-March 27, 2015).

Manager Kevin Kline (last name unknown) (approx. April 2014-March 27, 2015).

7. Please identify by name and position with Logan's each supervisor to whom you reported indirectly, or who otherwise had any authority over you, at any time during your employment with Logan's, including, but not limited to, the General Manager(s) of the restaurant(s) at which you worked, and the periods of time during which you reported to each such manager.

ANSWER:

(1) Hickory Hollow in Antioch, Tennessee:

Gen. Mgr. Michelle Santa Maria (approximately April 2009- June 2010)

Kitchen manager Paul (last name unknown) (approx. April 2009- June 2010)

(2) Elliston Place, Nashville:

Gen. Mgr. Don Gay (approx. June 2011-December 2011)

Gen. Mgr. Chastian (last name unknown) (approx. June 2010-June 2011)

3

Manager Kevin Kline (last name unknown) (approx. June 2010-August 2010).

(3) 100 Oaks, Nashville:

Kenny O'Neal (I think he was a district manager, but he was over multiple stores and he worked out of the corporate office)(my first day at the Antioch store, he left and went to 100 Oaks store as a manager and then went to corporate)

Kitchen manager George (last name unknown) (approx. December 2011-April 2014)

Man. Ashley (approx. 2012-April 2014)

(4) Arbor Place in Douglasville, Georgia:

Gen. Mgr. Cliff (last name unknown) (approx. July 2014-March 27, 2015).

Manager Cathy (last name unknown) (approx. April 2014-March 27, 2015).

Manager Patrice (last name unknown) (approx. April 2014-March 27, 2015).

Manager Kevin Kline (last name unknown) (approx. April 2014-March 27, 2015).

8. At any time during your employment with Logan's, did you ever have any communications regarding your work and/or pay with any Logan's employee who worked at a location other than the Logan's restaurant where you worked?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

9. If your answer to question number 8 is YES, then identify all such employees with whom you had any such communications, and describe in as great detail as you can the substance of those communications.

4

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

10. At any time during your employment with Logan's did you ever have any communications regarding your work and/or pay with any Logan's employee who worked at Logan's' corporate headquarters?

ANSWER: No.

11. If your answer to question number 10 is YES, then identify all such employees with whom you had any such communications, and describe in as great detail as you can the substance of those communications.

ANSWER: Not applicable.

12. What is Logan's' defined workweek (for purposes of the Fair Labor Standards Act), if you know it?

ANSWER: I do not know it.

13. Did any of your supervisors at Logan's ever shadow you to observe your work performance throughout an entire work shift? Throughout an entire workweek? If so, identify by name and position the supervisor(s) who did so and when this occurred.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits

5

of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

14. Did you ever measure and/or record the amount of time that you spent performing particular tasks during an entire work shift and/or an entire workweek while employed at Logan's?

ANSWER: No.

15. If the answer to the preceding question was "yes," then explain fully how you measured and/or recorded the time you spent on each task, and describe the results of those measurements and/or recordations on each such occasion.

ANSWER: Not applicable.

16. What was your job title during your employment with Logan's? If you had different job titles at different times, please identify each job title you held, the periods of time during which you held each such job title, and the Logan's restaurant location where you were working when you held that job title.

ANSWER: I was a server at the Antioch, 100 Oaks, and Douglasville locations. I was a server, host, and to-go person at Elliston Place from the time I got there until the time I left.

17. For each of the positions identified in response to question number 16, please state whether you regularly received tips of $30 or more per month in connection with your work in that position.

ANSWER: For the server positions at the Elliston Place, Antioch, 100 Oaks, and Douglasville locations, I received more than $30 in tips per month. I didn't make tips as a host, but I did make over $30 in tips as a to-go person at the Elliston location.

6

18. For each of the positions identified in response to question number 16, please identify the percentage number of your work hours (*e.g.*, 100% of hours, 50% of hours, 10% of hours, *etc.*) for which Logan's took a tip credit against its minimum wage obligation to you.

ANSWER: For the server positions at the Elliston Place, Antioch, 100 Oaks, and Douglasville locations, Logans' took a tip credit 100% of the time. As a to-go person, Logan's took tip credit 100% of the time. For the host position, they took a tip credit 0% of the time because they paid me a minimum wage.

19. For each of the positions identified in response to question number 16, please state the applicable hourly cash wage that you received from Logan's after the application of any tip credit by Logan's.

ANSWER: I'm not sure.

20. Please explain your understanding of how your minimum wage rate was impacted by any tip credits taken by Logan's.

ANSWER: I got paid less money on my check the more money that I made tip-wise.

21. During the time that you were employed by Logan's, did you ever supervise anyone?

ANSWER: No.

22. If your answer to question number 21 is YES, identify all employees who you supervised, the time periods during which you supervised them, what supervisory duties you had with regard to each such employee, and the Logan's restaurant location where you worked when you supervised those employees.

ANSWER: Not applicable.

23. Did you ever spend an entire work shift doing nothing other than shadow another server or bartender?

7

ANSWER: No.

