# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

**CAREY BRADFORD and CODY BOLEN,**
**Individually and on behalf of all other**
**similarly situated current and former**
**employees,**

**Plaintiffs,**

**v.**

**LOGAN'S ROADHOUSE, INC.,**
**a Tennessee Corporation,**
**LRI HOLDINGS, INC.,**
**a Delaware Corporation,**
**ROADHOUSE HOLDING, INC.,**
**a Delaware Corporation,**

**Defendants**

**NO. 3:14-cv-02184**

**Judge Trauger**

**FLSA Opt-In Collective Action**

**JURY TRIAL DEMANDED**

### ANSWERS TO QUESTIONS PROPOUNDED TO ASHLEY ELGIN

1.  Please state your full name, current address, current telephone number, and social security number.

ANSWER:    Ashley  Marie  Elgin,  ███████████████████████████████
███████████

2.  Please describe everything you did to prepare for your deposition, including whether you had any conversations with your attorneys, when those conversations occurred, and how long those conversations lasted.

ANSWER:    Plaintiff objects to the extent that the attorney-client privilege applies to this question.   Subject to and without waiving such objection: My attorneys talked to me on Thursday, May 30, 2015, my email and phone to schedule this appointment to fill in our questions.

1

3. If you reviewed any documents to prepare for your deposition, please identify each of the documents you reviewed and attach copies to your response.

ANSWER: Not applicable.

4. Please identify each Logan's restaurant at which you have worked, including the restaurant's address and restaurant number, if you know it?

ANSWER: The Logan's I worked at is in Sanford, Florida, which is located at 4649 West First Street, Sanford, FL 32771. I think the restaurant number is 349.

5. Please identify the time periods during which you worked at each Logan's restaurant that you identified in response to question number 4.

ANSWER: I started June 2009 and I think I worked there through August or September 2014.

6. Please identify by name and position each supervisor to whom you directly reported at any time during your employment with Logan's, and the periods of time during which you reported to each such supervisor.

ANSWER:

(1) General Manager: John Bremmer, June 2009-approximately April or May 2014
Bill ~~R~~

(2) General Manager: ~~Phil~~ (can't remember last name), approx.. April/May 2014-August/September 2014

(3) Front-of-House Manager: Wendy (last name unknown), approx. June 2009-about June 2010

(4) Manager Jeff (last name unknown), approximately June 2009 to December 2009 (I can't remember his exact position but he hired me)

(5) Assistant Manager George (last name unknown), can't remember dates
Derek ~~R~~

(6) Assistant Manager ~~Derrick~~ Rubino (or similar last name), approximately April 2011-April 2012

2

(7) Kitchen Manager Shannon (last name unknown), approx. January 2013-February 2014.

(8) Asst. Manager, Paul (last name unknown), approx.. January 2011- January 2012

(9) Kitchen Manager Jerrod Stanley, approx.. early 2012-late 2014 ~~Jarec~~

(10) Sean (last name unknown), Manager-in-Training (3 months around 2012) and then came back as an Assistant Manager (approximately late 2013)

7. Please identify by name and position with Logan's each supervisor to whom you reported indirectly, or who otherwise had any authority over you, at any time during your employment with Logan's, including, but not limited to, the General Manager(s) of the restaurant(s) at which you worked, and the periods of time during which you reported to each such manager.

ANSWER:

(1) General Manager: John Bremmer, June 2009-approximately April or May 2014

(2) General Manager: Phil (can't remember last name), approx.. April/May 2014-August/September 2014

(3) Front-of-House Manager: Wendy (last name unknown), approx. June 2009-about June 2010

(4) Manager Jeff (last name unknown), approximately June 2009 to December 2009 (I can't remember his exact position but he hired me)

(5) Assistant Manager George (last name unknown), can't remember dates

(6) Assistant Manager Derrick Rubino (or similar last name), approximately April 2011-April 2012

(7) Kitchen Manager Shannon (last name unknown), approx. January 2013-February 2014.

(8) Asst. Manager, Paul (last name unknown), approx.. January 2011- January 2012

(9) Kitchen Manager Jerrod Stanley, approx.. early 2012-late 2014 ~~Jared~~

(10) Sean (last name unknown), Manager-in-Training (3 months around 2012) and then came back as an Assistant Manager (approximately late 2013)

8. At any time during your employment with Logan's, did you ever have any communications regarding your work and/or pay with any Logan's employee who worked at a location other than the Logan's restaurant where you worked?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

9. If your answer to question number 8 is YES, then identify all such employees with whom you had any such communications, and describe in as great detail as you can the substance of those communications.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

10. At any time during your employment with Logan's did you ever have any communications regarding your work and/or pay with any Logan's employee who worked at Logan's' corporate headquarters?

ANSWER: No.

4

11. If your answer to question number 10 is YES, then identify all such employees with whom you had any such communications, and describe in as great detail as you can the substance of those communications.

ANSWER: Not applicable.

12. What is Logan's' defined workweek (for purposes of the Fair Labor Standards Act), if you know it?

ANSWER: I believe that Logan's workweek began on Thursday and ended the following Wednesday.

