# EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

**CAREY BRADFORD and CODY BOLEN,**
**Individually and on behalf of all other**
**similarly situated current and former**
**employees,**

    **Plaintiffs,**

**v.**

**LOGAN'S ROADHOUSE, INC.,**
**a Tennessee Corporation,**
**LRI HOLDINGS, INC.,**
**a Delaware Corporation,**
**ROADHOUSE HOLDING, INC.,**
**a Delaware Corporation,**

    **Defendants.**

**NO. 3:14-cv-02184**

**Judge Trauger**

**FLSA Opt-In Collective Action**

**JURY TRIAL DEMANDED**

---

## ANSWERS TO QUESTIONS PROPOUNDED TO ROBYN REEVES

    1.    Please state your full name, current address, current telephone number, and social security number.

    ANSWER:  Robyn Elizabeth Reeves, ████████████████████████

    2.    Please describe everything you did to prepare for your deposition, including whether you had any conversations with your attorneys, when those conversations occurred, and how long those conversations lasted.

ANSWER:  Plaintiff objects to the extent that the attorney-client privilege applies to this question.  Subject to and without waiving such objection: I talked with my attorneys last week by phone and email in order to schedule a telephone meeting today to answer these questions. Prior to this meeting, I read six pages of these questions.

    3.    If you reviewed any documents to prepare for your deposition, please identify each of the documents you reviewed and attach copies to your response.

    ANSWER:  I read the first six pages of these questions.

1

4. Please identify each Logan's restaurant at which you have worked, including the restaurant's address and restaurant number, if you know it?

ANSWER: I don't remember the address or restaurant number, but I worked for Logan's in Lufkin, Texas.

5. Please identify the time periods during which you worked at each Logan's restaurant that you identified in response to question number 4.

ANSWER: September 15, 2014 to December 26, 2014.

6. Please identify by name and position each supervisor to whom you directly reported at any time during your employment with Logan's, and the periods of time during which you reported to each such supervisor.

ANSWER:
Gabe (last name unknown), General Manager, September 15, 2014, to December 26, 2014.
Jeff, Assistant Manager, September 15, 2014, to December 26, 2014.
Michael, Server's Manager, September 15, 2014, to December 26, 2014.
Miles, Kitchen Manager, September 15, 2014, to December 26, 2014.

7. Please identify by name and position with Logan's each supervisor to whom you reported indirectly, or who otherwise had any authority over you, at any time during your employment with Logan's, including, but not limited to, the General Manager(s) of the restaurant(s) at which you worked, and the periods of time during which you reported to each such manager.

ANSWER: Gabe (last name unknown), General Manager, September 15, 2014, to December 26, 2014. Jeff, Assistant Manager, September 15, 2014, to December 26, 2014. Michael, Server's Manager, September 15, 2014, to December 26, 2014. Miles, Kitchen Manager, September 15, 2014, to December 26, 2014.

8. At any time during your employment with Logan's, did you ever have any communications regarding your work and/or pay with any Logan's employee who worked at a location other than the Logan's restaurant where you worked?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: The one that emailed me on Facebook about the Logan's off-the-clock lawsuit. I think his name is Cody Bolen.

9. If your answer to question number 8 is YES, then identify all such employees with whom you had any such communications, and describe in as great detail as you can the substance of those communications.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this

2

objection, Plaintiff answers as follows: Cody asked me if my hours were cut back and I was still having to work off-the-clock, and I said "Yes" and then he sent me the link www.logansofftheclock.com.

10.     At any time during your employment with Logan's did you ever have any communications regarding your work and/or pay with any Logan's employee who worked at Logan's' corporate headquarters?
ANSWER:  No.

11.     If your answer to question number 10 is YES, then identify all such employees with whom you had any such communications, and describe in as great detail as you can the substance of those communications.
ANSWER:  Not applicable.

12.     What is Logan's' defined workweek (for purposes of the Fair Labor Standards Act), if you know it?
ANSWER:  I don't know it.

13.     Did any of your supervisors at Logan's ever shadow you to observe your work performance throughout an entire work shift?  Throughout an entire workweek?  If so, identify by name and position the supervisor(s) who did so and when this occurred.
ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: Yes, one of my supervisors, Michael (server's manager), at Logan's shadowed me to observe my work performance throughout an entire work shift in November 2014 (but not an entire workweek).

