# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **CAREY BRADFORD and CODY BOLEN,** Individually and on behalf of all other similarly situated current and former employees, | |
| **Plaintiffs,** | |
| **v.** | NO. 3:14-cv-02184 |
| **LOGAN'S ROADHOUSE, INC.,** a Tennessee Corporation, | Judge Trauger |
| **LRI HOLDINGS, INC.,** a Delaware Corporation, | FLSA Opt-In Collective Action |
| **ROADHOUSE HOLDING, INC.,** a Delaware Corporation, | JURY TRIAL DEMANDED |
| **Defendants.** | |

## ANSWERS TO QUESTIONS PROPOUNDED TO ZACHARY WIMPELBERG

1. Please state your full name, current address, current telephone number, and social security number. ANSWER: Zachery Scott Wimpelberg, ████████████ ███████████████████████████████

2. Please describe everything you did to prepare for your deposition, including whether you had any conversations with your attorneys, when those conversations occurred, and how long those conversations lasted.

ANSWER: Plaintiff objects to the extent that the attorney-client privilege applies to this question. Subject to and without waiving such objection: I talked with my attorney twice over paperwork being sent to me and upon receiving the paperwork. Also, I talked with them one time about scheduling the phone call to answer these questions and this time to answer the questions.

3. If you reviewed any documents to prepare for your deposition, please identify each of the documents you reviewed and attach copies to your response.

ANSWER: I have not.

1

4. Please identify each Logan's restaurant at which you have worked, including the restaurant's address and restaurant number, if you know it?

ANSWER:   West-side Logan's on Pearl Drive in Evansville, Indiana.

5. Please identify the time periods during which you worked at each Logan's restaurant that you identified in response to question number 4.

ANSWER:   I worked at West-side Logan's on Pearl Drive in Evansville, Indiana from about June of 2013 to about February 2015.

6. Please identify by name and position each supervisor to whom you directly reported at any time during your employment with Logan's, and the periods of time during which you reported to each such supervisor.

ANSWER:

General Mgr. Pat Davis (about June of 2013 to about February 2015)
Kitchen Manager Michelle (last name unknown) (about June of 2013 to about Feb. 2015)
Bar Manager, Kevin (last name unknown) (about June of 2013 to about Feb. 2015)
Front of house manager Shannon (last name unknown) (about June 2013 to about Feb. 2015)
Team Lead Back of House April Keyes (about December 2013 to about Feb. 2015)
Team Lead Front of House Charles Baker (about June of 2013 to about Feb. 2015)
Bar Lead Ruthie Huckaby (last name unknown) (not sure of dates)

7. Please identify by name and position with Logan's each supervisor to whom you reported indirectly, or who otherwise had any authority over you, at any time during your employment with Logan's, including, but not limited to, the General Manager(s) of the restaurant(s) at which you worked, and the periods of time during which you reported to each such manager.

ANSWER:

General Mgr. Pat Davis (about June of 2013 to about February 2015)
Kitchen Manager Michelle (last name unknown) (about June of 2013 to about Feb. 2015)
Bar Manager, Kevin (last name unknown) (about June of 2013 to about Feb. 2015)
Front of house manager Shannon (last name unknown) (about June 2013 to about Feb. 2015)
Team Lead Back of House April Keyes (about December 2013 to about Feb. 2015)
Team Lead Front of House Charles Baker (about June of 2013 to about Feb. 2015)
Bar Lead Ruthie Huckaby (last name unknown) (not sure of dates)

8. At any time during your employment with Logan's, did you ever have any communications regarding your work and/or pay with any Logan's employee who worked at a location other than the Logan's restaurant where you worked?

ANSWER:   Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits

2

of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

9. If your answer to question number 8 is YES, then identify all such employees with whom you had any such communications, and describe in as great detail as you can the substance of those communications.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I talked to some servers from the East-side Logan's that I served while they ate at my restaurant. Although I didn't know their names, we compared how much they made per night or weekend. Also, I talked casually with a class-mate who was a server at another location, and we just compared how much money we made that weekend. I didn't know any of those servers.

10. At any time during your employment with Logan's did you ever have any communications regarding your work and/or pay with any Logan's employee who worked at Logan's' corporate headquarters? ANSWER: No.

11. If your answer to question number 10 is YES, then identify all such employees with whom you had any such communications, and describe in as great detail as you can the substance of those communications.

ANSWER: Not applicable.

12. What is Logan's' defined workweek (for purposes of the Fair Labor Standards Act), if you know it? ANSWER: If you had an open workweek, you had no life. They worked you like a dog.

13. Did any of your supervisors at Logan's ever shadow you to observe your work performance throughout an entire work shift? Throughout an entire workweek? If so, identify by name and position the supervisor(s) who did so and when this occurred.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes, Michelle the kitchen manager would shadow me occasionally when I first started.

3

14. Did you ever measure and/or record the amount of time that you spent performing particular tasks during an entire work shift and/or an entire workweek while employed at Logan's?

ANSWER: Yes.

15. If the answer to the preceding question was "yes," then explain fully how you measured and/or recorded the time you spent on each task, and describe the results of those measurements and/or recordations on each such occasion.

ANSWER: When I got off work and was not closing, I would play a game with time with myself to see how long this would take. If I had later plans trying to go out that night, it would get worse. The most I ever rolled silverware was two hours, and I had to roll 195. I would routinely keep track of how long side work took me. It took 45 minutes to an hour, depending on how dirty it was or how lazy other servers were. As soon as I was cut, you were lucky to get out with 10 minutes of stocking ice or unlucky with dressings, which would take an hour.

