# EXHIBIT 6

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

**CAREY BRADFORD and CODY BOLEN,**
**Individually and on behalf of all other**
**similarly situated current and former**
**employees,**

**Plaintiffs,**

**v.**

**LOGAN'S ROADHOUSE, INC.,**
**a Tennessee Corporation,**
**LRI HOLDINGS, INC.,**
**a Delaware Corporation,**
**ROADHOUSE HOLDING, INC.,**
**a Delaware Corporation,**

**Defendants.**

**NO. 3:14-cv-02184**

**Judge Trauger**

**FLSA Opt-In Collective Action**

**JURY TRIAL DEMANDED**

## ANSWERS TO QUESTIONS PROPOUNDED TO MARKALA WRETLING

1.  Please state your full name, current address, current telephone number, and social
    security number. ANSWER: Markala Marie Wretling,

2. Please describe everything you did to prepare for your deposition, including whether you
had any conversations with your attorneys, when those conversations occurred, and how long
those conversations lasted.

ANSWER: Plaintiff objects to the extent that the attorney-client privilege applies to this
question. Subject to and without waiving such objection:

1

I didn't talk to anyone, I included myself in this lawsuit through a friend.

3. If you reviewed any documents to prepare for your deposition, please identify each of the documents you reviewed and attach copies to your response.

ANSWER:

I didn't have any preperation.

4. Please identify each Logan's restaurant at which you have worked, including the restaurant's address and restaurant number, if you know it?

ANSWER:

Logan's I-35 & 69 Hyw off 135th St., Speedway location.

2

5. Please identify the time periods during which you worked at each Logan's restaurant that you identified in response to question number 4.

ANSWER:
I worked a variation of hours & days.

6. Please identify by name and position each supervisor to whom you directly reported at any time during your employment with Logan's, and the periods of time during which you reported to each such supervisor.

ANSWER:
Chris Bass, Robert Foxx, Michelle Murray, Earie, Briana Wells, Lisa Clinton

7. Please identify by name and position with Logan's each supervisor to whom you reported indirectly, or who otherwise had any authority over you, at any time during your employment with Logan's, including, but not limited to, the General Manager(s) of the restaurant(s) at which you worked, and the periods of time during which you reported to each such manager.

3

ANSWER:

answered in ?#7

8. At any time during your employment with Logan's, did you ever have any communications regarding your work and/or pay with any Logan's employee who worked at a location other than the Logan's restaurant where you worked?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

no

9. If your answer to question number 8 is YES, then identify all such employees with whom you had any such communications, and describe in as great detail as you can the substance of those communications. ANSWER: Plaintiff objects to answering this question, which is outside the

4

scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

10. At any time during your employment with Logan's did you ever have any communications regarding your work and/or pay with any Logan's employee who worked at Logan's' corporate headquarters? ANSWER:

11. If your answer to question number 10 is YES, then identify all such employees with whom you had any such communications, and describe in as great detail as you can the substance of those communications.

ANSWER:

5

12. What is Logan's' defined workweek (for purposes of the Fair Labor Standards Act), if you know it?

ANSWER:

13. Did any of your supervisors at Logan's ever shadow you to observe your work performance throughout an entire work shift? Throughout an entire workweek? If so, identify by name and position the supervisor(s) who did so and when this occurred.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

6

_____

_____

_____.

14. Did you ever measure and/or record the amount of time that you spent performing

particular tasks during an entire work shift and/or an entire workweek while employed at Logan's?

ANSWER:

We have so many tasks. ?

_____

_____

_____.

15. If the answer to the preceding question was "yes," then explain fully how you measured

and/or recorded the time you spent on each task, and describe the results of those measurements

and/or recordations on each such occasion.

ANSWER:

_____

_____

_____

_____.

7

16. What was your job title during your employment with Logan's? If you had different job titles at different times, please identify each job title you held, the periods of time during which you held each such job title, and the Logan's restaurant location where you were working when you held that job title.

ANSWER:

Server / Bartender - nov. 2011 — Dec. 2014

17. For each of the positions identified in response to question number 16, please state whether you regularly received tips of $30 or more per month in connection with your work in that position.

