# EXHIBIT 18



Not Reported in F.Supp.2d, 2004 WL 554834 (C.D.Cal.)
**(Cite as: 2004 WL 554834 (C.D.Cal.))**

▶

Only the Westlaw citation is currently available.

United States District Court,
C.D. California.
Thomas PFOHL, et al, Plaintiffs,
v.
FARMERS INSURANCE GROUP, Defendant.

No. CV03–3080 DT (RCX).
March 1, 2004.

Derrick Fisher, Derrick Fisher Law Offices, Pasadena, CA, Joseph E Fieschko, Jr., Joseph E Fieschko Jr & Associates, Pittsburgh, PA, for Plaintiffs.

Lee T. Paterson, Jessie Ann Kohler, Winston & Strawn, Los Angeles, for Defendant.

ORDER DENYING PLAINTIFF THOMAS PFOHL'S AMENDED MOTION FOR CERTIFICATION OF COLLECTIVE ACTION UNDER SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT

TEVRIZIAN, J.

I. *Background*

**\*1** This action is brought by Plaintiff Thomas Pfohl ("Plaintiff") against Defendant Farmers Insurance Exchange, erroneously sued as Farmers Insurance Group ("Farmers"), for overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiff brings this action on behalf of himself and all other similarly situated employees who were employed by Farmers as temporary full-time insurance adjusters. Presently before this Court is Plaintiff's Amended Motion for Certification of Collection Action Under Section 216(b) of the FLSA.

A. Factual Summary

The following facts are alleged in the Complaint:

Plaintiff was employed by Farmers from February 26, 2002 until October 11, 2002. (Complaint, ¶ 8.) He was paid $40.00 per hour, with no minimum salary, worked approximately seventy hours per week and was not paid at a rate one and a half times his normal rate for hours worked in excess of forty hours per week. (*See id.*) His duties consisted of working on Farmers' files involving claims submitted to Farmers for property damage and other damages alleged to be caused by the formation of mold in residential and commercial buildings. (*See id.*)

Plaintiff brings this action as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b). (*See id.* at ¶ 3.) All Plaintiffs were "employees" of Farmers because they were required to comply with Farmers' instructions about when, where and how they were expected to work. (*See id.* at ¶ 6.) Plaintiffs have a right of recovery under the FLSA for unpaid overtime wages owed to them for hours worked in excess of forty hours per week in which their compensation was based upon the number of hours they worked each week, but they were not paid an amount equal to one and a half times their normal hourly rate for all hours worked in excess of forty hours per week. (*See id.* at ¶ 5.)

B. Procedural Summary

On January 6, 2003, Plaintiff filed the Complaint in the United States District Court for the Northern District of California ("Northern District").

On February 3, 2003, Farmers filed its Answer in the Northern District.

On March 10, 2003, Farmers filed a Motion to Transfer Venue in the Northern District.

On April 14, 2003, the Northern District filed an Order of Transfer, transferring this action to the Central District of California. Upon receipt of this action, the action was assigned to this Court.

Not Reported in F.Supp.2d, 2004 WL 554834 (C.D.Cal.)
**(Cite as: 2004 WL 554834 (C.D.Cal.))**

On August 11, 2003, this Court held a Scheduling Conference and set the following dates: Phase I discovery cutoff on November 28, 2003 and status conference on December 8, 2003.

On September 8, 2003, Plaintiff filed a Motion for Certification of Collective Action Under Section 216(b) of the FLSA.

On September 15, 2003, a Consent to Opt In as Class Member was filed.

On September 23, 2003, three Consents to Opt In as Class Member were filed.

On November 23, 2003, Plaintiff filed an Amended Motion for Certification of Collective Action Under Section 216(b) of the Fair Labor Standards Act, which is currently before this Court. [FN1] The previously set Status Conference was also continued to this date.

> FN1. Farmers filed an Opposition to this Motion, and Plaintiff filed a Reply. However, because Plaintiff submitted new evidence and raised new arguments in his Reply, Farmers was permitted to file a Sur–Reply.

