# EXHIBIT 28

LEXSEE


Cited
As of: Jul 06, 2015

**ROBERT ANDERSEN and CHAD NELEMAN, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, vs. WELLS FARGO FINANCIAL, INC. and WELLS FARGO BANK, NATIONAL ASSOCIATION, Defendants.**

No. 4:11-cv-00085

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA, CENTRAL DIVISION

2012 U.S. Dist. LEXIS 23175

February 6, 2012, Decided
February 6, 2012, Filed

**CORE TERMS:** similarly situated, collective action, conditional, scheduled, certification, overtime, notice, phone calls, conditionally, certify, class certification, class members, overtime pay, putative, software, opt-in, phone, written policy, encouraged, supervisor, recorded, manager, log, customer, time clock, work overtime, fellow employee, countervailing, lenient, handle

**COUNSEL:** [*1] For Robert Andersen, Individually, and on Behalf of All Others Similarly Situated, Chad Neleman, Individually, and on Behalf of all Others Similarly Situated, Plaintiffs: James B. Zouras, Ryan F. Stephan, LEAD ATTORNEYS, PRO HAC VICE, Andrew C. Ficzko, PRO HAC VICE, STEPHAN ZOURAS, LLP, Chicago, IL; Jenna L. Green, BABICH GOLDMAN, P.C., DES MOINES, IA; J Barton Goplerud, HUDSON MALLANEY SHINDLER & ANDERSON PC, WEST DES MOINES, IA.

For Wells Fargo Financial, Inc., Wells Fargo Bank, N.A., Defendants: Andrew J. Voss, Jeffrey A. Timmerman, PRO HAC VICE, LITTLER MENDELSON PC (MN), MINNEAPOLIS, MN; Michael A Giudicessi, FAEGRE BAKER DANIELS LLP, DES MOINES, IA.

**JUDGES:** JOHN A. JARVEY, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JOHN A. JARVEY

**OPINION**

**ORDER**

This matter comes before the Court on Plaintiffs' motion for conditional certification of a collective action pursuant to the Fair Labor Standards Act ("FLSA"), filed on October 4, 2011. [Dkt. No. 41]. Plaintiffs Robert Andersen and Chad Neleman, and all others similarly situated are collectively referred to as "Plaintiffs." Defendants Wells Fargo Financial, Inc., and Wells Fargo Bank, National Association ("Defendants") filed their response on October 21, 2011. [Dkt. No. [*2] 48]. Plaintiffs replied to Defendants' response on November 7, 2011. [Dkt. No. 51]. Defendants filed a notice of supplemental authority in support of their opposition to conditional certification on November 23, 2011. [Dkt. No. 52]. The Plaintiffs replied to Defendants' notice of supplemental authority on November 28, 2011. [Dkt. No. 54].

In their motion, Plaintiffs ask the Court to grant their

request to conditionally certify a class pursuant to Section 216(b) of the FLSA, and to allow the issuance of an "Opt-in Notice" to similarly situated persons who currently or formerly worked as Loan Officers for Defendants.[1] Plaintiffs assert that Defendants wrongfully denied overtime and other payment because they failed to pay Loan Officers at the Wells Fargo facility on Bell Avenue in Des Moines, Iowa for all time worked, including working before and after their scheduled shifts and during scheduled lunch breaks. For the following reasons, the Plaintiffs' motion for conditional certification of a collective action is denied.

> 1   Defendants dispute that the Plaintiffs and those similarly situated ever held a position with the job title of "Loan Officers." Instead, the Defendants claim these former [*3] and current employees have the job title of "Sales Specialists," which is then broken down into eight different job codes. Since it does not appear the parties are disputing which workers are contemplated in this case, and instead only dispute the job title, the Court will refer to their position as "Loan Officers" since this is how they were originally specified by the Plaintiffs.

I. FACTUAL BACKGROUND

Plaintiff Robert Andersen was employed by Defendants as a Loan Officer between January 2007 and May 2008.[2] Plaintiff Chad Neleman was employed by Defendant as a Loan Officer between September 2007 to June 2010. Both plaintiffs state that they performed work for Defendants at the Bell Avenue facility in Des Moines, Iowa within the three years prior to the filing of this complaint.

> 2   These facts are all taken from the Complaint and the associated pleadings for this motion.

Defendants are a national bank, and Defendants operate their businesses nationwide. However, this case involves only the Loan Officers at the Bell Avenue facility in Des Moines, Iowa. Since February of 2008, Defendants have employed 648 Loan Officers at this facility.

