# EXHIBIT 36



Not Reported in F.Supp.2d, 2011 WL 1060737 (M.D.Tenn.)
**(Cite as: 2011 WL 1060737 (M.D.Tenn.))**

Only the Westlaw citation is currently available.

United States District Court,
M.D. Tennessee,
Nashville Division.
Mariah MILLER, an individual on behalf of herself and others similarly situated, Plaintiff,
v.
JACKSON, Tennessee Hospital Co, LLC d/b/a Regional Hospital of Jackson, Defendant.

No. 3:10–1078.
March 21, 2011.

Clinton H. Scott, Gilbert Russell McWherter PLC, Jackson, TN, Michael L. Russell, Gilbert Russell McWherter PLC, Brentwood, TN, for Plaintiff.

James Craig Oliver, Charles J. Mataya, Bradley Arant Boult Cummings LLP, Nashville, TN, for Defendant.

### MEMORANDUM
ALETA A. TRAUGER, District Judge.

**\*1** Pending before the court is the plaintiff's Motion for Approval of 29 U.S.C. § 216(b) Notice and Consent Forms and to Order Disclosure of Current and Former Employees (Docket No. 4), to which the defendant has responded (Docket No. 13), the plaintiff has filed a reply (Docket No. 20), and the defendant has filed a sur-reply (Docket No. 23). Also pending is the plaintiff's Motion for Leave to File First Amended Complaint (Docket No. 17), to which the defendant has responded (Docket No. 21), the plaintiff has filed a reply (Docket No. 26), and the defendant has filed a sur-reply (Docket No. 30). For the reasons discussed herein, both of the plaintiff's motions will be granted.

### FACTUAL AND PROCEDURAL BACKGROUND
On November 15, 2010, the plaintiff, Mariah Miller, filed her Collective Action Complaint in this case. (Docket No. 1.) Miller was employed by the Franklin, Tennessee-based defendant, Jackson, Tennessee Hospital Co., LLC d/b/a Regional Hospital of Jackson, Tennessee, as a certified nursing assistant (CNA) from March 15, 2010 to July 21, 2010, and she was paid $9.42 per hour. (*Id.* at 2; Docket No. 13 Ex. 1 at 2.)

The plaintiff alleges that her pay, and the pay of similarly situated employees, was "subject to an automatic meal break deduction"; that is, under the defendant's policy, the computerized time and attendance system automatically deducted 30 minutes from the length of the employee's shift to account for an unpaid 30–minute meal period. (Docket No. 1 at 2.) The plaintiff maintains that employees often performed "compensable work for Defendant during their uncompensated 'meal breaks,' " that the defendant failed to take the appropriate steps to ensure that employees were relieved of their duties for 30 minutes during each shift, and, in fact, while not paying its employees for the time, the defendant expected that employees would be "available to work throughout their shifts" and required employees to work during meal breaks. (*Id.* at 2–3.)

While the plaintiff claims that discovery from the defendant is necessary to determine the precise nature of the damage, the defendant's conduct was pervasive and improperly reduced the pay of a considerable number of hourly employees. (*Id.* at 4–5.) In the Collective Action Complaint, the plaintiff proposes to bring this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207 and 29 U.S.C. § 216(b), on behalf of "all persons employed within the six years preceding the filing of this action by Defendant, whose pay was subject to an automatic 30 minute meal period deduction even when they performed compensable work during the unpaid 'meal break.' " (*Id.*) In addition to the FLSA claim, the plaintiff asserts a claim of state-law unjust enrichment on behalf of herself and the same proposed class. (*Id.* at 6.)

On November 24, 2010, the plaintiff filed the pending motion, seeking "authorization to proceed as an opt-in collective action ... for overtime violations under the FLSA and unjust enrichment under Tennessee law." (Docket No. 5 at 1.) In support of the motion, the plaintiff filed her affidavit. (Docket No. 5 Ex. 3.) The affidavit re-states the basic allegations in the Complaint and states that it was "extremely common," given the nature of the work performed and the defendant's tolerance of the problem, for the plaintiff and other "hourly employees to perform compensable work for Defendant during [ ] uncompensated meal breaks." (*Id.* at 2–3.)

