# EXHIBIT 38


Positive
As of: Jul 06, 2015

**TIFFANY MONTGOMERY, on behalf of herself and others similarly situated, Plaintiff, v. DECATUR COUNTY GENERAL HOSPITAL, Defendant.**

No. 11-1096

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE, EASTERN DIVISION

2012 U.S. Dist. LEXIS 188046

March 19, 2012, Decided
March 19, 2012, Filed

**CORE TERMS:** meal, certification, unjust enrichment, conditional, notice, similarly situated, statute of limitations, compensable, hourly, collective action, automatically, putative, class members, limitations period, unpaid, discovery, causes of action, uncompensated, declaration, minute, opt-in, personal services rendered, contractual, automatic, routinely, deducted, telephone numbers, supervisor, gravamen, staffing

**COUNSEL:** [*1] For Tiffany Montgomery, on behalf of herself and others similarly situated, Plaintiff: Clinton H. Scott, GILBERT RUSSELL McWHERTER PLC, Jackson, TN; Michael L. Russell, GILBERT RUSSELL McWHERTER PLC, Brentwood, TN.

For Decatur County General Hospital, Defendant: Charles K. Grant, BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ- Nashville, Nashville, TN.

**JUDGES:** J. DANIEL BREEN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** J. DANIEL BREEN

**OPINION**

ORDER

*INTRODUCTION AND BACKGROUND*

On April 21, 2011, the Plaintiff, Tiffany Montgomery, filed a complaint on behalf of herself and others similarly situated against her employer, Decatur County General Hospital ("DCGH"), alleging that Defendant violated the Fair Labor Standards Act ("FLSA") by failing to compensate her and other members of the purported class as required by the statute. She also asserted claims of unjust enrichment under Tennessee state law. Before the Court is the Plaintiff's motion for conditional class approval.

DCGH is a not-for-profit community hospital in Parsons, Tennessee, where Montgomery is employed as an emergency room registration clerk. (D.E. 20-6 ¶ 2, D.E. 11-4.) According to the complaint, the Defendant violated the FLSA by subjecting all hourly employees [*2] to a policy that automatically deducted thirty minutes for meal breaks even when they performed compensable work during the meal break and without ensuring that employees were completely relieved from job duties during that period. (D.E. 1 ¶¶ 7-10.) Rather, Plaintiff avers, DCGH expected employees to be available to work throughout their shift and consistently required them to work during unpaid meal breaks. (D.E. ¶

Page 1

13.) Therefore, employees were required to eat without any change in demands or relief by additional staff. (D.E. 1 ¶ 14.)

Moreover, the Plaintiff alleges that DCGH knew or had reason to know that employees performed work during their unpaid meal breaks because they did so "on Defendant's premises, in plain sight." (D.E. 1 ¶ 16.) She also asserts that "[g]iven the demands of the health care industry and staffing shortages," Defendant knew that, in order to complete the tasks assigned, employees had to work through their meal breaks. (D.E. 1 ¶ 17.)

Montgomery seeks certification of a collective action and requests that notice be sent to "all employees of Defendant who, like Plaintiff, were non-exempt [1] employees and subject to Defendant's policy and practice of automatically [*3] deducting meal breaks within the last six years." (D.E. 11-1 at 1.) The Defendant acknowledges that, during the relevant period, its time and attendance software automatically deducted a thirty-minute period after the first six consecutive hours worked. (D.E. 20-3 ¶ 15 [2]; D.E. 20-6 ¶ 13 [3].) DCGH procedures required employees to notify their supervisors if a time record adjustment was needed, including any override of the automatic meal period deduction. (D.E. 20-3 ¶ 16; D.E. 20-6 ¶ 14.) The procedures further provided that employees were to notify their supervisors of any errors in time records or pay. (D.E. 20-3 ¶ 17; D.E. 20-6 ¶ 15.)

> 1 An employer has the burden of showing that an employee asserting an FLSA claim is exempt from its provisions. Acs v. Detroit Edison Co., 444 F.3d 763, 767 (6th Cir. 2006). DCGH has made no claim that Montgomery is exempt.
> 2 The declaration of Donna Adkins, business manager of DCGH since 2008. (D.E. 20-3 ¶ 2.) She had been employed by the facility since 1986. (D.E. 20-3 ¶ 2.)
> 3 The declaration of Tia Stokes, a human resources generalist for DCGH since 2010. (D.E. 20-6 ¶ 2.)

