UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CAREY BRADFORD and CODY BOLEN, individually and on behalf of all other similarly situated current and former employees, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil No. 3:14-cv-2184 Judge Aleta A. Trauger |
| LOGAN'S ROADHOUSE, INC.; LRI HOLDINGS, INC.; and ROADHOUSE HOLDING, INC., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM

The plaintiffs have filed a Motion for Approval of 29 U.S.C. § 216(b) Notice and

Consent Forms and to Order Disclosure of Current and Former Tipped Employees (Conditional

Certification) of Defendants Logan's Roadhouse Restaurants ("Motion for Conditional

Certification") (Docket No. 36), to which the defendants have filed a Response in opposition

(Docket No. 93), and the plaintiffs have filed a Reply (Docket No. 101). The defendants have

also filed a document entitled "Objections to Evidence Submitted in Support of the Motion for

Conditional Certification." (Docket No. 109.) For the following reasons, the Motion for

Conditional Certification will be granted in part and denied in part.

## BACKGROUND

This proposed collective action, brought under the federal Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201, *et seq.*, involves claims that the defendants failed to pay wages to

1

their "tipped employees"[1] as required by law. Defendant Logan's Roadhouse, Inc. is a Tennessee corporation with its headquarters in Nashville, Tennessee.[2] LRI is a full-service restaurant chain comprised of 235 company-owned and twenty-six franchised Logan's Roadhouse restaurants located in twenty-three states. LRI is an entity involved in interstate commerce with annual revenue in excess of $500,000.[3]

LRI restaurants employ tipped employees whose primary duties are to take food and beverage orders and serve such items to customers. Plaintiffs Carey Bradford and Cody Bolen are residents of Tennessee and were employed by LRI as tipped employees during the three years prior to the filing of this action. The Complaint filed by Bradford and Bolen on behalf of all other similarly situated current and former tipped employees of the defendants during the relevant time period ("Complaint") alleges that LRI had a centralized plan, policy, or practice of management and budgeting that, among other things, encouraged or required its restaurant managers to improperly compensate tipped employees in order to meet or stay below budgeted

---

[1] The FLSA defines a "tipped employee" as any "employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." *See* 29 U.S.C. § 203(t).

[2] The Complaint names LRI Holdings, Inc. and Roadhouse Holding, Inc. as additional defendants in this action. LRI Holdings, Inc., a Delaware corporation, is the parent company of Logan's Roadhouse, Inc.; Roadhouse Holding, Inc., another Delaware corporation, is in turn the parent company of LRI Holdings, Inc. (Docket No. 1 at ¶¶ 5, 6.) In their opposition to the Motion for Conditional Certification, the defendants note that "only Logan's Roadhouse, Inc. has ever employed [p]laintiffs or any other members of the proposed collective." (Docket No. 93 at p. 1 n.1.) Defendants have not, however, provided any factual basis for this statement or formally moved for the dismissal of LRI Holdings, Inc. or Roadhouse Holding, Inc. from this action. Accordingly, this action shall, for now, proceed against all three defendants, and the court shall refer to the defendants collectively as "LRI."

[3] These facts are not disputed by LRI.

2

labor costs.[4]  (Docket No. 1 at ¶ 15.)

According to the Complaint, those practices specifically included:

(a)     requiring tipped employees to work in non-tip producing jobs while clocked in as tipped employees in LRI's electronic timekeeping system, and then paying them only the sub-minimum hourly wage reserved for tipped employees for their work during that time;

(b)     requiring tipped employees to perform non-tipped maintenance and preparation work incidental to their server duties (such as rolling silverware; refilling sugar caddies, salt and pepper shakers, ice and condiments; cleaning chairs, tables, booths, restaurant artifacts and decor, lights, blinds, and windows; closing out customers' checks; performing pre-closing cleaning tasks such as vacuuming, sweeping the server's assigned area, checking dishes, napkins, and utensils; and as other such "side work") in excess of twenty percent of their work time, and then paying them only the sub-minimum hourly wage reserved for tipped employees for their full work during that time;

(c)     requiring tipped employees to report tips they did not receive (*i.e.*, "phantom tips") so that LRI could avoid making a supplemental wage contribution to the employees' minimum cash wage to reach the applicable federal mandatory minimum wage;

(d)     requiring tipped employees to record tips earned in a given week in a subsequent week so

_____

[4] Under the FLSA, LRI is only required to pay its tipped employees $2.13 in cash wages per hour, provided that it allows them the opportunity to participate in tip producing work, but must pay its non-tipped employees the $7.25 federal mandatory minimum wage.  *See* 29 U.S.C. § 203(m).  This differential allowance to the employer is referred to as a "tip credit."  If a tipped employee's cash wage ($2.13) plus earned tips does not reach the $7.25 per hour mandatory federal minimum wage, the employer must contribute supplemental pay to raise the tipped employee's salary to that minimum amount.

that LRI could avoid paying supplemental wages for the subsequent week;

(e)      requiring tipped employees to perform duties "off-the-clock" before, during, and after their regular shifts without adequate compensation (resulting in LRI's electronic timekeeping records not reflecting the total hours worked by its tipped employees); and

(f)      requiring tipped employees to participate in or provide job training during time that was not recorded on LRI's electronic timekeeping system in any way.

(the "LRI Violations").[5]  (Docket No. 1 at ¶¶ 10-50.)  The plaintiffs further allege that LRI has in its possession time records that will enable the plaintiffs to discover with greater exactness the amount owed to them and other similarly situated employees.  (*Id*. at ¶ 51.)  Based on these allegations, the Complaint brings three counts under the FLSA, one each for failure to pay straight wages, minimum wages, and overtime wages.  (*Id*. at ¶¶ 60-80.)