24. Did you ever clock another server or bartender in or out of Logan's time recording system? If so, please identify that employee by name.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

25. If your answer to question number 24 is YES, state the hourly rate of pay at which any employee who you identified was clocked in.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

26. Please identify every occasion on which you personally reviewed a paycheck that Logan's provided another server or bartender.

ANSWER: I haven't.

27. For each Logan's server or bartender whose paycheck you personally reviewed, identify by name the person whose pay check you reviewed, and state when you reviewed their paycheck, why you did so, and what, if anything, you recall about their paycheck.

ANSWER: I haven't.

8

28. Do you have personal knowledge of the amount of tips received by any other Logan's server or bartender with respect to any particular work shift?

ANSWER: No.

29. If your answer to question number 28 is YES, then identify by name all such Logan's servers and bartenders, and explain how you acquired personal knowledge of the tip amounts received by those individuals.

ANSWER: Not applicable.

30. Please identify every occasion on which you personally reviewed the total amount of cash tips declared for a shift by another server or bartender.

ANSWER: I never have.

31. Please identify every occasion on which you personally reviewed the total amount of credit card tips for a shift credited to another server or bartender by Logan's.

ANSWER: I have not.

32. During the time you worked for Logan's as a tipped server or bartender, please describe in detail all of the job duties that you performed.

ANSWER: As a server, I served customers, rolled silverware, changed lightbulbs, performing salad bar duties (cleaning the salad bar, restocking, distributing salad dressings in the back cooler, and breaking it down), performed drink machine duties (making sure ice is full, breaking down the drink machine, cleaning the tea urn out and putting it back together), cleaning out the bread oven, cutting lemons, sweeping up peanuts, washed dishes, did outside cleaning (like picking up trash in the parking lot, etc), made my food for my own customers or put their plates together in the kitchen's back line (while I was serving those customers) and cleaned windows.

9

33. During all of the shifts for which you were clocked-in at Logan's as a tipped server or bartender, did your duties include waiting on customers?

ANSWER: Yes.

34. If your answer to question number 33 is NO, identify all shifts during which you were clocked-in as a tipped server or bartender, but did not wait on any customers, and identify the job duties that you did perform during those shifts.

ANSWER: Not applicable.

35. Describe your understanding of what constitutes "side work."

ANSWER: Side work is making sure that the ice is full, the tea pitchers are full, the floor is swept, and the silverware is rolled.

36. Were you ever asked or instructed to perform side work while clocked-in at Logan's as a tipped employee?

ANSWER: Yes.

37. If your answer to question number 36 is YES, identify by name and position the person who told you to perform that side work, the position that you then held at Logan's, and the Logan's location where you were then working.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: While a server and to-go, every manager at every location has told me that including:

Hickory Hollow in Antioch, Tennessee:

10

Gen. Mgr. Michelle Santa Maria (approximately April 2009- June 2010)

Kitchen manager Paul (last name unknown) (approx. April 2009- June 2010)

Elliston Place, Nashville:

Gen. Mgr. Don Gay (approx. June 2011-December 2011)

Gen. Mgr. Chastian (last name unknown) (approx. June 2010-June 2011)

Manager Kevin Kline (last name unknown) (approx. June 2010-August 2010).

100 Oaks, Nashville:

Kitchen manager George (last name unknown) (approx. December 2011-April 2014)

Man. Ashley (approx. 2012-April 2014)

Arbor Place in Douglasville, Georgia:

Gen. Mgr. Cliff (last name unknown) (approx. July 2014-March 27, 2015).

Manager Cathy (last name unknown) (approx. April 2014-March 27, 2015).

Manager Patrice (last name unknown) (approx. April 2014-March 27, 2015).

Manager Kevin Kline (last name unknown) (approx. April 2014-March 27, 2015).

38. If your answer to question number 36 is YES, please describe in as great detail as you can recall today, what you were instructed to do by each individual who you have identified. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: At every location every manager told me and other employees to make sure that we sweep the peanuts up after every table leaves and make sure that all silverware was rolled before we could leave.

11

39. Describe in detail all side work tasks that you were instructed to perform at any time during your employment with Logan's. In so doing, please specify the particular side work tasks that you were requested to perform in connection with each position you held, and in connection with each Logan's restaurant at which you worked.

ANSWER: As a server at each Logan's restaurant that I worked, I served customers, rolled silverware, changed lightbulbs, performing salad bar duties (cleaning the salad bar, restocking, distributing salad dressings in the back cooler, and breaking it down), performed drink machine duties (making sure ice is full, breaking down the drink machine, cleaning the tea urn out and putting it back together), cleaning out the bread oven, cutting lemons, sweeping up peanuts, washed dishes, did outside cleaning (like picking up trash in the parking lot, etc), made my food for my own customers or put their plates together in the kitchen's back line (while I was serving those customers) and cleaned windows.

As a host, I had to make sure my menus were wiped down and had to do restroom checks and take out trash in the bathrooms.

As a to-go person, I had restock to-go boxes for my shift and for the next person who came in.

40. Did anyone other than your supervisors at the Logan's restaurant location(s) where you worked ever assign you side work or give you instructions regarding how much side work to perform?