13. Did any of your supervisors at Logan's ever shadow you to observe your work performance throughout an entire work shift? Throughout an entire workweek? If so, identify by name and position the supervisor(s) who did so and when this occurred.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No. No.

14. Did you ever measure and/or record the amount of time that you spent performing particular tasks during an entire work shift and/or an entire workweek while employed at Logan's?

ANSWER: Yes.

15. If the answer to the preceding question was "yes," then explain fully how you measured and/or recorded the time you spent on each task, and describe the results of those measurements and/or recordations on each such occasion.

5

ANSWER:     I remember that for each time we closed it took about 45 minutes to roll silverware, sweeping peanuts took about 20 minutes, and back-up house stocking and cleaning took about 20 minutes. I measured this because I would text my boyfriend that we were closing and had to roll silverware, clean, and sweep peanuts first. It was about eighty-five minutes before I walked out the door.

16. What was your job title during your employment with Logan's? If you had different job titles at different times, please identify each job title you held, the periods of time during which you held each such job title, and the Logan's restaurant location where you were working when you held that job title.

ANSWER:     Sanford, FL.

Hostess – June 2009-April 2011

Server – April 2011-Aug./Sept. 2014.

17. For each of the positions identified in response to question number 16, please state whether you regularly received tips of $30 or more per month in connection with your work in that position. ANSWER:

Hostess – Yes

Server –   Yes.

18. For each of the positions identified in response to question number 16, please identify the percentage number of your work hours (*e.g.*, 100% of hours, 50% of hours, 10% of hours, *etc.*) for which Logan's took a tip credit against its minimum wage obligation to you.

ANSWER:

Hostess – 0%

Server – **100%**

6

19. For each of the positions identified in response to question number 16, please state the applicable hourly cash wage that you received from Logan's after the application of any tip credit by Logan's.

ANSWER:

Hostess – no tip credit.

Server – Logan's never gave me cash. I only received cash from my tips from customers.

20. Please explain your understanding of how your minimum wage rate was impacted by any tip credits taken by Logan's. ANSWER: If I would have been clocked out of server minimum and clocked back in under regular minimum because I was not waiting tables but performing non-tipped work, my paycheck would have been more as far as taxes I think. I would have made more at the end of the year.

21. During the time that you were employed by Logan's, did you ever supervise anyone?

ANSWER: No.

22. If your answer to question number 21 is YES, identify all employees who you supervised, the time periods during which you supervised them, what supervisory duties you had with regard to each such employee, and the Logan's restaurant location where you worked when you supervised those employees.

ANSWER: Not applicable.

23. Did you ever spend an entire work shift doing nothing other than shadow another server or bartender?

ANSWER: No.

24. Did you ever clock another server or bartender in or out of Logan's time recording system? If so, please identify that employee by name.

7

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes. When I was a hostess, but I can't remember that employee's name.

25. If your answer to question number 24 is YES, state the hourly rate of pay at which any employee who you identified was clocked in.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I don't know, but it was probably the same as mine.

26. Please identify every occasion on which you personally reviewed a paycheck that Logan's provided another server or bartender.

ANSWER: None.

27. For each Logan's server or bartender whose paycheck you personally reviewed, identify by name the person whose pay check you reviewed, and state when you reviewed their paycheck, why you did so, and what, if anything, you recall about their paycheck.

ANSWER: Not applicable.

28. Do you have personal knowledge of the amount of tips received by any other Logan's server or bartender with respect to any particular work shift?

ANSWER: Yes.

8

29. If your answer to question number 28 is YES, then identify by name all such Logan's servers and bartenders, and explain how you acquired personal knowledge of the tip amounts received by those individuals.

ANSWER: The people listed below and I compared what we made on a particular shift all the time: Karen Hollaran, Elizabeth (last name unknown), Vinny Zambuto, Dana (last name unknown), Maileni Arias, and Lisa Guttman.

30. Please identify every occasion on which you personally reviewed the total amount of cash tips declared for a shift by another server or bartender.

ANSWER: None. I just believed what my co-workers told me.

31. Please identify every occasion on which you personally reviewed the total amount of credit card tips for a shift credited to another server or bartender by Logan's.

ANSWER: None.

32. During the time you worked for Logan's as a tipped server or bartender, please describe in detail all of the job duties that you performed.

ANSWER: As a server, I took orders from customers and entered them into the computer, delivered food to tables for both my tables and other servers' customers, got alcoholic beverages from the bar and delivered to both mine and other's customers, bussed tables, stocked (peanuts, ice, sugar packets, condiments (salt, pepper, and stuff), swept up peanuts, cut lemons, cleaned out tea urns, reset tables (with silver ware etc), hostessed sometimes when busy and seated people, made sugar bags (pre-measured sugar for sweet tea), put cups and dishes up, polished silverware and wrapped the tabs around them and put them in bins, cleaned out the bread-warmer, brought uncooked dough to the back cooler, performed salad bar duties (like filling salad dressing caps, pans

9

refilling croutons, salad dressing cups, and stacking salad plates), and wiped everything down on the salad bar and in the back).