14.     Did you ever measure and/or record the amount of time that you spent performing particular tasks during an entire work shift and/or an entire workweek while employed at Logan's?
ANSWER:  No.

15.     If the answer to the preceding question was "yes," then explain fully how you measured and/or recorded the time you spent on each task, and describe the results of those measurements and/or recordations on each such occasion.
ANSWER:  Not applicable.

16.     What was your job title during your employment with Logan's? If you had different job titles at different times, please identify each job title you held, the periods of time during which you held each such job title, and the Logan's restaurant location where you were working when you held that job title.
ANSWER:  Server during the entire time from September 2014-December 2014.

3

17.     For each of the positions identified in response to question number 16, please state whether you regularly received tips of $30 or more per month in connection with your work in that position.

ANSWER:   No, sometimes I did not receive tips of $30 or more per month in connection with my work as a server.

18.     For each of the positions identified in response to question number 16, please identify the percentage number of your work hours (*e.g.*, 100% of hours, 50% of hours, 10% of hours, *etc.*) for which Logan's took a tip credit against its minimum wage obligation to you.

ANSWER:   100%.

19.     For each of the positions identified in response to question number 16, please state the applicable hourly cash wage that you received from Logan's after the application of any tip credit by Logan's.

ANSWER:   I don't understand that question.

20.     Please explain your understanding of how your minimum wage rate was impacted by any tip credits taken by Logan's.

ANSWER:   I don't understand that question.

21.     During the time that you were employed by Logan's, did you ever supervise anyone?

ANSWER:   Only when we had a big party. Then me and another server would take care of that party and I would supervise that other server.

22.     If your answer to question number 21 is YES, identify all employees who you supervised, the time periods during which you supervised them, what supervisory duties you had with regard to each such employee, and the Logan's restaurant location where you worked when you supervised those employees.

ANSWER:   Only when we had a big party. Then me and another server would take care of that party and I would supervise that other server. I can't remember which employees I supervised, but it was at the Logan's in Lufkin.

23.     Did you ever spend an entire work shift doing nothing other than shadow another server or bartender?

ANSWER:   When I first started, yes.

24.     Did you ever clock another server or bartender in or out of Logan's time recording system?  If so, please identify that employee by name.

ANSWER:   Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving this objection, Plaintiff answers as follows: No.

4

25. If your answer to question number 24 is YES, state the hourly rate of pay at which any employee who you identified was clocked in.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

26. Please identify every occasion on which you personally reviewed a paycheck that Logan's provided another server or bartender.

ANSWER: I never looked at anybody else's checks.

27. For each Logan's server or bartender whose paycheck you personally reviewed, identify by name the person whose pay check you reviewed, and state when you reviewed their paycheck, why you did so, and what, if anything, you recall about their paycheck.

ANSWER: I never looked at anybody else's checks.

28. Do you have personal knowledge of the amount of tips received by any other Logan's server or bartender with respect to any particular work shift?

ANSWER: No.

29. If your answer to question number 28 is YES, then identify by name all such Logan's servers and bartenders, and explain how you acquired personal knowledge of the tip amounts received by those individuals.

ANSWER: Not applicable.

30. Please identify every occasion on which you personally reviewed the total amount of cash tips declared for a shift by another server or bartender.

ANSWER: No, I never personally reviewed the total amount of cash tips declared for a shift by another server or bartender.

31. Please identify every occasion on which you personally reviewed the total amount of credit card tips for a shift credited to another server or bartender by Logan's.

ANSWER: I never personally reviewed the total amount of credit card tips for a shift credited to another server or bartender by Logan's.

32. During the time you worked for Logan's as a tipped server or bartender, please describe in detail all of the job duties that you performed.

ANSWER: I had front-of-house duties (clean up tables after done with customers, sweep up peanut shells, put silverware on table, cut lemons, every Sunday and Wednesday we had to roll silverware, cleaning windows and other cleaning on deep cleaning days) and back-of-house (including stocking, refilling ice, stocking condiments, doing soups/salads, stocking plates/cups, cleaned out tea urns, made tea, cleaned bread oven).

5

33. During all of the shifts for which you were clocked-in at Logan's as a tipped server or bartender, did your duties include waiting on customers?

ANSWER: Yes.

34. If your answer to question number 33 is NO, identify all shifts during which you were clocked-in as a tipped server or bartender, but did not wait on any customers, and identify the job duties that you did perform during those shifts.