16. What was your job title during your employment with Logan's? If you had different job titles at different times, please identify each job title you held, the periods of time during which you held each such job title, and the Logan's restaurant location where you were working when you held that job title.

ANSWER: At West-side on Pearl Drive Logan's location I was a host for the first six months (June 2013 to December 2013). Then I was a server from about December 2013 to about February 2015 at that same location. However, they would switch me back and forth between being a host and a server depending on whether they needed me. Sometimes they asked me and sometimes they forced me to be a host.

17. For each of the positions identified in response to question number 16, please state whether you regularly received tips of $30 or more per month in connection with your work in that position.

ANSWER:

Host:     I personally received no tips as a host myself, but Logans would take 10% of servers' tips (based on their sales) and about 7% of that would go to hosts and about 3% would go to bar-tenders.

Server:   Yes, I received more than $30 per month in tips.

18. For each of the positions identified in response to question number 16, please identify the percentage number of your work hours (e.g., 100% of hours, 50% of hours, 10% of hours, etc.) for which Logan's took a tip credit against its minimum wage obligation to you.

ANSWER: I don't fully understand the question but my best guess is:

Host:     0%
Server:   50%

4

19. For each of the positions identified in response to question number 16, please state the applicable hourly cash wage that you received from Logan's after the application of any tip credit by Logan's.

ANSWER: After tip application, anywhere from $7.90 to $8.50 as a host. As a server, from $6.50 an hour (sometimes less) to $20.00 an hour. It just depends on the day.

20. Please explain your understanding of how your minimum wage rate was impacted by any tip credits taken by Logan's.

ANSWER: If I made less than minimum wage as a tipped employee, I would get paid minimum wage. However, there were also times that my manager asked me to tip more in order to cover labor costs.

21. During the time that you were employed by Logan's, did you ever supervise anyone?

ANSWER: I trained about four times. I had four training shifts for two different people.

22. If your answer to question number 21 is YES, identify all employees who you supervised, the time periods during which you supervised them, what supervisory duties you had with regard to each such employee, and the Logan's restaurant location where you worked when you supervised those employees.

ANSWER: I trained two different people at the Pearl Drive location and they quit within a week. I had no time to learn their names.

23. Did you ever spend an entire work shift doing nothing other than shadow another server or bartender? ANSWER: No, just during training.

24. Did you ever clock another server or bartender in or out of Logan's time recording system? If so, please identify that employee by name.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes. I believe one was Morgan Small and one was Charles Baker. I've done more but I cannot remember their names.

25. If your answer to question number 24 is YES, state the hourly rate of pay at which any employee who you identified was clocked in.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits

5

of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Morgan Small (serving $2.13/hour). Charles Baker (serving $2.13/hour).

26. Please identify every occasion on which you personally reviewed a paycheck that Logan's provided another server or bartender.

ANSWER: Every other week. Friends look at each other's tips, how much they made, and the difference between each one.

27. For each Logan's server or bartender whose paycheck you personally reviewed, identify by name the person whose pay check you reviewed, and state when you reviewed their paycheck, why you did so, and what, if anything, you recall about their paycheck.

ANSWER: I saw Charles Baker's paychecks multiple times, but I don't remember the exact date because he used to key, host, and serve, and I was asking questions about it. He said he worked for free because he would make so much on the weekends serving. I saw Shay Seibert's paycheck a couples of times but I don't remember exactly when. The reason I looked at hers is because we both started hosting and serving at the same time so we compared how much money we were getting cheated out of certain days.

28. Do you have personal knowledge of the amount of tips received by any other Logan's server or bartender with respect to any particular work shift?

ANSWER: Yes.

29. If your answer to question number 28 is YES, then identify by name all such Logan's servers and bartenders, and explain how you acquired personal knowledge of the tip amounts received by those individuals.

ANSWER: Every single day all my friends (including Charles Baker, Shay Seibert, Madison Scott, Maddy Mayor, Kiera Williams, Chad Hall, Tabitha Chinn, Sam Spiegel, Jordan (last name unknown), Katy Reuter, MacKenzie Mooney, Michael Petree, Michael (last name unknown), Chase (last name unknown), and others whose names I cannot remember) talked about how much money we made or didn't make.

30. Please identify every occasion on which you personally reviewed the total amount of cash tips declared for a shift by another server or bartender.

ANSWER: Every shift.

31. Please identify every occasion on which you personally reviewed the total amount of credit card tips for a shift credited to another server or bartender by Logan's.

ANSWER: Every shift.

6

32. During the time you worked for Logan's as a tipped server or bartender, please describe in detail all of the job duties that you performed.

ANSWER: Scooped butter, set up lines, cut lemons, polished and rolled silverware, set up dressings/flipped dressings/stocked dressings, changed the sugar caddies, dump salt/pepper, sweep, scrub floor, wipe tables, bus tables, bake bread, make salads, dumped trash, run food, weight tables, made bar drinks, ran soda drinks, poured beer, changed 30 pound syrup bags for soda machines, ring in orders, washed dishes, racked cups, got cups for bar and front-of-house from back, cleaned booster seats/highchairs, cleaned windows/blinds, changed lightbulbs, changed the kegs, stocked beer, and cleaned fans for dust. clean bathrooms, sweep, clean windows, arrange menus, and clean the ash tray.

33. During all of the shifts for which you were clocked-in at Logan's as a tipped server or bartender, did your duties include waiting on customers?

ANSWER: Yes.

34. If your answer to question number 33 is NO, identify all shifts during which you were clocked-in as a tipped server or bartender, but did not wait on any customers, and identify the job duties that you did perform during those shifts.