ANSWER:

yes - as a server / bartender not other positions

18. For each of the positions identified in response to question number 16, please identify the percentage number of your work hours (*e.g.*, 100% of hours, 50% of hours, 10% of hours, *etc.*) for which Logan's took a tip credit against its minimum wage obligation to you.

8

ANSWER:

_____

_____

_____

_____.

19. For each of the positions identified in response to question number 16, please state the applicable hourly cash wage that you received from Logan's after the application of any tip credit by Logan's.

ANSWER:

I always made $ 2.13 per hr.

_____

_____

_____.

20. Please explain your understanding of how your minimum wage rate was impacted by any tip credits taken by Logan's.

ANSWER:

_____

_____

_____

_____.

9

21. During the time that you were employed by Logan's, did you ever supervise anyone?

ANSWER:

yes.

22. If your answer to question number 21 is YES, identify all employees who you supervised, the time periods during which you supervised them, what supervisory duties you had with regard to each such employee, and the Logan's restaurant location where you worked when you supervised those employees.

ANSWER:

I can't answer all of that. I was put in a supervisor position all the time, cause we were short handed & I could make the guests happy.

23. Did you ever spend an entire work shift doing nothing other than shadow another server or bartender?

ANSWER:

yes

10

24. Did you ever clock another server or bartender in or out of Logan's time recording system? If so, please identify that employee by name.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

Yes, to help the closing manager.

25. If your answer to question number 24 is YES, state the hourly rate of pay at which any employee who you identified was clocked in.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this

11

objection,                Plaintiff            answers           as            follows:

I don't know anybody's pay.

26. Please identify every occasion on which you personally reviewed a paycheck that Logan's provided another server or bartender.

ANSWER:

all the time, if "the log" was always laying out. When I had to sign for my check you could see everybody's.

27. For each Logan's server or bartender whose paycheck you personally reviewed, identify by name the person whose pay check you reviewed, and state when you reviewed their paycheck, why you did so, and what, if anything, you recall about their paycheck.

ANSWER:

all the information was in a log.

12

28. Do you have personal knowledge of the amount of tips received by any other Logan's server or bartender with respect to any particular work shift? YES.

ANSWER:
All servers & bartenders talk about how much tips they made in that night. The managers would ask all of us how much we made everynight.

29. If your answer to question number 28 is YES, then identify by name all such Logan's servers and bartenders, and explain how you acquired personal knowledge of the tip amounts received by those individuals.

ANSWER:

30. Please identify every occasion on which you personally reviewed the total amount of cash tips declared for a shift by another server or bartender.

ANSWER:
I was always a "closer" so we saw the

13

_end of shift reports._

31. Please identify every occasion on which you personally reviewed the total amount of credit card tips for a shift credited to another server or bartender by Logan's.

ANSWER:

_Same answer for ? # 30_

32. During the time you worked for Logan's as a tipped server or bartender, please describe in detail all of the job duties that you performed.

ANSWER:

_Waiting tables, making drinks, making salads, making rolls, cleaning tables- floors ect., dusting all the memorbilias(SP?) doing dishes_

33. During all of the shifts for which you were clocked-in at Logan's as a tipped server or bartender, did your duties include waiting on customers? _yes & other duties_

14

ANSWER:

34. If your answer to question number 33 is NO, identify all shifts during which you were
clocked-in as a tipped server or bartender, but did not wait on any customers, and identify the job
duties that you did perform during those shifts.

ANSWER: *I was pulled into the kitchen to work many of times.*
*when the kitchen needed help they would have me work there*
35. Describe your understanding of what constitutes "side work." *but I was still clocked*
*Side work is keeping everything stocked to keep* *in as a server. The manger*
ANSWER: *Your shift moving & not running out* *would say "I'll buy you*
*of stuff.* *told for ght for helping".*
36. Were you ever asked or instructed to perform side work while clocked-in at Logan's as a
*every day. Yor always were clocked in as a server to do "sidework"*
tipped employee?
*Sometimes after a shift or at closing sidework would take a couple*
ANSWER: *of hours.*

37. If your answer to question number 36 is YES, identify by name and position the person
who told you to perform that side work, the position that you then held at Logan's, and the Logan's
location where you were then working. *Both locations, "all managers."*