**\*2** On February 10, 2004, six Consents to Opt In as Class Member were filed.

On February 12, 2004, Plaintiff filed a "Hearing Date on Motion to Amend Complaint In Action At Law March 8, 2004 at 10:00 A.M." [FN2]

> FN2. Plaintiff attempted to file a Motion to Amend Complaint on January 30, 2004; however, a Notice of Document Discrepancy was issued whereby said Motion was ordered not to be filed but instead rejected because written notice of motion was lacking or the timeliness of notice was incorrect and because the proposed order was not a separate document. On February 12, 2004, Plaintiff filed this document entitled "Hearing Date on Motion to Amend Complaint in Action at Law March 8, 2004 at 10:00 A.M," and he lodged a Proposed Order. Apparently, these documents were filed in response to the Notice of Document Discrepancy; however, the Motion to Amend itself was never filed with the Court. As such, the hearing date of March 8, 2004 does not exist because no "Motion to Amend Complaint" has been properly filed with the Court. Unfortunately, it appears that Plaintiff served a Motion to Amend on Farmers, even though such motion was not properly filed, because Farmers filed an opposition to such motion.

On February 24, 2004, three Consents to Opt In as Class Member were filed.

II. *Discussion*

A. *Standard*

The FLSA provides an "employee" with a private right of action against his "employer" when that employer fails to pay overtime wages, i.e., one and one-half times the regular rate of pay per hour, when the employee works in excess of forty hours per week. *See* 29 U.S.C. §§ 203, 207. An employee is also authorized to bring an action on behalf of similarly situated employees, *Id.* at § 216(b); *Doe v. Advanced Textile Corp.,* 214 F.3d 1058, 1064 (9th Cir.2000). Such an action is a type of class action, known as a "collective action," for employees who are "similarly situated" to the plaintiffs and who opt-in to the suit by filing a consent in writing with the court. 29 U.S.C. § 216(b). If employees do not opt in by filing a written consent, they are not bound by the outcome of the collective action and may bring a subsequent private action. *EEOC v. Pan Am. Work Airways, Inc.,* 897 F.2d 1499, 1508 n. 11 (9th Cir.1990). A district court may authorize the named plaintiffs in a FLSA collective action to send notice to all potential plaintiffs and may set a deadline for plaintiffs to join the suit by filing consents to sue. *Does I through XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1064 (9th

Not Reported in F.Supp.2d, 2004 WL 554834 (C.D.Cal.)
**(Cite as: 2004 WL 554834 (C.D.Cal.))**

Cir.2000)(citing *Hoffmann–La Roche. Inc. v. Sperling,* 493 U.S. 165, 169, 172, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).

B. *Analysis* [FN3]

> FN3. Rulings to the objections asserted by the parties shall be deemed consistent with the analysis set forth herein.

1. Plaintiff must show that he is "similarly situated" to the purported collective action group he wishes to represent

Based on the Standard set forth above, at issue here is whether Plaintiff and the proposed collective action group are "similarly situated" for purposes of Section 216(b). "A plaintiff bears the burden of establishing that he and the class he wishes to represent are similarly situated." *White v. Osmose, Inc.,* 204 F.Supp.2d 1309, 1313 (M.D.Ala.2002). Section 216(b) does not define "similarly situated," and the Ninth Circuit has not defined it either. The Tenth Circuit has noted that various approaches have been taken in determining whether plaintiffs are "similarly situated." See *Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095, 1102–03 (10th Cir.2001)(discussing three possible approaches to the "similarly situated" analysis). As another district court in this district observed, of these approaches, the majority of courts prefer the *ad hoc,* two-tiered approach. *Wynn v. National Broadcasting Company, Inc.,* 234 F.Supp.2d 1067, 1082 (C.D.Cal.2002). Under this approach, the district court makes two determinations, on an *ad hoc,* case-by-case basis. *See id.* The first determination is made based on the pleadings and any affidavits that have been submitted as to whether the class should be certified. *See id.* Because of the minimal evidence at this stage, this determination is made based on a fairly lenient standard. *See id.* The second determination is made after discovery is largely complete. *See id.* There, the court weighs various factors in making a factual determination as to whether the plaintiffs are similarly situated. *See id.* Such factors include (1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, and (3) fairness and procedural considerations. *Thiessen,* 267 F.3d at 1103.

**\*3** In this case, the parties do not dispute that discovery has been undertaken relating to the issues of certification of this action as a collective action. As such, the Court can proceed to the second determination discussed above and weigh relevant factors to determine whether the plaintiffs are similarly situated.