Plaintiffs, and the class of persons they seek to represent, [*4] state that they either answered inbound calls from or made outbound calls to Defendants' customers. Plaintiffs allege they are similarly situated to other Loan Officers employed by Defendants at their Bell Avenue facility in Des Moines, Iowa because these employees shared a primary job duty[3] and were required to be prepared to answer phone calls at the beginning of their scheduled start time. The Plaintiffs also allege that in addition to answering phone calls, the Defendant required them to review company emails, print and administer customer documents, and perform other duties. The Plaintiffs claim that these additional duties were routinely performed off-the-clock--and therefore went uncompensated--in order to enable them to accept more phone calls during their scheduled shift. Finally, the Plaintiffs claim the Defendants not only knew the Loan Officers were working additional time for which they were not compensated, but expected the Loan Officers to do so.

> 3   Plaintiffs state the primary duty of all Loan Officers is refinancing residential mortgage loans.

II. CONDITIONAL CERTIFICATION UNDER THE FLSA

Plaintiffs seek conditional certification of their FLSA claim as a collective action [*5] pursuant to 29 U.S.C. § 216(b). Plaintiffs also request the Court to authorize notice to all potential collective action class members. Defendants resist the Plaintiffs' requests.

A. Legal Standard

The FLSA allows an employee to bring an action "on behalf of himself and any other 'similarly situated' employees." Salazar v. Agriprocessors, Inc., (Salazar II), 2008 U.S. Dist. LEXIS 40363, 2008 WL 782803, at *3 (N.D. Iowa March 17, 2008) (quoting 29 U.S.C. § 216 (b)). "The FLSA does not expressly define 'similarly situated.' Although the Eighth Circuit has not addressed the issue, this Court and others within the Eighth Circuit have applied the two-step approach set out in *Lusardi v. Xerox Corp.*" Helmert v. Butterball, LLC, 2009 U.S. Dist. LEXIS 116460, 2009 WL 5066759, at *3 (E.D. Ark. Dec. 15, 2009) (internal citations omitted); *see also* Bouaphakeo v. Tyson Foods, Inc., 564 F. Supp. 2d 870, 890-891 (N.D. Iowa 2008) ("The great majority of these courts--including most of all of the district courts within the Eighth Circuit--have championed a two-step approach to determine collective action certification under § 216(b).").

Because the two-step approach is commonly used by

Eighth Circuit district courts in determining conditional class certification [*6] under the FLSA, and because both parties in this case advocate using this approach, the Court will use the two-step approach to decide whether other employees of Defendants are similarly situated for collective action under 216(b). "This approach provides for a two-step determination as to whether class certification is proper." *Helmert,* 2009 U.S. Dist. LEXIS 116460, 2009 WL 5066759 at *3 (quoting *Davis v. NovaStar Mortgage, Inc.,* 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005)). "Generally, the plaintiffs move for conditional certification at an early stage in the litigation, and a class is conditionally certified for notice purposes. Then, the defendant is allowed the opportunity to move for de-certification at the close of discovery." *Id.* (citing *NovaStar Mortgage, Inc.,* 408 F. Supp. 2d at 815).

When applying the two-part test:

> [T]he Court first uses a lenient standard to determine whether similarly situated persons exist, and if appropriate, the class is conditionally certified. The second step occurs after notice, time for opting-in, and discovery have taken place. Applying a stricter standard, the Court makes a factual determination on the similarly situated question. The second inquiry is usually conducted upon a [*7] defendant's motion for decertification.

*Bouaphakeo,* 564 F. Supp. 2d at 891 (quoting *Freeman v. Wal-Mart Stores, Inc.,* 256 F. Supp. 2d 941, 944 (W.D. Ark. 2003)). Regardless of whether the Court is applying the first or the second step, the burden rests with the plaintiffs to show that "other employees [are] similarly situated." *Id.* (citing 29 U.S.C. § 216(b)). "In sum, '[c]onditional certification in the first step requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'" *Robinson, et al. v. Tyson Foods, Inc.,* 254 F.R.D. 97, 99-100 (S.D. Iowa 2008) (quoting *Bouaphakeo,* 564 F. Supp. 2d at 892).