**\*2** The plaintiff also filed the "sworn declaration" of Karen Carter. (*Id.* at 4.) In a statement that very closely mirrors the plaintiff's affidavit, Carter stated that she is a former employee of the defendant, and, as a nurse, she was also "regularly required" to work during unpaid meal breaks and that the defendant "did nothing in practice" to prevent employees from working during this unpaid time. (*Id.*) On January 21, 2011, the plaintiff also filed the "sworn declaration" of Terry Hays, who worked for the defendant performing electrocardiograms; Hays asserted, in similar fashion, that she and others were required to perform uncompensated work pursuant to the "meal break" policy. (Docket No. 12 Ex. 1.)

In addition to seeking authorization from the court for this case to proceed as a collective action under the FLSA, the plaintiff filed proposed Notice and Consent Forms that would be provided to potential plaintiffs to allow them the opportunity to learn of this litigation and to opt-into it. (Docket No. 5 Exs. 1–2.) The plaintiff seeks an Order directing the defendant (1) to provide the plaintiff with the name, address, and phone number of current and former nonexempt employees who were subjected to the time-deduction policy over the last six years and (2) to furnish the Notice and Consent Form to employees, by various means, including by mail and as an insert along with their weekly paycheck. (Docket No. 5 at 1–2 .) The plaintiff also seeks an Order tolling the statute of limitations "for the prospective plaintiffs" as of the date that this case was filed and deeming "the opt in plaintiffs Consent Forms ... filed on the date they are postmarked." (*Id.*) The defendant timely filed its Answer on January 7, 2011. (Docket No. 9.)

On January 21, 2011, the same day that the plaintiff filed the Hays declaration, the defendant filed its response in opposition to the plaintiff's motion. (Docket No. 13.) As discussed below, the defendant's primary argument is that the plaintiff was not denied overtime compensation, and, therefore, she does not have a viable FLSA claim. (*See id.*) This argument is supported by the declaration of Jan Zimmer, who is the defendant's Chief Nursing Officer. (Docket No. 13 Ex. 1.)

Ms. Zimmer states that the plaintiff was subject to the automatic meal break deduction, but that, during her brief employment, the plaintiff "never worked more than 35.5 hours in any particular workweek.... Thus, even if you added 30 minutes to Ms. Miller's time each day she worked, she never worked 40 hours in a workweek." (*Id.* at 2.) Ms. Zimmer also provides the plaintiff's payroll records, which indicate that the plaintiff generally worked two or three shifts of roughly 12 hours per week, and, indeed, even if "meal time" had been included, the plaintiff would not have worked more than 40 hours in any week. (*Id.* at 3–6.)

On January 31, 2011, apparently sensing a problem with the viability of Miller's FLSA claim, the plaintiff filed its pending motion for leave to amend the Collective Action Complaint. (Docket No. 17.) The proposed Amended Complaint is identical to the original Complaint, except that it seeks to add Hays and Carter as plaintiffs. (Docket No. 17 Ex. 1.)

**\*3** In objecting to this move, the defendant has provided another declaration from Zimmer. (Docket No. 23 Ex. 1.) Zimmer states that Carter was subject to the meal break deduction policy and that she

was employed by the defendant from July 21, 2009 to April 10, 2010 as a nurse. (*Id.* at 2.) Zimmer maintains that Carter was on the "same work schedule as Ms. Miller," and, therefore, generally, "even if you added 30 minutes to Ms. Carter's time each day she worked ... she never worked 40 hours" in a week. (*Id.* at 2 .)

However, during the week of September 13, 2009, Carter worked four days, for a total of 43.67 hours. (*Id.*) In that week, Zimmer concedes, "if you added 30 minutes to Ms. Carter's time each day she worked ... she would have been entitled to two additional hours of overtime compensation." (*Id.*) Attached to Zimmer's declaration are Carter's payroll records, which appear to confirm Zimmer's account, and, as Zimmer notes, indicate two shifts (one in October 2009 and one in January 2010) where the "automatic deduction" was overridden by Carter's supervisor; that is, "on each of those days, Ms. Carter was paid for working through lunch." (Docket No. 23 Ex. 1 at 3–11.)

Zimmer also states that Hays was employed as a "cardiovascular technologist" and that she worked for the defendant from September 6, 2008 through January 11, 2011. (*Id.* at 3.) Hays, however, was scheduled to work either four 10–hour shifts per workweek or five eight-hours shifts, and she regularly worked overtime; indeed, Zimmer states, "the hospital's records indicate that Ms. Hays worked approximately 400 hours of overtime during her employment." (*Id.*) Zimmer does not clearly state whether Hays was subject to the automatic meal break deduction, but there is nothing in the record to indicate that she was not. Zimmer concludes by stating that "the Hospital currently has 579 nonexempt employees who receive an automated timekeeping deduction for a 30–minute meal period, subject to an override if an employee works through his or her meal break," such as the override that Carter received on two occasions. (*Id.*)

## ANALYSIS

In seeking court-ordered "authorization" to proceed, at this early stage, as a collective action, the plaintiffs are seeking what is generally known as "conditional certification" of a collective action pursuant to 29 U.S.C. § 216(b) of the FLSA.