In support of her motion for class certification, the Plaintiff has proffered her [*4] declaration, in which she states as follows:

> 1. My name is Tiffany Montgomery. I am of majority age and am competent to execute this Declaration. I have personal knowledge of the facts stated herein.
>
> 2. I am a current employee of Defendant Decatur County General Hospital ("Defendant"). My position is an Emergency Room Registration Clerk. My job is to register emergency room patients when they come to the hospital.
>
> 3. As an employee of the hospital, I was regularly required to perform compensable work during unpaid "meal breaks."
>
> 4. Defendant has a computerized time and attendance system that automatically deducts a thirty (30) minute meal period per work shift.
>
> 5. Prior to the time I filed my lawsuit against Defendant, it was extremely common for hourly employees to perform compensable work during their uncompensated meal breaks.
>
> 6. This occurred for several reasons. First, Defendant never explained to me or other employees what constituted a compensable meal break under the Fair Labor Standards Act. We were not trained that a meal eaten while working was compensable work time. Likewise, we were never trained that an interrupted meal was compensable.
>
> 7. Second, the work load and staffing [*5] situation simply did not allow for daily meal breaks. Hourly employees (including me) simply worked through our meal breaks or tried to eat a quick meal while we were performing work.
>
> 8. My co-workers and I were routinely not completely relieved of our job duties during our uncompensated meal breaks.
>
> 9. Prior to my lawsuit being filed, Defendant did nothing in practice to prohibit employees from working during their meal breaks and routinely suffered or

permitted employees to perform such work.

10. In fact, although Defendant automatically deducted thirty (30) minute meal periods, it expected employees to be available to work throughout their shifts.

11. I have talked to others who worked for Defendant who experienced the same problems.

12. I complained to supervisor Donna Adkins about having to work through my meals without being compensated. Ms. Adkins responded that meals are automatically deducted and said nothing could be done about it.

(D.E. 11-4 at 5.) The Plaintiff also submitted the affidavit of Tracy Pevahouse, who stated:

> 1. My name of Tracy Pevahouse. I am of majority age and competent to executed this affidavit. I have personal knowledge of the facts stated herein.
>
> 2. I live in [*6] Decaturville, Tennessee. I am a former employee of Decatur County General Hospital. I worked for Decatur County General Hospital for over twenty-seven (27) years before my resignation in May of 2011. I spent the last several years (dating back to pre-2007) as an Outpatient Nursing Supervisor.
>
> 3. Decatur County General Hospital has a computerized time and attendance system that automatically deducts a 30 minute meal period per work shift.
>
> 4. It is extremely common for hourly employees to perform compensable work for Defendant during their uncompensated "meal breaks."
>
> 5. This occurs for several reasons. First, until only recently, Defendant never explained to its employees what constituted a compensable meal break under the Fair Labor Standards Act. Employees were not trained that a meal eaten while working was compensable work time. Likewise, employees were never trained whether interrupted meal breaks were compensable.
>
> 6. Second, the workload and staffing situation simply did not allow for daily meal breaks. This put employees in a "no win" situation. They were required to take meal breaks, yet were unable to take them do [sic] to workload and staffing. As a result, hourly employees often [*7] work[ed] through their meal breaks or tried to eat quick meal[s] while they were performing work.
>
> 7. Based on workload, training, and staffing, employees were routinely not completely relieved of their job duties during uncompensated "meal breaks."

Page 3

8. Decatur County General Hospital did nothing in practice to prohibit employees from working during their "meal breaks" and routinely suffered or permitted employees to perform such work.

9. In fact, although Decatur County General Hospital automatically deducted 30 minute meal periods, it expected employees to be available to work throughout their shifts.

10. Nurses are expected to eat without any change in demands from patients or relief by additional staff.

(Id.)

"The FLSA generally requires covered employers to pay its employees overtime pay for work in excess of forty hours a week." Chavez v. City of Albuquerque, 630 F.3d 1300, 1304 (10th Cir. 2011). "The purpose of FLSA overtime is to compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost." Id. (internal quotation marks omitted).

Montgomery [*8] seeks to pursue this FLSA suit as a collective action. Section 216(b) of the statute provides in pertinent part that

[a]n action to recover the liability prescribed [in the subparagraph] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). In addition to FLSA claims, plaintiffs may also assert supplemental state law causes of action, including unjust enrichment claims, as a part of the collective action. O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 580 (6th Cir. 2009); Carter v. Jackson-Madison Cnty. Hosp. Dist., No. 1:10-cv-01155-JDB-egb, 2011 U.S. Dist. LEXIS 35163, 2011 WL 1256625, at *13 (W.D. Tenn. Mar. 31, 2011). FLSA collective actions are unlike class actions proceeding under Rule 23 of the Federal Rules of Civil Procedure in that class members must opt into the lawsuit. O'Brien, 575 F.3d at 583; Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006). [*9] To facilitate that process, district courts may authorize a notice to be sent to all similarly situated employees to advise them of the opportunity to opt into the suit. Comer, 454 F.3d at 546 (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)); White v. MPW Indus. Servs., Inc., 236 F.R.D. 363, 366 (E.D. Tenn. 2006).