      The Complaint states that the plaintiffs seek a collective action on behalf of themselves and all others similarly situated under FLSA §§ 206, 207, and 216(b).  (*Id*. at ¶ 52.)  The Complaint asserts that the class is so numerous that joinder of all members is impracticable and that, in fact, the identity of all class members can only be ascertained through discovery.  (*Id*. at ¶ 54.)  The plaintiffs maintain that their claims are typical of the claims of the class – specifically, that "the [p]laintiffs and the other members of the class work or have worked for LRI at its

---

[5] As best the court can interpret from the Complaint, the plaintiffs claim they are entitled to both the minimum wage for all time worked each week (and that, where this was not earned in any given week, LRI must make up the difference with supplemental pay to reach the federal mandatory minimum wage) as well as overtime compensation for any time over forty hours per week (which LRI should provide, irrespective of any tips earned).  Obviously, however, consideration of possible damages remedies is premature at this stage.

restaurants and were subject to the same operational, compensation, and timekeeping policies and practices, including not being paid for all hours worked." (*Id.* at ¶ 55.) Finally, the Complaint states that common questions of law and fact exist as to the class and that these questions predominate over any questions only affecting other members of the class individually.[6] (*Id.* at ¶ 56.)

On April 6, 2015, the plaintiffs filed the Motion for Conditional Certification. (Docket No. 36.) In support of the motion, the two named plaintiffs each filed their own declaration, and the plaintiffs also filed "representative" declarations from thirty-four out of the seventy-one opt-in plaintiffs who had already filed consent forms stating that they wished to join the litigation. (Docket No. 37 at Exs. A, B, C.) The Motion for Conditional Certification requests that the court do the following: (1) authorize this case to proceed as a collective action for minimum wage and overtime violations under the FLSA, on behalf of the plaintiffs and all other similarly situated hourly paid tipped employees (servers and bartenders) of LRI, nationwide, who were denied proper minimum wage and overtime compensation within the appropriate statute of limitations; (2) order LRI to provide a computer-readable file containing the names, last known physical addresses, last known email addresses, social security numbers, dates of employment,

---

[6] These asserted common questions include: (1) whether LRI required the plaintiffs and other members of the class to work hours without compensation; (2) whether LRI failed to pay the plaintiffs and other members of the class all applicable straight time wages for all hours worked; (3) whether LRI failed to pay the plaintiffs and the other members of the class the applicable minimum wage for all hours worked; (4) whether LRI failed to pay the plaintiffs and other members of the class all overtime compensation due them for all hours worked in excess of forty hours per week; (5) the correct statutes of limitations for the plaintiffs' claims and the claims of the other members of the class; (6) whether the plaintiffs and other members of the class are entitled to damages, including but not limited to liquidated damages, and the measure of the damages; and, (7) whether LRI is liable for interest, attorneys' fees, interest, and costs. (Docket No. 1 at ¶ 56.)

5

and last known telephone numbers of all food and beverage servers of LRI who were tipped employees of LRI within the last three years; (3) order that a court-approved notice be (a) posted at each LRI restaurant, (b) enclosed with all LRI tipped employees' next regularly scheduled paychecks or stubs, and (c) be mailed to LRI's current and former tipped employees who were employed at LRI during the past three years, so that putative class members can assert their claims on a timely basis as part of this litigation; (4) order tolling of the statute of limitations for the putative class as of the date the Motion for Conditional Class Certification is granted; and (5) order that the opt-in plaintiffs' consent forms be deemed filed on the date they are postmarked (excluding the opt-in plaintiffs who have opted in prior to the court-supervised notice being sent.) (*Id*. at pp. 1-2.)

Subsequent to filing of the Motion for Conditional Certification, the plaintiffs continued to file additional declarations in support of the motion (as well as additional notices of consent to join the litigation by new opt-in plaintiffs). (*See* Docket Nos. 44, 50, 57.) On May 12, 2015, LRI moved for an extension of time to respond to the Motion for Conditional Certification. (Docket No. 59.) The plaintiffs opposed LRI's motion for an extension and continued to file additional declarations in support of the Motion for Class Certification. (*See* Docket Nos. 62, 63, 67.) On May 21, 2015, the court held a teleconference with the parties. (Docket No. 70.) LRI contended it had not had enough time to discover information about the out-of-state declarants that plaintiff was utilizing as part of its case for nationwide certification, while the plaintiffs maintained that LRI had not acted quickly enough after service of the Motion for Conditional Certification to do so. (Docket Nos. 59, 67.) The court thereafter issued an Order that allowed LRI to, among other things, serve upon plaintiffs' counsel questions for the taking of written depositions of eight out-

6

of-state opt-in-plaintiffs who had submitted declarations in support of the Motion for Conditional Certification. (Docket No. 73.) The court also ordered a corresponding extension of time for LRI to respond to the pending motion. (*Id*.) Several additional extensions were reached by stipulation as the parties pursued this course of action. (*See* Docket No. 76, 79, 80, 82, 83.) All the while, the plaintiffs continued to file notices of additional opt-in plaintiffs' consents to join the litigation. (*See* Docket Nos. 74, 75, 77, 81, 84, 85, 86, 87, 90, 91, 92.)

On July 6, 2015, after receiving written deposition responses from most of the eight chosen opt-in plaintiffs, LRI filed its Response in opposition to the plaintiffs' Motion for Conditional Certification. (Docket No. 93) On July 16, 2015, the plaintiffs filed a Reply (Docket No. 101) with forty more supporting declarations from additional opt-in plaintiffs. (Docket No. 101 and Ex. A.) Shortly thereafter, the plaintiff filed several more declarations (Docket Nos. 103, 104, 106, 108) and additional notices of new opt-in plaintiffs' consents to join the litigation (Docket Nos. 102, 105, 107). On July 29, 2015, LRI filed a document entitled "Objections to Evidence Submitted in Support of the Motion for Conditional Certification" ("Objections"), in which LRI objected to ninety-three of the declarations submitted by the plaintiffs in connection with the Motion for Conditional Certification and demanded that they be "completely disregarded by the court."[7] (Docket No. 109 at p. 1-2.) Subsequent to that date, the plaintiffs have filed additional declarations in support of the Motion for Conditional Certification (Docket Nos. 111, 114, 115, 117) as well as additional notices of new opt-in plaintiffs' consents

---

[7] The Objections are confusing as to whether they refer solely to declarations filed specifically at the same time as the Motion and Reply or include all declarations filed on the docket by the plaintiffs in this matter. (*See generally* Docket No. 109.)

to join the litigation (Docket Nos. 112, 113, 116).