ANSWER: Yes, the shift leaders told us what side work tasks to do.

41. As to each side work task identified in response to question number 39, during what percentage of your work shifts were you required to perform that particular task (*e.g.*, 100% of shifts, 50% of shifts, 10% of shifts, *etc.*)?

12

ANSWER: I performed each of the following tasks for 100% of my shifts: served customers, rolled silverware, performing salad bar duties (cleaning the salad bar, restocking, distributing salad dressings in the back cooler, and breaking it down), performed drink machine duties (making sure ice is full, breaking down the drink machine, cleaning the tea urn out and putting it back together), cleaning out the bread oven, cutting lemons, sweeping up peanuts, made my food for my own customers or put their plates together in the kitchen's back line (while I was serving those customers), made sure my menus were wiped down and had to do restroom checks and take out trash in the bathrooms, and restock to-go boxes for my shift and for the next person who came in. I performed each of the following tasks for the indicated percentage of my shifts: Washed dishes (10%), did outside cleaning (like picking up trash in the parking lot, etc) (5%), changed lightbulbs (10%), cleaning windows (15-20%).

42. As to each side work task identified in response to question number 39, how much time did it generally take you to complete that task?

ANSWER: I performed each of the following tasks for 100% of my shifts: rolled silverware (25-30 minutes/shift), performing salad bar duties (cleaning the salad bar, restocking, distributing salad dressings in the back cooler, and breaking it down) (20 minutes/shift), performed drink machine duties (making sure ice is full, breaking down the drink machine, cleaning the tea urn out and putting it back together) (10 minutes/shift), cleaning out the bread oven (15-20 minutes/shift), cutting lemons (5-7 minutes/shift), sweeping up peanuts (30-45 minutes/shift), made my food for my own customers or put their plates together in the kitchen's back line (while I was serving those customers) (7 minutes/shift), cleaned windows (10 minutes/shift), made sure my menus were wiped down (10 minutes/shift), had to do restroom checks and take out trash in

13

the bathrooms (10 minutes/shift), and restock to-go boxes for my shift and for the next person who came in (5 minutes/shift).

43. When you reported your hours worked for each shift at Logan's, did you ever indicate on your time records the amount of time you spent performing side work?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I did not.

44. At any time during your employment with Logan's, did you ever keep any records of the amount of time you spent performing side work?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No, I did not.

45. If your answer to question number 44 is YES, please describe in detail the records that you kept and attach copies of those records to your response.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

14

46. If your answer to question number 44 is NO, isn't it true that you can only speculate as to how much time you spent performing side work during any particular shift or workweek while you were employed by Logan's?

ANSWER: That's true. I can only speculate.

47. If your answer to question number 46 is NO, please explain in detail how you can determine how much time you actually spent performing side work during any particular shift or workweek while employed by Logan's without guessing or speculating.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: There is a routine of what you do and how long it takes. If I know that I've been released from the floor at say 9:20 so I can go home once my side work is done, and it takes until 10:30 or 11:00 to complete the side work that night, then I can tell that I've done side work for that amount of time.

48. Identify each shift and/or workweek for which you can identify exactly how much time you spent performing side work, and specify how much time you spent on side work during each such shift and/or workweek.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: As a server, for every four hours of work I spent at least

15

one hour on side work, but each shift is different. You could have more side work if a shift is busy.

49. Did the amount of time you were required to spend on side work vary significantly depending on the overall length of your work shift, or was the time required for side work more or less constant regardless of the overall length of the shift?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: The amount of time I had to spend on side work varied depending on the length of the shift.

50. If the time required to complete side work was more or less constant regardless of the overall length of your work shift, please specify the total amount of time in minutes that was generally required to complete your side work per shift.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: The time required to complete side work varied depending on the overall length of the shift.

51. During the time you were employed by Logan's, how did you keep a record of the tips you earned?

16

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I wrote them down on a separate sheet of paper while I was working.

52. During the time you were employed by Logan's, how did Logan's keep a record of the tips you earned?

ANSWER: Whenever you clocked out, you had to declare your tips. That's the only record.

53. Was there any difference in how you kept a record of your credit card tips and cash tips?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

54. Was there any difference in how Logan's kept a record of your credit card tips and cash tips?

ANSWER: They couldn't really keep the cash tips, but they had all the credit card receipts on file.

55. If your answer to either question numbers 52 or 53 is YES, please explain the difference in how your credit card tips and cash tips were recorded by you and/or Logan's?

ANSWER: The cash tips were straight to pocket, and credit card tips were turned into Logan's with our paperwork.

17

56. During the time you were employed by Logan's, did you ever falsely declare the amount of tips you received (either more or less than you actually received)?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: Sometimes I declared more.

57. If your answer to question number 56 is YES, identify each time you falsely declared the amount of your tips, and describe how and why you did so.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: I can't remember how many times, but I know that throughout your shift, there is a certain amount you are projected to make. So I would add at least $10.00 more dollars to my credit card receipts, that way I wasn't put on a list. There is a list that Logan's has and if you don't claim enough tips, you have to sign that you are claiming what you are supposed to. For example, if I made $73 in credit card tips and I claimed $63, then I would be put on that list. So to make sure I wasn't on the list I always claimed $10 over.