33. During all of the shifts for which you were clocked-in at Logan's as a tipped server or bartender, did your duties include waiting on customers?

ANSWER: Yes.

34. If your answer to question number 33 is NO, identify all shifts during which you were clocked-in as a tipped server or bartender, but did not wait on any customers, and identify the job duties that you did perform during those shifts.

ANSWER: Not applicable.

35. Describe your understanding of what constitutes "side work."

ANSWER: Anything other than serving tables.

36. Were you ever asked or instructed to perform side work while clocked-in at Logan's as a tipped employee?

ANSWER: Yes, every day. We were never clocked out at server minimum and clocked back in at regular minimum wage.

37. If your answer to question number 36 is YES, identify by name and position the person who told you to perform that side work, the position that you then held at Logan's, and the Logan's location where you were then working.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this

10

objection, Plaintiff answers as follows: The person who trained me while I was a server at the Sanford, FL location, but I cannot remember that person's name.

38. If your answer to question number 36 is YES, please describe in as great detail as you can recall today, what you were instructed to do by each individual who you have identified.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: The person who trained me instructed me to do the following sidework during each shift: I took orders from customers and entered them into the computer, delivered food to tables for both my tables and other servers' customers, got alcoholic beverages from the bar and delivered to both mine and other's customers, bussed tables, stocked (peanuts, ice, sugar packets, condiments (salt, pepper, and stuff), swept up peanuts, cut lemons, cleaned out tea urns, reset tables (with silver ware etc), hostessed sometimes when busy and seated *by seating etc* people, made sugar bags (pre-measured sugar for sweet tea), put cups and dishes up, polished silverware and wrapped the tabs around them and put them in bins, cleaned out the bread-warmer, brought uncooked dough to the back cooler, performed salad bar duties (like filling salad dressing *most etc* cans, refilling croutons, salad dressing cups, and stacking salad plates), and wiped everything down on the salad bar and in the back).

39. Describe in detail all side work tasks that you were instructed to perform at any time during your employment with Logan's. In so doing, please specify the particular side work tasks that you were requested to perform in connection with each position you held, and in connection with each Logan's restaurant at which you worked.

11

ANSWER: As a server at the Sanford location, I took orders from customers and entered them into the computer, delivered food to tables for both my tables and other servers' customers, got alcoholic beverages from the bar and delivered to both mine and other's customers, bussed tables, stocked (peanuts, ice, sugar packets, condiments (salt, pepper, and stuff), swept up peanuts, cut lemons, cleaned out tea urns, reset tables (with silver ware etc), hostessed sometimes when busy and seated people, made sugar bags (pre-measured sugar for sweet tea), put cups and dishes up, polished silverware and wrapped the tabs around them and put them in bins, cleaned out the bread-warmer, brought uncooked dough to the back cooler, performed salad bar duties (like filling salad dressing cans, refilling croutons, salad dressing cups, and stacking salad plates), and wiped everything down on the salad bar and in the back).

As a hostess at the Sanford location, I cleaned the bathrooms, refilled the barrels of peanuts, collect and wipe menus, put together the kids silverware with crayons etc, wiped windows and doors, and spot sweep.

40. Did anyone other than your supervisors at the Logan's restaurant location(s) where you worked ever assign you side work or give you instructions regarding how much side work to perform? ANSWER: Yes, the closing server would always instruct us which specific tasks we should do (for example, the salad bar). Also, my trainer instructed me how much side work to perform.

41. As to each side work task identified in response to question number 39, during what percentage of your work shifts were you required to perform that particular task (*e.g.*, 100% of shifts, 50% of shifts, 10% of shifts, *etc.*)?

ANSWER:

12

As a server: Bussed tables (100%), back-of-house cleaned and stocked (peanuts, ice, sugar packets, condiments (salt, pepper, and stuff) (100%), swept up peanuts (100%), beverage station (e.g., cut lemons, cleaned out tea urns, made sugar bags (pre-measured sugar for sweet tea))(33%), reset tables (with silver ware etc)(100%), hostessed sometimes when busy and seated people (50%), stocking cups and dishes up (100%), polished silverware and wrapped the tabs around them and put them in bins (100%), bread station (cleaned out the bread-warmer and brought uncooked dough to the back cooler) (33%), performed salad bar duties (like filling salad dressing cans, refilling croutons, salad dressing cups, and stacking salad plates)(33%).

As a hostess at the Sanford location, I cleaned the bathrooms (50%), refilled the barrels of peanuts (75%), collect and wipe menus (100%), put together the kids silverware with crayons etc (75%), wiped windows and doors (100%), and spot sweep (100%).

42. As to each side work task identified in response to question number 39, how much time did it generally take you to complete that task?

ANSWER: As a server: Bussed tables (30 minutes/shift), back-of-house cleaned and stocked (stocking cups/dishes, peanuts, ice, sugar packets, condiments (salt, pepper, and stuff) (20-25 minutes/shift), swept up peanuts (20 minutes/shift), beverage station (e.g., cut lemons, cleaned out tea urns, made sugar bags (pre-measured sugar for sweet tea))(25 minutes), reset tables (with silver ware etc)(7 minutes/shift), hostessed sometimes when busy and seated people (5 minutes/shift), polished silverware and wrapped the tabs around them and put them in bins (45 minutes/shift), bread station (cleaned out the bread-warmer and brought uncooked dough to the back cooler) (15 minutes), performed salad bar duties (like filling salad dressing cans, refilling croutons, salad dressing cups, and stacking salad plates)(30 minutes/shift).