ANSWER: Not applicable.

35. Describe your understanding of what constitutes "side work."

ANSWER: Side work to me is when you are helping out with front-of-house or back-of-house duties while not waiting on customers. For example, restocking and all that stuff is side work.

36. Were you ever asked or instructed to perform side work while clocked-in at Logan's as a tipped employee?

ANSWER: Yes.

37. If your answer to question number 36 is YES, identify by name and position the person who told you to perform that side work, the position that you then held at Logan's, and the Logan's location where you were then working.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Michael told me to perform side work at the Lufkin location when I was a server.

38. If your answer to question number 36 is YES, please describe in as great detail as you can recall today, what you were instructed to do by each individual who you have identified.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Michael told me I had to do my silverware while I was waiting on customers, and he instructed me to do my front-of-house and back-of-house duties.

39. Describe in detail all side work tasks that you were instructed to perform at any time during your employment with Logan's. In so doing, please specify the particular side work tasks that you were requested to perform in connection with each position you held, and in connection with each Logan's restaurant at which you worked.

ANSWER: As a server at the Lufkin location, I had front-of-house duties (clean up tables after done with customers, sweep up peanut shells, put silverware on table, cut lemons, every Sunday and Wednesday we had to roll silverware, cleaning windows and other cleaning on deep

6

cleaning days) and back-of-house (including stocking, refilling ice, stocking condiments, doing soups/salads, stocking plates/cups, cleaned out tea urns, made tea, cleaned bread oven).

     40.    Did anyone other than your supervisors at the Logan's restaurant location(s) where you worked ever assign you side work or give you instructions regarding how much side work to perform?

     ANSWER:  Yes, the front-of-house and back-of-house people, who were servers.

     41.    As to each side work task identified in response to question number 39, during what percentage of your work shifts were you required to perform that particular task (*e.g.*, 100% of shifts, 50% of shifts, 10% of shifts, *etc.*)?

     ANSWER:
     clean up tables after done with customers (100%)
     sweep up peanut shells (50%)
     put silverware on table (100%)
     cut lemons (30%)
     roll silverware (50%)
     cleaning windows and other cleaning on deep cleaning days (20%)
     stocking (100%)
     refilling ice (100%)
     stocking condiments   (100%)
     doing soups/salads(100%)
     stocking plates/cups (100%)
     cleaned out tea urns (100%)
     made tea (100%)
     cleaned bread oven (100%)

     42.    As to each side work task identified in response to question number 39, how much time did it generally take you to complete that task?

     ANSWER:
     clean up tables after done with customers – 3.5 minutes
     sweep up peanut shells – 15 minutes
     put silverware on table – 2.5 to 3 hours
     cut lemons – 10 minutes
     roll silverware – (twice per week; 1.5 hours)
     cleaning windows and other cleaning on deep cleaning days (2 hours)
     stocking (1.5 hour)
     refilling ice (30 minutes)
     stocking condiments  - 45 minutes
     doing soups/salads 45 minutes
     stocking plates/cups  1 hour
     cleaned out tea urns  5 minutes
     made tea 1-2 hours
     cleaned bread oven 30 minutes

43.  When you reported your hours worked for each shift at Logan's, did you ever indicate on your time records the amount of time you spent performing side work?

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: No.

44.  At any time during your employment with Logan's, did you ever keep any records of the amount of time you spent performing side work?

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: No.

45.  If your answer to question number 44 is YES, please describe in detail the records that you kept and attach copies of those records to your response.

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

46.  If your answer to question number 44 is NO, isn't it true that you can only speculate as to how much time you spent performing side work during any particular shift or workweek while you were employed by Logan's?

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

47.  If your answer to question number 46 is NO, please explain in detail how you can determine how much time you actually spent performing side work during any particular shift or workweek while employed by Logan's without guessing or speculating.

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

48.  Identify each shift and/or workweek for which you can identify exactly how much time you spent performing side work, and specify how much time you spent on side work during each such shift and/or workweek.

8

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I spent about 3 hours per day on my side work.

49.    Did the amount of time you were required to spend on side work vary significantly depending on the overall length of your work shift, or was the time required for side work more or less constant regardless of the overall length of the shift?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: It depends.