ANSWER: Not applicable.

35. Describe your understanding of what constitutes "side work."

ANSWER: Side work at Logan's is that we had a side-work list with our names next to side-work tasks (divided equally/unequally, depending on which job you had) and also what the manager tells you to do in order to walk out after the end of your work shift.

36. Were you ever asked or instructed to perform side work while clocked-in at Logan's as a tipped employee?

ANSWER: Yes.

37. If your answer to question number 36 is YES, identify by name and position the person who told you to perform that side work, the position that you then held at Logan's, and the Logan's location where you were then working.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Every manager in both positions at the Pearl Drive location, including: General Mgr. Pat Davis, Kitchen Manager Michelle, Bar Manager, Kevin, Front of house manager Shannon, Team Lead Back of House April Keyes, Team Lead Front of House Charles Baker, Bar Lead Ruthie Huckaby.

7

38. If your answer to question number 36 is YES, please describe in as great detail as you can recall today, what you were instructed to do by each individual who you have identified. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this objection, Plaintiff answers as follows: Every manager instructed me to do all the following side-work tasks, either directly or indirectly (either from manager's mouth or training or from that side-work task list, managers put side-work tasks on list but host/hostess assigned them): Scooped butter, set up lines, cut lemons, polished and rolled silverware, set up dressings/flipped dressings/stocked dressings, changed the sugar caddies, dump salt/pepper, sweep, scrub floor, wipe tables, bus tables, bake bread, make salads, dumped trash, run food, weight tables, made bar drinks, ran soda drinks, poured beer, changed 30 pound syrup bags for soda machines, ring in orders, washed dishes, racked cups, got cups for bar and front-of-house from back, cleaned booster seats/highchairs, cleaned windows/blinds, changed lightbulbs, changed the kegs, stocked beer, and cleaned fans for dust, clean bathrooms, sweep, clean windows, arrange menus, and clean the ash tray.

39. Describe in detail all side work tasks that you were instructed to perform at any time during your employment with Logan's.  In so doing, please specify the particular side work tasks that you were requested to perform in connection with each position you held, and in connection with each Logan's restaurant at which you worked.
ANSWER:
Server at Pearl Drive: Scooped butter, set up lines, cut lemons, polished and rolled silverware, set up dressings/flipped dressings/stocked dressings, changed the sugar caddies, dump salt/pepper, sweep, scrub floor, wipe tables, bus tables, bake bread, make salads, dumped trash, run food, weight tables, made bar drinks, ran soda drinks, poured beer, changed 30 pound syrup bags for soda machines, ring in orders, washed dishes, racked cups, got cups for bar and front-of-house from back, cleaned booster seats/highchairs, cleaned windows/blinds, changed lightbulbs, changed the kegs, stocked beer, and cleaned fans for dust.
Host for Pearl Drive: clean bathrooms, sweep, clean windows, arrange menus, and clean the ash tray.

40. Did anyone other than your supervisors at the Logan's restaurant location(s) where you worked ever assign you side work or give you instructions regarding how much side work to perform?
ANSWER:  The veteran servers, the people who were there the longest would instruct you what to do and how long it should take and how it should look.

8

41. As to each side work task identified in response to question number 39, during what percentage of your work shifts were you required to perform that particular task (*e.g.*, 100% of shifts, 50% of shifts, 10% of shifts, *etc.*)?

ANSWER: Scooped butter (10%), set up lines (10%), cut lemons (20-30%), polished and rolled silverware (100%), set up dressings/flipped dressings/stocked dressings (30%), changed the sugar caddies (20%), dump salt/pepper (20%), sweep (100%), scrub floor (70%), wipe tables (100%), bus tables (100%), bake bread (100%), make salads (50%), dumped trash (70%), changed 30 pound syrup bags for soda machines (30%), washed dishes (40%), racked cups (100%), got cups for bar and front-of-house from back (100%), cleaned booster seats/highchairs (10%), cleaned windows/blinds (10%), changed lightbulbs (5%), changed the kegs (40%), stocked beer (10%), cleaned fans for dust (5%), clean bathrooms (70%) , sweep (100%), clean windows (50%), arrange menus (50%), and clean the ash tray (30%).

42. As to each side work task identified in response to question number 39, how much time did it generally take you to complete that task?

ANSWER: Scooped butter (40 minutes/shift), set up lines (20 minutes/shift), cut lemons (10 minutes/shift), polished and rolled silverware (10-90 minutes/shift), set up dressings/flipped dressings/stocked dressings (20-60 minutes/shift), changed the sugar caddies (20 minutes/shift), dump salt/pepper (20 minutes/shift), sweep (30 minutes/shift), scrub floor (15 minutes/shift), wiping and bussing tables (30-60 minutes/shift), bake bread (10 minutes/shift), make salads (30 minutes/shift), dumped trash (10 minutes/shift), changed 30 pound syrup bags for soda machines (10 minutes/shift), washed dishes (5-10 minutes/shift), racked cups and got cups for bar and front-of-house from back (20 minutes/shift), cleaned booster seats/highchairs (5 minutes/shift), cleaned windows/blinds (10 minutes/shift), changed lightbulbs (2-3 minutes/shift), changed the kegs (8 minutes/shift), stocked beer (5 minutes/shift), cleaned fans for dust (5 minutes/shift), clean bathrooms (15-30 minutes/shift), sweep (15-30 minutes/shift), arrange menus (15 minutes/shift), and clean the ash tray (10 minutes/shift).