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the
discovery permitted since the Court limited initial discovery at this pre-conditional certification
stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits
of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this
objection, Plaintiff answers as follows:

38. If your answer to question number 36 is YES, please describe in as great detail as you can
recall today, what you were instructed to do by each individual who you have identified.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the
discovery permitted since the Court limited initial discovery at this pre-conditional certification
stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits

15

of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

clean tables, sweep floors, fill salt/pepper/sugars, clean bread machine, wash silverwear/sort silverwear, wash windows, put new inserts in menus, clean bathrooms, — All this kind of stuff took 2-3 hours every shift.

39. Describe in detail all side work tasks that you were instructed to perform at any time during your employment with Logan's. In so doing, please specify the particular side work tasks that you were requested to perform in connection with each position you held, and in connection with each Logan's restaurant at which you worked.

ANSWER:

_____

_____

_____

_____

40. Did anyone other than your supervisors at the Logan's restaurant location(s) where you worked ever assign you side work or give you instructions regarding how much side work to perform?

ANSWER:

_____

16

41. As to each side work task identified in response to question number 39, during what percentage of your work shifts were you required to perform that particular task (*e.g.*, 100% of shifts, 50% of shifts, 10% of shifts, *etc.*)?

ANSWER:

probably 40% of every shift

42. As to each side work task identified in response to question number 39, how much time did it generally take you to complete that task?

ANSWER:

all of it totaled a couple of hours per shift
But I was a closer every night so I had more
duties.

43. When you reported your hours worked for each shift at Logan's, did you ever indicate on your time records the amount of time you spent performing side work?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

no

44. At any time during your employment with Logan's, did you ever keep any records of the amount of time you spent performing side work?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

no - as a server/bartender you just know.

18

45. If your answer to question number 44 is YES, please describe in detail the records that you kept and attach copies of those records to your response.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

NA—

46. If your answer to question number 44 is NO, isn't it true that you can only speculate as to how much time you spent performing side work during any particular shift or workweek while you were employed by Logan's?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

There's no speculation, I know what & how much I did & other employees Too.

19

47. If your answer to question number 46 is NO, please explain in detail how you can determine how much time you actually spent performing side work during any particular shift or workweek while employed by Logan's without guessing or speculating.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: It's very easy, I worked there for 3½ years.

48. Identify each shift and/or workweek for which you can identify exactly how much time you spent performing side work, and specify how much time you spent on side work during each such shift and/or workweek.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits

20

of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this

objection,                Plaintiff              answers              as              follows:

put of a 36 hour week, at least 6 - 7 hours was sidework.

49. Did the amount of time you were required to spend on side work vary significantly depending on the overall length of your work shift, or was the time required for side work more or less constant regardless of the overall length of the shift?

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this

objection,                Plaintiff              answers              as              follows:

no it depended on if everyone showed up for their shift. If we were short-handed, some one had to make- up for it.

21

50. If the time required to complete side work was more or less constant regardless of the overall length of your work shift, please specify the total amount of time in minutes that was generally required to complete your side work per shift.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

That's not a valid ? Every position is different & requires different tasks.

51. During the time you were employed by Logan's, how did you keep a record of the tips you earned?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

I claimed all my tips.

22

52. During the time you were employed by Logan's, how did Logan's keep a record of the tips you earned?

ANSWER:

by me claiming them in the computer at the end of my shift.

53. Was there any difference in how you kept a record of your credit card tips and cash tips?

ANSWER:

no

54. Was there any difference in how Logan's kept a record of your credit card tips and cash tips?

ANSWER:

no

23

_____

_____

_____

55. If your answer to either question numbers 52 or 53 is YES, please explain the difference in how your credit card tips and cash tips were recorded by you and/or Logan's?

ANSWER:

NA —

_____

_____

_____

56. During the time you were employed by Logan's, did you ever falsely declare the amount of tips you received (either more or less than you actually received)?