2. The parties' contentions

In his Motion, Plaintiff explains that an inordinate number of "mold claims" were submitted to Farmers by its policyholders during the years 2000 and 2001, and that in order to deal with this dramatic and sudden increase in this type of claim, Farmers contracted with outside personnel companies, including Continental Staffing, Inc. ("Continental"), and outside adjusting companies, including Wardlaw Claims Service, LLP ("Wardlaw"), NCA and Eberls, to hire additional adjusters on a full-time temporary basis to help Farmers' own adjusters handle this sudden influx of claims. Plaintiff himself was hired through Continental.

Plaintiff defines the class as follows:

All those individuals who were paid on an hourly basis and who were not paid overtime wages at the rate of one and one-half times their regular rate. They were generally hired in December of 2001 and thereafter. They were hired as temporary full time adjusters through personnel companies (such as Continental) or adjusting companies (such as Wardlaw, NCA or Eberls). They usually worked on mold claim files. They generally worked in the states of Texas or California. They generally worked in (or out of) permanent Farmers offices, under the direction of Farmers supervisors, the Farmers supervisors approved their time cards, and they generally performed the same tasks that permanent Farmers employees

performed.

In opposition, Farmers contends that Plaintiff has presented no evidence to support his contention that he is "similarly situated" to the other individuals he seeks to represent. Specifically, it argues that there are three primary issues in which Plaintiff must demonstrate that he is "similarly situated" to the proposed collective group before a collective action may proceed in this case: (1) that Farmers was a joint employer; (2) that each of the putative plaintiffs was not paid according to the "salary basis test" or applicable fee-based regulations; and (3) that the putative plaintiffs did not meet the "duties test" of the administrative exemption. It argues that each of these requires a fact-intensive inquiry that, in this case, is not suitable to the collective action proposed by Plaintiff.

This Court examines each of these issues below.

3. Farmers is not the joint employer of Plaintiff and even if it was, Plaintiff has not shown that he is similarly situated to the other members of the proposed collective action group with respect to each member's employment relationship with Farmers

Independent contractors are not covered by the FLSA; that is, there must be an employer-employee relationship for liability to accrue for alleged unpaid overtime. See *Chao v. A–One Med. Servs.,* 346 F.3d 908, 917–18 (9th Cir.2003).

**\*4** Under the FLSA, "employer" includes: any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 203(d). Plaintiff admits that Farmers was not his direct employer. Instead, he claims that Farmers was a joint employer. Two or more employers may jointly employ someone for the purposes of the FLSA. *Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465, 1469 (9th Cir.1983). Joint employers are individually responsible for compliance with the FLSA. 29 C.F.R. § 791.2(a). Determining whether the two entities may be considered "joint employers" requires consideration of the total employment situation, but should focus on four primary factors: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette,* 704 F.2d at 1470.

Farmers contends that Plaintiff fails to provide evidence to show that Farmers was a joint employer of Plaintiff or that Plaintiff is "similarly situated" to the other individuals he seeks to represent with regard to any alleged employment relationship with Farmers. As such, this Court examines the above factors to determine whether Farmers was a joint employer of Plaintiff and whether Plaintiff is "similarly situated" to the other members of the proposed collective group with respect to the employment relationship with Farmers.

a. power to hire and fire employees

Farmers provides evidence that its contracts with insurance adjusting companies to provide independent contractor adjusters, such as with Wardlaw and Pilot Catastrophe Services, Inc., specifically state that the adjusters provided are independent contractors, not employee of Farmers. (Kohler Decl., Exhs. A and B at Article 6.) With respect to Continental, Farmers provides evidence that Continental required its employees to sign an employment agreement specifying that the adjusters were employees of Continental and that they had no rights or claims to employment with the client with which they worked. (*See id.* at ¶ 4; Exh. C.)

In his Reply, Plaintiff contends that Farmers had the absolute power to hire and fire him. He relies on the December 20, 2001 engagement letter which specifically provides that Farmers had the option to hire the adjusters permanently at any

time. He also claims that he was fired by his Farmers' supervisor. In response, Farmers disputes Plaintiff's interpretation of the evidence and further argues that Plaintiff has not shown that he is similarly situated with regard to adjusters from other companies, or even with adjusters from Continental. This Court agrees with Farmers.