"The decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court." *Saxton v. Title Max of Alabama, Inc.,* 431 F. Supp. 2d 1185, 1187 (quoting *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1219 (11th Cir. 2001)). "The analysis for determining the issuance of opt-in notices to other potential plaintiffs under the FLSA is: whether the plaintiffs have established a colorable basis for their claim that [*8] a class of similarly situated plaintiffs exist." *Ray v. Motel 6 Operating, Ltd. P'ship & Motel 6 G.P., Inc.,* 1996 U.S. Dist. LEXIS 22564, at *5 (D. Minn. March 18, 1996) (citing *Severtson v. Phillips Beverage Co.,* 141 F.R.D. 276, 279 (D. Minn. 1992)). When determining initial class certification under the first step, "the plaintiffs need merely provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Bouaphakeo,* 564 F. Supp. 2d at 892 (quoting *Salazar II,* 2008 U.S. Dist. LEXIS 40363, 2008 WL 782803 at *5). "Although the burden at the first step is more lenient, and does not require existing plaintiffs to show that members of the conditionally certified class are actually similarly situated, plaintiffs must present more than mere allegations; i.e., some evidence to support the allegations is required." *Id.* (internal quotation omitted). "'Courts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread discriminatory plan was submitted.'" *Lopez, et al. v. Tyson Foods, Inc.,* 2008 U.S. Dist. LEXIS 78685, 2008 WL 3485289, at *8 (D. Neb. Aug. 7, 2008) [*9] (quoting *H & R Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D. Tex. 1999)).

The analysis "does not require th[e] court to make any findings of fact with respect to contradictory evidence presented by the parties nor does th[e] court need to make any credibility determinations with respect to the evidence presented." *West v. Border Foods, Inc.,* 2006 U.S. Dist. LEXIS 96963, at *10 (D. Minn. June 12, 2006) (quoting *Severtson v. Phillips Beverage Co.,* 141 F.R.D. 276, 278-79 (D. Minn. 1992)). "However, some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *Id.* (quoting *Barron v. Henry Cnty Sch. Sys.,* 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)).

When determining whether plaintiffs should be able to maintain an opt-in class during the second step of the analysis, the plaintiffs "bear the burden to show that they are similarly situated with respect to their job requirements and pay provisions." *Bouaphakeo,* 564 F. Supp. 2d at 892 (quoting *Kautsch v. Premier Communs,* 2008 U.S. Dist. LEXIS 7219, 2008 WL 294271, at *2

(W.D. Mo. Jan. 31, 2008)). "Although the plaintiff's burden at this final stage is more strict than at the notice stage, the plaintiff [*10] need not show that opt in plaintiffs are 'identically situated.'" *Id.* (quoting *Fast v. Applebee's Int'l, Inc.,* 243 F.R.D. 360, 363 (W.D. Mo. 2007)). Accordingly, while the burden is higher on the plaintiff during the second step, and the first step is considered a more lenient standard, it is not an empty standard. *Id.* at 892. Plaintiffs are required to come forth with enough evidence to satisfy the Court that other employees are similarly situated. *Id.*

B. *Dukes v. Wal-Mart Stores, Inc.*[4]

> 4 *Dukes v. Wal-Mart Stores, Inc.,* \_\_\_ U.S. \_\_\_, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011).

Defendants urge the Court to look through the lens of the recent United States Supreme Court case of *Dukes v. Wal-Mart Stores, Inc.* in making its decision whether or not to conditionally certify a collective action in this case. *Dukes* involved a Rule 23 class action, not an FLSA collective action. Rule 23 class actions and FLSA collective actions are separate and distinct, and courts apply different legal standards when determining whether or not to certify a Rule 23 class and when determining whether or not to certify a collective action under the FLSA. Finding no precedent to apply the policy standards of *Dukes* to an FLSA collective [*11] action, the Court declines to do so.

C. Conditional Certification

This Court is required to determine if there are "meaningful identifiable facts or a legal nexus binding the claims 'so that hearing the cases together furthers the purposes of [] § 216, is fair to both parties, and does not result in an unmanageable trial." *Lopez v. Tyson Foods,* 2008 U.S. Dist. LEXIS 78685, 2008 WL 3485289, at *8 (D. Neb. Aug. 7, 2008) (quoting *Falcon v. Starbucks Corp.,* 580 F. Supp. 2d 528, 2008 WL 155313, at *5 (S.D. Tex. 2008) (Slip Copy)). The Plaintiffs wish to certify a class because they claim the Defendant wrongfully withheld compensation.

In this case, Plaintiffs assert that "as a matter of corporate practice, Wells Fargo does not pay Loan Officers for all their work, including work they perform before their scheduled start time." [Dkt. No. 41, pg. 1.] Plaintiffs allege that Loan Officers at the Bell Avenue facility in Des Moines, Iowa often worked overtime--including before and after their scheduled shift, and during their mandatory breaks and lunchtime--that the Defendants both encouraged and did not record on their time sheets, and it therefore went uncompensated. The Plaintiffs state that "Loan Officers were encouraged and permitted, [*12] either expressly or impliedly, to perform non-telephone work during off hours." [Dkt. No. 41, pg. 4.]