**I. FLSA Certification Standard**

Under the FLSA, no employer shall employ a covered employee for a work week that is longer than forty hours unless that employee receives compensation for his employment that is at least one and one-half times the regular rate for all overtime hours. 29 U.S.C. § 207(a). That is, the FLSA requires employers to pay their employees "time and a half" for work performed in excess of forty hours per week. *See Wood v. Mid–America Management Corp.,* 192 Fed. Appx. 378, 379–80 (6th Cir.2006). An employee who is not so compensated may sue under the FLSA to recover the overtime pay and an equal amount in liquidated damages. *Id.;* 29 U.S.C. § 216(b).

**\*4** Recognizing that the value of an individual claim might be small and not otherwise economically sensible to pursue, the FLSA provides that a collective action "may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *O'Brien v. Ed Donnelly Enters.,* 575 F.3d 567, 584 (6th Cir.Ohio 2009). Once a collective action is certified, however, employees seeking to join the class must affirmatively opt into the litigation by filing a written consent with the court. 29 U.S.C. § 216(b).

The FLSA does not define the term "similarly situated." However, the Sixth Circuit has held that "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien,* 575 F.3d at 585. But employees may also be similarly situated if their claims are

merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required [for certification]." *Id.* at 584. In *O'Brien,* the Sixth Circuit stated that even a requirement that employees' "causes of action under the FLSA accrued at about the time and place in the approximate manner of the named plaintiff" would be "more demanding than what the [FLSA] requires." *Id.* at 585.

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the employees they seek to represent. *Comer v. Wal–Mart Stores, Inc.,* 454 F.3d 544, 546 (6th Cir.2006); *O'Brien,* 575 F.3d at 583. "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer,* 454 F.3d at 546 (internal quotation omitted).

At the first stage, which is the relevant stage here, the plaintiff bears the burden of showing that employees in the class are similarly situated. *O'Brien,* 575 F.3d at 583. Employing the standard discussed above, this is a "modest factual showing," and, where the proposed plaintiffs performed similar jobs, the court should use "a fairly lenient standard [that] typically results in conditional certification.' " *Comer,* 454 F.3d at 546–47 (internal quotation omitted)). If the named plaintiffs show that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Id.* at 546.

**\*5** Conditional certification, as the name implies, is not final. After discovery, the defendant may move for decertification of the conditional class. *See O'Brien,* 575 F.3d at 583. At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer,* 454 F.3d at 547.

**II. The Plaintiff's Motions**

**A. Whether the viability of Miller's Claim is Fatal to Conditional Certification**

Not surprisingly, the plaintiff's initial brief proceeded under the assumption that she had a viable FLSA claim for improper denial of overtime compensation. (Docket No. 5 at 11.) That is, after providing a detailed overview of FLSA case law, the plaintiff briefly argues that she is "similarly situated" to the rest of the proposed class because all potential class members were denied overtime under the automatic time deduction policy. (*Id.* at 10–11.) Recognizing that the FLSA only covers uncompensated overtime, the plaintiff goes on to argue that the class members' uncompensated "straight time" is recoverable under the unjust enrichment claim. (*Id.* at 11–12 citing *Sircy v. Metro. Gov't of Nashville and Davidson County,* 182 S.W.3d 815, 820 (Tenn.Ct.App.2005)). The plaintiff concludes by addressing a series of other issues including the alleged ubiquity of payment abuses in the health care industry, the adequacy of the Notice and Consent forms, the necessity of discovery to disclose the names of other class members, and the propriety of tolling the statute of limitations. (*Id.* at 12–17.)