The standard plaintiffs must meet to obtain court certification of an FLSA collective action is lower than that for Rule 23 class actions. O'Brien, 575 F.3d at 584. Lead plaintiffs need only show that they are "similarly situated" to employees in the class they seek to certify. Id.; 29 U.S.C. § 216(b). Courts typically engage in a two-phase inquiry to determine whether the lead plaintiff has satisfied that showing. Comer, 454 F.3d at 546. "The first takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." Id. (internal quotation marks omitted).

This case is presently at the first phase of the collective action where the Court must determine whether to "conditionally" certify the proposed class. See id. at 546-47. A plaintiff's burden at [*10] this stage is "fairly lenient," and the lead plaintiff must make only a "modest factual showing" that she is similarly situated with members of the prospective class she seeks to certify and send court-supervised notice. Id. at 547 (quoting Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D. N.J. 2000) & Pritchard v. Dent Wizard Int'l Corp.,

Page 4

210 F.R.D. 591, 596 (S.D. Ohio 2002)). At this phase, "[t]he [c]ourt does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Wlotkowski v. Mich. Bell Tel. Co., 267 F.R.D. 213, 217 (E.D. Mich. 2010). Because of the lenient standard, district courts typically grant conditional certification of collective actions. Comer, 454 F.3d at 547. If the court determines that conditional certification is appropriate, "putative class members are given notice and the opportunity to 'opt-in.'" Lindberg v. UHS of Lakeside, LLC, 761 F. Supp. 2d 752, 758 (W.D. Tenn. 2011). No minimum number of similarly situated employees is required for conditional certification. Lacy v. Reddy Elec. Co., No. 3:11-cv-52, 2011 U.S. Dist. LEXIS 142050, 2011 WL 6149842, at *2 (S.D. Ohio Dec. 9, 2011).

"At the second stage, following [*11] discovery, trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated." Comer, 454 F.3d at 547. Then, "the court has much more information on which to base its decision and, as a result, it employs a stricter standard." Id.

Although the statute does not define "similarly situated," the Sixth Circuit's determination in O'Brien provides some clarification. Despite declining "to create comprehensive criteria for informing the similarly-situated analysis," the O'Brien court stated "that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." O'Brien, 575 F.3d at 585. "Showing a 'unified policy' of violations is not required[.]" Id. at 584. Plaintiffs may also be similarly situated where "their claims [are] unified by common theories of [a defendant's] statutory violations, even if the proofs of these theories are inevitably individualized and distinct." Id. at 585. Under the circumstances of O'Brien, "[t]he claims were unified so, because plaintiffs articulated two common [*12] means by which they were allegedly cheated: forcing employees to work off the clock and improperly editing time-sheets." Id.

The Plaintiff herein asserts that she is similarly situated with "[a]ll persons employed within the six years preceding the filing of this action by Defendant, whose pay was subject to an automatic 30 minute meal period deduction even when they performed compensable work during the unpaid 'meal break.'" (D.E. 1 ¶ 21.) The materials provided by Montgomery present evidence that DCGH employs a company-wide meal break deduction policy whereby a thirty-minute meal period is automatically deducted from the time worked of all hourly employees. Montgomery and Pevahouse submit that they and other employees have been frequently required to continue working during that uncompensated meal period. They have presented a common theory in this case -- the denial of statutory overtime wages and "straight time" resulting from DCGH's failure to relieve them of their duties during uncompensated meal breaks. Under the lenient standard applicable at this first stage of the litigation, Montgomery's proffered evidence is sufficient to show that she is similarly situated with the putative [*13] plaintiffs. See Carter, 2011 U.S. Dist. LEXIS 35163, 2011 WL 1256625, at *14-18 (certifying class on nearly identical evidence).

In opposition to the motion, the Defendant maintains that the evidence offered by the Plaintiff contains assertions that are inadmissible hearsay. It also avers that conditional certification is premature absent discovery to determine whether there are actually similarly situated individuals. DCGH is in error on both counts. In Monroe v. FTS USA, LLC, 257 F.R.D. 634 (W.D. Tenn. 2009), the district court, faced with similar objections, explained as follows:

> Finally, Defendants assert that the declarations in the record are vague, conclusory, inadmissible, and merely "parrot" the Complaint. However, courts in the Sixth Circuit have held that plaintiff's evidence on a motion for conditional certification must not meet the same evidentiary standards applicable to motions for summary judgment because to require more at this stage of litigation would defeat the purpose of the two-stage analysis under Section 216(b). The reason for this difference is that there is no possibility of final disposition at the conditional certification stage. Therefore, requiring a plaintiff to present evidence in [*14] favor of conditional certification that meets the hearsay standards of the Federal Rules of Evidence fails to take into account that the plaintiff has not yet been afforded an opportunity, through

Page 5

discovery, to test fully the factual basis of his case. Thus, the Court is persuaded that the declarations presented by Plaintiffs, which stated they are based upon their knowledge and experience, are sufficient to support conditional certification. The Plaintiffs will have further opportunity through discovery to determine the specific bases for each putative class members' claims, and Defendants will have an opportunity to file a motion to decertify the class after discovery is complete to fully address any substantive concerns relative to the class.