**ANALYSIS**

**I.      The Conditional Certification Of Plaintiffs' Claims**

**A.      FLSA Certification Standard**

Recognizing that the value of an individual claim might be small and not otherwise economically sensible to pursue, the FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Because the FLSA only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Federal Rule of Civil Procedure 23. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009). Once a collective action is certified, however, employees seeking to join the class must affirmatively "opt into" the litigation by filing a written consent with the court. 29 U.S.C. § 216(b).

The FLSA does not define the term "similarly situated." The Sixth Circuit has noted that courts have considered the "'factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action.'" *O'Brien*, 575 F.3d at 584 (quoting 7B Wright, Miller, & Kane, Federal Practice and Procedure § 1807 at 497 n. (3d ed. 2005)) (alterations in original). "[I]t is clear that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in

8

conformity with that policy proves a violation as to all the plaintiffs." *Id.* at 585. But employees may also be similarly situated if their claims are merely "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.* Indeed, "[s]howing a 'unified policy' of violations is *not* required [for certification]." *Id.* at 584 (emphasis added). In *O'Brien*, the Sixth Circuit stated that even a requirement that employees' "causes of action under the FLSA accrued at about the time and place in the approximate manner of the named plaintiff" would be "more demanding than what the [FLSA] requires." *Id.* at 585.

Typically, courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the employees they seek to represent. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877-78 (6th Cir. 2012); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006); *O'Brien*, 575 F.3d at 583. "The first [phase] takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded." *Comer*, 454 F.3d at 546 (quotation marks omitted).

At the first stage, the plaintiff bears the burden of showing that employees in the class are similarly situated. *Benson v. Asurion Corp.*, No. 3:10-cv-526, 2010 WL 4922704, at *2 (M.D. Tenn., Nov. 29, 2010). The plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). In *Comer*, the Sixth Circuit approvingly quoted the lower court's decision, which stated that conditional certification "'need only be based on a modest factual showing,'" *id.* at 547 (quoting *Pritchard*, 210 F.R.D. at 596), and that the court should use "'a fairly lenient standard [that] typically results

9

in . . . certification,'" *id.* (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)); *see also Ware v. T-Mobile USA*, 828 F. Supp. 2d 948, 951 (M.D. Tenn. 2011) (same); *Frye v. Baptist Mem'l Hosp., Inc.*, No. 07-2708, 2008 WL 6653632, at *4 (W.D. Tenn. Sept. 16, 2008) (noting that the plaintiff's burden has been described as "relatively slight" and "not a heavy one")*; Shabazz v. Asurion Ins. Service*, No. 3:07-0653, 2008 WL 1730318, at *3 (M.D. Tenn., Apr. 10, 2008) (stating that plaintiffs "must simply submit evidence establishing at least a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]") (quotation marks omitted)); *Mooney v. Aramco Servcs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995) (observing that the standard for collective action notice is a "lenient one"). In meeting this burden, substantial allegations supported by declarations are "all that is required." *White v. MPW Indus. Servcs., Inc.*, 236 F.R.D. 363, 373 (E.D. Tenn. 2006). At this first stage of conditional certification, the court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Roberts v. Corrections Corp. of Am.*, No. 3:14-cv-2009, 2015 WL 3905088, at *10 (M.D. Tenn. Jun. 25, 2015) (citing *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009)). If the named plaintiffs show that employees in the proposed class are similarly situated, "[t]he district court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit."[8] *Comer*, 454 F.3d at 546.

---

[8] In *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 170-72 (1989), the Supreme Court made it clear that courts have the power to issue court-supervised notice to other potential class members to inform them that they may opt in to a FLSA case. Court-ordered notice protects against misleading communications by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual lawsuits, assures that joinder of individual parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Id.* Early notice helps the court to manage the case because it can "ascertain the

10

"[T]he certification is conditional and by no means final." *Id.*, 454 F.3d at 546. After discovery, the defendant may move for decertification of the conditional class, which would trigger the second phase of the court's review. *See O'Brien*, 575 F.3d at 583; *Benson*, 2010 WL 4922704 at *3 (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 952 (11th Cir. 2007)). At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d at 547.

## B. The Plaintiffs' Declarations and the Defendant's Objections

In support of the Motion for Conditional Certification, the plaintiffs have submitted declarations from numerous current and former LRI employees, each stating that they were subjected to one or more of the LRI Violations[9] at the direction of LRI management and, in many cases, that they witnessed other employees being subjected to one or more of the LRI Violations. The named plaintiffs' two supporting declarations provide evidence that LRI employees have not been compensated for all work performed. The declarations both contain similar factual allegations – namely, that the named plaintiffs were routinely subjected to the LRI Violations. For example, the declaration of named plaintiff Corey Bradford states that, while employed as a tipped employee, he was required to perform non-tip producing work while clocked into the company's payroll system as a tipped employee and that he observed other employees being required to do the same. (Docket No. 37-1 at p. 3.) Bradford's declaration further states that he was required to perform non-tip producing "side work" in excess of 20% of his work time, while

_____

contours of the action at the outset." *Id.*

[9] *See supra*, pp. 3-4.