58. Was the amount of tips you declared to Logan's always the same amount you declared on your filed tax returns? If not, explain why.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification

18

stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:Yes.

59. Did anyone at Logan's ever require you to declare the amount of your tips falsely?
ANSWER: No.

60. If your answer to question number 59 is YES, please identify by name and position all Logan's employees who required you to declare the amount of your tips falsely.
ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

61. As to each Logan's employee identified in response to question number 60, identify each and every time that employee required you to declare the amount of your tips falsely, and describe in detail all communications that occurred regarding the requirement that you declare the amount of your tips falsely.
ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

62. Did you receive a copy of Logan's employee handbook when you were hired by Logan's? NO.

19

ANSWER:

63. Did you receive copies of other written policies and procedures from Logan's during your employment and, if so, please describe those policies and procedures. If you still have those policies and procedures, please attach copies to your response.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: While I was there, I received documents about claiming tips, but that's it. That document says you are going to claim 100% of your tips and talks about the list. I don't have those policies or procedures.

64. Did you attend employee orientation and/or training concerning Logan's employee handbook, and/or policies and procedures? If so, please identify the date, location and topics covered during the orientation and/or training.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:Just orientation when I started at the Antioch location around April 2009. I don't remember the topics covered.

65. Did you receive copies of Logan's policies and procedures, including the employee handbook, sometime after your initial hire by Logan's?

20

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:Not that I can remember except I received documents about claiming tips, but that's it. That document says you are going to claim 100% of your tips and talks about the list. I don't have those policies or procedures.

66. Do you recall signing the declaration attached hereto as Exhibit E in connection with this lawsuit?

ANSWER: Yes.

67. Did you ever receive any communications or training from Logan's on federal or state wage laws, and/or the application of a tip credit to your wages? If so, state when this occurred, and describe the communications and/or training.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No. While I was there, I received documents about claiming tips, but that's it. That document says you are going to claim 100% of your tips and talks about the list. I don't have those policies or procedures.

68. In your declaration, you state that "management required me to declare tips I never received so the company could avoid paying me supplemental pay to satisfy the $7.25 per hour minimum wage rate requirement." Is this statement true?

ANSWER: Not that I can remember.

69. If your answer to the preceding question is YES, identify by name and position every "management" employee who required you to declare your tips falsely.

ANSWER: Not applicable.

70. If you were required to declare tips falsely, identify every date on which you were required to do so.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I wasn't required to declare tips falsely.

71. Explain what you mean by "supplemental pay" in your declaration.

ANSWER: I don't know what that is.

72. When you state in your declaration that you were required to perform "side work" in excess of twenty percent (20%) of your work time, does that include any side work that you performed while you had seated customers for whom you were also responsible?

ANSWER: Yes.

73. Do you understand that the statements in your declaration, and your responses to these deposition questions, were and are made under oath, and are subject to the same laws prohibiting perjury that apply to statements made while testifying in court?

ANSWER: Yes.

22

74. You hand-wrote your work location, dates of employment, your signature and the date on your declaration. Was the rest of the declaration prepared by someone else? When you signed the declaration, did it look exactly like the attached copy?

ANSWER: Yes. Yes.

75. Before you signed your declaration, did you read the entire document? ANSWER: Before you signed the declaration, did anyone interview you about your personal experiences while working at Logan's?

ANSWER: Not the entire document.

76. Before you signed the declaration, did anyone interview you about your personal experiences while working at Logan's? ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection: No.

77. Before you signed the declaration, did anyone ask you whether the contents of the declaration were accurate?

ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection: No.

78. Please review your attached declaration. Are there any statements in the declaration that don't apply to your work experience at Logan's, or that aren't accurate?

ANSWER: Yes.

79. If your answer to question number 78 is YES, please identify every statement in your declaration that doesn't apply to you and/or isn't accurate, and explain in detail why that is so.

23

ANSWER: Yes, paragraph 10 about Logan's requiring me to declare tips over what I actually made is inaccurate. I was not required to falsely declare my tips. *Please see* Corrected Declaration (Ex. AA).

80. Did anyone ask you if the contents of your declaration needed to be changed before you signed it?

ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection: No.

81. In making the statements under oath contained in your declaration, how did you determine that while working for Logan's you "have been required to perform non-tip producing 'side work' in excess of twenty percent (20%) of [your] work time"?

ANSWER: I watched the time so I would know how much time that I spent on non-tip producing side-work tasks.

82. When you state under oath in your declaration that while employed by Logan's, you "have been required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee," and that you have observed other Logan's tipped employees doing the same, what exactly is the non-tip producing work to which you refer? Is that work different from the side work you described earlier?