13

As a hostess at the Sanford location, I cleaned the bathrooms (15 minutes/shift), refilled the barrels of peanuts (2 minutes/shift), collect and wipe menus (10 minutes/shift), put together the kids silverware with crayons etc (15 minutes/shift), wiped windows and doors (30 minutes minutes/shift), and spot sweep (1 hour/shift).

43. When you reported your hours worked for each shift at Logan's, did you ever indicate on your time records the amount of time you spent performing side work?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

44. At any time during your employment with Logan's, did you ever keep any records of the amount of time you spent performing side work? No.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

45. If your answer to question number 44 is YES, please describe in detail the records that you kept and attach copies of those records to your response.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits

14

of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

46. If your answer to question number 44 is NO, isn't it true that you can only speculate as to how much time you spent performing side work during any particular shift or workweek while you were employed by Logan's?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

47. If your answer to question number 46 is NO, please explain in detail how you can determine how much time you actually spent performing side work during any particular shift or workweek while employed by Logan's without guessing or speculating.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I remember that for each time we closed it took about 45 minutes to roll silverware, sweeping peanuts took about 20 minutes, and back-up house stocking [handwritten: back-of-house] and cleaning took about 20 minutes. I measured this because I would text my boyfriend that we were closing and had to roll silverware, clean, and sweep peanuts first. It was about eighty-five minutes before I walked out the door. I spent the same amount of time performing each task every week, and I know that I spent over an hour each day minimum on sidework.

15

48. Identify each shift and/or workweek for which you can identify exactly how much time you spent performing side work, and specify how much time you spent on side work during each such shift and/or workweek.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I remember that for each time we closed it took about 45 minutes to roll silverware, sweeping peanuts took about 20 minutes, and back-up house stocking and cleaning took about 20 minutes. I measured this because I would text my boyfriend that we were closing and had to roll silverware, clean, and sweep peanuts first. It was about eighty-five minutes before I walked out the door. I spent the same amount of time performing each task every week, and I know that I spent over an hour each day minimum on sidework.

49. Did the amount of time you were required to spend on side work vary significantly depending on the overall length of your work shift, or was the time required for side work more or less constant regardless of the overall length of the shift?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: If I was a closer, I would come in the earliest and leave the latest, I did the least sidework. On 5-9 shorter shift (not closing), you would sweep peanuts and do back-of-house side work and silverware. The closing shift is 3:30-close (10:00 weekdays/11:00

16

weekends). The two closing shift servers would still sweep peanuts and roll silverware but they do not do back-of-house tasks (salad station or scrub tea urns) but just a walk-through to check that everybody else performed those tasks. The closers may have to roll silverware if the morning shift did not complete their tasks, but the closers were required to stay from 3:30 through their whole shift even if there were few customers.

50. If the time required to complete side work was more or less constant regardless of the overall length of your work shift, please specify the total amount of time in minutes that was generally required to complete your side work per shift.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: During a non-closer (5-9 shift) about 85 minutes was usually required to complete side work. During a closing shift, about 65 minutes was usually required to complete side work.

51. During the time you were employed by Logan's, how did you keep a record of the tips you earned?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I had to claim my tips at the end of each night, which were

17

reported on my paycheck, so I would look on my paycheck for the total amount and sometimes I would check my bank account for deposits made.

52. During the time you were employed by Logan's, how did Logan's keep a record of the tips you earned?

ANSWER: I claimed my tips at the end of the night. At the end of the pay period Logans would send the information for their paychecks to corporate, and corporate would issue me a check that showed how much in tips I claimed.

53. Was there any difference in how you kept a record of your credit card tips and cash tips?

ANSWER: I don't know exactly what that means. At the end of the night, the cash-out sheet only shows credit card tips, and I had to count my cash on my own.

54. Was there any difference in how Logan's kept a record of your credit card tips and cash tips? ANSWER: No.

55. If your answer to either question numbers 52 or 53 is YES, please explain the difference in how your credit card tips and cash tips were recorded by you and/or Logan's? ANSWER: I don't know exactly what that means. At the end of the night, the cash-out sheet only shows credit card tips, and I had to count my cash on my own.

56. During the time you were employed by Logan's, did you ever falsely declare the amount of tips you received (either more or less than you actually received)?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

18

57. If your answer to question number 56 is YES, identify each time you falsely declared the amount of your tips, and describe how and why you did so.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

58. Was the amount of tips you declared to Logan's always the same amount you declared on your filed tax returns? If not, explain why.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

59. Did anyone at Logan's ever require you to declare the amount of your tips falsely?

ANSWER: No.