50.    If the time required to complete side work was more or less constant regardless of the overall length of your work shift, please specify the total amount of time in minutes that was generally required to complete your side work per shift.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I spent about 3 hours on side work per shift.

51.    During the time you were employed by Logan's, how did you keep a record of the tips you earned?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Just on receipts when we printed out our clock-out sheets.

52.    During the time you were employed by Logan's, how did Logan's keep a record of the tips you earned?

ANSWER: From the receipt we printed out on the computer.

53.    Was there any difference in how you kept a record of your credit card tips and cash tips?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No, it was the same. In the computer.

9

54. Was there any difference in how Logan's kept a record of your credit card tips and cash tips?

ANSWER: I don't know how they kept our cash tips. All I know is it was in the computer.

55. If your answer to either question numbers 52 or 53 is YES, please explain the difference in how your credit card tips and cash tips were recorded by you and/or Logan's?

ANSWER: Not applicable.

56. During the time you were employed by Logan's, did you ever falsely declare the amount of tips you received (either more or less than you actually received)?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

57. If your answer to question number 56 is YES, identify each time you falsely declared the amount of your tips, and describe how and why you did so.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Michael would tell us to declare only our cash tips so that he could cash out our credit card tips and keep them. For example, if I made $100 per night, don't show your cash tips just credit cards. Michael stole our tips and took them home. I don't know the dates that happened, but there was a few times he had me do that.

58. Was the amount of tips you declared to Logan's always the same amount you declared on your filed tax returns? If not, explain why.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No because I was exempt from federal taxes.

59. Did anyone at Logan's ever require you to declare the amount of your tips falsely?
ANSWER: Yes.

60. If your answer to question number 59 is YES, please identify by name and position all Logan's employees who required you to declare the amount of your tips falsely.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Michael would tell us to declare only our cash tips so that

he could cash out our credit card tips and keep them. For example, if I made $100 per night, don't show your cash tips just credit cards. Michael stole our tips and took them home. I don't know the dates that happened, but there was a few times he had me do that.

61.     As to each Logan's employee identified in response to question number 60, identify each and every time that employee required you to declare the amount of your tips falsely, and describe in detail all communications that occurred regarding the requirement that you declare the amount of your tips falsely.

ANSWER:   Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: Michael would tell us to declare only our cash tips so that he could cash out our credit card tips and keep them. For example, if I made $100 per night, don't show your cash tips just credit cards. Michael stole our tips and took them home. I don't know the dates that happened, but there was a few times he had me do that.

62.     Did you receive a copy of Logan's employee handbook when you were hired by Logan's?

ANSWER:   Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

63.     Did you receive copies of other written policies and procedures from Logan's during your employment and, if so, please describe those policies and procedures.  If you still have those policies and procedures, please attach copies to your response.

ANSWER:   I received a handbook and information on how the dishes were made.

64.     Did you attend employee orientation and/or training concerning Logan's employee handbook, and/or policies and procedures?  If so, please identify the date, location and topics covered during the orientation and/or training.

ANSWER:   Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: Yes. I think my orientation was on September 18, 2014, at the Lufkin location about our food.

65.     Did you receive copies of Logan's policies and procedures, including the employee handbook, sometime after your initial hire by Logan's?

ANSWER:   Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits

11

of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

66. Do you recall signing the declaration attached hereto as Exhibit N in connection with this lawsuit?
ANSWER: Yes.

67. Did you ever receive any communications or training from Logan's on federal or state wage laws, and/or the application of a tip credit to your wages? If so, state when this occurred, and describe the communications and/or training.
ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

68. In your declaration, you state that "management required me to declare tips I never received so the company could avoid paying me supplemental pay to satisfy the $7.25 per hour minimum wage rate requirement." Is this statement true?
ANSWER: Yes.

69. If your answer to the preceding question is YES, identify by name and position every "management" employee who required you to declare your tips falsely.
ANSWER: Michael.

70. If you were required to declare tips falsely, identify every date on which you were required to do so.
ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I cannot remember the dates that Michael made me declare my tips falsely.

71. Explain what you mean by "supplemental pay" in your declaration.
ANSWER: I don't even know what the word supplemental means.

72. When you state in your declaration that you were required to perform "side work" in excess of twenty percent (20%) of your work time, does that include any side work that you performed while you had seated customers for whom you were also responsible?
ANSWER: Yes.