43. When you reported your hours worked for each shift at Logan's, did you ever indicate on your time records the amount of time you spent performing side work?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

44. At any time during your employment with Logan's, did you ever keep any records of the amount of time you spent performing side work?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification

9

stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not on the record.

45. If your answer to question number 44 is YES, please describe in detail the records that you kept and attach copies of those records to your response.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

46. If your answer to question number 44 is NO, isn't it true that you can only speculate as to how much time you spent performing side work during any particular shift or workweek while you were employed by Logan's?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

47. If your answer to question number 46 is NO, please explain in detail how you can determine how much time you actually spent performing side work during any particular shift or workweek while employed by Logan's without guessing or speculating.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

48. Identify each shift and/or workweek for which you can identify exactly how much time you spent performing side work, and specify how much time you spent on side work during each such shift and/or workweek.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Based on repetition, experience, and the amount of hours I've put into the restaurant, I can tell how long each action takes and about the time each task will be completed, because I wanted to leave at a certain time, making arrangements, succeeding

10

and failing based on the amount of time I've put into the restaurant. I used to check side work because I checked it when I closed, and I closed 90% of the time.

49. Did the amount of time you were requireed to spend on side work vary significantly depending on the overall length of your work shift, or was the time required for side work more or less constant regardless of the overall length of the shift?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes. The amount of time I was required to spend on side work varied significantly depending on the overall length of the work shift.

50. If the time required to complete side work was more or less constant regardless of the overall length of your work shift, please specify the total amount of time in minutes that was generally required to complete your side work per shift.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

51. During the time you were employed by Logan's, how did you keep a record of the tips you earned? ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I wrote them down in my tip book, and at the end of the shift I would drop my money into the drop box and however much I had left was my tips.

52. During the time you were employed by Logan's, how did Logan's keep a record of the tips you earned?

ANSWER: Through their database. It was all computerized.

53. Was there any difference in how you kept a record of your credit card tips and cash tips?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this

11

objection, Plaintiff answers as follows: I would write both my tips down in my book, but to check at the end of the night I could look at my drop slip and see how much I made in credit card slips (or do my check sum and print one out).

54. Was there any difference in how Logan's kept a record of your credit card tips and cash tips?

ANSWER: It was all in the same computer system. My card would track all my cash and credit card tips.

55. If your answer to either question numbers 52 or 53 is YES, please explain the difference in how your credit card tips and cash tips were recorded by you and/or Logan's?

ANSWER: Everything was the same.

56. During the time you were employed by Logan's, did you ever falsely declare the amount of tips you received (either more or less than you actually received)?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

57. If your answer to question number 56 is YES, identify each time you falsely declared the amount of your tips, and describe how and why you did so.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: At certain points, where I didn't make enough money throughout the week, my manager asked me to declare more tips in order to cover labor costs. My manager said it would average out at the end of the week.

58. Was the amount of tips you declared to Logan's always the same amount you declared on your filed tax returns? If not, explain why.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

59. Did anyone at Logan's ever require you to declare the amount of your tips falsely?

12

ANSWER: Yes.

60. If your answer to question number 59 is YES, please identify by name and position all Logan's employees who required you to declare the amount of your tips falsely.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: General Manager Pat Davis, front-of-house manager Shannon (last name unknown), and Kitchen Manager Michelle (last name unknown).

61. As to each Logan's employee identified in response to question number 60, identify each and every time that employee required you to declare the amount of your tips falsely, and describe in detail all communications that occurred regarding the requirement that you declare the amount of your tips falsely.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: It happened three times with Michelle. She asked me to claim more tips if they were low on their labor hours so Logan's wouldn't have to pay more money at end of week for their labor. The first two times, I did what Michelle asked, but then I told her this is kind of illegal, but Kitchen Manager Michelle (last name unknown) said it will average out at the end of the week. The third time I disobeyed her by recording my correct tips. Pat asked me to claim the wrong tip once with Pat. I still recorded my own tip, even though he was not happy. One time with Shannon, I brushed off her instructions and put the real amount.

62. Did you receive a copy of Logan's employee handbook when you were hired by Logan's?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I did.

63. Did you receive copies of other written policies and procedures from Logan's during your employment and, if so, please describe those policies and procedures. If you still have those policies and procedures, please attach copies to your response.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification

13

stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I received documents upon first being hired or if changed rules (ex. uniforms or apparel allowed to be worn). They gave us paperwork on different dishes if the menu changed. I don't have any of those policies and procedures.

64. Did you attend employee orientation and/or training concerning Logan's employee handbook, and/or policies and procedures? If so, please identify the date, location and topics covered during the orientation and/or training.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I did. I don't remember, but I basically didn't pay attention because it was literally a joke.

65. Did you receive copies of Logan's policies and procedures, including the employee handbook, sometime after your initial hire by Logan's?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes, I received a training manual Employee Handbook, and I had to return it upon completion of training.

66. Do you recall signing the declaration attached hereto as Exhibit Q in connection with this lawsuit? ANSWER: Yes.

67. Did you ever receive any communications or training from Logan's on federal or state wage laws, and/or the application of a tip credit to your wages? If so, state when this occurred, and describe the communications and/or training.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

68. In your declaration, you state that "management required me to declare tips I never received so the company could avoid paying me supplemental pay to satisfy the $7.25 per hour minimum wage rate requirement." Is this statement true?

14

ANSWER: Yes.

69. If your answer to the preceding question is YES, identify by name and position every "management" employee who required you to declare your tips falsely.

ANSWER: General Manager Pat Davis, front-of-house manager Shannon (last name unknown), and Kitchen Manager Michelle (last name unknown).