ANSWER:        Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving      this      objection,      Plaintiff      answers      as      follows:

no —

24

57. If your answer to question number 56 is YES, identify each time you falsely declared the amount of your tips, and describe how and why you did so.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

NA

58. Was the amount of tips you declared to Logan's always the same amount you declared on your filed tax returns? If not, explain why.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

25

_ye)_

59. Did anyone at Logan's ever require you to declare the amount of your tips falsely?

ANSWER:

_no —_

60. If your answer to question number 59 is YES, please identify by name and position all Logan's employees who required you to declare the amount of your tips falsely.

ANSWER:     Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving       this         objection,       Plaintiff       answers       as       follows:

_NA_

26

61. As to each Logan's employee identified in response to question number 60, identify each and every time that employee required you to declare the amount of your tips falsely, and describe in detail all communications that occurred regarding the requirement that you declare the amount of your tips falsely.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

N/A

62. Did you receive a copy of Logan's employee handbook when you were hired by Logan's?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this

27

objection,        Plaintiff        answers        as        follows:

_yes_

63. Did you receive copies of other written policies and procedures from Logan's during your employment and, if so, please describe those policies and procedures. If you still have those policies and procedures, please attach copies to your response.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection,        Plaintiff        answers        as        follows:

_I did, but don't have them_
_anymore._

64. Did you attend employee orientation and/or training concerning Logan's employee handbook, and/or policies and procedures? If so, please identify the date, location and topics covered during the orientation and/or training.

28

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

I was corporate trained

65. Did you receive copies of Logan's policies and procedures, including the employee handbook, sometime after your initial hire by Logan's?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

no, I recieved them at my training.

29

66. Do you recall signing the declaration attached hereto as Exhibit T in connection with this lawsuit?

ANSWER: I don't have in front of me so I can't say.

67. Did you ever receive any communications or training from Logan's on federal or state wage laws, and/or the application of a tip credit to your wages? If so, state when this occurred, and describe the communications and/or training.

ANSWER: no

68. In your declaration, you state that "management required me to declare tips I never received so the company could avoid paying me supplemental pay to satisfy the $7.25 per hour minimum wage rate requirement." Is this statement true?

ANSWER: Sometimes, they said they would make it up later.

30

69. If your answer to the preceding question is YES, identify by name and position every "management" employee who required you to declare your tips falsely.

ANSWER:

all of managment

70. If you were required to declare tips falsely, identify every date on which you were required to do so.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving this objection,        Plaintiff        answers        as        follows:

if I was clocked in as a server & worked on the "line" they would have no claim

31

a certain amount.

71. Explain what you mean by "supplemental pay" in your declaration.

ANSWER:

72. When you state in your declaration that you were required to perform "side work" in excess of twenty percent (20%) of your work time, does that include any side work that you performed while you had seated customers for whom you were also responsible?

ANSWER:

no

73. Do you understand that the statements in your declaration, and your responses to these deposition questions, were and are made under oath, and are subject to the same laws prohibiting perjury that apply to statements made while testifying in court?

32

ANSWER:

yes I do

74. You hand-wrote your work location, dates of employment, your signature and the date on your declaration. Was the rest of the declaration prepared by someone else?   When you signed the declaration, did it look exactly like the attached copy?

ANSWER:

I filled out everything. (MK)

75. Before you signed your declaration, did you read the entire document?

ANSWER:

yes

33

76. Before you signed the declaration, did anyone interview you about your personal experiences while working at Logan's?

ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection:

no

77. Before you signed the declaration, did anyone ask you whether the contents of the declaration were accurate?

ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection:

no

78. Please review your attached declaration. Are there any statements in the declaration that don't apply to your work experience at Logan's, or that aren't accurate?

ANSWER:

no

34

79. If your answer to question number 78 is YES, please identify every statement in your declaration that doesn't apply to you and/or isn't accurate, and explain in detail why that is so.

ANSWER:

80. Did anyone ask you if the contents of your declaration needed to be changed before you signed it?

ANSWER: Plaintiff objects to the extent that the attorney-client and/or work product privilege applies to this question. Subject to and without waiving such objection:

no

35

81. In making the statements under oath contained in your declaration, how did you determine that while working for Logan's you "have been required to perform non-tip producing 'side work' in excess of twenty percent (20%) of [your] work time"?

ANSWER:

I just thought that it was normal.