**\*5** The letter relied upon by Plaintiff gives Farmers the authority to hire Continental-provided workers without incurring a fee. (Reply Brief, Exh. A.) However, it is not relevant to whether Farmers had the ability to hire or fire Continental adjusters while they were employed by Continental. In fact, as stated above, the independent contractor adjusters signed contracts with Continental specifying that they had no rights or claims to employment with the client to whom they were assigned. (*See* Kohler Decl., ¶ 4, Exh. C.) Furthermore, Plaintiff has presented no evidence in regard to the other contracting companies. By contrast, Farmers has shown that independent contractor adjusters from the other contracting companies Plaintiff seeks to represent were selected and assigned by those other adjusting companies, not by Farmers. (*See,* e.g., Bishop Decl., ¶ 6; Kainer Decl., ¶ 9.)

With respect to Plaintiff's claim that he was fired by his Farmers' supervisor, Farmers point to Plaintiff's deposition testimony wherein he states the reason he stopped working for Farmers was because Farmers was downsizing, and he was offered a job by Continental to work on a Farmers' project in Texas which he refused. (Plaintiff Depo. at pp. 58, 61, 64–65, 81–82 and Exh. 8, attached to Warren Decl. as Exh. A.) Plaintiff admitted in his deposition that he would contact Continental, and Continental would tell him what work was available. (*Id.* at 56.) Moreover, even if Farmers did control the hiring and firing of Plaintiff, then Plaintiff is not similarly situated to other Continental adjusters who worked in other locations because the evidence shows that on-site Continental managers handled personnel matters at those other locations. (Nguyen Decl., ¶ 10, Shaver Decl., ¶¶ 8, 10–11.)

b. supervise and control employee work schedules or conditions of payment

Farmers presents evidence that the Continental employees acknowledged that their employment agreement with Continental had no effect on the terms, conditions and limitations agreed to between Continental and the client (Farmers). (Kohler Decl., ¶ 4; Exh. C.) It states that it did not have the authority to control the terms and conditions of the Continental workers' employment. (*See id* . at ¶ 6; Exh. E; Shaver Decl., ¶ 11.) It states that Farmers managers could not make personnel changes. (Shaver Decl., ¶ 11; Kainer Decl., ¶ 9.)

In support of his contention that Farmers had the absolute power to supervise the adjusters' work schedules and conditions of employment, Plaintiff generally states that he was supervised by Farmers' supervisors at certain assignments. He offers no specific facts whether this "supervision" related to work schedules or conditions of payment. Plaintiff attempts to meet this requirement by stating that the adjusters were only paid if their time sheets were approved and signed by their Farmers' supervisor; however, again, the approval of time sheets bears no relation to the initial setting of work schedules or the terms for payment. Plaintiff also relies on the engagement letter which states, "As a temporary employee you are expected to follow the rules, regulations, procedures and dress code of the client company to which you are assigned." Again, this general statement in the engagement letter says nothing about the control of work schedules or conditions of payment.

**\*6** Moreover, even assuming Farmers had the requisite supervision and control over Plaintiff, Plaintiff presents no evidence that Farmers had the same requisite supervision and control of adjusters from other agencies. By contrast, Farmers presents evidence that it did not exercise such supervision and control, as the other contracting entities had their own supervisors on-site. (Bishop Decl., ¶ 6; Kainer Decl., ¶ 9; Nguyen Decl., ¶ 6.) It also

presents evidence that Continental provided supervisors who would determine the schedules and working conditions at sites other than those at which Plaintiff worked. (Nguyen Decl., ¶ 10; Shaver Decl., ¶¶ 8, 10–11.)

c. determine rate and method of payment

Farmers shows that its agreements with the entities which provide the independent contractor adjusters do not specify how the contracting entity is to pay these independent contractor adjusters, as that is a matter between the adjusting company and its workers. (Kohler Decl., Exhs. A and B at Article 4.) It states that it does not control the rate of pay or method of payment from the contracting entity to the worker. (*See* Smith Decl., ¶ 8; Martin Decl., ¶ 6; Shaver Decl., ¶ 11.) It does not prepare the payroll or pay wages to the adjusters. (*See* Hongsdusit Decl., ¶ 8; Martin Decl., ¶ 6.) Similarly, Farmers did not determine the pay rates to Continental workers and did not determine the method of payment to Continental workers. (Shaver Decl., ¶ 11.)