In support of their allegations, Plaintiffs submitted eight affidavits from the Plaintiffs and potential opt-ins. Each affidavit states in either identical or nearly identical terms:

> 6. Each day, before my scheduled shift began, I was required to log into my computer and open numerous software applications. I needed to use these software applications to perform my job duties. **Wells Fargo expected me** and other Loan Officers to be ready to handle telephone calls and service customers at the start of our scheduled shift. Therefore, we needed to log-in to our computers to open the software applications beforehand or we would not be ready to handle calls promptly at the start of our scheduled shift.
>
> 7. In addition to logging into my computer and opening required software applications, I customarily worked before my schedule shift by reading company emails and printing off customer documents received overnight. I also customarily worked during my meal and rest breaks performing similar work. I oftentimes worked after my scheduled shift talking to clients on the telephone and/or responding to [*13] emails. I worked before and/or after my scheduled shifts to close potential deals and meet my performance goals.

[Dkt. No. 41, Exs. C, D, E, F, G, H, I, and J.] Emphasis added. However, the Court is as interested in what the affidavits do not say as it is in what the affidavits do say. None of the affidavits, pleadings, or briefs state how the Plaintiffs knew that Wells Fargo expected them to work time additional to their scheduled shift without being paid

for it, nor how Wells Fargo encouraged them to do so. Merely stating the Defendants have a "corporate practice" of not paying their employees for all the time they work does not convince the Court that the putative class can be meaningfully defined.

While specific and detailed allegations are not required at this initial stage, Plaintiffs must present a threshold amount of evidence for this Court to find that there are similarly situated employees at the Bell Avenue facility in Des Moines, Iowa. Plaintiffs have not alleged that any training program, any management employee of Wells Fargo, any of their direct supervisors, nor any fellow employee ever told them they must work overtime hours that should not be recorded on their time cards.

Furthermore, [*14] the Plaintiffs have provided no evidence that any training, any management employee of Wells Fargo, any of their direct supervisors, nor any fellow employee ever implied that the Plaintiffs and other Loan Officers were required to work overtime hours that they should not record on their time cards. Plaintiffs make some reference to "performance goals" required by Wells Fargo:

> 10. Wells Fargo required me and other Loan Officers to meet production goals, including the number of loan products sold. Wells Fargo closely tracked and monitored each Loan Officer's performance on a daily bases. Performance reports for each Loan Officer were generated by Wells Fargo on a daily basis.
>
> 11. Given Wells Fargo's expectation that Loan Officers meet or exceed their performance goals, Wells Fargo expected me and other Loan Officers to arrive early and log in to the software applications to be able to handle phone calls promptly at the start of our scheduled shift time.

[Dkt. No. 41, Exs. C, D, E, F, G, H, I, and J.] Unlike the case Plaintiffs rely on for this particular argument, the Plaintiffs here have not provided any information from which the Court can infer the Defendants expressly or impliedly--through [*15] the imposition of performance goals--required Plaintiffs to work additional hours without compensation. *See Russell v. Ill. Bell Tel. Co.,* 575 F. Supp. 2d 930 (N.D. Ill. 2008) (granting Plaintiff's motion for conditional class certification where affiants stated they must work during breaks to meet the Defendant's minimum production standards, where an opt-in affiant testified that every supervisor he had while working for Defendant expressly told him he must be ready to take calls at the beginning of his shift, and where one of the Defendant's depositions admitted that "employees often work during their lunch breaks because they 'are held accountable' and 'could get fired if [they] don't make [their] sales quotas,' so '[they] are told to do what [they] have to do.'" *Id. at 936*). The Court cannot infer from the mere expectation that performance goals be met that an employer insists on employees to perform unpaid overtime.