As indicated above, the defendant's initial response did not engage most of these issues. (Docket No. 13 at 2.) Rather, the defendant argues that the plaintiff "does not have a claim under the FLSA" because she was not denied overtime compensation. (*Id.* at 5.) Because of this failing, the defendant argues, the plaintiff is not similarly situated to the class she purports to represent, cannot serve as the lead plaintiff, and conditional certification must be denied. (*Id.* at 6.) The defendant states that it has "several objections" to the Notice and Consent form, the scope of the plaintiff's discovery requests, the proposed methods of notice, and the tolling of the statute of limitations, but "defendant is not specifically addressing" these issues "at this time be-

cause of its position that the class sought by Plaintiff is improper." (*Id.* at 6–7.) The defendant requests an opportunity to raise these objections if the court conditionally certifies the class. (*Id.* at 7.)

Not conceding that Miller never worked enough hours to qualify for overtime, the plaintiff argues that she can render this argument moot by amending the Complaint to add two plaintiffs who, indisputably, worked enough hours to receive overtime pay. (Docket No. 18 at 2; Docket No. 20 at 2–3.) The plaintiff notes that the Federal Rules of Civil Procedure dictate that leave to amend is to be "freely given," this litigation is at a very early stage, and the defendant would not be prejudiced by the amendment. (*Id.* citing Fed. R Civ. P. 15(a)(2)).

**\*6** The defendant responds that the Motion for Leave should be denied as futile. (Docket No. 21 at 3 citing *Miller v. Administrative Office of Courts,* 448 F.3d 887, 898 (6th Cir.2006) for the well-settled proposition that futility of amendment is a valid basis for denying a motion for leave.) According to the defendant, a "lead plaintiff who does not have a cognizable FLSA claim cannot remedy this deficiency by adding other persons who might." (*Id.*) That is, Miller brought this case, asserted that she was the one with the FLSA claim, and she should not now be allowed to "piggyback" what is, at most, a state-law unjust enrichment claim onto potentially valid FLSA claims that might be held by others. (*Id.* at 4–5; Docket No. 30 at 2.)

Both sides maintain that there is no case law that addresses this direct question—that is, whether a plaintiff who is revealed not to have a viable FLSA claim can save the collective action Complaint in a FLSA case by amending her Complaint to add plaintiffs who appear to have colorable FLSA claims. (Docket No. 23 at 3–4; Docket No. 26 at 2.) Both sides, however, maintain that the Sixth Circuit's *O'Brien* case helps resolve the question. (*Id.*)

In *O'Brien,* the party plaintiffs had FLSA and supplemental claims, and the issue was whether "similarly situated" individuals who only had supplemental claims could opt-in to the collective action. 575 F.3d at 580–81. The Sixth Circuit concluded that they could, stating that "as long as someone in a collective action has a FLSA claim, employees who are similarly situated can be part of the collective action, even if the other employees only have supplemental claims." *Id.* The plaintiff points to this language as clearly indicating that, as amended, the Collective Action Complaint would be permissible, and the defendant argues that *O'Brien* implicitly assumes that all lead plaintiffs will have viable FLSA claims and this language only applies when other employees are opting-in. (Docket No. 21 at 4; Docket No. 26 at 2.)

Under *O'Brien,* the plaintiff has the better of the argument. *O'Brien* holds that the class in an FLSA case may be a mix of individuals who have valid FLSA claims and those who have supplemental claims. Once the Complaint is amended, this case will contain such a mix. Also, as the plaintiff points out, unlike in a Rule 23 class action, all opt-in plaintiffs in an FLSA collective action are "party plaintiffs," with equal status upon opting-in. *O'Brien,* 575 F.3d at 583. Therefore, while the defendant makes vague allusions to the plaintiff being an "inappropriate lead plaintiff" (Docket No. 23 at 2), in the absence of any case law indicating that, while a mix is acceptable amongst later opt-ins, such a mix is not acceptable amongst the earliest plaintiffs to the litigation, the court determines that the Motion for Leave is not futile and that Miller's status as a "supplemental claim holder" does not preclude this case from moving forward as a collective action once the Amended Complaint is filed.

**B. Remaining Challenges to Conditional Certification**

**\*7** The defendant also argues that Miller, Carter and Hays are "not similarly situated to each other and thus cannot be representatives of an allegedly similarly situated class of employees." (Docket No. 21 at 5–6.) That is, they worked for varying lengths of time, in differing environments,

and incurred markedly different levels of overtime. (*Id.;* Docket No. 23 at 5.) Indeed, Miller apparently never worked any overtime, Carter worked a *"de minimis* amount," and Hays worked hundreds of hours of overtime. (Docket No. 23 at 5–6.) The defendant contends that the plaintiffs also must have had differing experiences "overriding" the automatic meal break deduction system, as, on two occasions, Carter received pay for working through her meal break. (*Id.* at 6.)