Monroe, 236 F.R.D. at 639 (internal citations & quotation marks omitted); *see also* White, 236 F.R.D. at 368-69 (at conditional certification stage and for its "preliminary purposes, plaintiffs need not come forward with evidence in a form admissible at trial"; moreover, statements in supporting affidavits and declarations to the effect that the challenged practices are company-wide raise a reasonable inference that employees "would have learned [*15] during the normal course of their employment how the company operates and what the company's policies were"). Accordingly, the Court finds the Defendant's arguments on this issue to be without merit.

DCGH also submits that conditional certification is not appropriate because it provided a time record adjustment procedure under which an employee was required to notify her supervisor if an adjustment was needed. However, class notice has been granted to a class of hourly employees on the basis of a defendant's automatic meal break deduction policy where an employee had to affirmatively seek cancellation of the deduction. *See* Lindberg, 761 F. Supp. 2d at 760 (finding that defendants' utilization of an autodeduction policy that placed the burden of correction on hourly employees supported grant of conditional class certification); Camesi v. Univ. of Pittsburgh Med. Ctr., Civ. Action No. 09-85J, 2009 U.S. Dist. LEXIS 40571, 2009 WL 1361265, at *4 (W.D. Pa. May 14, 2009) ("The law is clear that it is the employer's responsibility, not its employees,' to ensure compensation for work 'suffered or permitted'"), *recons. denied* 2009 U.S. Dist. LEXIS 48914 (June 10, 2009).

For the reasons set forth herein, the Court finds conditional class certification [*16] appropriate. In addition to conditionally certifying the class,

Montgomery's motion also requests that the Court (1) issue an order directing Defendant to immediately provide a list of names, last known addresses, and last known telephone numbers for all putative class members within the last six years; (2) issue an order that notice be prominently posted at each of Defendant's facilities where putative class members work, attached to current employees' next scheduled pay check, and be mailed to the employees so that they can assert their claims on a timely basis as part of this litigation; (3) issue an order tolling the statute of limitations for the putative class as of the date this action was filed; and (4) order that the opt-in plaintiffs' consent forms be deemed "filed" on the date they are postmarked.

The Defendant asserts that the six-year look back period proposed by the Plaintiff is unwarranted, and that the three-year period under the FLSA is more appropriate. In arguing in her response for the six-year period, Montgomery cites to this Court's determination in Carter, a nearly identical case against a different health care facility. While the Court approved a six-year look [*17] back period in its opinion dated March 31, 2011, subsequent to the briefing in this case, the Court modified the scope of the conditional class in Carter to provide for a three-year look back. (*See* Carter, No. 1:10-cv-01155 (W.D. Tenn.) D.E. 101 (Dec. 13, 2011).) As the order is unpublished, the Court will set forth the relevant portions of its opinion here:

> The Court's determination of the appropriate statute of limitations for Carter's common law claim of unjust enrichment is controlled by Tennessee law. "When deciding an issue of state law, [federal courts] apply the law of the state's highest court." Ellis v. Cleveland Mun. Sch. Dist., 455 F.3d 690, 697 (6th Cir. 2006) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). If the state's highest court has not decided the question presented, a federal court must predict how the state court would rule if confronted with the question. Aarti Hospitality, LLC v. City of Grove City, Ohio, 350 F. App'x 1, 7 (6th Cir. 2009) (quoting Combs v. Int'l Ins. Co., 354 F.3d 568, 577 (6th Cir. 2004)). Surprisingly, the appropriate statute of limitations for unjust enrichment has not

been definitively decided by [*18] the Tennessee Supreme Court or set by the state legislature. *See e.g.*, Middle Tenn. Occupational & Envtl. Med., Inc. v. First Health Grp. Corp., No. 3-05- 0218, 2005 U.S. Dist. LEXIS 31464, 2005 WL 3216282, at *4 (M.D. Tenn. Nov. 28, 2005) ("There is no specific statute of limitations under Tennessee law for unjust enrichment."). Thus, it is the task of this Court to ascertain how Tennessee's high court would rule on the issue. *See* Cumberland & Ohio Co. of Tex., Inc. v. First Am. Nat'l Bank, 936 F.2d 846, 849 (6th Cir. 1991) (predicting how the Tennessee Supreme Court would decide statute of limitations for Tennessee state law claim), *cert. denied*, 502 U.S. 1034, 112 S. Ct. 878, 116 L. Ed. 2d 783 (1992).