11

receiving less than the minimum wage rate for that time and that he observed other employees being required to do the same. (*Id*.) In addition, Bradford's declaration states that he was required to attend mandatory company trainings without being paid minimum wages and that he was required to declare tips he never received in order to obviate LRI's need to contribute supplemental wages to satisfy the federal minimum wage requirement. (*Id*. at pp. 3-4.) The declaration of named plaintiff Cody Bolen contains substantially the same statements. (*See* Docket No. 37-2.)

The plaintiffs also offer approximately ninety-eight[10] other declarations from current or former tipped employees of LRI.[11] (*See* Docket Nos. 37-3, 39, 44, 50, 62, 63, 101-1, 103, 104, 106, 108, 111, 114, 115, 117.) These declarants state that they were subjected to some or all of the LRI Violations as part of LRI's common management practices.[12] (*See id*.) The court finds the evidentiary weight of these declarations to be significant. *Compare with Roberts,* 2015 WL 3905088, at *12 (conditionally certifying class where plaintiffs submitted seventeen additional declarations containing less specific declarations about being required by management to work more than forty hours per week); *Benson*, 2010 WL 4922704, at *5 (conditionally certifying class

---

[10] Ninety declarations were filed as of the date the plaintiffs filed their Reply. Eight declarations have been filed since that date. Because the eight additional declarations are substantially similar (aside from the identity and location of the declarant) to the previously-filed declarations to which LRI had an opportunity to respond, the court considers them here.

[11] Each of the declarants has also submitted a consent form to become an opt-in plaintiff in this action.

[12] The declarations all contain general statements about being required by LRI to perform off-the-clock work, followed by additional specifics about which particular LRI Violation applies in the case of that declarant. While most declarants claim that they experienced all or the majority of the LRI Violations, this is not always the case.

12

where plaintiffs submitted nine additional declarations regarding uncompensated pre- and post-shift activity). The declarations are of additional evidentiary importance as to the "similarly-situated" requirement because they are from declarants working in LRI restaurants in sixteen of the twenty states (*i.e.*, eighty percent) in which LRI operates restaurants, further supporting the argument that the LRI Violations are the result of widespread LRI corporate policies or practices that affect all potential class members.

LRI sets forth a number of concerns with the declarations in the Objections, none of which is persuasive. First, LRI complains that some of the declarations were signed many weeks before they were filed and/or not signed or filed at the same time that the signors opted into this action. LRI assigns an underhanded purpose to this. (*See* Docket No. 109 at pp. 1-2.) However, this hyperexamination of the plaintiffs' prosecution of its case is of no moment as to the evidentiary value of the declarations. It is not the role of the court to second guess the timing of plaintiffs' filings as long as they do not offend the certification process (which, here, they do not).

Next, LRI argues that the declarations "contain statements that are unsupported by personal knowledge, consist of rank speculation or improper legal opinion, and/or lack any probative value, and they should be stricken from the record or otherwise disregarded." (*Id*. at p. 3.) Primarily LRI argues that the declarants have not established the proper foundation for their statements. For example, LRI points out that the declarants have not established *how* they obtained their knowledge concerning whether they or others were on or off the clock at any given time or whether they spent more than twenty percent of their time on side work. The court disagrees and finds that these are simple statements of fact based on personal knowledge or

13

experience for which the declarants are not required to lay a foundation in their declarations. This is not a trial. The attestation that the declarant or others were not "clocked in," for example, or the declarants' personal judgment as to the percentage of time that they or others spent doing side work, is sufficient for purposes of their declarations. Whether or not these statements are credible and properly supported is ultimately a question of fact and is inappropriate to consider at this stage of the case.; LRI will be able to challenge these witnesses at the appropriate time.[13]

LRI's Objections are also based on the fact that, when LRI deposed eight declarants by written question, it uncovered some inconsistencies between their responses and their declarations as to the particular LRI Violations they experienced. (*Id*.) LRI uses this fact to support its assertion that certain of those declarants have submitted "materially false" declarations in this matter. (*See* Docket No. 101 at p. 5 n. 10; Docket No. 109 at pp. 5-6.) The court notes that, when deposing the eight declarants by written question, LRI sent most of them 113 legal questions to be answered in a rapid time frame. (Docket No. 101 at p. 5.) Moreover, as the plaintiffs highlight in the Reply, several of those declarants, after realizing they had inadvertently made some mistakes, filed amended declarations to remedy them. (*See* Docket No. 101 at p. 5 n. 2, Ex. 2.) The court has reviewed LRI's concerns and finds that they are not, at this stage, substantially justified. Moreover, they are mostly inappropriate, because, as noted above,

---

[13] LRI also argues that the declarations should be disregarded because they are "cookie-cutter" and therefore inherently "unreliable." (*Id*. at pp. 5-6.) For legal support on this point, LRI relies on several cases from other districts for the propositions that hearsay and legal conclusions are inappropriate in declarations. (*Id*.) It is not entirely clear that there is any connection between a declaration being "cookie-cutter" and its containing inappropriate hearsay or legal conclusions. Regardless, the court does not find the declarations to contain inappropriate hearsay or legal conclusions; rather, the declarations generally contain the experiences, observations, and beliefs of the declarants.

14

the court avoids making credibility determinations at this stage of the certification process.

LRI's Objections also refer to the declarations as vague and conclusory. In support of this argument, LRI relies at length upon *Bacon v. Eaton Aeroquip, L.L.C.*, No. 11-14103, 2012 WL 4321712 (E.D. Mich. Sept. 20, 2012), a case which is not analogous. In *Bacon*, several employees at one plant sought to certify a nationwide collective action based solely on their own declarations, none of which even referenced another plant or company location. *Id.* at *2. The only statement made that was relevant to conditional certification was a vague, non-committal mention that the plaintiffs "understood" similar things were happening company-wide. *Id.* The court rejected conditional certification but made clear that the plaintiffs could have satisfied their burden through personal declarations demonstrating more specific personal knowledge or through any other factual support. *Id.* at *2-3. Here, the named plaintiffs' declarations are not vague and conclusory. Beyond that, however, the plaintiffs have offered a wealth of "other factual support" in the form of numerous additional declarations from tipped employees throughout LRI's nationwide territory. By the very precedent put forth in *Bacon*, this is satisfactory for conditional certification purposes.