ANSWER: As a server at each Logan's restaurant that I worked, I served customers, rolled silverware, changed lightbulbs, performing salad bar duties (cleaning the salad bar, restocking, distributing salad dressings in the back cooler, and breaking it down), performed drink machine duties (making sure ice is full, breaking down the drink machine, cleaning the tea urn out and putting it back together), cleaning out the bread oven, cutting lemons, sweeping up peanuts, washed dishes, did outside cleaning (like picking up trash in the parking lot, etc), made my food

24

for my own customers or put their plates together in the kitchen's back line (while I was serving those customers) and cleaned windows.

As a host, I had to make sure my menus were wiped down and had to do restroom checks and take out trash in the bathrooms.

As a to-go person, I had restock to-go boxes for my shift and for the next person who came in.

That work is not different from the side work I described earlier.

83. If the "non-tip producing work" referred to in your declaration is different from the side work you described earlier, please describe the specific tasks included in that "non-tip producing work" in detail.

ANSWER:   The side work and non-tipped producing work is the same.

84. With regard to each type of "non-tip producing work," other than side work, identified in response to the preceding question, please identify the percentage of your work shifts (e.g., 100% of shifts, 50% of shifts, 10% of shifts, etc.) during which you performed such work, and how much time you spent during each shift, and collectively during each workweek, performing such work.

ANSWER:   The side work and non-tipped producing work is the same.

85. What is the basis for your belief, as stated under oath in your declaration, that you "believe it is a practice of Logan's to require all its tipped employees to perform non-tip producing 'side work' in excess of twenty percent (20%) of their time while clocked-in to the company's payroll system as a tipped employee"?

25

ANSWER: I believed that because that's what Logan's told us we had to do.

86. Do you have personal knowledge concerning the amount and/or type of side work performed at any Logan's restaurant location other than the locations at which you have worked?

ANSWER: No.

87. During your employment with Logan's, were you ever required to attend training? If so, please describe in detail the location and subject matter of the training, identify the name(s) and position(s) of the trainer(s), and describe in detail the subject matter and time duration of the training.

ANSWER: Just orientation when I started at the Antioch location around April 2009. I don't remember the topics covered or the trainers name.

88. Other than those employees who attended the same training sessions as you, do you have any personal knowledge regarding whether any other employees of Logan's attended training, or how much time they spent in such training?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:No.

89. During your employment with Logan's, were you ever required to provide training for anyone? ANSWER: Yes.

26

90. If your answer to question number 89 is YES, identify all occasions on which you trained another employee, the name of each such employee you trained, and how long you spent training that employee.

91. If your answer to question number 89 is YES, describe in detail the nature of the training you provided and how that training was done. For example, did the training consist of allowing another employee to shadow you while you waited on customers and performed other server or bartender job duties? ANSWER: At the Elliston Place and Douglasville location, I trained several people at each location, but I can't remember their names. I spent my entire shift training those people. So if I was there on a four hour shift, I spent four hours training that employee. The people shadowed me and I instructed them for the entire shift.

92. Have you ever been arrested?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

93. If your answer to question number 92 is YES, identify the date of the arrest, the offense for which you were arrested, and the outcome of any charges?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject

27

to and without waiving this objection, Plaintiff answers as follows: I can't remember the year but it was for an unpaid traffic ticket. My license got suspended, and I was unaware of that. I didn't have to go to court. I just had to pay a fine, and I was let out of jail without having to pay anything.

94. Have you ever been convicted of a crime?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:No.

95. If your answer to question number 94 is YES, identify the date of the conviction, the crime for which you were convicted, and the sentence that you were given as a result of the conviction.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

96. Have you ever been involved in a lawsuit prior to this one?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full

28

discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: NO.

97. If your answer to question number 96 is YES, identify the other parties involved in the lawsuit, your role in the lawsuit (plaintiff, defendant, or witness), and the outcome of the lawsuit.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:Not applicable.

98. Do you know either of the named Plaintiffs in this lawsuit, Carey Bradford or Cody Bolen, personally?

ANSWER: Yes. Just from work.

99. If your answer to question number 98 is YES, explain how you know Carey Bradford or Cody Bolen, including how you came to know them and what communications you have had with them in the past year.

ANSWER: I know them from work. I have not seen them since I left in April 2014.

100. How did you find out about this lawsuit?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject

29

to and without waiving this objection, Plaintiff answers as follows:I was sent an anonymous message on Facebook.

101.     Are you familiar with the website www.logansofftheclock.com?

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

102.     If your answer to question number 101 is YES, how did you become familiar with that website?

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows:Through Facebook.

103.     Prior to joining this lawsuit, did you personally know any of the lawyers or employees at the law firm that is representing you?

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: No.

30

104.    If your answer to question number 103 is YES, identify by name which lawyers
or employees you knew, and describe how you came to know them.

ANSWER:   Plaintiff objects to answering this question, which is outside the scope of the
discovery permitted since the Court limited initial discovery at this pre-conditional certification
stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits
of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving this
objection, Plaintiff answers as follows: Not applicable.

105.    How many communications have you had with the attorneys representing you in
this case, and when did those communications occur?