60. If your answer to question number 59 is YES, please identify by name and position all Logan's employees who required you to declare the amount of your tips falsely.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

19

61. As to each Logan's employee identified in response to question number 60, identify each and every time that employee required you to declare the amount of your tips falsely, and describe in detail all communications that occurred regarding the requirement that you declare the amount of your tips falsely.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

62. Did you receive a copy of Logan's employee handbook when you were hired by Logan's?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

63. Did you receive copies of other written policies and procedures from Logan's during your employment and, if so, please describe those policies and procedures. If you still have those policies and procedures, please attach copies to your response.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

20

64. Did you attend employee orientation and/or training concerning Logan's employee handbook, and/or policies and procedures? If so, please identify the date, location and topics covered during the orientation and/or training.

ANSWER:        Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving this objection, Plaintiff answers as follows: Yes, in June 2009 I attended employee orientation and/or training at Sanford. I cannot remember anything about the orientation topics except being tested on the menus and dress code policy.

65. Did you receive copies of Logan's policies and procedures, including the employee handbook, sometime after your initial hire by Logan's?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving this objection, Plaintiff answers as follows: On my first day of work I received the Employee Handbook but never again.

66. Do you recall signing the declaration attached hereto as Exhibit H in connection with this lawsuit?

ANSWER: Yes.

21

67. Did you ever receive any communications or training from Logan's on federal or state wage laws, and/or the application of a tip credit to your wages? If so, state when this occurred, and describe the communications and/or training.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

68. In your declaration, you state that "management required me to declare tips I never received so the company could avoid paying me supplemental pay to satisfy the $7.25 per hour minimum wage rate requirement." Is this statement true?

ANSWER: No, I never stated that in my declaration. See Exhibit H.

69. If your answer to the preceding question is YES, identify by name and position every "management" employee who required you to declare your tips falsely.

ANSWER: Not applicable.

70. If you were required to declare tips falsely, identify every date on which you were required to do so.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

71. Explain what you mean by "supplemental pay" in your declaration.

22

ANSWER: "Supplemental pay" is not in my declaration.

72. When you state in your declaration that you were required to perform "side work" in excess of twenty percent (20%) of your work time, does that include any side work that you performed while you had seated customers for whom you were also responsible?

ANSWER: Yes.

73. Do you understand that the statements in your declaration, and your responses to these deposition questions, were and are made under oath, and are subject to the same laws prohibiting perjury that apply to statements made while testifying in court?

ANSWER: Yes.

74. You hand-wrote your work location, dates of employment, your signature and the date on your declaration. Was the rest of the declaration prepared by someone else? When you signed the declaration, did it look exactly like the attached copy?

ANSWER: Yes, but it was prepared as a result of a survey I took online. Yes.

75. Before you signed your declaration, did you read the entire document?

ANSWER: Yes.

76. Before you signed the declaration, did anyone interview you about your personal experiences while working at Logan's?

ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection: No, I filled out a survey online.

77. Before you signed the declaration, did anyone ask you whether the contents of the declaration were accurate?

23

ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection: No.

78. Please review your attached declaration. Are there any statements in the declaration that don't apply to your work experience at Logan's, or that aren't accurate?

ANSWER: No.

79. If your answer to question number 78 is YES, please identify every statement in your declaration that doesn't apply to you and/or isn't accurate, and explain in detail why that is so.

ANSWER: Not applicable.

80. Did anyone ask you if the contents of your declaration needed to be changed before you signed it? ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection: No.

81. In making the statements under oath contained in your declaration, how did you determine that while working for Logan's you "have been required to perform non-tip producing 'side work' in excess of twenty percent (20%) of [your] work time"?

ANSWER: During a non-closer (5-9) shift, about 85 minutes out of four hours was usually required to complete side work.

82. When you state under oath in your declaration that while employed by Logan's, you "have been required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee," and that you have observed other Logan's tipped employees doing the same, what exactly is the non-tip producing work to which you refer? Is that work different from the side work you described earlier?

24

ANSWER: As a server at the Sanford location, I took orders from customers and entered them into the computer, delivered food to tables for both my tables and other servers' customers, got alcoholic beverages from the bar and delivered to both mine and other's customers, bussed tables, stocked (peanuts, ice, sugar packets, condiments (salt, pepper, and stuff), swept up peanuts, cut lemons, cleaned out tea urns, reset tables (with silver ware etc), hostessed sometimes when busy and seated people, made sugar bags (pre-measured sugar for sweet tea), put cups and dishes up, polished silverware and wrapped the tabs around them and put them in bins, cleaned out the bread-warmer, brought uncooked dough to the back cooler, performed salad bar duties (like filling salad dressing cans, refilling croutons, salad dressing cups, and stacking salad plates), and wiped everything down on the salad bar and in the back).

As a hostess at the Sanford location, I cleaned the bathrooms, refilled the barrels of peanuts, collect and wipe menus, put together the kids silverware with crayons etc, wiped windows and doors, and spot sweep.

No, it's the same thing as side work.

83. If the "non-tip producing work" referred to in your declaration is different from the side work you described earlier, please describe the specific tasks included in that "non-tip producing work" in detail.

ANSWER: Not applicable.