73. Do you understand that the statements in your declaration, and your responses to these deposition questions, were and are made under oath, and are subject to the same laws prohibiting perjury that apply to statements made while testifying in court?

12

ANSWER: Yes.

74.     You hand-wrote your work location, dates of employment, your signature and the date on your declaration. Was the rest of the declaration prepared by someone else? When you signed the declaration, did it look exactly like the attached copy?
        ANSWER: Yes. Yes.

75.     Before you signed your declaration, did you read the entire document?
        ANSWER: Yes.

76.     Before you signed the declaration, did anyone interview you about your personal experiences while working at Logan's?
ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection: No.

77.     Before you signed the declaration, did anyone ask you whether the contents of the declaration were accurate?
ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection: No.

78.     Please review your attached declaration. Are there any statements in the declaration that don't apply to your work experience at Logan's, or that aren't accurate?
        ANSWER: No.

79.     If your answer to question number 78 is YES, please identify every statement in your declaration that doesn't apply to you and/or isn't accurate, and explain in detail why that is so.
        ANSWER: Not applicable.

80.     Did anyone ask you if the contents of your declaration needed to be changed before you signed it?
ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection: No.

81.     In making the statements under oath contained in your declaration, how did you determine that while working for Logan's you "have been required to perform non-tip producing 'side work' in excess of twenty percent (20%) of [your] work time"?
        ANSWER: I figured that out when I started having to clock out and do my side work. I spent at least 3 hours per shift doing side work.

82.     When you state under oath in your declaration that while employed by Logan's, you "have been required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee," and that you have observed other Logan's tipped employees doing the same, what exactly is the non-tip producing work to which you refer? Is that work different from the side work you described earlier?
        ANSWER: I had front-of-house duties (clean up tables after done with customers, sweep up peanut shells, put silverware on table, cut lemons, every Sunday and Wednesday we had to roll

13

silverware, cleaning windows and other cleaning on deep cleaning days) and back-of-house (including stocking, refilling ice, stocking condiments, doing soups/salads, stocking plates/cups, cleaned out tea urns, made tea, cleaned bread oven). Non-tipped producing work and side work is the same.

83.    If the "non-tip producing work" referred to in your declaration is different from the side work you described earlier, please describe the specific tasks included in that "non-tip producing work" in detail.

ANSWER:  Non-tipped producing work and side work is the same.


84.    With regard to each type of "non-tip producing work," other than side work, identified in response to the preceding question, please identify the percentage of your work shifts (e.g., 100% of shifts, 50% of shifts, 10% of shifts, etc.) during which you performed such work, and how much time you spent during each shift, and collectively during each workweek, performing such work.

ANSWER:  Non-tipped producing work and side work is the same.


85.    What is the basis for your belief, as stated under oath in your declaration, that you "believe it is a practice of Logan's to require all its tipped employees to perform non-tip producing 'side work' in excess of twenty percent (20%) of their time while clocked-in to the company's payroll system as a tipped employee"?

ANSWER:  I don't understand that question.

86.    Do you have personal knowledge concerning the amount and/or type of side work performed at any Logan's restaurant location other than the locations at which you have worked?
ANSWER:  No.

87.    During your employment with Logan's, were you ever required to attend training? If so, please describe in detail the location and subject matter of the training, identify the name(s) and position(s) of the trainer(s), and describe in detail the subject matter and time duration of the training.

ANSWER:  I think my orientation was on September 18, 2014, at the Lufkin location about our food.

88.    Other than those employees who attended the same training sessions as you, do you have any personal knowledge regarding whether any other employees of Logan's attended training, or how much time they spent in such training?

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: No.

14

89.     During your employment with Logan's, were you ever required to provide training for anyone?

ANSWER:   No.

90.     If your answer to question number 89 is YES, identify all occasions on which you trained another employee, the name of each such employee you trained, and how long you spent training that employee.

ANSWER:   Not applicable.

91.     If your answer to question number 89 is YES, describe in detail the nature of the training you provided and how that training was done.   For example, did the training consist of allowing another employee to shadow you while you waited on customers and performed other server or bartender job duties?

ANSWER:   Not applicable.

92.     Have you ever been arrested?

ANSWER:   Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

93.     If your answer to question number 92 is YES, identify the date of the arrest, the offense for which you were arrested, and the outcome of any charges?