70. If you were required to declare tips falsely, identify every date on which you were required to do so.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I cannot recall the exact dates.

71. Explain what you mean by "supplemental pay" in your declaration.

ANSWER: As a server, the amount of hourly wage is not average minimum wage. Logan's should supply you with money to make it up to minimum wage.

72. When you state in your declaration that you were required to perform "side work" in excess of twenty percent (20%) of your work time, does that include any side work that you performed while you had seated customers for whom you were also responsible?

ANSWER: Yes, I included it.

73. Do you understand that the statements in your declaration, and your responses to these deposition questions, were and are made under oath, and are subject to the same laws prohibiting perjury that apply to statements made while testifying in court?

ANSWER: Yes.

74. You hand-wrote your work location, dates of employment, your signature and the date on your declaration. Was the rest of the declaration prepared by someone else? When you signed the declaration, did it look exactly like the attached copy?

ANSWER: Yes. Yes.

75. Before you signed your declaration, did you read the entire document?
ANSWER: Yes.

76. Before you signed the declaration, did anyone interview you about your personal experiences while working at Logan's?

15

ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection: Yes.

77. Before you signed the declaration, did anyone ask you whether the contents of the declaration were accurate?

ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection: No.

78. Please review your attached declaration. Are there any statements in the declaration that don't apply to your work experience at Logan's, or that aren't accurate?

ANSWER: The only thing that was not accurate was that Logan's did pay me minimum wage for training time but not for the rest of my shifts.

79. If your answer to question number 78 is YES, please identify every statement in your declaration that doesn't apply to you and/or isn't accurate, and explain in detail why that is so.

ANSWER: The only thing that was not accurate was that Logan's did pay me minimum wage for training time but not for the rest of my shifts. I just missed that part when reading over the declaration. *Please see* Corrected Declaration (Ex. AA).

80. Did anyone ask you if the contents of your declaration needed to be changed before you signed it?

ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection: No.

81. In making the statements under oath contained in your declaration, how did you determine that while working for Logan's you "have been required to perform non-tip producing 'side work' in excess of twenty percent (20%) of [your] work time"?

ANSWER: Working at another restaurant that doesn't require side work has opened my eyes to the vast difference between non-tipped side work at Logan's and Applebee's clocking you in at minimum wage if you start doing side work.

82. When you state under oath in your declaration that while employed by Logan's, you "have been required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee," and that you have observed other Logan's tipped employees doing the same, what exactly is the non-tip producing work to which you refer? Is that work different from the side work you described earlier?

ANSWER: Scooped butter, set up lines, cut lemons, polished and rolled silverware, set up dressings/flipped dressings/stocked dressing, changed the sugar caddies, dump salt/pepper, sweep, scrub floor, wiping and bussing tables, bake bread, make salads, dumped trash, changed 30 pound syrup bags for soda machines, washed dishes, racked cups and got cups for bar and

16

front-of-house from back, cleaned booster seats/highchairs, cleaned windows/blinds, changed lightbulbs, changed the kegs, stocked beer, cleaned fans for dust, clean bathrooms, sweep, arrange menus, and clean the ash tray.

No, that work is not different from the side work you described earlier.

83. If the "non-tip producing work" referred to in your declaration is different from the side work you described earlier, please describe the specific tasks included in that "non-tip producing work" in detail. ANSWER: Any action not pertaining to the interaction with guests and that does not result in a tip, should be considered non-tipped side work.

84. With regard to each type of "non-tip producing work," other than side work, identified in response to the preceding question, please identify the percentage of your work shifts (e.g., 100% of shifts, 50% of shifts, 10% of shifts, etc.) during which you performed such work, and how much time you spent during each shift, and collectively during each workweek, performing such work.

ANSWER: Any action not pertaining to the interaction with guests and that does not result in a tip, should be considered non-tipped side work.

85. What is the basis for your belief, as stated under oath in your declaration, that you "believe it is a practice of Logan's to require all its tipped employees to perform non-tip producing 'side work' in excess of twenty percent (20%) of their time while clocked-in to the company's payroll system as a tipped employee"?

ANSWER: I believe Logan's does that because my managers have made me do it and I've seen other employees do it too.

86. Do you have personal knowledge concerning the amount and/or type of side work performed at any Logan's restaurant location other than the locations at which you have worked? ANSWER: No.

87. During your employment with Logan's, were you ever required to attend training? If so, please describe in detail the location and subject matter of the training, identify the name(s) and position(s) of the trainer(s), and describe in detail the subject matter and time duration of the training.

ANSWER: Yes, I received training upon being hired as a server for five training shifts. I know we had host training, and I cannot remember how many it was because its been so long. We routinely had training in the morning for menu and drinks changes for about 30 minutes and to receive liquor license through Logans (2 hours). The server trainers were Ruth Ann Huckabee, Kristen (not sure of last name), and Mel (last name unknown). The managers training were Kevin and all other managers previously named. This training was at the Pearl Logan's.

17

88. Other than those employees who attended the same training sessions as you, do you have any personal knowledge regarding whether any other employees of Logan's attended training, or how much time they spent in such training?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes. I witnessed new servers or employees being trained for about 3-5 shifts.

89. During your employment with Logan's, were you ever required to provide training for anyone? ANSWER: Yes.

90. If your answer to question number 89 is YES, identify all occasions on which you trained another employee, the name of each such employee you trained, and how long you spent training that employee.

ANSWER: I trained about four times. I had four training shifts of about 30 minutes to 1.5 hours each for two different people at the Pearl Drive location. Since those two employees quit within a week, I had no time to learn their names.