82. When you state under oath in your declaration that while employed by Logan's, you "have been required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee," and that you have observed other Logan's tipped employees doing the same, what exactly is the non-tip producing work to which you refer? Is that work different from the side work you described earlier?

ANSWER:

Washing dishes, cooking, prep work

36

83. If the "non-tip producing work" referred to in your declaration is different from the side work you described earlier, please describe the specific tasks included in that "non-tip producing work" in detail.

ANSWER:

I would get pulled off the floor to work in the Kitchen, because I know the "specs" & I would have to get the Kitchen "caught up."

84. With regard to each type of "non-tip producing work," other than side work, identified in response to the preceding question, please identify the percentage of your work shifts (e.g., 100% of shifts, 50% of shifts, 10% of shifts, etc.) during which you performed such work, and how much time you spent during each shift, and collectively during each workweek, performing such work.

ANSWER:

Out of a 40hr work week it would some-times be 4 hrs, sometimes 20 hrs.

85. What is the basis for your belief, as stated under oath in your declaration, that you "believe it is a practice of Logan's to require all its tipped employees to perform non-tip producing 'side

37

work' in excess of twenty percent (20%) of their time while clocked-in to the company's payroll system as a tipped employee"?

ANSWER:
Because I lived & saw it everyday for 3 1/2 yrs.

86. Do you have personal knowledge concerning the amount and/or type of side work performed at any Logan's restaurant location other than the locations at which you have worked?

ANSWER:
no—

87. During your employment with Logan's, were you ever required to attend training? If so, please describe in detail the location and subject matter of the training, identify the name(s) and position(s) of the trainer(s), and describe in detail the subject matter and time duration of the training.

ANSWER:
At the time I was hired I was trained

38

_that's all the training I had._

88. Other than those employees who attended the same training sessions as you, do you have any personal knowledge regarding whether any other employees of Logan's attended training, or how much time they spent in such training?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving this objection,                Plaintiff                answers                as                follows:

_no_

89. During your employment with Logan's, were you ever required to provide training for anyone?

ANSWER:

_yes I was a trainer_

39

90. If your answer to question number 89 is YES, identify all occasions on which you trained another employee, the name of each such employee you trained, and how long you spent training that employee.

ANSWER:

I trained 1-2 times per week. I was a trainer.

91. If your answer to question number 89 is YES, describe in detail the nature of the training you provided and how that training was done. For example, did the training consist of allowing another employee to shadow you while you waited on customers and performed other server or bartender job duties?

ANSWER:

the trainee would shadow & then me as a trainer would shadow.

40

92. Have you ever been arrested?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows: That's a crazy? My personal life has nothing to do with my work!

93. If your answer to question number 92 is YES, identify the date of the arrest, the offense for which you were arrested, and the outcome of any charges?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

41

94. Have you ever been convicted of a crime?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

_____

_____

_____

_____

95. If your answer to question number 94 is YES, identify the date of the conviction, the crime for which you were convicted, and the sentence that you were given as a result of the conviction.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

_____

_____

_____

_____

96. Have you ever been involved in a lawsuit prior to this one?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

no

97. If your answer to question number 96 is YES, identify the other parties involved in the lawsuit, your role in the lawsuit (plaintiff, defendant, or witness), and the outcome of the lawsuit.

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

na

43

98. Do you know either of the named Plaintiffs in this lawsuit, Carey Bradford or Cody Bolen, personally?

ANSWER:

no-

99. If your answer to question number 98 is YES, explain how you know Carey Bradford or Cody Bolen, including how you came to know them and what communications you have had with them in the past year.

ANSWER:

na-

100. How did you find out about this lawsuit?

ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits

44

of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this

objection,                Plaintiff               answers               as               follows:

I was contacted by someone when they
had known about the crap that Logan's was
putting me through.

101. Are you familiar with the website www.logansofftheclock.com?

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)  Subject to and without waiving this

objection,                Plaintiff               answers               as               follows:

yes.

102. If your answer to question number 101 is YES, how did you become familiar with that website?

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification

45

stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving this objection,             Plaintiff             answers             as             follows:

a friend of mine told me.