In support of his contention that Farmers determined the rate and method of payment, Plaintiff relies on Continental's proposal to Farmers in which Continental proposed, and Farmers accepted, the $40.00 per hour wage rate. However, while Farmers agreed to pay Continental on an hourly rate, such agreement did not determine the payment relationship between Continental and its employees. In fact, Plaintiff admits that Continental changed its rate and method of payment to its employees, by guaranteeing a minimum weekly salary of $250, then going to a $2,650 weekly salary, then to a $2,250 weekly salary, then to a hourly rate with overtime. (Kohler Decl., Exhs. G–K; Reply Brief, Exh. G.) There is simply no evidence that Farmers and not Continental changed these rates. Furthermore, Plaintiff admits he does not know how adjusters from other companies were paid. (Plaintiff Depo. at 85–87.)

d. maintain employment records

With respect to the maintenance of employment records, Plaintiff contends that Farmers had turned over two storage boxes of employment records on these individuals to Plaintiff's counsel through discovery. In response, Farmers states that these "employment records" consisted of nothing more than timesheets and invoices used to determine the appropriate payment to Continental, and regardless, Farmers obtained many of these records from Continental in order to respond to Plaintiff's discovery request. This Court agrees with Farmers that the fact that it obtained records at Plaintiff's request is not evidence that Farmers itself maintained or controlled them. Furthermore, Plaintiff again fails to offer any evidence to show that Farmers maintained similar so-called "employment records" for adjusters supplied by other companies and therefore has not shown he is similarly situated to them in this regard.

e. conclusion

**\*7** Thus, based on the foregoing factors, this Court finds that Plaintiff has failed to show that Farmers together with Continental was his joint employer, and even if Plaintiff were able to establish this, he has failed to show that he is similarly situated to the other members of the proposed collective group consisting of adjusters from Wardlaw, NCA and Eberls with respect to the members' employment relationship with Farmers. On this basis alone, then, denial of certification of this action as a collective action is warranted.

4. Plaintiff has not shown that he is similarly situated to the other members with respect to the elements of the administrative exemption

Although an employer-employee relationship may exist for liability purposes, the FLSA exempts bona fide administrative employees from its overtime pay requirements. *See* 29 U.S.C. § 213(a)(1). The administrative exemption is comprised of two parts: (1) whether the employee was paid on an appropriate salary or fee basis; and (2) whether the employee's duties satisfy the "duties test" set forth in the regulations.

Farmers argues that even if an employment re-

lationship exists, Plaintiff has not shown that the putative collective action group is similarly situated to him in regard to the form or method of wages paid to them, and that he has not shown that the job duties of the putative collective group are sufficiently similar to his. This Court agrees that these are essential elements for determining the administrative exemption. As such, this Court must examine Farmers' contentions regarding these issues. However, before proceeding, this Court notes Plaintiff's claim that it is Farmers which must show that the employees meet the administrative exemption. While this is ultimately true, this substantive issue is not now before this Court. Instead, the issue presently before this Court is whether this case should proceed as a collective action. Plaintiff bears the burden of proving this, and it is for him to present evidence that all putative members were paid similarly and performed similar job duties. In other words, since Plaintiff alleges in his Complaint that he was not exempt from overtime pay requirements because he was paid on an hourly basis, he must demonstrate that he is similarly situated to the other adjusters he seeks to represent with regard to this issue.

a. whether the employee was paid on a salary or fee basis

To meet the requirements of the administrative exemption, the employee must have received a salary. *See* 29 C.F.R. §§ 541.211–213. In lieu of being paid on a salary basis, an exempt administrative employee may receive his or her compensation on a fee basis. *See id.* at §§ 541.213, 541.313(c). Fee basis compensation is "the payment of an agreed upon sum for a single job regardless of the time required for its completion." *See id.* at § 541.313(b).

Farmers contends that the wage payments made to the proposed collective action group differed, not only as between Continental and the other companies, but also between the Continental workers themselves. While Farmers' evidence supports this contention, this Court agrees that, at a minimum that Plaintiff has failed to show otherwise.