Another call center case is informative in this instance. Similar to this case, in *Burch, et. al v. Qwest Commc'ns Int'l, Inc, et al.,* call center employees sued their employer claiming they were required to perform tasks other than answering phone calls and this forced [*16] them to work off-the-clock. 500 F. Supp. 2d 1181 (D. Minn. 2007). However, there are distinct differences between *Burch* and this case. First of all, in *Burch* the employee's phone served as his time clock. *Id. at 1183* ("...[E]ach Qwest call center employee's phone serves as the employer's time clock and work time is tracked through the time that the employee logs into and out of his phone. Qwest does not track when an employee is logged onto his computer or e-mail." *Id.*). Therefore, in *Burch* the employer did not accurately record the employee's work hours since the timekeeping system only recorded when the employee was taking phone calls, not when the employee was performing other essential job tasks. *Id.* Secondly, the employer in that case admitted to many of the employee's allegations. The employer did not dispute:

> Qwest's phone log-in system serves as the time clock for Plaintiffs and putative class members; Plaintiffs and putative class members all have to log onto the computer, boot up several computer programs, and perform other duties before accepting calls; Quest uses the same scheduling system at all call centers nation wide; and Quest uses the same...monitoring procedures at [*17] all call centers.

Page 5

*Id.* at 1187. Therefore, the court in *Burch* found that the Plaintiffs and putative class members were similarly situated and granted their request for conditional certification of their collective action. *Id.* at 1191-192.

In this case, Defendants do not utilize a timekeeping system that is linked to the Plaintiffs' phones. Instead, the Defendants use an electronic time keeping system that allows the Plaintiffs to manually enter their time at work, and "time may be recorded to the minute." [Dkt. No. 48, pg. 4.] Additionally, the Defendants in this case have made no admissions regarding any allegations by the Plaintiffs. Instead, they repeatedly assert that they always require employees to record all the hours they work, including overtime hours, and that they pay employees for all hours recorded. The Defendants also submitted their official written policy that states:

> **Overtime:** All team members may be required to work hours in addition to their standard hours as directed by their manager. The Fair Labor Standards Act (FLSA) requires that nonexempt employees receive overtime pay if they work more than 40 hours in a workweek (see Overtime Pay and Holiday Pay). In some locations, [*18] there may also be additional state laws governing overtime pay.
>
> **Reporting overtime:** If you're in a nonexempt position, you are entitled to pay for all hours actually worked, even those that exceed your regular schedule or that are not authorized before working them. Therefore, you must report **all** hours worked. If you think you're going to need to work overtime, you need to get your manager's authorization before you work additional hours. Overtime affects your business group's plan and budget, so it's important that your manager approves it in advance. Working unauthorized overtime hours can be grounds for corrective action, which may include termination of your employment.

[Dkt. No. 48, Ex. 2.] Emphasis in original. "The existence of a written policy dictating overtime pay is one factor weighing against conditional certification." *Burch,* 500 F. Supp. 2d at 1188 (citing *West v. Border Foods, Inc.,* 2006 U.S. Dist. LEXIS 96963, 2006 WL 1892527, at *9 (D. Minn. July 10, 2006)). However, the Plaintiffs rightfully point out that "at this early stage of litigation, the mere fact that [Defendant] has a written policy does not defeat Plaintiffs' motion in light of Plaintiffs' countervailing evidence of a centralized policy [*19] not to pay overtime." *Id.*

This reasoning holds true for *Burch* because as demonstrated above, the Plaintiffs in that case were able to provide enough "countervailing evidence of a centralized policy not to pay overtime." In this case, Plaintiffs have not provided substantial allegations, nor any evidence of any widespread policy by the Defendants to deprive them of overtime pay. Instead, Plaintiffs rely solely on the allegation that Defendants encouraged this behavior, yet can point to no person-- manager, supervisor, or fellow employee--or policy--written, unwritten, or implied--from whom they deduced this information. Therefore, Plaintiffs have not provided enough, if any, countervailing evidence to refute Defendants' written overtime policies.

It is true, however, that Plaintiffs and potential opt-ins have provided affidavits that contradict Defendants' official written policy. This does not mean this issue is appropriate for a collective action. Under the FLSA, a collective action is only appropriate where other employees are similarly situated to Plaintiffs. In this case, the allegations of the eight people who provided affidavits for the Plaintiffs may possibly be evidence of improper [*20] practices, but the allegations are too individualized and not substantial enough to show any improper policy or practice. In the absence of any evidence tending to show that Defendants routinely breached FLSA's pay provisions, these deviations are case-specific and subject to variables, making them unfit for a collective action. Therefore, this Court finds that Plaintiffs and the class of people they wish to represent have not sufficiently demonstrated that they are similarly situated. The Court denies Plaintiffs' motion to conditionally certify a collective action.

III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Plaintiffs' Motion for Conditional Certification of a Collective Action [Dkt. 41] is DENIED.

| | |
|---|---|
| DATED this 6th day of February, 2012. | UNITED STATES DISTRICT JUDGE |
| /s/ John A. Jarvey | SOUTHERN DISTRICT OF IOWA |
| JOHN A. JARVEY | |