The defendant also argues that conditional certification is inappropriate in the absence of any indication that "any other employees will join this action." (Docket No. 21 at 7.) Citing a few non-controlling, conditional certification cases from other district courts, the defendant maintains that the lack of evidence that other specific employees will join this action should weigh against conditional certification. (*Id.* at 7–8 citing *e.g. Parker v. Rowland Express, Inc.,* 492 F.Supp.2d 1159, 1165–66 (D.Minn.2007) for the proposition that the plaintiff must provide "some evidence" that others will opt into the lawsuit.) The defendant argues that a collective action will impose a "tremendous burden," and, absent any indication that others will join this suit, conditional certification would amount to an expensive "fishing expedition." (Docket No. 23 at 9.)

In response, the plaintiff again points to *O'Brien* and the "modest" showing that the plaintiff must make at the conditional certification stage. (Docket No. 26 at 5.) That is, in evaluating whether the proposed class members will be similarly situated to each other, *O'Brien* holds that the court should consider whether the initial plaintiffs have articulated a "common means by which they were allegedly cheated," and the court should not allow the fact that each plaintiff undoubtedly had an "individualized and distinct" workplace experience to dissuade the court from conditionally certifying the class. (Docket No. 26 at 5 citing *O'Brien,* 575 F.3d at 585.)

Here, the plaintiff argues, while each plaintiff will have worked somewhat differing hours in slightly different settings, the claims are unified by the common theory that the defendant deprived the employees of compensable time using its automatic meal deduction policy. (Docket No. 26 at 6.) As to the defendant's "lack of interest" argument, the plaintiff points out that none of the cases that the defendant uses to support the notion that the plaintiff must initially show some level of class-wide interest in the litigation (prior to notice) are from the Sixth Circuit. (*Id.* at 7.)

Again, the showing that the plaintiff must make at the conditional certification stage is "modest," and the outcome largely depends on the plaintiff's ability to demonstrate that the claims of the class would proceed under a common, focused theory of liability. The plaintiff has offered such a common, specific theory here. That is, all potential plaintiffs worked under a system in which they had 30 minutes deducted from their shift for lunch, but, in most cases, they were not allowed to take a lunch break. In some cases, this practice denied the plaintiffs of overtime under the FLSA and sometimes "straight time" in violation of Tennessee common law. Either way, the proposed class is unified in making the same fundamental argument as to why they were not compensated for time worked—the defendant did not honor the notion of "meal breaks ." Through the invocation of this unifying theory, the plaintiff has met the "low bar" of conditional certification.

**\*8** Accordingly, the court will conditionally certify a class of "all persons employed within the six years preceding the filing of this action by Defendant, whose pay was subject to an automatic 30 minute meal period deduction even when they performed compensable work during the unpaid 'meal break.' "

**C. Going Forward**

As discussed above, the plaintiff has sought additional rulings on the scope of initial discovery, the Notice and Consent forms, how those forms will be distributed, and statute of limitations issues.

The defendant has vaguely asserted that it has "objections" to the plaintiff's arguments and proposals, but, despite several rounds of briefing, has not developed these arguments. While the court will not endeavor to predict the defendant's objections, the court does not detect anything alarming about the proposed Notice and Consent forms or the plaintiff's request for discovery into the names, addresses, and telephone numbers of the potential plaintiffs. (Docket No. 5 at 16.)

In light of this, the parties should meet and confer in good faith regarding these issues, and, within 30 days of the date of the accompanying Order, either submit agreed notice and consent forms, or, if the parties cannot agree, the defendant may file objections to the plaintiffs' proposed forms by the same deadline. At the same time, the parties may file any objections regarding the other's conduct in class discovery. Also, if the parties cannot agree on the physical method of notice, they may bring that dispute to the court's attention at the same time.

Finally, the court detects no reason to rule on the undeveloped statute of limitations/tolling issue. If, at a later stage in this proceeding, the defendant advances an argument that certain claims are barred by the relevant statute of limitations, the plaintiff may (of course) advance an argument that equitable tolling should apply.

## *CONCLUSION*

For the reasons discussed herein, both of the plaintiff's motions will be granted.

An appropriate order will enter.

M.D.Tenn.,2011.
Miller v. Jackson
Not Reported in F.Supp.2d, 2011 WL 1060737 (M.D.Tenn.)

END OF DOCUMENT