Tennessee courts utilize a "gravamen of the complaint" test to decide the statute of limitations for a particular cause of action. *See* Estate of French v. Stratford House, 333 S.W.3d 546, 557 (Tenn. 2011); Whaley v. Perkins, 197 S.W.3d 665, 670 (Tenn. 2006); Gunter v. Lab. Corp. of Am., 121 S.W.3d 636, 638 (Tenn. 2003); Vance v. Schulder, 547 S.W.2d 927, 931 (Tenn. 1977); Swauger v. Haury & Smith Contractors, Inc., 512 S.W.2d 261, 262-63 (Tenn. 1974). "The 'gravamen' of a complaint is its 'substantial point or [*19] essence.'" Estate of French, 333 S.W.3d at 557 (quoting Black's Law Dictionary 770 (9th ed. 2009)). The designation given to a cause of action by a plaintiff or defendant is not necessarily determinative. Id. Tennessee courts seek to "determin[e] the real purpose of a suit" by "look[ing] to the basis for which damages are sought." Brown v. Dunstan, 219 Tenn. 291, 409 S.W.2d 365, 367 (Tenn. 1966) (citing Bland v. Smith, 197 Tenn. 683, 277 S.W.2d 377 (Tenn. 1955)). They then apply the statute of limitations for an analogous cause of action.

* * *

Carter's amended complaint states that she works as an hourly employee of JMCHD attending to patient beds on a floor of the Jackson-Madison County General Hospital. (Am. Compl. ¶ 8, D.E. No. 28.) She avers that Defendant regularly required her to perform compensable work during scheduled thirty minute "meal breaks." (Id.) However, Plaintiff and other potential class members were not paid their typical hourly rate for the meal break periods pursuant to Defendant's "Meal Break Deduction Policy." (Id. at ¶¶ 10, 22.) Carter alleges that "Defendant has therefore been unjustly enriched as a result of its accepting the work of Plaintiff and other similarly situated employees without [*20] proper compensation." (Id. at ¶ 49.) She states that "[i]t would be unjust to allow Defendant to enjoy the fruits of the collective class' labor without proper compensation." (Id.) Carter's collective action complaint seeks to recover "the value of their services," i.e., unpaid wages, for work Plaintiffs performed for JMCHD during uncompensated meal breaks. (Id. at ¶ 50.)

In its objection, JMCHD argues that the essence of Carter's complaint is an action to recover unpaid compensation. Tennessee has adopted statutory wage regulations, which Defendant contends are necessary for consideration here. *See* Tenn. Code Ann. §§ 50-2-101 *et seq.* Particularly, JMCHD asserts that the Court should look to § 50-2-101(b), which prohibits an employer from hiring an employee to perform work without first informing the individual of the amount of compensation he or she will be paid. That statutory section provides:

> It is unlawful for any proprietor, foreman, owner or other person to employ, permit or suffer to work for hire, in, about, or in connection with any

workshop or factory any person whatsoever without first informing the employee of the amount of wages to be paid for the labor. The amount agreed [*21] upon between employer and employee, or employee representative, shall constitute a basis for litigation in civil cases.

Tenn. Code Ann. § 50-2-101(b). Because this provision does not supply its own limitations period, JMCHD submits that it is governed by Tennessee's three-year statute of limitations for "[c]ivil actions based upon the alleged violation of any . . . state statute creating monetary liability for personal services rendered . . . when no other time of limitation is fixed by the statute creating such liability." Tenn. Code Ann. § 28-3-105(3). Thus, as the gist of Carter's complaint is the recovery of unpaid wages, Defendant urges the Court to apply the three-year limitations period for Tennessee's wage statute to her unjust enrichment claim.

\* \* \*

. . . Plaintiff's lawsuit seeks to recover compensation for meal periods during which she and other employees purportedly worked but were not paid. When looking at the "nature and substance" of the claim and not the label given to it by the Plaintiff, see Estate of French, 333 S.W.3d at 557, the unjust enrichment allegation is in effect an action to recoup wages. For such a claim, the most suitable statute of limitations is the three-year [*22] period that controls Tennessee's wage statute.