Finally, LRI's Objections contain a list of "specific objections" to individual statements in the declarations. (*See* Docket No. 109 at pp. 7-14.) For example, LRI specifically objects to the statement "I have been required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee, and received less than the minimum wage rate of $7.25 an hour for such work," on the grounds that it "constitutes a legal conclusion, or seeks to characterize the legal implications of evidence, and, therefore, is inadmissible" and "is also irrelevant, lacks foundation, is speculative, is vague and ambiguous, and constitutes improper

15

opinion testimony." (*Id*. at p. 8.) These objections are without merit; this is an assertion of fact based upon the declarant's personal experience. Similarly, LRI objects to the statement "I likewise have observed other Logan's tipped employees being required to perform non-tip producing work while clocked-in to the company's payroll system as a tipped employee, while receiving less than the minimum wage rate of $7.25 rate for an hour for such work – during such time period," on the same grounds. (*Id*. at p. 9.) This objection is likewise without merit; this is a statement of what the declarant personally observed. Indeed, LRI asserts the same boilerplate objections in regard to every statement contained in the various declarations, citing to the *Bacon* case and the Federal Rules of Evidence. This is unpersuasive and does not provide a basis for a mass exclusion of the plaintiffs' evidence. As mentioned, LRI will, of course, have opportunities to challenge the plaintiffs' evidence at later stages of this case.

In sum, the court finds that there is no basis to disregard the plaintiffs' declarations. Rather, the court finds that the plaintiffs' evidence is sufficient to make the required modest evidentiary showing for class certification purposes.

### C.      Whether the Prospective Collective Action Plaintiffs Are Similarly Situated

All together, the plaintiffs have provided one hundred declarations of current and former LRI employees, all of whom allege that LRI's wilful scheduling, assignment, and employment practices have denied them (and potentially other co-workers) minimum wage and overtime compensation in violation of the FLSA. These declarations show (1) employment with LRI; (2) the job title for which certification is sought; (3) performance of similar job duties under the job title regardless of the LRI restaurant at which they worked; (4) payment of wages; (5) work

16

performed (a) for no wage, (b) for below the minimum wage, and/or (c) in excess of forty hours per week without overtime compensation by LRI; (6) job duties and requirements that do not meet the requirements of any exemptions to the FLSA. Because the plaintiffs' evidence suggests the existence of a common practice that violates the FLSA, the plaintiffs have met their "fairly lenient" burden to establish that they are "similarly situated" to other LRI employees for purposes of conditional certification. At the very least, the plaintiffs' claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585. Furthermore, the court finds that the plaintiffs' evidence has provided the "modest factual showing" required for conditional certification of the plaintiffs' proposed class. *See Comer*, 454 F.3d at 547. The plaintiffs are therefore entitled to pursue this matter further, and, to do so, they need to provide notice of their claims to other LRI employees.

LRI's substantive arguments against certification that are based upon the merits of the plaintiffs' FLSA case are premature.[14] (*See* Docket No. 93 at pp. 1-5, 7-9, 16-22.) "Where, as here, plaintiffs have adduced sufficient evidence to meet step one's 'extremely lenient standard' for conditional certification, evidence offered by the defendant purporting to show plaintiffs are not similarly situated to absent class members, while significant after discovery and during the

---

[14] *Inter alia*, LRI argues that plaintiffs' FLSA action must fail as a matter of law because LRI's written policies prohibited the wage violations alleged by the plaintiffs. (*See* Docket No. 93 at pp. 7-9, 21-22.) LRI also argues that plaintiffs' reliance on the Department of Labor Field Operations Handbook's twenty percent standard as the basis of the "side work" FLSA violation claim is fundamentally flawed as a matter of law. (*See* Docket No. 93 at pp. 16-17.) LRI also makes several fact-based arguments (*e.g.*, LRI's timekeeping system does not allow for some of the actions of which LRI is accused). (*See* Docket No. 93 at p. 7.)

17

step-two analysis, does not compel denial of conditional certification." *Benson*, 2010 WL 4922704, at *5 (citing *Gallagher v. Lackawanna Cnty.*, No. 3:CV–07–0912, 2008 WL 9375549, at *9 (M.D. Pa. May 30, 2008)). "[A] court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Bearden v. AAA Auto. Club S., Inc.*, No. 2:11-cv-03104-JTF-dkv, 2013 WL 1181474, *6 (W.D. Tenn. Mar. 18, 2013) (quoting *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1277 n.6 (M.D. Ala. 2004)); *accord Burdine v. Covidien, Inc.*, No. 1:10–CV–194, 2011 WL 2976929, at *4 (E.D. Tenn. June 22, 2011) (declining to consider the merits at the conditional certification stage and concluding that the "better approach" is to "ask[ ] only whether the named plaintiffs are similarly situated to the potential plaintiffs"); *Heldman v. King Pharms., Inc.*, No. 3–10–1001, 2011 WL 465764, at *3 (M.D. Tenn. Feb. 2, 2011) (noting that, by arguing at the "first stage" that the plaintiff was exempt from the FLSA, the defendant was "moving prematurely to the merits of [the] action"); *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009) ("At this [first] stage the [c]ourt does not . . . decide substantive issues going to the ultimate merits. . . . "); *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 158 (N.D.N.Y. 2008) (stating that weighing the merits before conditional certification "would invariably defeat the . . . statutory intent to facilitate a broad remedial purpose"); *see also Hoffmann-LaRoche*, 493 U.S. at 174 ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."). Accordingly, the court will not delve into the merits of the LRI's defenses.