ANSWER:   Plaintiff objects to this questions to the extent that the attorney-client and/or work
product privilege applies. Subject to and without waiving this objection, Plaintiff answers as
follows: Three telephone calls – today, yesterday, and Thursday or Friday of last week- and a
few emails to schedule a telephone meeting to answer these questions. Also I had written
communication with them in March 2015 about signing my paperwork for this lawsuit.

106. Have you had any communications with any current or former Logan's employees about the
claims in this lawsuit? ANSWER: Plaintiff objects to answering this question, which is outside
the scope of the discovery permitted since the Court limited initial discovery at this
pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead
of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)
Subject to and without waiving this objection, Plaintiff answers as follows: No.

107. If your answer to question number 106 is YES, identify by name each current or former
Logan's employee with whom you have had any communications about the claims in this
lawsuit, identify when those conversations occurred, and describe in as great detail as you can

31

the content of those conversations. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

108. Have you had any communications with anyone other than your lawyers about the claims in this lawsuit? ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

109. If your answer to question number 108 is YES, identify by name each person with whom you have had any communications about the claims in this lawsuit, identify when those conversations occurred, and describe in as great detail as you can the content of those conversations. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

110. Please identify every individual named on the Opt-in List (attached as Exhibit L) with whom you have ever shared a work shift while employed at Logan's. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since

32

the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Shane Sumner (maybe – I'm not sure if that is the same Shane because I can't remember his last name for sure), Carey Bradford, Cody Bolen, Marquis Brown, Michael Marcell Brown, Ellen Dent, Ashley Fulcher, Jordan Lee Goggin, Marcie Lynn Hunter.

111. Please identify every individual named on the Opt-in List attached hereto with whom you have ever attended a training session while employed at Logan's. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: None.

112. Please identify every individual named on the Opt-in List attached hereto with whom you have ever communicated regarding your work and/or compensation at Logan's including the application of tip credits by Logan's, any side work required by Logan's and any instructions by managers at Logan's that employees declare their tips falsely. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: None.

33

Case 3:14-cv-02184 Document 93-1 Filed 07/06/15 Page 34 of 48 PageID #: 808

113. Please identify every individual named on the Opt-in List attached hereto whom you have never met and with whom you have never communicated. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: All, except for myself and the following: Shane Sumner (maybe – I'm not sure if that is the same Shane because I can't remember his last name for sure), Carey Bradford, Cody Bolen, Marquis Brown, Michael Marcell Brown, Ellen Dent, Ashley Fulcher, Jordan Lee Goggin, Marcie Lynn Hunter.

34

State of Georgia )

County of Fulton )

I, John Duncan, having been duly sworn, make oath that the answers stated in the foregoing Answers to Questions Propounded to John Duncan are true to the best of my knowledge, information, and belief.

_John Duncan_
John Duncan

I, Krysta Rembus, a Notary Public in and for said State and County, hereby certify that John Duncan, whose name is signed to the foregoing document, and who is known to me, acknowledged before me on this date that being informed of the contents of said document and being authorized to do so, he executed the same voluntarily on the date the same bears date.

Given under my hand and seal on this the _9_ day of June, 2015.

{SEAL}

NOTARY
PUBLIC
MY COMMISSION
EXPIRES
DEC. 3, 2017
CLAYTON COUNTY, GA

_Krysta Ram_
Notary Public

My Commission Expires: _Dec 3 2017_

DATED: June 10, 2015

As to objections,

Gordon E. Jackson (TN Bar No. 08323)
James L. Holt, Jr. (TN Bar No. 12123)
JACKSON, SHIELDS, YEISER & HOLT
Attorneys at Law
262 German Oak Drive
Memphis, TN 38018
(901) 754-8001 (Phone)
(901) 754-8524 (Facsimile)
*gjackson@jsyc.com*
*jholt@jsyc.com*

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I, Gordon E. Jackson, certify that I caused a copy of the foregoing **John Duncan's Answers to Written Questions** to be served on Defendants' counsel on June 10, 2015 by First Class Mail and email at the following addresses:

Andrew S. Naylor
K. Coe Heard
Britney R. Stancombe
Waller, Lansden, Dortch & Davis
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN 37219
Email: andy.naylor@wallerlaw.com
Email: coe.heard@wallerlaw.com
Email: brittany.stancombe@wallerlaw.com

Thomas E. Hill
Christina T. Tellado
Reed Smith LLP
355 S Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Email: thill@reedsmith.com
Email: ctellado@reedsmith.com
Email: pstuhldreher@reedsmith.com

Michael D. Jones
Reed Smith LLP
3 Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103-2762
Email: mdjones@reedsmith.com

Peter J. Stuhldreher
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX 77002-6110
Email: pstuhldreher@reedsmith.com

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CAREY BRADFORD and CODY BOLEN,<br>Individually and on behalf of others<br>similarly situated.<br><br>        Plaintiffs,<br><br>v.<br><br>LOGAN'S ROADHOUSE, INC.,<br>a Tennessee Corporation,<br>LRI HOLDINGS, INC.,<br>a Delaware Corporation,<br>ROADHOUSE HOLDING, INC.,<br>a Delaware Corporation,<br><br>        Defendants. | No. 3:14-cv-2184<br><br>FLSA Opt-In Collective Action<br><br>JURY TRIAL DEMANDED |

## DECLARATION OF JOHN DUNCAN

I, John Duncan, hereby submit this declaration and state as follows:

1. I worked for Logan's Roadhouse, Inc. ("Logan's") as a tipped-employee at its restaurant

located in Nashville, TN / Douglasville, GA during 4-10 to 3-14 / 4-14 to Present

2. As a tipped employee at Logan's, I received a reduced hourly rate of pay less than the

minimum wage rate of $7.25 per hour..