84. With regard to each type of "non-tip producing work," other than side work, identified in response to the preceding question, please identify the percentage of your work shifts (e.g., 100% of shifts, 50% of shifts, 10% of shifts, etc.) during which you performed such work, and how much time you spent during each shift, and collectively during each workweek, performing such work.

ANSWER: Not applicable.

25

85. What is the basis for your belief, as stated under oath in your declaration, that you "believe it is a practice of Logan's to require all its tipped employees to perform non-tip producing 'side work' in excess of twenty percent (20%) of their time while clocked-in to the company's payroll system as a tipped employee"?

ANSWER: I witnessed myself and other employees every day performing side work in excess of 20% of my time and their time while clocked into the company's payroll system as a tipped employee. We also talked about being clocked in the same way.

86. Do you have personal knowledge concerning the amount and/or type of side work performed at any Logan's restaurant location other than the locations at which you have worked?

ANSWER: No.

87. During your employment with Logan's, were you ever required to attend training? If so, please describe in detail the location and subject matter of the training, identify the name(s) and position(s) of the trainer(s), and describe in detail the subject matter and time duration of the training.

ANSWER: I was required to attend training three times at the Sanford, FL Logan's. The first time was when I was first hired in June 2009. I attended employee orientation and/or training at Sanford. I cannot remember anything about the orientation topics except being tested on the menus and dress code policy. The second one was about how to be a better server, and they taste-tested some new drinks. Sean, one of the managers, was the trainer. The training was in the morning early before our shift, and the training lasted about 1.5 hours. The third training was by the General Manager, John Bremmer about the new menu, and it lasted about 1.5 hours.

26

88. Other than those employees who attended the same training sessions as you, do you have any personal knowledge regarding whether any other employees of Logan's attended training, or how much time they spent in such training?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

89. During your employment with Logan's, were you ever required to provide training for anyone?

ANSWER: Yes.

90. If your answer to question number 89 is YES, identify all occasions on which you trained another employee, the name of each such employee you trained, and how long you spent training that employee.

ANSWER: As a server I provided training three times. Although I have no idea as to those specifics asked for, I know I only got paid the tipped rate and not the training rate. When I mentioned to a manager whether I was supposed to be clocked in as a trainer, he said we will buy you dinner later. You get a free meal for training.

91. If your answer to question number 89 is YES, describe in detail the nature of the training you provided and how that training was done. For example, did the training consist of allowing another employee to shadow you while you waited on customers and performed other server or bartender job duties? ANSWER: Yes. I waited on customers and performed other server job duties while the employee I was training shadowed me, but I also instructed that employee on how

27

to do my server work while I did the work in front of them. At the end of her shift, I also had to go over the menu in the employee's server training book for 30 minutes.

92. Have you ever been arrested?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

93. If your answer to question number 92 is YES, identify the date of the arrest, the offense for which you were arrested, and the outcome of any charges?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: In September 2008, I was charged with Aggravated Assault, but the charges were reduced to misdemeanor improper display of a deadly or dangerous weapon.

94. Have you ever been convicted of a crime?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:Yes.

28

95. If your answer to question number 94 is YES, identify the date of the conviction, the crime for which you were convicted, and the sentence that you were given as a result of the conviction.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:Around September 2008, I pled no contest to a misdemeanor improper display of a deadly or dangerous weapon. I got about one year of probation and anger management classes, and at the end my conviction was expunged.

96. Have you ever been involved in a lawsuit prior to this one?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:No.

97. If your answer to question number 96 is YES, identify the other parties involved in the lawsuit, your role in the lawsuit (plaintiff, defendant, or witness), and the outcome of the lawsuit.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:Not applicable.

Case 3:14-cv-02184 Document 93-2 Filed 07/06/15 Page 30 of 44 PageID #: 852

98. Do you know either of the named Plaintiffs in this lawsuit, Carey Bradford or Cody Bolen, personally?

ANSWER: No.

99. If your answer to question number 98 is YES, explain how you know Carey Bradford or Cody Bolen, including how you came to know them and what communications you have had with them in the past year.

ANSWER: Not applicable.

100.    How did you find out about this lawsuit?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:Facebook.

101.    Are you familiar with the website www.logansofftheclock.com?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:Yes.

102.    If your answer to question number 101 is YES, how did you become familiar with that website?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional

certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:Facebook.

103.    Prior to joining this lawsuit, did you personally know any of the lawyers or employees at the law firm that is representing you?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:No.

104.    If your answer to question number 103 is YES, identify by name which lawyers or employees you knew, and describe how you came to know them.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:Not applicable.

105.    How many communications have you had with the attorneys representing you in this case, and when did those communications occur?

ANSWER: Plaintiff objects to this questions to the extent that the attorney-client and/or work product privilege applies. Subject to and without waiving this objection, Plaintiff answers as follows: Three. They sent me paperwork around October 2014. Then on May 30, 2015, they

31

made a telephone call and sent an email to make the appointment for today for me to answer these questions.