ANSWER:   Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving this objection, Plaintiff answers as follows: I was arrested July 17, 2013 for child endangerment, and I went to prison because I pled guilty. On July 10, 2002, I was arrested for attempted burglary in the second degree and pled guilty.

94.     Have you ever been convicted of a crime?

ANSWER:       Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving this objection, Plaintiff answers as follows: Yes, I pled guilty to child endangerment and attempted burglary in the second degree.

95.     If your answer to question number 94 is YES, identify the date of the conviction, the crime for which you were convicted, and the sentence that you were given as a result of the conviction.

ANSWER:   Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving this objection, Plaintiff answers as follows: I was arrested July 17, 2013 for child endangerment, and I

15

went to prison because I pled guilty and did one year in prison. On July 10, 2002, I was arrested for attempted burglary in the second degree and pled guilty and did one year for attempted burglary.

96.     Have you ever been involved in a lawsuit prior to this one?

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: No.

97.     If your answer to question number 96 is YES, identify the other parties involved in the lawsuit, your role in the lawsuit (plaintiff, defendant, or witness), and the outcome of the lawsuit.

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

98.     Do you know either of the named Plaintiffs in this lawsuit, Carey Bradford or Cody Bolen, personally?

ANSWER:  No.

99.     If your answer to question number 98 is YES, explain how you know Carey Bradford or Cody Bolen, including how you came to know them and what communications you have had with them in the past year.

ANSWER:  Not applicable.

100.    How did you find out about this lawsuit?

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: Cody Bolen asked me if my hours were cut back and I was still having to work off-the-clock, and I said "Yes" and then he sent me the link www.logansofftheclock.com.

101.    Are you familiar with the website www.logansofftheclock.com?

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

102.    If your answer to question number 101 is YES, how did you become familiar with that website?

16

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Cody Bolen emailed me and asked me if my hours were cut back and I was still having to work off-the-clock, and I said "Yes" and then he sent me the link www.logansofftheclock.com.

103. Prior to joining this lawsuit, did you personally know any of the lawyers or employees at the law firm that is representing you?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

104. If your answer to question number 103 is YES, identify by name which lawyers or employees you knew, and describe how you came to know them.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

105. How many communications have you had with the attorneys representing you in this case, and when did those communications occur?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: In December 2014, I filled out paperwork I received from there. I talked with my attorneys last week by phone and email in order to schedule a telephone meeting today to answer these questions.

106. Have you had any communications with any current or former Logan's employees about the claims in this lawsuit? ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

107. If your answer to question number 106 is YES, identify by name each current or former Logan's employee with whom you have had any communications about the claims in this lawsuit, identify when those conversations occurred, and describe in as great detail as you can the content of those conversations. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional

certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

108. Have you had any communications with anyone other than your lawyers about the claims in this lawsuit? ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

109. If your answer to question number 108 is YES, identify by name each person with whom you have had any communications about the claims in this lawsuit, identify when those conversations occurred, and describe in as great detail as you can the content of those conversations. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

110. Please identify every individual named on the Opt-in List (attached as Exhibit L) with whom you have ever shared a work shift while employed at Logan's. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: None.

111. Please identify every individual named on the Opt-in List attached hereto with whom you have ever attended a training session while employed at Logan's. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: None.

112. Please identify every individual named on the Opt-in List attached hereto with whom you have ever communicated regarding your work and/or compensation at Logan's including the application of tip credits by Logan's, any side work required by Logan's and any instructions by managers at Logan's that employees declare their tips falsely. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Cody Bolen.

18

113. Please identify every individual named on the Opt-in List attached hereto whom you have never met and with whom you have never communicated. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: All, except for myself and Cody Bolen.

State of Texas )

County of _Angelina_ )


I, Robyn Reeves, having been duly sworn, make oath that the answers stated in the foregoing Answers to Questions Propounded to Robyn Reeves are true to the best of my knowledge, information, and belief.

Robyn Reeves

Robyn Reeves


I, Doraelia Escobedo, a Notary Public in and for said State and County, hereby certify that Robyn Reeves, whose name is signed to the foregoing document, and who is known to me, acknowledged before me on this date that being informed of the contents of said document and being authorized to do so, she executed the same voluntarily on the date the same bears date.

Given under my hand and seal on this the 11th day of June, 2015.