91. If your answer to question number 89 is YES, describe in detail the nature of the training you provided and how that training was done. For example, did the training consist of allowing another employee to shadow you while you waited on customers and performed other server or bartender job duties?

ANSWER: I trained about four times. I had four training shifts of about 30 minutes to 1.5 hours each for two different people at the Pearl Drive location. Since those two employees quit within a week, I had no time to learn their names. The training consisted of allowing the other employee to shadow me.

92. Have you ever been arrested?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

93. If your answer to question number 92 is YES, identify the date of the arrest, the offense for which you were arrested, and the outcome of any charges?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification

stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

94. Have you ever been convicted of a crime?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

95. If your answer to question number 94 is YES, identify the date of the conviction, the crime for which you were convicted, and the sentence that you were given as a result of the conviction.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

96. Have you ever been involved in a lawsuit prior to this one?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

97. If your answer to question number 96 is YES, identify the other parties involved in the lawsuit, your role in the lawsuit (plaintiff, defendant, or witness), and the outcome of the lawsuit.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

98. Do you know either of the named Plaintiffs in this lawsuit, Carey Bradford or Cody Bolen, personally?

ANSWER: I do not.

19

99. If your answer to question number 98 is YES, explain how you know Carey Bradford or Cody Bolen, including how you came to know them and what communications you have had with them in the past year.

ANSWER: Not applicable.

100. How did you find out about this lawsuit?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Facebook.

101. Are you familiar with the website www.logansofftheclock.com?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I am.

102. If your answer to question number 101 is YES, how did you become familiar with that website?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Facebook.

103. Prior to joining this lawsuit, did you personally know any of the lawyers or employees at the law firm that is representing you?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: No.

104. If your answer to question number 103 is YES, identify by name which lawyers or employees you knew, and describe how you came to know them.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits

20

of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Not applicable.

105. How many communications have you had with the attorneys representing you in this case, and when did those communications occur?

ANSWER: Plaintiff objects to this questions to the extent that the attorney-client and/or work product privilege applies. Subject to and without waiving this objection, Plaintiff answers as follows: Subject to and without waiving this objection, Plaintiff answers as follows: In February 2015, I talked with my attorney twice over paperwork being sent to me and upon receiving the paperwork. Also, I talked with them one time in May 2015 about scheduling the phone call to answer these questions and on June 2, 2015, to answer the questions.

106. Have you had any communications with any current or former Logan's employees about the claims in this lawsuit? ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: Yes.

107. If your answer to question number 106 is YES, identify by name each current or former Logan's employee with whom you have had any communications about the claims in this lawsuit, identify when those conversations occurred, and describe in as great detail as you can the content of those conversations. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I talked to John Defres, Charles Baker, Tabitha Chinn, Audrey Lashbrook, Hanna Abu-Taqa, Sabrina Noel, Eric Cox, Katy Reuter, and Chad Hall around February of 2015, and I asked them have you heard of the lawsuit going on and if not to sign up.

108. Have you had any communications with anyone other than your lawyers about the claims in this lawsuit? ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: My parents.

109. If your answer to question number 108 is YES, identify by name each person with whom you have had any communications about the claims in this lawsuit, identify when those conversations occurred, and describe in as great detail as you can the content of those

21

conversations. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: I talked to Jennifer Wimpelberg and James Wimpelberg around January 2015. I described the lawsuit and compared it to the Applebee's lawsuit that happened a couple of years ago. They said go ahead and do it.

110. Please identify every individual named on the Opt-in List (attached as Exhibit L) with whom you have ever shared a work shift while employed at Logan's. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: None.

111. Please identify every individual named on the Opt-in List attached hereto with whom you have ever attended a training session while employed at Logan's. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: None.

112. Please identify every individual named on the Opt-in List attached hereto with whom you have ever communicated regarding your work and/or compensation at Logan's including the application of tip credits by Logan's, any side work required by Logan's and any instructions by managers at Logan's that employees declare their tips falsely. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: None.

113. Please identify every individual named on the Opt-in List attached hereto whom you have never met and with whom you have never communicated. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: All, except for myself.

22

State of Indiana            )
County of Vanderburgh       )

    I, Zachery Wimpelberg, having been duly sworn, make oath that the answers stated in the foregoing Answers to Questions Propounded to Zachery Wimpelberg are true to the best of my knowledge, information, and belief.

                                             Zachery Wimpelberg

    I, Brandi Rhea , a Notary Public in and for said State and County, hereby certify that Zachery Wimpelberg, whose name is signed to the foregoing document, and who is known to me, acknowledged before me on this date that being informed of the contents of said document and being authorized to do so, he executed the same voluntarily on the date the same bears date.

    Given under my hand and seal on this the _9th_ day of June, 2015.

{SEAL}

                    Brandi R. Rhea

                    Notary Public

                    My Commission Expires: _01-01-2021_

DATED: June 10, 2015

As to objections,

Gordon E. Jackson (TN Bar No. 08323)
James L. Holt, Jr. (TN Bar No. 12123)
JACKSON, SHIELDS, YEISER & HOLT
Attorneys at Law
262 German Oak Drive
Memphis, TN 38018
(901) 754-8001 (Phone)
(901) 754-8524 (Facsimile)
*gjackson@jsyc.com*
*jholt@jsyc.com*

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I, Gordon E. Jackson, certify that I caused a copy of the foregoing **Zachery Wimpelberg's Answers to Written Questions** to be served on Defendants' counsel on June 10, 2015 by First Class Mail and email at the following addresses:

Andrew S. Naylor
K. Coe Heard
Britney R. Stancombe
Waller, Lansden, Dortch & Davis
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN 37219
Email: andy.naylor@wallerlaw.com
Email: coe.heard@wallerlaw.com
Email: brittany.stancombe@wallerlaw.com

Thomas E. Hill
Christina T. Tellado
Reed Smith LLP
355 S Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Email: thill@reedsmith.com
Email: ctellado@reedsmith.com
Email: pstuhldreher@reedsmith.com

Michael D. Jones
Reed Smith LLP
3 Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103-2762
Email: mdjones@reedsmith.com

Peter J. Stuhldreher
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX 77002-6110
Email: pstuhldreher@reedsmith.com

# EXHIBIT Q

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| CAREY BRADFORD and CODY BOLEN,<br>Individually and on behalf of others<br>similarly situated.<br>          Plaintiffs, | )<br>)<br>)<br>)<br>) |
| v. | )   No. 3:14-cv-2184<br>) |
| LOGAN'S ROADHOUSE, INC.,<br>a Tennessee Corporation,<br>LRI HOLDINGS, INC.,<br>a Delaware Corporation,<br>ROADHOUSE HOLDING, INC.,<br>a Delaware Corporation, | )<br>)   FLSA Opt-In Collective Action<br>)<br>)<br>)<br>)   JURY TRIAL DEMANDED |
|           Defendants. | )<br>) |

## DECLARATION OF ZACHERY WIMPELBERG

I, Zachery Wimpleberg, hereby submit this declaration and state as follows:

1.  I worked for Logan's Roadhouse, Inc. ("Logan's") as a tipped-employee at its restaurant located in Evansville, IN during June 2013 - 13, February, 2015

2.  As a tipped employee at Logan's, I received a reduced hourly rate of pay less than the minimum wage rate of $7.25 per hour..

3.  As a tipped employee, my principal job duties were to wait on and serve customers.

4.  I have observed that the work I performed for Logan's as a tipped employee was essentially the same work that other Logan's tipped employees were required to perform with regard to both tipped and non-tip producing job duties.

5.     While employed by Logan's during the time period noted above, I have been required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee, and received less than the minimum wage rate of $7.25 an hour for such work. I likewise have observed other Logan's tipped employees being required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee, while receiving less than the minimum wage rate of $7.25 rate an hour for such work--during such time period

6.     In addition, while employed by Logan's during the time noted above and clocked-in to the company's payroll system as a tipped employee, I have been required to perform non-tip producing "side work" in excess of twenty percent (20%) of my work time (such as rolling silverware, refilling sugar caddies, salt and pepper shakers, ice, condiments, cleaning chairs, tables, booths, restaurant artifacts and décor, lights, blinds, windows, as well as closing out customers checks and performing pre-closing cleaning tasks, vacuuming and/or sweeping the server's assigned area and checking dishes, napkins, and utensils, etc.), while receiving less than the minimum wage rate of $7.25 an hour for such "side work" time.

7.     I likewise have observed other Logan's tipped employees receiving less than the minimum wage rate of $7.25 an hour for such non-tip producing "side work".

8.     I believe it is a practice of Logan's to require all its tipped employees to perform non-tip producing "side work" in excess of twenty percent (20%) of the their time while clocked-in to the company's payroll system as a tipped employee, without being paid at least the minimum wage rate of $7.25 for such "side work" time.

9.     While employed by Logan's as a tipped employee during the period noted above, I have been required to attend company mandatory training without receiving at least the minimum

wage rate of $7.25 for such training time. I also have observed other Logan's tipped employees during such time period being required to attend company mandatory training without being paid at least the minimum wage rate of at least $7.25 per hour for such training time.

10.     Also, while employed at Logan's as a tipped employee, management required me to declare tips I never received so the company could avoid paying me supplemental pay to satisfy the $7.25 per hour minimum wage rate requirement.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing declarations are true and correct. Executed on this 13 day of February, 2015.

Zachery Wimpelberg, Declarant

# EXHIBIT R

**EXHIBIT R:** *Bradford et al v. Logan's* **- List of Plaintiffs**

| | First Name | Last Name |
|---|---|---|
| 1 | Arielle Ann | Aldrich |
| 2 | Samantha Lee | Arnold |
| 3 | William Corey | Barry |
| 4 | Angel | Bartelt |
| 5 | Justin | Beavers |
| 6 | LaTonia | Bennett |
| 7 | Shane Sumner | Bodden |
| 8 | Raphael | Boldrick |
| 9 | Cody | Bolen |
| 10 | Carey | Bradford |
| 11 | Tyler | Bransom |
| 12 | Kimberly | Brewer |
| 13 | Jonathan Patrick | Brown |
| 14 | Marquis | Brown |
| 15 | Michael Marcell | Brown |
| 16 | Christopher | Bryant |
| 17 | Laurel Michelle | Bryant |
| 18 | Karri | Busard |
| 19 | Aaron | Byrd |
| 20 | Tarmeca Maria | Campbell |
| 21 | Savannah | Carrick |
| 22 | Jessica | Clark-Clardy |
| 23 | Jaclyn | Cooper |
| 24 | Anna Madison | Copeland |
| 25 | James Robert | Corley Jr. |
| 26 | Roderick | Davis Jr. |
| 27 | Jacob Lee | Demoss |
| 28 | Ellen | Dent |
| 29 | Amy Nicole | Derrington Norton |
| 30 | Hayden | Dollar |
| 31 | John | Duncan |
| 32 | Ashley | Elgin |
| 33 | Amy Jo | Ford |
| 34 | Nicole | Foster |
| 35 | Gabrielle | Frey |
| 36 | Ashley | Fulcher |
| 37 | Dustin Dewayne | Gilbert |