103. Prior to joining this lawsuit, did you personally know any of the lawyers or employees at the law firm that is representing you?

ANSWER:   Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving this objection,             Plaintiff             answers             as             follows:

no

104. If your answer to question number 103 is YES, identify by name which lawyers or employees you knew, and describe how you came to know them.

46

ANSWER:  Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.)   Subject to and without waiving this objection, Plaintiff answers as follows:

_____

_____ NA _____

_____

105. How many communications have you had with the attorneys representing you in this case, and when did those communications occur?

ANSWER:   Plaintiff objects to this questions to the extent that the attorney-client and/or work product privilege applies. Subject to and without waiving this objection, Plaintiff answers as follows:

They contacted me & wanted a verbal statement. I wouldnt do that so they sent me this packet.

106. Have you had any communications with any current or former Logan's employees about the claims in this lawsuit? ANSWER: Plaintiff objects to answering this question, which is outside

47

the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving    this    objection,    Plaintiff    answers    as    follows:

ND ✓

107. If your answer to question number 106 is YES, identify by name each current or former Logan's employee with whom you have had any communications about the claims in this lawsuit, identify when those conversations occurred, and describe in as great detail as you can the content of those conversations. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving    this    objection,    Plaintiff    answers    as    follows:

n p

48

108. Have you had any communications with anyone other than your lawyers about the claims in this lawsuit? ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

No

109. If your answer to question number 108 is YES, identify by name each person with whom you have had any communications about the claims in this lawsuit, identify when those conversations occurred, and describe in as great detail as you can the content of those conversations. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

N/A

110. Please identify every individual named on the Opt-in List (attached as Exhibit L) with whom you have ever shared a work shift while employed at Logan's. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

I don't have a list.

111. Please identify every individual named on the Opt-in List attached hereto with whom you have ever attended a training session while employed at Logan's. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

don't have a list

50

112. Please identify every individual named on the Opt-in List attached hereto with whom you have ever communicated regarding your work and/or compensation at Logan's including the application of tip credits by Logan's, any side work required by Logan's and any instructions by managers at Logan's that employees declare their tips falsely. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

don't have a list

113. Please identify every individual named on the Opt-in List attached hereto whom you have never met and with whom you have never communicated. ANSWER: Plaintiff objects to answering this question, which is outside the scope of the discovery permitted since the Court limited initial discovery at this pre-conditional certification stage to only "Plaintiffs' allegations of a collective action" instead of full discovery on the merits of this case. (Initial Case Management Order, Dkt. 24 ¶ G.) Subject to and without waiving this objection, Plaintiff answers as follows:

don't have a list

51

Case 3:14-cv-02184   Document 93-6   Filed 07/06/15   Page 53 of 63 PageID #: 1015

State of Kansas

County of Wyandotte

I, Markala Wretling, having been duly sworn, make oath that the answers stated in the foregoing Answers to Questions Propounded to Markala Wretling are true to the best of my knowledge, information, and belief.

_Markala Wretling_
Markala Wretling

I, Robert Lee Butler, Jr., a Notary Public in and for said State and County, hereby certfy that Markala Wretling, whose name is signed to the foregoing document, and who is known to me, acknowledged before me on this date that being informed of the contents of said document and being authorized to do so, she executed the same voluntarily on the date the same bears date.

Given under my hand and seal on this the 18th day of June, 2015.

ROBERT LEE BUTLER, JR.
NOTARY PUBLIC
STATE OF KANSAS
My Appt. Expires 01-04-16

_Robert Lee Butler, Jr._
Notary Public

My Commission Expires: 01-04-16

Case 3:14-cv-02184   Document 93-6   Filed 07/06/15   Page 54 of 63 PageID #: 1016

DATED: June 22, 2015

As to objections,

Gordon E. Jackson (TN Bar No. 08323)
James L. Holt, Jr. (TN Bar No. 12123)
JACKSON, SHIELDS, YEISER & HOLT
Attorneys at Law
262 German Oak Drive
Memphis, TN 38018
(901) 754-8001 (Phone)
(901) 754-8524 (Facsimile)
*gjackson@jsyc.com*
*jholt@jsyc.com*