**\*8** Plaintiff alleges he was paid by the hour by Continental, yet another Continental worker, a putative opt-in, Bill Myers, was paid in 2003 a guaranteed $250 base salary or a percentage of fees billed, whichever was greater; later, he was paid a flat salary of $2650 per week and then $2250 per week. (Kohler Decl., Exhs. F–J.) In August 2003, Continental again changed its method of payment to its workers—it went back to paying its adjusters by the hour, including overtime for hours worked over 40 in a week. (*See id.* at ¶ 8, Exh. K.) With respect to how adjusters for other companies were paid, Plaintiff admits that he does not know how they were paid. (Plaintiff Depo. at 85–87.)

In his Reply, Plaintiff submits new affidavits; however, these affidavits state in a conclusory fashion that the individual worked for Farmers and was paid by the hour. None of them indicate for which contracting entity he/she worked. Without basic facts as to which contracting entity employed each affiant, Plaintiff has not shown that he is similarly situated to any adjuster from any company other than Continental. With respect to adjusters with Continental, Plaintiff's own evidence is in conflict. In his Reply, Plaintiff states that Continental adjusters were paid a regular flat salary rate in 2003 (Reply, pp. 3–4), but he then submits affidavits wherein each Continental worker states he worked in 2003 and was paid by the hour. (*See* Cannon, Capone, Erhardt, Ferro and Jackson Affidavits.) Since Plaintiff was paid by the hour while other Continental adjusters were paid on a salary basis, then he cannot represent them as being similarly situated. FN4

> FN4. Recognizing the problem, Plaintiff suggests that he wants to send notice only to those individuals who were paid by the hour. However, such a suggestion highlights that certification is not proper here. To determine who was actually paid by the hour would require an individualized determination and review of pay records, and such an individualized inquiry is not the

purpose of a collective action.

b. whether the employee's duties satisfy the "duties test"

To meet the administrative exemption, the employee's primary duties must consist of (a) the performance of office work directly related to the general business operations of the employer; and (b) duties that require the exercise of discretion and independent judgment. 29 C.F.R. § 541.2(a)(1). The federal regulations expressly include "claim agents and adjusters" as employees who perform duties relating to the administrative operations of a business. *Id*. at § 541.205(c)(5).

Farmers contends that job assignments and duties of independent contractor claims representatives vary widely, even among the adjusters provided by the same company. It provides evidence that Plaintiff's own job assignments and duties varied. For example, Plaintiff was employed by Continental in February 2002, when he first began work on mold claims for Farmers. (Plaintiff Depo. at pp. 9, 27.) His initial job responsibilities were as a "file examiner." (*Id.*) When Plaintiff moved to adjust mold claims in Sacramento, he became a "lead adjuster," which meant he generally supervised the work of several Wardlaw independent adjusters, who performed the initial field inspections and made the initial claim valuation. (*Id.* at 39, 43–44, 47.) Plaintiff then worked in Oklahoma City for about four weeks as a file examiner on mold files. (*Id.* at 53.) After that, he worked in Sacramento as a lead adjuster, and then Continental offered Plaintiff a job assignment in Texas, but Plaintiff rejected it. (*Id.* at 45–58, 61–82.)

**\*9** Farmers also provides evidence demonstrating that the adjusters perform widely varying job duties. (*See* Bishop Decl., ¶¶ 5, 10 (describing different duties of "field adjusters" provided by Wardlaw, NCA and Eberls, with duties of "office adjusters" provided by Continental); Kainer Decl., ¶¶ 6–8 (stating that Continental adjusters "were assigned duties not performed by any other independent adjusters working mold claims at that time" and describing their job duties as "lead" adjusters, while other company adjusters had different job duties); Nguyen Decl., ¶¶ 4–9 (describing that Continental adjuster duties differed in that some Continental adjusters worked as "leads," while others worked as "office adjusters," which all differed from the "field adjusting" work performed by other company adjusters); Smith Decl., ¶ 11 (stating that some Continental adjusters were assigned to the Complex Claims Unit and made presentations with recommendations during Legal Round Table meetings with Farmers' counsel; "No other independent adjusters from other agencies had duties at all similar to this duty.")).