Tenn. Code Ann. § 50-2-101(b) requires employers to "first inform[] the employee of the amount of wages to be paid for the[ir] labor," and "[t]he amount agreed upon between employer and employee" will form the basis of any legal disputes over the agreed upon compensation. Arguably, the statute addresses the wrong that purportedly occurred here. JMCHD agreed to pay Carter and other prospective plaintiffs a set wage for each hour of their work. By requiring its employees to perform work during meal break periods but deducting their hours worked for that time, Defendant allegedly failed to pay Plaintiffs the previously agreed amount. Thus, the "amount agreed upon" - here, the wage that they were to receive for each hour worked -- constitutes the heart of this litigation.

Because § 50-2-101(b) does not carry its own limitations period, Defendant contends that it is governed by the

three-year period for violation of any "state statute creating monetary liability for personal services rendered." See Tenn. Code. Ann. § 28-3-105(3). . . . As a state statute, § 50-2-101(b) creates liability arising from the amount previously agreed upon between the [*23] employer and employee for personal services rendered, that is the performance of Plaintiff's job duties. Although the applicability of § 28-3-105(3)'s three-year limitations period to § 50-2-101(b) is an issue of first impression, the "monetary liability for personal services rendered" provision has traditionally been applied to suits arising in the employment context. *See, e.g.*, Hire v. E. I. DuPont De Nemours & Co., 324 F.2d 546, 551 (6th Cir. 1963) (action by former employee to recover severance pay fell within limitations period for "monetary liability for personal services rendered"), *superseded by statute as recognized in* Stevens v. Tenn. Valley Auth., 712 F.2d 1047, 1054-55 (6th Cir. 1983); Trivett v. Tri-State Container Corp., 368 F. Supp. 137, 140-41 (E.D. Tenn. 1973) (applying "personal services rendered" limitations provision to Title VII employment discrimination claim). Thus, the Court finds that § 50-2-101(b) is limited by § 28-3-105(3)'s three-year cap.

The Court recognizes that there is some support for the . . . position that the essence of her claim lies in contract. "An employment relationship is essentially contractual." Vargo v. Lincoln Brass Works, Inc., 115 S.W.3d 487, 491 (Tenn. Ct. App. 2003) [*24] (citing Hamby v. Genesco, Inc., 627 S.W.2d 373, 375 (Tenn. Ct. App. 1981) ("The employer-employee relationship is contractual in nature.")), *app. denied* (Sept. 2, 2003). Likewise, unjust enrichment is a cause of action based in contract and is commonly used interchangeably with other terms such as quantum meruit, quasi contract, and contracts implied in law. *See* Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 524-25 (Tenn. 2005); Whitehaven Cmty. Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998); Paschall's, Inc. v. Dozier, 219 Tenn. 45, 407 S.W.2d 150, 154 (Tenn. 1966). The theory is utilized "where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto." Paschall's, Inc., 407 S.W.2d at 154. Its "underlying principle . . . is that a party who receives a benefit that he or she desires, under

Page 9

circumstances rendering retention of the benefit without providing compensation inequitable, must compensate the provider of the benefit." Freeman Indus., LLC, 172 S.W.3d at 525. The law provides "an equitable substitute for a contract claim pursuant to which a party may recover the reasonable value of goods [*25] and services provided to another . . . ." Doe v. HCA Health Servs. of Tenn., Inc., 46 S.W.3d 191, 197-98 (Tenn. 2001).

Additionally, the only other federal or state court in Tennessee to speak directly on this issue noted that unjust enrichment falls within Tennessee's six-year statute of limitations for contracts. In Miller v. Jackson, Tenn. Hosp. Co, No. 3:10-1078, 2011 U.S. Dist. LEXIS 60594, 2011 WL 2197694, at *1 (M.D. Tenn. June 6, 2011), [4] the plaintiffs brought claims almost identical to the ones asserted here, charging that the defendant hospital's automatic deduction for meal breaks violated the FLSA's overtime provisions and constituted unjust enrichment under Tennessee common law. With regard to the state law claim, the district court stated that "[i]t is well settled that, if the plaintiff performed work for which she was not compensated, she might have a viable unjust enrichment claim . . .

." Id. It noted in dicta that the time period within which to institute such a claim was six years under § 28-3-109(a)(3)'s limitations period for "[a]ctions on contracts not otherwise expressly provided for." Id. As JMCHD aptly points out, however, the statute of limitations was not contested by the defendant [*26] in Miller as it is here. Thus, Miller's precedential value is somewhat tempered by that difference.