Similarly, the court will not review at this time LRI's argument that collective treatment

18

should be denied because individualized issues would predominate over common ones. Specifically, LRI argues that the on-site management and employment experiences of the tipped employees at individual restaurants necessitates the individual examination of the plaintiffs' claims. (Docket No. 93 at pp. 24-26.) Courts have specifically held that "disparate factual and employment settings of the individual plaintiffs" are particular issues that are "appropriately examined under the second stage of the [certification] analysis" (*i.e.*, in a motion for decertification), rather than at the motion for certification stage. *White*, 236 F.R.D. at 373 (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)); *see also, e.g.*, *Gambo v. Lucent Tech., Inc.*, No. 05-C-3701, 2005 WL 3542485, at *6 (N.D. Ill. Dec. 22, 2005) (holding notice may issue under the first stage of the analysis, even if it appears that the investigation and analysis required to determine whether the putative plaintiffs are similarly situated may prove to be sufficiently cumbersome such that a collective action may later be found inappropriate at the second stage). Indeed, "once [p]laintiffs have met their burden at the notice stage, [d]efendant[s] cannot overcome [p]laintiff[s'] showing by arguing that individual issues may dominate; rather, if, after notice to the putative plaintiffs it appears that individual issues do in fact dominate, the [d]efendant[s] may move the [c]ourt to decertify the class."[15] *White*, 236

_____

[15] A case from this circuit relied upon by LRI for a contrary holding (*see* Docket No. 93 at p. 27) is readily distinguishable. In *Bearden v. AAA Auto Club South, Inc.*, a sister court found that variance among the proposed class members established that the case would require individualized proof and rendered conditional certification inappropriate. *Bearden*, 2013 WL 1181474, at *8. However, the court cited *White* for the "ordinary" rule that consideration of individualized factual and employment settings of plaintiffs should be reserved for the second stage of the analysis. *Id.* The court explained why *Bearden* was different. *Bearden* involved an FLSA claim that turned on the "outside sales exemption." The named plaintiffs' theory that the defendant violated the FLSA necessarily relied on their not having "customarily and regularly" conducted outside sales. *Id.* However, the plaintiffs had not presented evidence as to the sales activities of the employees to whom they wished to send notice, and they did not attest that the

19

F.R.D. at 373; *Noble*, 2009 WL 1811550, at \*10-11 (same).

The court will, however, review LRI's arguments that are properly responsive in the conditional certification phase. LRI argues that the plaintiffs have not shown sufficient interest among members in the putative class in joining the litigation. (Docket No. 93 at p. 10-12.) Although LRI cites several cases suggesting a requirement of sufficient interest, *see Beecher v. Steak N Shake Operations, Inc.*, 904 F. Supp. 2d 1289, 1299 (N.D. Ga. 2012) (denying certification where twenty-three plaintiffs, twenty of whom worked in one state and almost exclusively in four stores, sought to conditionally certify a nationwide class of 65,000 employees) and *Barten v. KTK & Associates, Inc.*, No. 8:06-CV-1574-T-27EAJ, 2007 WL 2176203, at \*2 (M.D. Fla. Jul. 26, 2007) (denying certification where three named plaintiffs submitted declarations averring that they "think" others might be interested in the case), there is no controlling precedent in the Sixth Circuit regarding this specific issue. *Ware*, 828 F. Supp. 2d at 955; *see also Martin v. Psalms, Inc.*, No. 2:10-cv-02532-STA-dkv, 2011 WL 2882387, at \*8 (W.D. Tenn. July 15, 2011) ("From this court's review of Sixth Circuit precedent, the Court finds that the Sixth Circuit has neither required [a showing of sufficient interest], nor held that such a showing is not required."). Addressing the sufficient interest argument, one district court outside this circuit noted that the argument "puts the cart before the horse." *Heckler v. DK Funding,*

_____

defendants instructed its employees to perform sales activities in any particular place or manner. *Id.* In such an instance, the court found that the potential variances among sales methods and time allocations among all sales people suggested the likelihood not just that the case would require individualized proof, but that the class members were in fact not similarly situated to one another with respect to their status under the FLSA. *Id.* No such inherently variable situation exists here. The putative class members are all tipped employee food and beverage servers with similar job descriptions of taking and delivering orders in LRI restaurants.

*LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007). It added that: "[T]he logic behind defendants' proposed procedure – requiring [the plaintiff] to show that others want to join in order to send them notice asking if they want to join – escapes the [c]ourt. Requiring a plaintiff to make an advance showing that others want to join would undermine the 'broad remedial goal' of the FLSA." *Id.* (citing *Hoffmann-La Roche*, 493 U.S. at 173). The court finds this reasoning persuasive. *See Ware*, 828 F. Supp. 2d at 955.

However, even if a showing of sufficient interest were required, the plaintiffs have demonstrated that there is sufficient interest in the present case. In *Frye,* the district court, relying on a decision from the Eleventh Circuit, noted that "[n]o specific minimum number of opt-in plaintiffs is required to establish a showing of sufficient interest. Rather, the question is simply whether 'there are other employees . . . who desire to opt-in.'" *Frye*, 2008 WL 6653632, at *6 (quoting *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir.1991)); *see also Barten*, 2007 WL 2176203, at *2 n.2 (noting that other courts have found that as few as "three to five consents" were sufficient to establish that others desired to opt in). Here, at least one hundred other current and former employees have opted into this action, and they have continued to do so as time has progressed. Given the fairly lenient standard for conditional certification, *see Comer*, 454 F.3d at 547, the court finds that the plaintiffs have shown there is sufficient interest to conditionally certify a class. *See Martin*, 2011 WL 2882387, at *8 ("The fact that one other employee of [the d]efendant has opted-into this collective action, is enough, at this stage in the litigation, for this [c]ourt to find that there is sufficient interest to conditionally certify a class and permit court-supervised notice.").