3. As a tipped employee, my principal job duties were to wait on and serve customers.

4. I have observed that the work I performed for Logan's as a tipped employee was

essentially the same work that other Logan's tipped employees were required to perform with

regard to both tipped and non-tip producing job duties.

5.    While employed by Logan's during the time period noted above, I have been required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee, and received less than the minimum wage rate of $7.25 an hour for such work. I likewise have observed other Logan's tipped employees being required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee, while receiving less than the minimum wage rate of $7.25 rate an hour for such work--during such time period

6.    In addition, while employed by Logan's during the time noted above and clocked-in to the company's payroll system as a tipped employee, I have been required to perform non-tip producing "side work" in excess of twenty percent (20%) of my work time (such as rolling silverware, refilling sugar caddies, salt and pepper shakers, ice, condiments, cleaning chairs, tables, booths, restaurant artifacts and décor, lights, blinds, windows, as well as closing out customers checks and performing pre-closing cleaning tasks, vacuuming and/or sweeping the server's assigned area and checking dishes, napkins, and utensils, etc.), while receiving less than the minimum wage rate of $7.25 an hour for such "side work" time.

7.    I likewise have observed other Logan's tipped employees receiving less than the minimum wage rate of $7.25 an hour for such non-tip producing "side work".

8.    I believe it is a practice of Logan's to require all its tipped employees to perform non-tip producing "side work" in excess of twenty percent (20%) of the their time while clocked-in to the company's payroll system as a tipped employee, without being paid at least the minimum wage rate of $7.25 for such "side work" time.

9.    While employed by Logan's as a tipped employee during the period noted above, I have been required to attend company mandatory training without receiving at least the minimum

wage rate of $7.25 for such training time. I also have observed other Logan's tipped employees during such time period being required to attend company mandatory training without being paid at least the minimum wage rate of at least $7.25 per hour for such training time.

10.    Also, while employed at Logan's as a tipped employee, management required me to declare tips I never received so the company could avoid paying me supplemental pay to satisfy the $7.25 per hour minimum wage rate requirement.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing declarations are true and correct. Executed on this __18th__ day of __march__ , 2015.

John Duncan

_____ , Declarant

# EXHIBIT F

**EXHIBIT F:** *Bradford et al v. Logan's* - List of **Plaintiffs**

| | First Name | Last Name |
|---|---|---|
| 1 | Arielle Ann | Aldrich |
| 2 | Samantha Lee | Arnold |
| 3 | William Corey | Barry |
| 4 | Angel | Bartelt |
| 5 | Justin | Beavers |
| 6 | LaTonia | Bennett |
| 7 | Shane Sumner | Bodden |
| 8 | Raphael | Boldrick |
| 9 | Cody | Bolen |
| 10 | Carey | Bradford |
| 11 | Tyler | Bransom |
| 12 | Kimberly | Brewer |
| 13 | Jonathan Patrick | Brown |
| 14 | Marquis | Brown |
| 15 | Michael Marcell | Brown |
| 16 | Christopher | Bryant |
| 17 | Laurel Michelle | Bryant |
| 18 | Karri | Busard |
| 19 | Aaron | Byrd |
| 20 | Tarmeca Maria | Campbell |
| 21 | Savannah | Carrick |
| 22 | Jessica | Clark-Clardy |
| 23 | Jaclyn | Cooper |
| 24 | Anna Madison | Copeland |
| 25 | James Robert | Corley Jr. |
| 26 | Roderick | Davis Jr. |
| 27 | Jacob Lee | Demoss |
| 28 | Ellen | Dent |
| 29 | Amy Nicole | Derrington Norton |
| 30 | Hayden | Dollar |
| 31 | John | Duncan |
| 32 | Ashley | Elgin |
| 33 | Amy Jo | Ford |
| 34 | Nicole | Foster |
| 35 | Gabrielle | Frey |
| 36 | Ashley | Fulcher |
| 37 | Dustin Dewayne | Gilbert |