106. Have you had any communications with any current or former Logan's employees about the claims in this lawsuit? ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

107. If your answer to question number 106 is YES, identify by name each current or former Logan's employee with whom you have had any communications about the claims in this lawsuit, identify when those conversations occurred, and describe in as great detail as you can the content of those conversations. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

108. Have you had any communications with anyone other than your lawyers about the claims in this lawsuit? ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

32

109. If your answer to question number 108 is YES, identify by name each person with whom you have had any communications about the claims in this lawsuit, identify when those conversations occurred, and describe in as great detail as you can the content of those conversations. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

110. Please identify every individual named on the Opt-in List (attached as Exhibit L) with whom you have ever shared a work shift while employed at Logan's. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: None.

111. Please identify every individual named on the Opt-in List attached hereto with whom you have ever attended a training session while employed at Logan's. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: None.

33

112. Please identify every individual named on the Opt-in List attached hereto with whom you have ever communicated regarding your work and/or compensation at Logan's including the application of tip credits by Logan's, any side work required by Logan's and any instructions by managers at Logan's that employees declare their tips falsely. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: None.

113. Please identify every individual named on the Opt-in List attached hereto whom you have never met and with whom you have never communicated. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: All, except for myself.

34

State of Florida )

County of _VOIUSIa_ )


I, Ashley Marie Elgin, having been duly sworn, make oath that the answers stated in the foregoing Answers to Questions Propounded to Ashley Marie Elgin are true to the best of my knowledge, information, and belief.

_Ashley Marie Elgin_


I, _Berenice I. Martell_ a Notary Public in and for said State and County, hereby certify that Ashley Marie Elgin, whose name is signed to the foregoing document, and who is known to me, acknowledged before me on this date that being informed of the contents of said document and being authorized to do so, she executed the same voluntarily on the date the same bears date.

Given under my hand and seal on this the __8__ day of June, 2015.

{SEAL}

_Notary Public_

My Commission Expires: _March 25, 2018_

BERENICE I. MARTELL
NOTARY
My Comm. Expires
March 25, 2018
No. FF 106287
PUBLIC
STATE OF FLORIDA

DATED: June 10, 2015

As to objections,

Gordon E. Jackson (TN Bar No. 08323)
James L. Holt, Jr. (TN Bar No. 12123)
JACKSON, SHIELDS, YEISER & HOLT
Attorneys at Law
262 German Oak Drive
Memphis, TN 38018
(901) 754-8001 (Phone)
(901) 754-8524 (Facsimile)
*gjackson@jsyc.com*
*jholt@jsyc.com*

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I, Gordon E. Jackson, certify that I caused a copy of the foregoing **Ashley Elgin's Answers to Written Questions** to be served on Defendants' counsel on June 10, 2015 by First Class Mail and email at the following addresses:

Andrew S. Naylor
K. Coe Heard
Britney R. Stancombe
Waller, Lansden, Dortch & Davis
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN 37219
Email: andy.naylor@wallerlaw.com
Email: coe.heard@wallerlaw.com
Email: brittany.stancombe@wallerlaw.com

Thomas E. Hill
Christina T. Tellado
Reed Smith LLP
355 S Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Email: thill@reedsmith.com
Email: ctellado@reedsmith.com
Email: pstuhldreher@reedsmith.com

Michael D. Jones
Reed Smith LLP
3 Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103-2762
Email: mdjones@reedsmith.com

Peter J. Stuhldreher
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX 77002-6110
Email: pstuhldreher@reedsmith.com

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CAREY BRADFORD and CODY BOLEN, Individually and on behalf of others similarly situated. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:14-cv-2184 |
| LOGAN'S ROADHOUSE, INC., a Tennessee Corporation, LRI HOLDINGS, INC., a Delaware Corporation, ROADHOUSE HOLDING, INC., a Delaware Corporation, | ) ) ) ) ) ) ) | FLSA Opt-In Collective Action |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## DECLARATION OF ASHLEY ELGIN

I, Ashley Elgin, hereby submit this declaration and state as follows:

1.     I worked for Logan's Roadhouse, Inc. ("Logan's") as a tipped-employee at its restaurant located in __Sanford, Florida__ during __May 2009-August 2014__.

2.     As a tipped employee at Logan's, I received a reduced hourly rate of pay less than the minimum wage rate of $7.25 per hour..

3.     As a tipped employee, my principal job duties were to wait on and serve customers.

4.     I have observed that the work I performed for Logan's as a tipped employee was essentially the same work that other Logan's tipped employees were required to perform with regard to both tipped and non-tip producing job duties.

5.     While employed by Logan's during the time period noted above, I have been required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped

employee, and received less than the minimum wage rate of $7.25 an hour for such work. I likewise have observed other Logan's tipped employees being required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee, while receiving less than the minimum wage rate of $7.25 rate an hour for such work--during such time period

6.      In addition, while employed by Logan's during the time noted above and clocked-in to the company's payroll system as a tipped employee, I have been required to perform non-tip producing "side work" in excess of twenty percent (20%) of my work time (such as rolling silverware, refilling sugar caddies, salt and pepper shakers, ice, condiments, cleaning chairs, tables, booths, restaurant artifacts and décor, lights, blinds, windows, as well as closing out customers checks and performing pre-closing cleaning tasks, vacuuming and/or sweeping the server's assigned area and checking dishes, napkins, and utensils, etc.), while receiving less than the minimum wage rate of $7.25 an hour for such "side work" time.