{SEAL}

DORAELIA ESCOBEDO
MY COMMISSION EXPIRES
March 6, 2018

Doraelia Escobedo

Notary Public

My Commission Expires: March 6, 2018

DATED: June 12, 2015

As to objections,

Gordon E. Jackson (TN Bar No. 08323)
James L. Holt, Jr. (TN Bar No. 12123)
JACKSON, SHIELDS, YEISER & HOLT
Attorneys at Law
262 German Oak Drive
Memphis, TN 38018
(901) 754-8001 (Phone)
(901) 754-8524 (Facsimile)
*gjackson@jsyc.com*
*jholt@jsyc.com*

ATTORNEYS FOR PLAINTIFFS

### CERTIFICATE OF SERVICE

I, Gordon E. Jackson, certify that I caused a copy of the foregoing **Robyn Reeves's Answers to Written Questions** to be served on Defendants' counsel on June 12, 2015 by First Class Mail and email at the following addresses:

Andrew S. Naylor
K. Coe Heard
Britney R. Stancombe
Waller, Lansden, Dortch & Davis
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN 37219
Email: andy.naylor@wallerlaw.com
Email: coe.heard@wallerlaw.com
Email: brittany.stancombe@wallerlaw.com

Thomas E. Hill
Christina T. Tellado
Reed Smith LLP
355 S Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Email: thill@reedsmith.com
Email: ctellado@reedsmith.com
Email: pstuhldreher@reedsmith.com

Michael D. Jones
Reed Smith LLP
3 Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103-2762
Email: mdjones@reedsmith.com

Peter J. Stuhldreher
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX 77002-6110
Email: pstuhldreher@reedsmith.com

# EXHIBIT N

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CAREY BRADFORD and CODY BOLEN, Individually and on behalf of others similarly situated. | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:14-cv-2184 ) |
| LOGAN'S ROADHOUSE, INC., a Tennessee Corporation, LRI HOLDINGS, INC., a Delaware Corporation, ROADHOUSE HOLDING, INC., | ) ) FLSA Opt-In Collective Action ) ) ) |
| a Delaware Corporation, | ) JURY TRIAL DEMANDED |
| Defendants. | ) ) |

## DECLARATION OF ROBYN REEVES

I, Robyn Reeves, hereby submit this declaration and state as follows:

1. I worked for Logan's Roadhouse, Inc. ("Logan's") as a tipped-employee at its restaurant

located in _Lufkin  TX_ _____ during _sep 15, 14 - Dec 26, 14_

2. As a tipped employee at Logan's, I received a reduced hourly rate of pay less than the

minimum wage rate of $7.25 per hour..

3. As a tipped employee, my principal job duties were to wait on and serve customers.

4. I have observed that the work I performed for Logan's as a tipped employee was

essentially the same work that other Logan's tipped employees were required to perform with

regard to both tipped and non-tip producing job duties.

5.	While employed by Logan's during the time period noted above, I have been required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee, and received less than the minimum wage rate of $7.25 an hour for such work. I likewise have observed other Logan's tipped employees being required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee, while receiving less than the minimum wage rate of $7.25 rate an hour for such work--during such time period

6.	In addition, while employed by Logan's during the time noted above and clocked-in to the company's payroll system as a tipped employee, I have been required to perform non-tip producing "side work" in excess of twenty percent (20%) of my work time (such as rolling silverware, refilling sugar caddies, salt and pepper shakers, ice, condiments, cleaning chairs, tables, booths, restaurant artifacts and décor, lights, blinds, windows, as well as closing out customers checks and performing pre-closing cleaning tasks, vacuuming and/or sweeping the server's assigned area and checking dishes, napkins, and utensils, etc.), while receiving less than the minimum wage rate of $7.25 an hour for such "side work" time.

7.	I likewise have observed other Logan's tipped employees receiving less than the minimum wage rate of $7.25 an hour for such non-tip producing "side work".

8.	I believe it is a practice of Logan's to require all its tipped employees to perform non-tip producing "side work" in excess of twenty percent (20%) of the their time while clocked-in to the company's payroll system as a tipped employee, without being paid at least the minimum wage rate of $7.25 for such "side work" time.

9.    Also, while employed at Logan's as a tipped employee, management required me to declare tips I never received so the company could avoid paying me supplemental pay to satisfy the $7.25 per hour minimum wage rate requirement.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing declarations are true and correct. Executed on this _29_ day of December, 2014.