|    | **First Name**    | **Last Name**        |
|----|-------------------|----------------------|
| 38 | Jordan Lee        | Goggin               |
| 39 | Tia Jannelle      | Haddox               |
| 40 | Thomas            | Hartung              |
| 41 | Nicholas Stephen  | Holman               |
| 42 | Brandy            | Holt-Anna            |
| 43 | Clifford          | Hughes               |
| 44 | Marcie Lynn       | Hunter               |
| 45 | Wendy             | Hymer                |
| 46 | Syreeta           | Jackson              |
| 47 | Jeffrey           | Jernigan             |
| 48 | Lillian           | Kelter               |
| 49 | Ashley Nicole     | Kennedy              |
| 50 | Kristyn           | King                 |
| 51 | Linda Sue         | Kurtz                |
| 52 | Chadwick Anson    | Layne                |
| 53 | Shayne            | Lenfestey            |
| 54 | Angelina Marie    | Lewis                |
| 55 | Bobbie            | Longmire             |
| 56 | Kimberly Nichole  | Lynn                 |
| 57 | Austin Gunnar     | Maher                |
| 58 | Jeanan            | Mayfield             |
| 59 | Darreo            | McCall               |
| 60 | Jessica           | McClellan            |
| 61 | Jason             | McGee                |
| 62 | Joel              | Merchant             |
| 63 | Cassie            | Miller               |
| 64 | Jeremy            | Mitchell             |
| 65 | William           | Moody                |
| 66 | Jordan Scott      | Moore                |
| 67 | Tracy Denise      | Nicholas             |
| 68 | Heather           | Oakley               |
| 69 | Larita Joy        | O'Brien              |
| 70 | Yolanda           | Osborne Youngblood   |
| 71 | David             | Parish               |
| 72 | Corinne           | Pennington           |
| 73 | Kelly             | Pilet                |
| 74 | Justin Blaine     | Potts                |
| 75 | Cori Amber        | Rascati              |
| 76 | Jessica Lynn      | Ratliff              |
| 77 | Jennifer          | Reece                |

|    | **First Name**      | **Last Name** |
|----|---------------------|---------------|
| 78 | Robyn Elizabeth     | Reeves        |
| 79 | Latanya Dialishiah  | Rodgers       |
| 80 | James               | Roten         |
| 81 | Stacey              | Russell       |
| 82 | Keita               | Shearin       |
| 83 | Suzanne Angela      | Sherrill      |
| 84 | Amanda              | Siroki        |
| 85 | Destiny             | Stafford      |
| 86 | Shawn Michael       | Straughn      |
| 87 | Tristan James       | Warsham       |
| 88 | Anthony             | Wiggins       |
| 89 | Zachery Scott       | Wimpelberg    |
| 90 | Shelly              | Wood          |
| 91 | Markala             | Wretling      |

| | |
|---|---|
| CAREY BRADFORD and CODY BOLEN, Individually and on behalf of others similarly situated. | ) ) ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 3:14-cv-2184 |
| | ) |
| LOGAN'S ROADHOUSE, INC., a Tennessee Corporation, | ) ) FLSA Opt-In Collective Action |
| LRI HOLDINGS, INC., a Delaware Corporation, | ) ) |
| ROADHOUSE HOLDING, INC., a Delaware Corporation, | ) ) JURY TRIAL DEMANDED |
| | ) |
| Defendants. | ) |
| | ) |

## AMENDED DECLARATION OF ZACHERY WIMPELBERG

I, Zachery Wimpelberg, hereby submit this declaration and state as follows:

1.     I worked for Logan's Roadhouse, Inc. ("Logan's") as a tipped-employee at its restaurant located in Evansville, IN during June 2013-13, February, 2015.

2.     As a tipped employee at Logan's, I received a reduced hourly rate of pay less than the minimum wage rate of $7.25 per hour.

3.     As a tipped employee, my principal job duties were to wait on and serve customers.

4.     I have observed that the work I performed for Logan's as a tipped employee was essentially the same work that other Logan's tipped employees were required to perform with regard to both tipped and non-tip producing job duties.

5.     While employed by Logan's during the time period noted above, I have been required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped

1

EXHIBIT

AA

employee, and received less than the minimum wage rate of $7.25 an hour for such work. I likewise have observed other Logan's tipped employees being required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee, while receiving less than the minimum wage rate of $7.25 rate an hour for such work--during such time period.

6. In addition, while employed by Logan's during the time noted above and clocked-in to the company's payroll system as a tipped employee, I have been required to perform non-tip producing "side work" in excess of twenty percent (20%) of my work time (such as rolling silverware, refilling sugar caddies, salt and pepper shakers, ice, condiments, cleaning chairs, tables, booths, restaurant artifacts and décor, lights, blinds, windows, as well as closing out customers checks and performing pre-closing cleaning tasks, vacuuming and/or sweeping the server's assigned area and checking dishes, napkins, and utensils, etc.), while receiving less than the minimum wage rate of $7.25 an hour for such "side work" time.

7. I likewise have observed other Logan's tipped employees receiving less than the minimum wage rate of $7.25 an hour for such non-tip producing "side work".

8. I believe it is a practice of Logan's to require all its tipped employees to perform non-tip producing "side work" in excess of twenty percent (20%) of the their time while clocked-in to the company's payroll system as a tipped employee, without being paid at least the minimum wage rate of $7.25 for such "side work" time.

2

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing declarations are true and correct. Executed on this 9th day of June, 2015.

_____, Declarant
Zachery Wimpelberg