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I, Gordon E. Jackson, certify that I caused a copy of the foregoing **Markala Wretling's Answers to Written Questions** to be served on Defendants' counsel on June 22, 2015 by First Class Mail and email at the following addresses:

Andrew S. Naylor
K. Coe Heard
Britney R. Stancombe
Waller, Lansden, Dortch & Davis
Nashville City Center
511 Union Street, Suite 2700
Nashville, TN 37219
Email: andy.naylor@wallerlaw.com
Email: coe.heard@wallerlaw.com
Email: brittany.stancombe@wallerlaw.com

Thomas E. Hill
Christina T. Tellado
Reed Smith LLP
355 S Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Email: thill@reedsmith.com
Email: ctellado@reedsmith.com
Email: pstuhldreher@reedsmith.com

Michael D. Jones
Reed Smith LLP
3 Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103-2762
Email: mdjones@reedsmith.com

Peter J. Stuhldreher
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX 77002-6110
Email: pstuhldreher@reedsmith.com

# EXHIBIT T

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CAREY BRADFORD and CODY BOLEN, Individually and on behalf of others similarly situated. | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:14-cv-2184 |
| LOGAN'S ROADHOUSE, INC., a Tennessee Corporation, LRI HOLDINGS, INC., a Delaware Corporation, ROADHOUSE HOLDING, INC., a Delaware Corporation, | ) ) ) ) ) ) ) | FLSA Opt-In Collective Action JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## DECLARATION OF MARKALA WRETLING

I, Markala Wretling, hereby submit this declaration and state as follows:

1.    I worked for Logan's Roadhouse, Inc. ("Logan's") as a tipped-employee at its restaurant

located in Overland Park / Speedway during 10/11 — 12-14 .

2.    As a tipped employee at Logan's, I received a reduced hourly rate of pay less than the

minimum wage rate of $7.25 per hour..

3.    As a tipped employee, my principal job duties were to wait on and serve customers.

4.    I have observed that the work I performed for Logan's as a tipped employee was

essentially the same work that other Logan's tipped employees were required to perform with

regard to both tipped and non-tip producing job duties.

5.     While employed by Logan's during the time period noted above, I have been required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee, and received less than the minimum wage rate of $7.25 an hour for such work. I likewise have observed other Logan's tipped employees being required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee, while receiving less than the minimum wage rate of $7.25 rate an hour for such work--during such time period

6.     In addition, while employed by Logan's during the time noted above and clocked-in to the company's payroll system as a tipped employee, I have been required to perform non-tip producing "side work" in excess of twenty percent (20%) of my work time (such as rolling silverware, refilling sugar caddies, salt and pepper shakers, ice, condiments, cleaning chairs, tables, booths, restaurant artifacts and décor, lights, blinds, windows, as well as closing out customers checks and performing pre-closing cleaning tasks, vacuuming and/or sweeping the server's assigned area and checking dishes, napkins, and utensils, etc.), while receiving less than the minimum wage rate of $7.25 an hour for such "side work" time.

7.     I likewise have observed other Logan's tipped employees receiving less than the minimum wage rate of $7.25 an hour for such non-tip producing "side work".

8.     I believe it is a practice of Logan's to require all its tipped employees to perform non-tip producing "side work" in excess of twenty percent (20%) of the their time while clocked-in to the company's payroll system as a tipped employee, without being paid at least the minimum wage rate of $7.25 for such "side work" time.

9.     While employed by Logan's as a tipped employee during the period noted above, I have been required to attend company mandatory training without receiving at least the minimum

wage rate of $7.25 for such training time. I also have observed other Logan's tipped employees during such time period being required to attend company mandatory training without being paid at least the minimum wage rate of at least $7.25 per hour for such training time.

10.     Also, while employed at Logan's as a tipped employee, management required me to declare tips I never received so the company could avoid paying me supplemental pay to satisfy the $7.25 per hour minimum wage rate requirement.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing declarations are true and correct. Executed on this ___23rd___ day of January, 2015.