Plaintiff offers no details of what the individuals in the putative collective action group actually did on the job. He merely states that they all were hired to work on "the mold claims project," and then he admits that "their duties may have varied to some extent." (Reply, p. 12.) In fact, some of the affidavits filed with his Reply reveal that the putative collective action members worked on different types of claims other than mold claims. (*See,* e.g., Reed Affidavit, Exh. E to Reply (stating that he worked on storm claims, not just mold claims); Roy Affidavit (stating he worked as a lead adjuster in the litigated claims section)). In sum, Plaintiff fails to rebut the evidence Farmers submitted demonstrating that the adjusters perform widely varying job duties.[FN5] The differing job duties and the individualized inquiry to determine whether these varying duties meet the administrative exemption preclude a collective action in this case.

> FN5. In his Reply, Plaintiff argues that Farmers' claims adjusters are production workers not covered by the FLSA administrative exemption. Farmers responds that this argument is incorrect and, in any event, irrelevant to a determination of whether they are similarly situated. This Court agrees with this latter argument; it does not need to address the issue of whether the insurance claims adjusters are

exempt administrative employees or production workers at this time.

c. The existence of an alleged common plan or policy is not dispositive

Plaintiff argues that the proposed collective action group is similarly situated because there is "clear evidence of a single decision, policy or plan which affected all of them." He specifically states that such plan was Farmers' decision "to hire numerous independent adjusters to work on mold claims and to pay them an hourly wage, but would not pay them overtime wages in clear violation of the overtime provisions of the FLSA." Plaintiff relies on the case of *Pines v. State Farm Ins. Co.,* 1992 U.S. Dist. LEXIS 6972 (C.D.Cal.1992).

This Court finds that Plaintiff's reliance on *Pines* is misplaced. In *Pines,* the plaintiff sought court facilitation of the opt-in procedure based upon the plaintiff's claim under the Age Discrimination in Employment Act ("ADEA") that defendants denied her, and other similarly situated persons, employment on the basis of age.[FN6] The Court granted plaintiffs' motion for court facilitation of the opt-in procedure because plaintiffs produced substantial allegations that the defendants participated in a plan of age discrimination that affected many similarly situated people. Thus, while the Court did focus on evidence of a plan of discrimination, the issue before it did not involve the need for individualized inquiries. By contrast, in this case, the issues of the joint employer test and the administrative exemption tests of the FLSA require such individualized inquiries. As another court stated, "[u]nlike in a discrimination case, the focus [in FLSA cases] is not on [the employer's] action, but instead on the nature of the employee's job duties in the context of the relevant exemption criteria." *Morisky,* 111 F.Supp.2d at 498; *Pfaahler,* 2000 U.S. Dist. LEXIS 1772, *9 (refusing to authorize FLSA collective action; distinguishing ADEA cases because, unlike FLSA cases, "in a discrimination case, it is relatively easy to satisfy the similarly situated standard [because] a discrimination case focuses on whether the defendant had a policy of discriminating against its employees."). In sum, while a policy or plan may be relevant to the inquiry of certification, it cannot be the sole factor in light of the other issues under the FLSA.

> FN6. A collective action under the ADEA incorporates the standards for a collective action under the FLSA. *Pines,* 1992 U.S. Dist. LEXIS 6972, *19.

d. conclusion

**\*10** Because Plaintiff has failed to show that he is similarly situated to the other members with respect to the payment of a salary and the performance of duties, the exempt or non-exempt status of hundreds of independent contractor adjusters would need to be determined on an employee-by-employee basis. This would be inefficient and impractical, thereby defeating the purpose of a collective action. *See Mike v. Safeco Insurance Co.,* 2003 U.S. Dist. LEXIS 21438 (D.Conn.2003)(denying collective action certification in FLSA overtime case because plaintiff did not show similarity in job duties and job duties test would require individualized facts). This Court therefore finds that certification of a collective action is not warranted on this additional basis.

5. Additional reasons exist for denying certification

Farmers offers additional arguments why a 216(b) collective action would not be appropriate. This Court agrees with these arguments. First, distinct defenses available to Farmers that would apply to disparately situated individuals do not allow for a manageable case. *See Lusardi v. Xerox Corp.,* 118 F.R.D. 301, 370 (D.N.J.1987)("consolidation of these claims into a representative class with the attendant defenses would not provide for an efficient proceeding"). Further, all of the issues discussed so far highlight that allowing this proposed collective action is contrary to the purpose of allowing notice and a collective action to proceed—to allow "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [conduct]." *Hoffman–LaRoche,* 493 U.S. at 170.