The contractual underpinnings of unjust enrichment do not necessarily mandate application of the six-year statute of limitations for contracts, however. See Middle Tenn. Occupational & Envtl. Med., Inc., 2005 U.S. Dist. LEXIS 31464, 2005 WL 3216282, at *4 (applying three-year limitations period for damages to personal property, not contractual period, to plaintiff's unjust enrichment claim); cf. Pinkerton & Laws Co. v. Nashville Flying Serv., Inc., 218 Tenn. 252, 402 S.W.2d 861, 862 (Tenn. 1966) ("Although plaintiff may be suing for breach of contract, its action is one for damages or injuries to personal property. Thus, the suit sounds in tort, although it grew out of the contractual relationship of the parties."). Tennessee law calls for the Court to examine the gravamen of

Carter's action by "look[ing] to the basis for which damages are sought." Brown, 409 S.W.2d at 367. Although Carter's unjust enrichment cause of action has a historical basis in contract, the essence of her claim seeks to recoup unpaid wages. The Tennessee legislature has created a similar statutory section, which carries with it a three-year statute of limitations. [*27] *See* Tenn. Code. Ann. §§ 50-2-101(b), 28-3-105(3). Accordingly, the Court holds that a three-year limitation period likewise applies to the unjust enrichment claim in this case. In addition, because a three-year limitations period governs both the common-law and FLSA claims (assuming Plaintiff prevails in establishing the willfulness of Defendant's FLSA violations), no basis exists for certifying a class of prospective plaintiffs who were employed within the past six years. Therefore, the Court's conditional certification order is modified to include a class of "all persons employed by Defendant within the three years preceding the filing of this action, whose pay was subject to an automatic 30-minute meal deduction period even when they performed compensable work during the unpaid 'meal break.'"

> . . . The Court holds that the gravamen of Plaintiff's unjust enrichment claim is most analogous to an action under Tenn. Code Ann. § 50-2-101(b) and its corresponding three-year limitation is therefore applicable.

(Carter, No. 1:10-cv-01155, D.E. 101 at 4-10.)

4   Montgomery also cited to Miller in support of her position.

In this case, the Plaintiff's unjust enrichment allegation is almost identical [*28] to Carter's: "Defendant has been unjustly enriched as a result of its accepting the work of Plaintiff and other similarly situated employees without proper compensation. It would be unjust to allow Defendant to enjoy the fruits of the collective class' labor without proper compensation." 5 (D.E. 1 ¶ 34.) Thus, the gravamen of Montgomery's unjust enrichment claim is, like Carter's, most analogous to an action under Tennessee Code Annotated § 50-2-101(b) and, thus, the appropriate statute of limitations period is three years. Based on the foregoing, the Court conditionally certifies a class of "Present and Former hourly employees of Decatur County General Hospital during the previous three years who were subject to a practice of automatically deducting meal breaks." 6

> 5   The similarity is not as surprising as it may seem, considering Carter and Montgomery are represented by the same counsel.
> 6   Based on the Court's determination that conditional certification is appropriate, it finds moot Defendant's objection to providing contact information of putative class members pending such certification.

With respect to the remaining requests of the Plaintiff, the Defendant avers that the Plaintiff's [*29] proposed ninety-day period for returning opt-in forms is too long, and argues in favor of a forty-five day-period instead. In this Circuit, when the same challenge has been made, district courts have shortened the ninety-day

period. *See* Knispel v. Chrysler Group LLC, No. 11-11886, 2012 U.S. Dist. LEXIS 21188, 2012 WL 553722, at *8 (E.D. Mich. Feb. 21, 2012) (shortening period from ninety to forty-five days at defendant's request); Miller v. Jackson, No. 3:10-1078, 2011 U.S. Dist. LEXIS 60594, 2011 WL 2197694, at *3 (M.D. Tenn. June 6, 2011) ("splitting the difference" and setting a period of seventy-five days, where plaintiff proposed ninety and defendant sixty). These decisions appear to have been fairly arbitrary and made with little or no analysis, with the Knispel court noting only that the forty-five day period suggested by the defendant was sufficient "especially considering the statute of limitations concerns raised by [p]laintiff's counsel," despite plaintiff's position favoring the longer period. Knispel, 2012 U.S. Dist. LEXIS 21188, 2012 WL 553722, at *8. In this case, the Court finds that the opt-in period should be forty-five days. Snide v. Disc. Drug Mart, Inc., No. 1:11CV0244, 2011 U.S. Dist. LEXIS 133736, 2011 WL 5434016, at *8 (N.D. Ohio Oct. 7, 2011) (a forty-five day opt-in period [*30] is more efficient), *report & recommendation adopted by* 2011 U.S. Dist. LEXIS 133648, 2011 WL 5452153 (N.D. Ohio Nov. 8, 2011).