For these reasons, the court will grant the Motion for Conditional Certification. *See, e.g.,*

*Roberts*, 2015 WL 3905088, at *13 (granting motion for conditional certification, despite a variety of employee positions and circumstances involved, where the plaintiffs had made a broad "modest factual showing" that they worked in excess of forty hours per week at various correctional facilities without receiving overtime pay); *Miller v. Lebanon Golf & Country Club*, No. 3:14-CV-01099, 2014 WL 7359003, at *4 (M.D. Tenn. Dec. 23, 2014) (granting motion for conditional certification where the plaintiffs had met the "low bar" by invoking the common, specific statutory theory that they worked in excess of forty hours per week at a country club without receiving overtime pay); *Benson*, 2010 WL 4922704 at *4 (granting motion for conditional certification and noting that, even if evidence submitted by the defendant tends to contradict the plaintiffs' evidence or reveal potential weaknesses in their case, it does not preclude conditional certification if the plaintiffs' evidence suggests, at a minimum, that some hourly employees have performed uncompensated pre- and post-shift tasks); *Barnwell v. Corr. Corp. of Am.*, No. 08-2151-JWL, 2008 WL 5157476, at *3 (D. Kan. Dec. 9, 2008) (granting motion for conditional certification where plaintiffs asserted they were similarly situated to potential opt-in plaintiff correctional facility employees who were also required to perform pre- and post-shift work without overtime compensation).

Moreover, the court finds that granting the plaintiffs' request for certification of a "nationwide" collective action that extends to all states in which LRI operates restaurants is appropriate and would serve the interests of justice and efficiency. The court recognizes that the plaintiffs have not adduced evidence from employees whose work has encompassed every LRI restaurant in every state in which LRI operates. However, this is not necessary, given the FLSA's broad remedial purpose, and such a high bar is rarely met in an FLSA action. While

22

approximately half of the declarations provided by the plaintiffs are from tipped employees who have been employed at restaurants in Tennessee and Kentucky, the plaintiffs have also offered declarations from tipped employees who have been employed in eighty percent of the geographically disperse nationwide territory (fourteen of the other eighteen states) in which LRI operates restaurants, including: Michigan, Alabama, Georgia, Mississippi, Louisiana, Texas, Indiana, Kansas, Ohio, Oklahoma, West Virginia, and Virginia. Put simply, the plaintiffs have adduced sufficient evidence pointing to the existence of common nationwide practices whereby tipped employees are not paid minimum wages or overtime wages as a result of one or more of the LRI Violations. This is sufficient for conditional certification of a nationwide class. *See, e.g., Ware, et al. v. T-Mobile USA*, No. 3:11-cv-0411, slip op. at 12-13 (M.D. Tenn. Apr. 6, 2015) (granting conditional certification of a nationwide class where the plaintiffs had demonstrated a common theory of off-the-clock work requirements based on evidence from employees at five of twenty-four geographically diverse call centers).

## II.     Proposed Notice Protocol and Disclosure of Potential Plaintiffs

FLSA claims are governed by a two-year statute of limitations or, in the case of a "willful violation," a three-year statute of limitations. 29 U.S.C. § 255(a). The statute of limitations is not tolled for any individual class member until that individual has filed a written consent to join form with the court. 29 C.F.R. § 790.21(b)(2). The information contained in a notice form is, therefore, important to allow a prospective plaintiff to understand his or her interests and a collective action hinges on "employees receiving accurate and timely notice concerning [its] pendency [. . .], so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170.

The plaintiffs propose a notice and consent protocol to notify potential opt-in plaintiffs of this action and enable them to join it. To that end, the plaintiffs have submitted specific proposed notice and consent documents (*see* Docket Nos. 37-4, 37-5). The plaintiffs contend that the court should authorize use of the proposed notice document because it is "timely, accurate, and informative," as required.[16] (Docket No. 37 at p. 13.) The plaintiffs' proposed protocol allows for notice and consent forms to be emailed and mailed by counsel for the plaintiffs to all tipped employees who were employed at LRI restaurants during the class period. (*Id*. at 14.) Based on the rationale that the nationwide class covers a large geographic area, the plaintiffs' protocol provides 120 days from that mailing for class members interested in participating to file their consents with the court. (*Id*.) The plaintiffs also request, on the grounds that the statute of limitations is running on their FLSA claims, that LRI be ordered to (1) internally post the notice prominently on any time clocks or computers used by LRI's employees (or alternatively on the bulletin boards where job notices are posted) and (2) include the notice

---

[16] As described by the plaintiffs:

> The Notice provides information about the pendency of the action and of the opportunity to opt-in. Plaintiffs' legal claims are accurately described. Potential opt-ins are advised that [LRI] is defending against the claims and that they are not required to participate. The notice provides clear instructions on how to opt in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. . . . Overall, Plaintiffs' proposed notice is easy to read and written in plain English, informing [c]lass members of their rights and how they can elect to participate in the action. The notice also describes the legal effect of joining the suit; describes the legal effect of not joining the suit; notes that the [c]ourt expresses no opinion regarding the merits of [p]laintiffs' claims or [LRI's] liability, and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action.

(Docket No. 37 at p. 14.)

with all current tipped employees' next regularly scheduled paycheck or stub.  (*Id*. at pp. 14-15.)

In connection with this request, the plaintiffs have moved for an order instructing LRI to disclose

a mailing list for all prospective class members (*i.e.*, tipped employees) employed by LRI within

the last three years.  (Docket No. 37 at p. 16.)  In the mailing list, the plaintiffs have requested

that LRI provide the (1) last known physical addresses, (2) last known email addresses, (3) dates

of employment, (4) social security numbers, and (5) last known telephone numbers, of all

employees who worked as tipped employees at LRI restaurants during the last three years.  (*Id*.)