| | First Name | Last Name |
|---|---|---|
| 38 | Jordan Lee | Goggin |
| 39 | Tia Jannelle | Haddox |
| 40 | Thomas | Hartung |
| 41 | Nicholas Stephen | Holman |
| 42 | Brandy | Holt-Anna |
| 43 | Clifford | Hughes |
| 44 | Marcie Lynn | Hunter |
| 45 | Wendy | Hymer |
| 46 | Syreeta | Jackson |
| 47 | Jeffrey | Jernigan |
| 48 | Lillian | Kelter |
| 49 | Ashley Nicole | Kennedy |
| 50 | Kristyn | King |
| 51 | Linda Sue | Kurtz |
| 52 | Chadwick Anson | Layne |
| 53 | Shayne | Lenfestey |
| 54 | Angelina Marie | Lewis |
| 55 | Bobbie | Longmire |
| 56 | Kimberly Nichole | Lynn |
| 57 | Austin Gunnar | Maher |
| 58 | Jeanan | Mayfield |
| 59 | Darreo | McCall |
| 60 | Jessica | McClellan |
| 61 | Jason | McGee |
| 62 | Joel | Merchant |
| 63 | Cassie | Miller |
| 64 | Jeremy | Mitchell |
| 65 | William | Moody |
| 66 | Jordan Scott | Moore |
| 67 | Tracy Denise | Nicholas |
| 68 | Heather | Oakley |
| 69 | Larita Joy | O'Brien |
| 70 | Yolanda | Osborne Youngblood |
| 71 | David | Parish |
| 72 | Corinne | Pennington |
| 73 | Kelly | Pilet |
| 74 | Justin Blaine | Potts |
| 75 | Cori Amber | Rascati |
| 76 | Jessica Lynn | Ratliff |
| 77 | Jennifer | Reece |

Case 3:14-cv-02184   Document 93-1   Filed 07/06/15   Page 44 of 48 PageID #: 818

| | First Name | Last Name |
|---|---|---|
| 78 | Robyn Elizabeth | Reeves |
| 79 | Latanya Dialishiah | Rodgers |
| 80 | James | Roten |
| 81 | Stacey | Russell |
| 82 | Keita | Shearin |
| 83 | Suzanne Angela | Sherrill |
| 84 | Amanda | Siroki |
| 85 | Destiny | Stafford |
| 86 | Shawn Michael | Straughn |
| 87 | Tristan James | Warsham |
| 88 | Anthony | Wiggins |
| 89 | Zachery Scott | Wimpelberg |
| 90 | Shelly | Wood |
| 91 | Markala | Wretling |

| | |
|---|---|
| CAREY BRADFORD and CODY BOLEN, Individually and on behalf of others similarly situated. ) ) ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:14-cv-2184 |
| ) | |
| LOGAN'S ROADHOUSE, INC., ) a Tennessee Corporation, ) LRI HOLDINGS, INC., ) a Delaware Corporation, ) ROADHOUSE HOLDING, INC., ) a Delaware Corporation, ) | FLSA Opt-In Collective Action |
| | |
| | JURY TRIAL DEMANDED |
| ) | |
| Defendants. ) | |
| ) | |

## AMENDED DECLARATION OF JOHN DUNCAN

I, John Duncan, hereby submit this declaration and state as follows:

1.     I worked for Logan's Roadhouse, Inc. ("Logan's") as a tipped-employee at its restaurant located in Nashville, TN/Douglasville, GA during 4-10 to 3-14/4-14 to March 27, 2015.

2.     As a tipped employee at Logan's, I received a reduced hourly rate of pay less than the minimum wage rate of $7.25 per hour.

3.     As a tipped employee, my principal job duties were to wait on and serve customers.

4.     I have observed that the work I performed for Logan's as a tipped employee was essentially the same work that other Logan's tipped employees were required to perform with regard to both tipped and non-tip producing job duties.

5.     While employed by Logan's during the time period noted above, I have been required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped

1

EXHIBIT

AA

employee, and received less than the minimum wage rate of $7.25 an hour for such work. I likewise have observed other Logan's tipped employees being required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee, while receiving less than the minimum wage rate of $7.25 rate an hour for such work--during such time period.

6.      In addition, while employed by Logan's during the time noted above and clocked-in to the company's payroll system as a tipped employee, I have been required to perform non-tip producing "side work" in excess of twenty percent (20%) of my work time (such as rolling silverware, refilling sugar caddies, salt and pepper shakers, ice, condiments, cleaning chairs, tables, booths, restaurant artifacts and décor, lights, blinds, windows, as well as closing out customers checks and performing pre-closing cleaning tasks, vacuuming and/or sweeping the server's assigned area and checking dishes, napkins, and utensils, etc.), while receiving less than the minimum wage rate of $7.25 an hour for such "side work" time.

7.      I likewise have observed other Logan's tipped employees receiving less than the minimum wage rate of $7.25 an hour for such non-tip producing "side work".

8.      I believe it is a practice of Logan's to require all its tipped employees to perform non-tip producing "side work" in excess of twenty percent (20%) of the their time while clocked-in to the company's payroll system as a tipped employee, without being paid at least the minimum wage rate of $7.25 for such "side work" time.

9.      While employed by Logan's as a tipped employee during the period noted above, I have been required to attend company mandatory training without receiving at least the minimum wage rate of $7.25 for such training time. I also have observed other Logan's tipped employees

2

during such time period being required to attend company mandatory training without being paid at least the minimum wage rate of at least $7.25 per hour for such training time.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing declarations are true and correct. Executed on this __9ᵀʰ__ day of June, 2015.

_____, Declarant
John Duncan

3