7.      I likewise have observed other Logan's tipped employees receiving less than the minimum wage rate of $7.25 an hour for such non-tip producing "side work".

8.      I believe it is a practice of Logan's to require all its tipped employees to perform non-tip producing "side work" in excess of twenty percent (20%) of the their time while clocked-in to the company's payroll system as a tipped employee, without being paid at least the minimum wage rate of $7.25 for such "side work" time.

        I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing declarations are true and correct. Executed on this __2nd__ day of ~~March~~ April, 2015.

_Ashley Elgin_, Declarant

# EXHIBIT I

**EXHIBIT I:** *Bradford et al v. Logan's* - **List of Plaintiffs**

| | First Name | Last Name |
|---|---|---|
| 1 | Arielle Ann | Aldrich |
| 2 | Samantha Lee | Arnold |
| 3 | William Corey | Barry |
| 4 | Angel | Bartelt |
| 5 | Justin | Beavers |
| 6 | LaTonia | Bennett |
| 7 | Shane Sumner | Bodden |
| 8 | Raphael | Boldrick |
| 9 | Cody | Bolen |
| 10 | Carey | Bradford |
| 11 | Tyler | Bransom |
| 12 | Kimberly | Brewer |
| 13 | Jonathan Patrick | Brown |
| 14 | Marquis | Brown |
| 15 | Michael Marcell | Brown |
| 16 | Christopher | Bryant |
| 17 | Laurel Michelle | Bryant |
| 18 | Karri | Busard |
| 19 | Aaron | Byrd |
| 20 | Tarmeca Maria | Campbell |
| 21 | Savannah | Carrick |
| 22 | Jessica | Clark-Clardy |
| 23 | Jaclyn | Cooper |
| 24 | Anna Madison | Copeland |
| 25 | James Robert | Corley Jr. |
| 26 | Roderick | Davis Jr. |
| 27 | Jacob Lee | Demoss |
| 28 | Ellen | Dent |
| 29 | Amy Nicole | Derrington Norton |
| 30 | Hayden | Dollar |
| 31 | John | Duncan |
| 32 | Ashley | Elgin |
| 33 | Amy Jo | Ford |
| 34 | Nicole | Foster |
| 35 | Gabrielle | Frey |
| 36 | Ashley | Fulcher |
| 37 | Dustin Dewayne | Gilbert |

| | First Name | Last Name |
|---|---|---|
| 38 | Jordan Lee | Goggin |
| 39 | Tia Jannelle | Haddox |
| 40 | Thomas | Hartung |
| 41 | Nicholas Stephen | Holman |
| 42 | Brandy | Holt-Anna |
| 43 | Clifford | Hughes |
| 44 | Marcie Lynn | Hunter |
| 45 | Wendy | Hymer |
| 46 | Syreeta | Jackson |
| 47 | Jeffrey | Jernigan |
| 48 | Lillian | Kelter |
| 49 | Ashley Nicole | Kennedy |
| 50 | Kristyn | King |
| 51 | Linda Sue | Kurtz |
| 52 | Chadwick Anson | Layne |
| 53 | Shayne | Lenfestey |
| 54 | Angelina Marie | Lewis |
| 55 | Bobbie | Longmire |
| 56 | Kimberly Nichole | Lynn |
| 57 | Austin Gunnar | Maher |
| 58 | Jeanan | Mayfield |
| 59 | Darreo | McCall |
| 60 | Jessica | McClellan |
| 61 | Jason | McGee |
| 62 | Joel | Merchant |
| 63 | Cassie | Miller |
| 64 | Jeremy | Mitchell |
| 65 | William | Moody |
| 66 | Jordan Scott | Moore |
| 67 | Tracy Denise | Nicholas |
| 68 | Heather | Oakley |
| 69 | Larita Joy | O'Brien |
| 70 | Yolanda | Osborne Youngblood |
| 71 | David | Parish |
| 72 | Corinne | Pennington |
| 73 | Kelly | Pilet |
| 74 | Justin Blaine | Potts |
| 75 | Cori Amber | Rascati |
| 76 | Jessica Lynn | Ratliff |
| 77 | Jennifer | Reece |

Case 3:14-cv-02184   Document 93-2   Filed 07/06/15   Page 43 of 44 PageID #: 865

| | First Name | Last Name |
|---|---|---|
| 78 | Robyn Elizabeth | Reeves |
| 79 | Latanya Dialishiah | Rodgers |
| 80 | James | Roten |
| 81 | Stacey | Russell |
| 82 | Keita | Shearin |
| 83 | Suzanne Angela | Sherrill |
| 84 | Amanda | Siroki |
| 85 | Destiny | Stafford |
| 86 | Shawn Michael | Straughn |
| 87 | Tristan James | Warsham |
| 88 | Anthony | Wiggins |
| 89 | Zachery Scott | Wimpelberg |
| 90 | Shelly | Wood |
| 91 | Markala | Wretling |