Robyn Reeves

_Roby Reeve_____, Declarant

**EXHIBIT O:** *Bradford et al v. Logan's* **- List of Plaintiffs**

| | First Name | Last Name |
|----|----|----|
| 1 | Arielle Ann | Aldrich |
| 2 | Samantha Lee | Arnold |
| 3 | William Corey | Barry |
| 4 | Angel | Bartelt |
| 5 | Justin | Beavers |
| 6 | LaTonia | Bennett |
| 7 | Shane Sumner | Bodden |
| 8 | Raphael | Boldrick |
| 9 | Cody | Bolen |
| 10 | Carey | Bradford |
| 11 | Tyler | Bransom |
| 12 | Kimberly | Brewer |
| 13 | Jonathan Patrick | Brown |
| 14 | Marquis | Brown |
| 15 | Michael Marcell | Brown |
| 16 | Christopher | Bryant |
| 17 | Laurel Michelle | Bryant |
| 18 | Karri | Busard |
| 19 | Aaron | Byrd |
| 20 | Tarmeca Maria | Campbell |
| 21 | Savannah | Carrick |
| 22 | Jessica | Clark-Clardy |
| 23 | Jaclyn | Cooper |
| 24 | Anna Madison | Copeland |
| 25 | James Robert | Corley Jr. |
| 26 | Roderick | Davis Jr. |
| 27 | Jacob Lee | Demoss |
| 28 | Ellen | Dent |
| 29 | Amy Nicole | Derrington Norton |
| 30 | Hayden | Dollar |
| 31 | John | Duncan |
| 32 | Ashley | Elgin |
| 33 | Amy Jo | Ford |
| 34 | Nicole | Foster |
| 35 | Gabrielle | Frey |
| 36 | Ashley | Fulcher |
| 37 | Dustin Dewayne | Gilbert |

|    | First Name | Last Name |
|----|-----------|-----------|
| 38 | Jordan Lee | Goggin |
| 39 | Tia Jannelle | Haddox |
| 40 | Thomas | Hartung |
| 41 | Nicholas Stephen | Holman |
| 42 | Brandy | Holt-Anna |
| 43 | Clifford | Hughes |
| 44 | Marcie Lynn | Hunter |
| 45 | Wendy | Hymer |
| 46 | Syreeta | Jackson |
| 47 | Jeffrey | Jernigan |
| 48 | Lillian | Kelter |
| 49 | Ashley Nicole | Kennedy |
| 50 | Kristyn | King |
| 51 | Linda Sue | Kurtz |
| 52 | Chadwick Anson | Layne |
| 53 | Shayne | Lenfestey |
| 54 | Angelina Marie | Lewis |
| 55 | Bobbie | Longmire |
| 56 | Kimberly Nichole | Lynn |
| 57 | Austin Gunnar | Maher |
| 58 | Jeanan | Mayfield |
| 59 | Darreo | McCall |
| 60 | Jessica | McClellan |
| 61 | Jason | McGee |
| 62 | Joel | Merchant |
| 63 | Cassie | Miller |
| 64 | Jeremy | Mitchell |
| 65 | William | Moody |
| 66 | Jordan Scott | Moore |
| 67 | Tracy Denise | Nicholas |
| 68 | Heather | Oakley |
| 69 | Larita Joy | O'Brien |
| 70 | Yolanda | Osborne Youngblood |
| 71 | David | Parish |
| 72 | Corinne | Pennington |
| 73 | Kelly | Pilet |
| 74 | Justin Blaine | Potts |
| 75 | Cori Amber | Rascati |
| 76 | Jessica Lynn | Ratliff |
| 77 | Jennifer | Reece |

|    | First Name | Last Name |
|----|-----------|-----------|
| 78 | Robyn Elizabeth | Reeves |
| 79 | Latanya Dialishiah | Rodgers |
| 80 | James | Roten |
| 81 | Stacey | Russell |
| 82 | Keita | Shearin |
| 83 | Suzanne Angela | Sherrill |
| 84 | Amanda | Siroki |
| 85 | Destiny | Stafford |
| 86 | Shawn Michael | Straughn |
| 87 | Tristan James | Warsham |
| 88 | Anthony | Wiggins |
| 89 | Zachery Scott | Wimpelberg |
| 90 | Shelly | Wood |
| 91 | Markala | Wretling |