Markala Wretling, Declarant

# EXHIBIT U

**EXHIBIT U:** *Bradford et al v. Logan's* - List of Plaintiffs

| | First Name | Last Name |
|---|---|---|
| 1 | Arielle Ann | Aldrich |
| 2 | Samantha Lee | Arnold |
| 3 | William Corey | Barry |
| 4 | Angel | Bartelt |
| 5 | Justin | Beavers |
| 6 | LaTonia | Bennett |
| 7 | Shane Sumner | Bodden |
| 8 | Raphael | Boldrick |
| 9 | Cody | Bolen |
| 10 | Carey | Bradford |
| 11 | Tyler | Bransom |
| 12 | Kimberly | Brewer |
| 13 | Jonathan Patrick | Brown |
| 14 | Marquis | Brown |
| 15 | Michael Marcell | Brown |
| 16 | Christopher | Bryant |
| 17 | Laurel Michelle | Bryant |
| 18 | Karri | Busard |
| 19 | Aaron | Byrd |
| 20 | Tarmeca Maria | Campbell |
| 21 | Savannah | Carrick |
| 22 | Jessica | Clark-Clardy |
| 23 | Jaclyn | Cooper |
| 24 | Anna Madison | Copeland |
| 25 | James Robert | Corley Jr. |
| 26 | Roderick | Davis Jr. |
| 27 | Jacob Lee | Demoss |
| 28 | Ellen | Dent |
| 29 | Amy Nicole | Derrington Norton |
| 30 | Hayden | Dollar |
| 31 | John | Duncan |
| 32 | Ashley | Elgin |
| 33 | Amy Jo | Ford |
| 34 | Nicole | Foster |
| 35 | Gabrielle | Frey |
| 36 | Ashley | Fulcher |
| 37 | Dustin Dewayne | Gilbert |

| | **First Name** | **Last Name** |
|---|---|---|
| 38 | Jordan Lee | Goggin |
| 39 | Tia Jannelle | Haddox |
| 40 | Thomas | Hartung |
| 41 | Nicholas Stephen | Holman |
| 42 | Brandy | Holt-Anna |
| 43 | Clifford | Hughes |
| 44 | Marcie Lynn | Hunter |
| 45 | Wendy | Hymer |
| 46 | Syreeta | Jackson |
| 47 | Jeffrey | Jernigan |
| 48 | Lillian | Kelter |
| 49 | Ashley Nicole | Kennedy |
| 50 | Kristyn | King |
| 51 | Linda Sue | Kurtz |
| 52 | Chadwick Anson | Layne |
| 53 | Shayne | Lenfestey |
| 54 | Angelina Marie | Lewis |
| 55 | Bobbie | Longmire |
| 56 | Kimberly Nichole | Lynn |
| 57 | Austin Gunnar | Maher |
| 58 | Jeanan | Mayfield |
| 59 | Darreo | McCall |
| 60 | Jessica | McClellan |
| 61 | Jason | McGee |
| 62 | Joel | Merchant |
| 63 | Cassie | Miller |
| 64 | Jeremy | Mitchell |
| 65 | William | Moody |
| 66 | Jordan Scott | Moore |
| 67 | Tracy Denise | Nicholas |
| 68 | Heather | Oakley |
| 69 | Larita Joy | O'Brien |
| 70 | Yolanda | Osborne Youngblood |
| 71 | David | Parish |
| 72 | Corinne | Pennington |
| 73 | Kelly | Pilet |
| 74 | Justin Blaine | Potts |
| 75 | Cori Amber | Rascati |
| 76 | Jessica Lynn | Ratliff |
| 77 | Jennifer | Reece |

|    | First Name         | Last Name  |
|----|--------------------|------------|
| 78 | Robyn Elizabeth    | Reeves     |
| 79 | Latanya Dialishiah | Rodgers    |
| 80 | James              | Roten      |
| 81 | Stacey             | Russell    |
| 82 | Keita              | Shearin    |
| 83 | Suzanne Angela     | Sherrill   |
| 84 | Amanda             | Siroki     |
| 85 | Destiny            | Stafford   |
| 86 | Shawn Michael      | Straughn   |
| 87 | Tristan James      | Warsham    |
| 88 | Anthony            | Wiggins    |
| 89 | Zachery Scott      | Wimpelberg |
| 90 | Shelly             | Wood       |
| 91 | Markala            | Wretling   |