Additionally, as Farmers states, notice should be denied because Plaintiff has engaged in solicitation and has failed to come up with significant numbers of allegedly similarly situated employees who are likely to assert similar claims. *See,* e.g., *Bernard v. Household International, Inc.,* 231 F.Supp.2d 433, 436 (E.D.Va.2002)(collective action notice denied, in part, because there had been ads in local papers regarding the case); *Michaelson v. Arrow Transport Co.,* 1997 U.S. Dist. LEXIS 23665 (D.Or.1997)(denying notice to potential collective action members in a FLSA case where complaint failed to allege an inability to contact collective action members in the absence of court-authorized notice). Here, Plaintiff's attorneys have posted a solicitation on a nationwide independent adjusters' website. (*See* Warren Decl., Exh. A—Plaintiff Depo., Exh. 10.) While "Consents to Opt In as Class Member" have been filed, no information is provided regarding these purported members, and even when affidavits have been provided, the affidavits lack the requisite information regarding the issues before the Court, as explained above.

Finally, Farmers argues that the Court should deny Plaintiff's motion because Plaintiff cannot show that either he or his attorney can adequately represent the proposed collective action members. Specifically, it claims that Plaintiff has a fundamental conflict with other potential collective action members in that Plaintiff supervised the adjusters he seeks to represent and approved their time records and denied payment for work performed by them. It also claims that Plaintiff's counsel, Mr. Fisher, has a client relationship with Wardlaw and Isabelle Arnold, a potential defendant and witness in this case who is Farmers' former mold claims manager primarily responsible for the relationship with Continental. These arguments are based upon Federal Rule of Civil Procedure 23 class action issues. While such class action issues are arguably relevant here, this Court finds that it need not make such determination in light of the analysis set forth above. Because Plaintiff has failed to show that a collective action is warranted here, issues as to his or his counsel's ability to represent such collective group are essentially moot.

III. *Conclusion*

**\*11** Plaintiff has failed to show that a collective action of temporary contractor adjusters supplied to Farmers through different agencies to work on mold claims is warranted here. Instead, diverse individualized factors among the proposed collective group members exist, including the factors necessary to conclude that Farmers is a "joint employer" with a number of temporary agencies, the variety of methods of payment to the proposed collective group members who were paid by flat fee, by the hour and by salary by the same and by different employers while Plaintiff allegedly was paid by the hour, and the differences between Plaintiff and each of proposed collective group members in their actual job duties and the degree to which any one individual exercised independent judgment and discretion in carrying out their varying duties.

Accordingly, this Court denies Plaintiff Thomas Pfohl's Amended Motion for Certification of Collective Action Under Section 216(b) of the Fair Labor Standards Act.[FN7] As such, this Court will allow this case to proceed on the individual claims of this Plaintiff, Thomas Pfohl, only. This Court orders counsel for Plaintiff Thomas Pfohl to notify, in writing, all persons that have attempted to file to opt in to this purported collective action of this Court's decision to deny class certification. This will enable said parties to file their own individual lawsuits to protect whatever rights they may have.

> FN7. As explained above, Plaintiff has attempted to file a Motion to Amend Complaint which he desires to be heard on March 8, 2004. However, no such Motion was properly filed. According to Farmers' opposition to the Motion to Amend, Plaintiff seeks to add three state law class claims under the California Labor Code and California Business and Professions Code, to add two additional named

plaintiffs, to add two additional defendants, Wardlaw Adjusting and Continental Staffing, Inc., and to add two new FLSA collective action claims against the proposed new defendants. This Court notes that in light of this Court's determination to deny this instant motion for certification of collective action, any purported Motion to Amend may be moot, or at a minimum, require revision in light of this current Order before any attempt to refile.

IT IS SO ORDERED.

C.D.Cal.,2004.
Pfohl v. Farmers Ins. Group
Not Reported in F.Supp.2d, 2004 WL 554834 (C.D.Cal.)

END OF DOCUMENT