DCGH further objects to some of the proposed means of providing notice, as well as Plaintiff's request for employee telephone numbers, as unnecessary and unduly burdensome. Mailing of notice to putative class members at Plaintiff's expense should, in its view, be sufficient. "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." D'Antuono v. C & G of Groton, Inc., No. 3:11cv33 (MRK), 2011 U.S. Dist. LEXIS 135402, 2011 WL 5878045, at *6 (D. Conn. Nov. 23, 2011); Rosario v. Valentine Ave. Disc. Store, Co., Inc., 828 F. Supp. 2d 508, 2011 WL 5244965, at *11 (E.D.N.Y. 2011). Thus, Plaintiff's request for this type of notice, which appears reasonable, is granted. However, the Court finds the additional requirement of attaching notice to employees' paychecks to be duplicative and, therefore, an unnecessary expense to impose on the Defendant. *See* Calderon v. Geico Gen. Ins. Co., No. RWT 10cv1958, 2011 U.S. Dist. LEXIS 2815, 2011 WL 98197, at *8 (D. Md. Jan. 12, 2011) (court saw no reason to impose upon defendant costs associated with [*31] providing what would be largely duplicative notice to potential opt-in plaintiffs in the form of paycheck attachments). With respect to the production of employee telephone numbers,

a district court in this Circuit recently stated that "[t]he [c]ourt rejects [d]efendant's claim that this request would impose upon it an unreasonable burden. This type of discovery request is routinely granted in collective actions." Dallas v. Alcatel- Lucent USA, Inc., No. 09-14596, 2012 U.S. Dist. LEXIS 16089, 2012 WL 424878, at *8 (E.D. Mich. Feb. 9, 2012); *see also* Miller v. Jackson, No. 3:10-1078, 2011 U.S. Dist. LEXIS 29011, 2011 WL 1060737, at *8 (M.D. Tenn. Mar. 21, 2011) (finding nothing "alarming" about plaintiff's request for employee telephone numbers).

Therefore, notification to putative class members will be by mail at Plaintiff's expense and DCGH is hereby DIRECTED to post notice in conspicuous places such as employee lunch room bulletin boards at all its facilities within fourteen (14) days of the entry of this order. The employer will not be required to attach notice to employees' paychecks. To facilitate notification by mail, the Defendant is DIRECTED to provide, within fourteen (14) days, a list of names, last known addresses and last known [*32] telephone numbers for all hourly employees of DCGH who were subject to its automatic meal break deduction policy within the last three years.

DCGH objects to the Plaintiff's request that the statute of limitations be tolled for the putative class as of the date this action was filed. The regulations promulgated in connection with the FLSA provide that a suit to enforce a cause of action under the statute commences, in a collective action, when an individual's written consent to become a party plaintiff is filed with the court. 29 C.F.R. § 790.21(b)(2). While "equitable tolling is potentially available in an FLSA case, the doctrine is to be carefully applied." Knispel, 2012 U.S. Dist. LEXIS 21188, 2012 WL 553722, at *6 (internal quotation marks omitted).

> To determine whether to apply equitable tolling to time-barred claims, courts consider: 1) the petitioner's lack of notice of the filing requirement; 2) the petitioner's lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the respondent; and 5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

Page 12

Id. There has been some question, however, concerning [*33] the suitability of this test for application to yet unidentified potential plaintiffs. Id. (citing Mathews v. ALC Partner, Inc., 2009 U.S. Dist. LEXIS 75097, 2009 WL 2591497 (E.D. Mich. 2009, J. Murphy)). Accordingly, the Court will not grant the relief sought by the Plaintiff at this time. "If and when potential plaintiffs whose claims would otherwise be timebarred choose to opt in to the class, they may apprise the Court of their circumstances and individually move for equitable tolling." 2009 U.S. Dist. LEXIS 75097, [WL] at *7. The Plaintiff's request is therefore denied without prejudice.

Finally, the Defendant takes issue with Montgomery's request that consent forms be deemed filed on the date they are postmarked. DCGH cites to no caselaw in support of its argument and, indeed, courts in other FLSA collective cases in this Circuit have permitted such filing. *See* Parr v. Hico Concrete, Inc., No. 3:10-1091, 2011 U.S. Dist. LEXIS 130257, 2011 WL 5512239, at *2 (M.D. Tenn. Nov. 10, 2011); Snide, 2011 U.S. Dist. LEXIS 133736, 2011 WL 5434016, at *8. Consequently, the Court finds the Defendant's objection unpersuasive.

*CONCLUSION*

For the reasons articulated herein, Plaintiff's motion for conditional class certification is GRANTED as modified herein. The parties are DIRECTED to confer and draft a mutually [*34] agreeable notice within fourteen (14) days in accordance with the provisions of this order.

IT IS SO ORDERED this 19th day of March 2012.

/s/ J. DANIEL BREEN

UNITED STATES DISTRICT JUDGE