LRI contends that the plaintiffs' proposed notice is deficient in several respects: (1) the

description of the putative collective action included in the notice fails to make clear to

individuals receiving the notice that they are only eligible to opt in if they were subjected to an

FLSA violation concerning which the court grants conditional certification; (2) the notice period

should be limited to, at most, 45 days; and (3) notice should only be sent via U.S. mail and the

disclosure of additional contact information is therefore unnecessary.  (Docket No. 93 at p. 28.)

LRI, therefore, requests that the court defer ruling on the proposed notice and direct the parties to

meet and confer regarding its proper content.

The court has reviewed the proposed notice and consent forms.  While the court is

sensitive to the fact that the statute of limitations is running, it was the plaintiffs' decision to file

the Motion for Conditional Certification without first meeting and conferring with counsel for

LRI to work out a mutually agreeable proposed protocol.  The result is disagreement between the

parties regarding that protocol – albeit one that, based on common practice in FLSA litigation,

should be easily resolved.  The court will, therefore, order the parties to confer and to submit

agreed notice and consent forms within fifteen days of the entry of the accompanying Order.  If the parties cannot agree, the plaintiffs shall file their proposed forms, and LRI may file its specific objections thereto, both by the same deadline.  The plaintiffs may respond to LRI's objections within five days.[17]

To facilitate class notice, the court will order LRI to provide the plaintiffs with the names and last known mailing addresses of  all similarly situated current and former employees who worked for LRI as tipped employees in the last three years.  *See Roberts*, 2015 WL 3905088, at *16 (ordering same); *Benson*, 2010 WL 4922704 at *6 (ordering same); *see also Hoffman-LaRoche*, 493 U.S. at 170 (finding that the "[d]istrict [c]ourt was correct to permit discovery of the names and addresses"); *Grayson*, 79 F.3d at 111 (ordering production of mailing list).  Counsel for LRI will deliver this information to counsel for the plaintiffs, in a computer-readable file format, within fifteen days of the entry of the accompanying Order.  The court finds that the plaintiffs have not demonstrated, either by a factual showing or through citation to legal precedent, that it is appropriate or necessary, at this time, to order the disclosure of email addresses, social security numbers, or telephone numbers.

III.    **The Plaintiffs' Request for Equitable Tolling**

The plaintiffs also request that the statute of limitations be tolled as of the date the Motion for Conditional Certification is granted so that putative class members will not have their limitations period run while the consent forms are being sent to them in the mail.  (Docket No. 37 at pp. 15-16.)  LRI objects to this equitable tolling request as premature, arguing that the

_____

[17] To guide the parties in their discussions, the court is of the opinion that 120 days to opt in is excessive, but 45 days may not be long enough.

26

applicability of equitable tolling is more appropriately addressed if and when the defendant advances an argument that certain claims are barred by the relevant statute of limitations. (Docket No. 93 at p. 27.)

In certain circumstances, the statute of limitations under the FLSA may be equitably tolled. *See, e.g., Myers v. Copper Cellar Corp.*, No. 3:95-CV-541, 1996 WL 766505, at *3 (E.D. Tenn. Sept. 27, 1996). However, at this juncture, the court does not find it appropriate to rule upon undeveloped statute of limitations issues. "If, at a later stage in this proceeding, [LRI] advances an argument that certain claims are barred by the relevant statute of limitations, the plaintiff[s] may (of course) advance an argument that equitable tolling should apply." *Miller*, 2014 WL 7359003, at *5; *see also Kutzback v. LMC Intellibound, LLC*, No. 2:13-cv-2767-JTF-cgc, 2014 WL 7187006, at *13 (W.D. Tenn. Dec. 16, 2014) (declining to grant request for equitable tolling at notice of action and noting that, "[i]f and when potential plaintiffs whose claims would otherwise be time-barred choose to opt into this class, they may apprise the [c]ourt of their circumstances and individually move for equitable tolling"); *Ware*, 828 F. Supp. 2d at 956 (declining to rule on an undeveloped statute of limitations tolling issue at the outset of FLSA collective action).

The plaintiffs also request that the consent forms be deemed "filed" on the date they are postmarked. (Docket No. 37 at p. 15.) This issue should be addressed, and preferably resolved, by the parties during their meet and confer regarding the notice and consent protocol. If it is not resolved, the parties may set out their positions at the objection phase outlined above.

## **SUMMARY**

27

This Memorandum and the accompanying Order shall have the following effect:

1.      The court authorizes this action to conditionally proceed as a collective action, on behalf of all similarly situated current and former hourly paid tipped employees (servers and bartenders) of LRI restaurants, nationwide, who, during the last three years, were denied proper minimum wage and overtime compensation in violation of the FLSA.

2.      LRI shall, within fifteen days of the date of the accompanying Order, provide to counsel for the plaintiffs a list of names and last known addresses for all putative class members.

3.      Counsel for the plaintiffs and counsel for LRI shall meet and confer regarding the notice and consent protocol and submit agreed notice and consent forms no later than fifteen days after the date of the accompanying order.  If the parties cannot agree on a protocol, by that same date: (1) the plaintiffs shall file their proposed notice and consent protocol, and (2) LRI shall separately file specific objections as to points of disagreement (by that same date).  If this occurs, the plaintiffs may file a response within five days.  The court will resolve any disputes and implement a protocol.

## CONCLUSION

The plaintiffs' Motion for Approval of 29 U.S.C. § 216(b) Notice and Consent Forms and to Order Disclosure of Current and Former Tipped Employees (Conditional Certification) of Defendants' Logan's Roadhouse Restaurants (Docket No. 36) will be granted in part and denied in part as set forth in this memorandum.

28

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge